1

2

3

4

5

6

7

8

The Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11

12

13

14

15

16

ADRIENNE BENSON and MARY
SIMONSON, individually and on behalf of all
others similarly situated,

Plaintiffs,

v.

DOUBLE DOWN INTERACTIVE, LLC, a
Washington limited liability company, and
INTERNATIONAL GAME TECHNOLOGY, a
Nevada corporation,

Defendant.

Case No. 2:18-cv-00525-RBL

DEFENDANT INTERNATIONAL
GAME TECHNOLOGY'S
ANSWER TO FIRST AMENDED
CLASS ACTION COMPLAINT

**JURY DEMAND**

17

18

19

20

21

22

23

Defendant International Game Technology ("IGT") files this answer to Plaintiffs Adrienne Benson's and Mary Simonson's First Amended Class Action Complaint (the "Complaint").  To the extent that any allegation in the Complaint is not specifically admitted, the allegation is denied.  IGT denies all allegations contained in headings and unnumbered paragraphs, and denies all allegations except for those expressly admitted below.  IGT answers the corresponding numbered paragraphs of the Complaint as follows:

24

**NATURE OF THE ACTION**

25

26

27

1.    Defendants own and operate video game development companies in the so-called "casual games" industry—that is, computer games designed to appeal to a mass audience

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
(2:18-cv-00525-RBL) - 1
109991566\V-4

Dentons US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, CA 94105
(415) 267-4000 main · (415) 267-4198 fax

of casual gamers.  Defendants (at all relevant times) owned and operated a popular online casino under the name Double Down Casino.

**ANSWER:**  IGT admits that it develops video games.  During a portion of the putative class period, IGT owned DoubleDown, which owns and operates the game DoubleDown Casino.  IGT denies the remaining allegations in paragraph 1.

2.     Double Down Casino is available to play on Android, and Apple iOS devices, and on Facebook.

**ANSWER:**  IGT admits that DoubleDown Casino can be accessed on Android and Apple iOS devices and on Facebook.

3.     Defendants provide a bundle of free "chips" to first-time visitors of Double Down Casino that can be used to wager on games within Double Down Casino.  After consumers inevitably lose their initial allotment of chips, Defendants attempt to sell them additional chips for real money.  Without chips, consumers cannot play the gambling game.

**ANSWER:**  IGT admits that first time users of DoubleDown Casino are provided with free virtual chips.  IGT denies the remaining allegations in paragraph 3.

4.     Freshly topped off with additional chips, consumers wager to win more chips. The chips won by consumers playing Defendants' games of chance are identical to the chips that Defendants sell.  Thus, by wagering chips that have been purchased for real money, consumers have the chance to win additional chips that they would otherwise have to purchase.

**ANSWER:**  IGT denies the allegations in paragraph 4.

5.     By operating the Double Down Casino, Defendants have violated Washington law and illegally profited from tens of thousands of consumers.  Accordingly, Plaintiffs, on

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
(2:18-cv-00525-RBL) - 2
109991566\V-4

behalf of themselves and a Class of similarly situated individuals, bring this lawsuit to recover their losses, as well as costs and attorneys' fees.

**ANSWER:**  IGT admits that Plaintiffs have filed a putative class action lawsuit.  IGT denies the remaining allegations in paragraph 5.

## PARTIES

6.      Plaintiff Adrienne Benson is a natural person and a citizen of the state of Washington.

**ANSWER:**  IGT lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6.

7.      Plaintiff Mary Simonson is a natural person and a citizen of the state of Washington.

**ANSWER:**  IGT lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7.

8.      Defendant Double Down Interactive, LLC is a limited liability company organized and existing under the laws of the State of Washington with its principal place of business at 605 Fifth Avenue South, Suite 300, Seattle, Washington 98104.  Double Down conducts business throughout this District, Washington State, and the United States.

**ANSWER:**  IGT lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8.

9.      Defendant International Game Technology is a corporation existing and organized under the laws of the State of Nevada with its principal place of business at 6355 South Buffalo Drive, Las Vegas, Nevada 89113.  IGT conducts business throughout this District, Washington State, and the United States.

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
(2:18-cv-00525-RBL) - 3
109991566\V-4

Dentons US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, CA 94105
(415) 267-4000 main · (415) 267-4198 fax

1    **ANSWER:**  IGT admits that it is a corporation organized under the laws of the State of

2    Nevada with its principal place of business at 6355 South Buffalo Drive, Las Vegas, Nevada

3    89113, and that it conducts business in this District and Washington State. IGT denies the

4    remaining allegations in paragraph 9.

5

6                                **JURISDICTION AND VENUE**

7         10.     Federal subject-matter jurisdiction exists under 28 U.S.C. § 1332(d)(2) because

8    (a) at least one member of the class is a citizen of a state different from any Defendants, (b) the

9    amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the

10   exceptions under that subsection apply to this action.

11        **ANSWER:**  To the extent paragraph 10 states a legal conclusion, no answer is required.

12   To the extent an answer is required, IGT denies the allegations in paragraph 10.

13

14        11.     The Court has personal jurisdiction over Defendants because Defendants

15   conduct significant business transactions in this District, and because the wrongful conduct

16   occurred in and emanated from this District.

17        **ANSWER:**  IGT admits that this Court has personal jurisdiction over it.  IGT denies the

18   remaining allegations in paragraph 11.

19

20        12.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial

21   part of the events giving rise to Plaintiffs' claims occurred in and emanated from this District.

22        **ANSWER:**  To the extent paragraph 12 states a legal conclusion, no answer is required.

23   To the extent an answer is required, IGT denies the allegations in paragraph 12, and further

24   denies that this forum is proper, because Plaintiffs agreed to arbitrate their claims.

25

26

27

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
(2:18-cv-00525-RBL) - 4
109991566\V-4

Dentons US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, CA 94105
(415) 267-4000 main · (415) 267-4198 fax

**FACTUAL ALLEGATIONS**

**I.      Free-to-Play and the New Era of Online Gambling**

13.      The proliferation of internet-connected mobile devices has led to the growth of what are known in the industry as "free-to-play" videogames.  The term is a misnomer.  It refers to a model by which the initial download of the game is free, but companies reap huge profits by selling thousands of "in-game" items that start at $0.99 (purchases known as "micro-transactions" or "in-app purchases").

**ANSWER:**  IGT lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13.

14.      The in-app purchase model has become particularly attractive to developers of games of chance (*e.g.*, poker, blackjack, and slot machine mobile videogames, amongst others), because it allows them to generate huge profits.  In 2017, free-to-play games of chance generated over $3.8 billion in worldwide revenue, and they are expected to grow by ten percent annually.[1]  Even "large land-based casino operators are looking at this new space" for "a healthy growth potential."[2]

**ANSWER:**  IGT lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14.

15.      With games of chance that employ the in-game purchase strategy, developers have begun exploiting the same psychological triggers as casino operators.  As one respected videogame publication put it:

> "If you hand someone a closed box full of promised goodies, many will happily pay you for the crowbar to crack it open.  The tremendous power of small random packs of goodies has long been known to the creators of physical collectible card games and

---

[1] GGRAsia – Social casino games 2017 revenue to rise 7pct plus says report, http://www.ggrasia.com/social-casino-games-2017-revenue-to-rise-7pct-plus-says-report/ (last visited Jul. 23, 18)
[2] *Report confirms that social casino games have hit the jackpot with $1.6B in revenue | GamesBeat*, https://venturebeat.com/2012/09/11/report-confirms-that-social-casino-games-have-hit-the-jackpot-with-1-6b-in-revenue/ (last visited Jul. 23, 18)

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
(2:18-cv-00525-RBL) - 5
109991566\V-4

Dentons US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, CA 94105
(415) 267-4000 main · (415) 267-4198 fax

companies that made football stickers a decade ago.  For some ...
the allure of a closed box full of goodies is too powerful to resist.
Whatever the worth of the randomised [sic] prizes inside, the
offer of a free chest and the option to buy a key will make a small
fortune out of these personalities.  For those that like to gamble,
these crates often offer a small chance of an ultra-rare item."[3]

**ANSWER:**  IGT lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 15.

16.     Another stated:

"Games may influence 'feelings of pleasure and reward,' but this
is an addiction to the games themselves; micro-transactions play
to a different kind of addiction that has existed long before video
games existed, more specifically, an addiction similar to that
which you could develop in casinos and betting shops."[4]

**ANSWER:**  IGT lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 16.

17.     The comparison to casinos doesn't end there.  Just as with casino operators,

mobile game developers rely on a small portion of their players to provide the majority of their

profits.  These "whales," as they're known in casino parlance, account for just "0.15% of

players" but provide "over 50% of mobile game revenue."[5]

**ANSWER:**  IGT lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 17.

18.     Game Informer, another respected videogame magazine, reported on the rise

(and danger) of micro-transactions in mobile games and concluded:

"[M]any new mobile and social titles target small, susceptible
populations for large percentages of their revenue.  If ninety-five
people all play a [free-to-play] game without spending money,

---

[3] PC Gamer, *Microtransactions:  the good, the bad and the ugly*, http://www.pcgamer.com/microtransactions-the-good-the-bad-and-the-ugly/ (last visited Apr.  5, 2018).
[4] The Badger, *Are micro-transactions ruining video games?  | The Badger*, http://thebadgeronline.com/2014/11/micro-transactions-ruining-video-games/ (last visited Apr.  5, 2018).
[5] *Id.*  (emphasis added).

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
(2:18-cv-00525-RBL) - 6
109991566\V-4

but five people each pour $100 or more in to obtain virtual currency, the designer can break even.  These five individuals are what the industry calls whales, and we tend not to be too concerned with how they're being used in the equation.  While the scale and potential financial ruin is of a different magnitude, a similar profitability model governs casino gambling."[6]

**ANSWER:**  IGT lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18.

19.     Academics have also studied the socioeconomic effect games that rely on in-app purchases have on consumers.  In one study, the authors compiled several sources analyzing so-called free-to-play games of chance (called "casino" games below) and stated that:

"[Researchers] found that [free-to-play] casino gamers share many similar sociodemographic characteristics (*e.g.,* employment, education, income) with online gamblers.  Given these similarities, it is perhaps not surprising that a strong predictor of online gambling is engagement in [free-to-play] casino games.  Putting a dark line under these findings, over half (58.3%) of disordered gamblers who were seeking treatment stated that social casino games were their first experiences with gambling."

...

"According to [another study], the purchase of virtual credits or virtual items makes the activity of [free-to-play] casino gaming more similar to gambling.  Thus, micro-transactions may be a crucial predictor in the migration to online gambling, as these players have now crossed a line by paying to engage in these activities.  Although, [sic] only 1–5% of [free-to-play] casino gamers make micro-transactions, those who purchase virtual credits spend an average of $78.  Despite the limited numbers of social casino gamers purchasing virtual credits, revenues from micro-transactions account for 60 % of all [free-to-play] casino gaming revenue.  Thus, a significant amount of revenue is based on players' desire to purchase virtual credits above and beyond what is provided to the player in seed credits."[7]

[6] Game Informer, *How Microtransactions Are Bad For Gaming - Features - www.GameInformer.com*, http://www.gameinformer.com/b/features/archive/2012/09/12/how-microtransactions-are-bad-for-gaming.aspx?CommentPosted=true&PageIndex=3 (last visited Apr. 5, 2018)

[7] Hyoun S. Kim, Michael J. A. Wohl, *et al., Do Social Casino Gamers Migrate to Online Gambling?  An Assessment of Migration Rate and Potential Predictors*, Journal of gambling studies / co-sponsored by the National Council on Problem Gambling and Institute for the Study of Gambling and Commercial Gaming (Nov. 14, 2014), *available at* http://link.springer.com/content/pdf/10.1007%2Fs10899-014-9511-0.pdf (citations omitted).

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
(2:18-cv-00525-RBL) - 7
109991566\V-4

Dentons US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, CA 94105
(415) 267-4000 main · (415) 267-4198 fax

1    **ANSWER:**  IGT lacks knowledge or information sufficient to form a belief as to the

2    truth of the allegations in paragraph 19.

3

4         20.     The same authors looked at the link between playing free-to-play games of

5    chance and gambling in casinos.  They stated that "prior research indicated that winning large

6    sums of virtual credits on social casino gaming sites was a key reason for [consumers']

7    migration to online gambling," yet the largest predictor that a consumer will transition to online

8    gambling was "micro-transaction engagement."  In fact, "the odds of migration to online

9    gambling were approximately *eight times greater* among people who made micro-transactions

10   on [free-to-play] casino games compared to [free-to-play] casino gamers who did not make

11   micro-transactions."[8]

12        **ANSWER:**  IGT lacks knowledge or information sufficient to form a belief as to the

13   truth of the allegations in paragraph 20.

14

15        21.     The similarity between micro-transaction games of chance and games of chance

16   found in casinos has caused governments across the world to intervene to limit their

17   availability.[9]  Unfortunately, such games have eluded regulation in the United States.  As a

18   result, and as described below, Defendants' online casino games have thrived and thousands of

19   consumers have spent millions of dollars unwittingly playing Defendants' unlawful games of

20   chance.

21        **ANSWER:**  IGT lacks knowledge or information sufficient to form a belief as to the

22   truth of the allegations in the first and second sentences of paragraph 21.  IGT denies the

23   allegations in the third sentence of paragraph 21.

---

[8] *Id.*  (emphasis added).

[9] In late August 2014, South Korea began regulating "social gambling" games, including games similar to Defendants', by "ban[ning] all financial transactions directed" to the games.  PokerNews.com, *Korea Shuts Down All Facebook Games In Attempt To Regulate Social Gambling | PokerNews*, https://www.pokernews.com/news/2014/09/korea-shuts-down-facebook-games-19204 htm (last visited Apr. 5, 2018).  Similarly, "the Maltese Lotteries and Gambling Authority (LGA) invited the national Parliament to regulate all digital games with prizes by the end of 2014."  *Id.*

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
(2:18-cv-00525-RBL) - 8
109991566\V-4

1

## II.     A Brief Introduction to Double Down and IGT

2

22.     Double Down is a leading game developer with an extensive library of free-to-play online casino games.  Double Down sells in-app chips to consumers in the Double Down Casino so that consumers can play various online casino games in Double Down Casino.

**ANSWER:**  IGT lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22.

23.     IGT is a global leader in the gaming industry with long ties to the traditional casino market.  It has developed a multitude of casino and lottery games, including traditional slot machines and video lottery terminals.  In 2012, IGT acquired Double Down and its library of online casino games, and has since "grown into one of the largest and most successful brands in the North American social casino market."[10]

**ANSWER:**  IGT admits that it has developed casino and lottery games and that IGT acquired DoubleDown in 2012.  IGT lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 23.

24.     In 2017, IGT sold DoubleDown for $825 million to DoubleU Games.[11]  In addition to the sale, IGT has also entered into a long-term game development and distribution agreement with DoubleU to offer its online casino games in DoubleDown Casino.[12]  IGT notes that it will continue to collect royalties from its online casino game content.[13]

---

[10] *IGT To Sell Online Casino Unit DoubleDown To South Korean Firm For $825 Million - Poker News*, https://www.cardplayer.com/poker-news/21554-igt-to-sell-online-casino-unit-doubledown-to-south-korean-firm-for-825-million (last visited Ap. 6, 2018).
[11] *Id.*
[12] *IGT Completes Sale Of DoubleDown Interactive LLC To DoubleU Games,* https://www.prnewswire.com/news-releases/igt-completes-sale-of-double-down-interactive-llc-to-doubleu-games-300467524.html (last visited Apr. 6, 2018).
[13] *Id.*

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
(2:18-cv-00525-RBL) - 9
109991566\V-4

1    **ANSWER:**  IGT admits that it sold DoubleDown in 2017 and that IGT entered into

2    certain agreements with DoubleU Games. IGT denies the remaining allegations in paragraph

3    24.

4

5    25.    Defendants have made large profits through their online casino games.  In 2016,

6    alone, Double Down generated $280 million in revenue.  As explained further below, however,

7    the revenue Defendants receives from Double Down Casino is the result of operating unlawful

8    games of chance camouflaged as innocuous videogames.

9    **ANSWER:**  IGT denies the allegations in paragraph 25.

10

11   **III.    Defendants' Online Casino Contains Unlawful Games of Chance**

12   26.    Consumers visiting Double Down Casino for the first time are awarded 1

13   million free chips.  *See* Figure 1.  These free sample chips offer a taste of gambling and are

14   designed to encourage player to get hooked and buy more chips for real money.



(**Figure 1.**)

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
(2:18-cv-00525-RBL) - 10
109991566\V-4

Dentons US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, CA 94105
(415) 267-4000 main · (415) 267-4198 fax

1    **ANSWER:**  IGT admits that new users of DoubleDown Casino receive free chips.  IGT

2    denies the remaining allegations in paragraph 26.  IGT cannot verify the authenticity of the

3    cropped screenshot in Figure 1 and therefore denies it.

4

5    27.    After they begin playing, consumers quickly lose their initial allotment of chips.

6    Immediately thereafter, Double Down Casino informs them via a "pop up" screen that they

7    have "insufficient funds."  *See* Figure 2.  Once a player runs out of their allotment of free chips,

8    they cannot continue to play the game without buying more chips for real money.

9



(**Figure 2.**)

21    **ANSWER:**  IGT admits that when users do not have enough chips to play they receive

22    the message "insufficient funds to spin."  IGT denies the remaining allegations in paragraph 27.

23    IGT cannot verify the authenticity of the cropped screenshot in Figure 2 and therefore denies it.

24

25

26

27

Dentons US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, CA 94105
(415) 267-4000 main · (415) 267-4198 fax

28.     To continue playing the online casino game, consumers navigate to Double Down Casino's electronic store to purchase chips ranging in price from $2.99 for 300,000 chips to $99.99 for 100,000,000 chips.  *See* Figure 3.



(**Figure 3.**)

**ANSWER:**  IGT admits that users can purchase chips from the DoubleDown Casino store.  IGT denies the remaining allegations in paragraph 28, and further denies that users must purchase chips to continue to play DoubleDown Casino.  IGT cannot verify the authenticity of the cropped screenshot in Figure 3 and therefore denies it.

29.     The decision to sell chips by the thousands isn't an accident.  Rather, Defendants attempt to lower the perceived cost of the chips (costing just a fraction of a penny per chip) while simultaneously maximizing the value of the award (awarding millions of chips in jackpots), further inducing consumers to bet on their games.

**ANSWER:**  IGT denies the allegations in paragraph 29.

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
(2:18-cv-00525-RBL) - 12
109991566\V-4

30.     To begin wagering, players select the "LINE BET" that will be used for a spin, as illustrated in <u>Figure 4</u>.  Double Down Casino allows players to increase or decrease the amount he or she can wager and ultimately win (or lose).  Double Down Casino allows players to multiply their bet by changing the number of "lines" (*i.e.*, combinations) on which the consumer can win, shown in Figure 4 as the "LINE" button.



(**<u>Figure 4.</u>**)

**<u>ANSWER:</u>**  IGT admits that players can increase or decrease the "LINE BET" and "LINE" settings for certain games in DoubleDown Casino.  IGT denies the remaining allegations in paragraph 30.  IGT cannot verify the authenticity of the cropped screenshot in Figure 4 and therefore denies it.

31.     Once a consumer spins the slot machine by pressing "SPIN" button, no action on his or her part is required.  Indeed, none of the Double Down Casino games allow (or call for) any additional user action.  Instead, the consumer's computer or mobile device communicates with and sends information (such as the "TOTAL BET" amount) to the Double Down Casino servers.  The servers then execute the game's algorithms that determine the spin's outcome.  Notably, none of Defendants' games depend on any amount of skill to determine their outcomes—all outcomes are based entirely on chance.

**<u>ANSWER:</u>**  IGT admits that, for certain games in DoubleDown Casino, once a user presses the "SPIN" button, no action on his or her part is required to determine the outcome of the turn.  IGT denies the remaining allegations in paragraph 31.

32.     Consumers can continue playing with the chips that they won, or they can exit the game and return at a later time to play because Double Down Casino maintains win and

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
(2:18-cv-00525-RBL) - 13

Dentons US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, CA 94105
(415) 267-4000 main · (415) 267-4198 fax

loss records and account balances for each consumer.  Indeed, once Defendants' algorithms determine the outcome of a spin and Double Down Casino displays the outcome to the consumer, Defendants adjusts the consumer's account balance.  Defendants keep records of each wager, outcome, win, and loss for every player.

**ANSWER:**  IGT admits that users can play DoubleDown Casino with the chips that they won, or they can exit the game and return at a later time to play. IGT lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 32.

## FACTS SPECIFIC TO PLAINTIFF BENSON

33.     Since 2013, Plaintiff Benson has been playing Double Down Casino on Facebook.  After Benson lost the balance of her initial allocation of free chips, she purchased chips from the Double Down Casino electronic store.

**ANSWER:** IGT lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33.

34.     Thereafter, Benson continued playing various slot machines and other games of chance within the Double Down Casino where she would wager chips for the chance of winning additional chips.  Since 2016, Benson has wagered and lost (and Defendants therefore won) over $1,000 at Defendants' games of chance.

**ANSWER:**  IGT lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph  34.

## FACTS SPECIFIC TO PLAINTIFF SIMONSON

35.     Since 2017, Plaintiff Simonson has been playing Double Down Casino on her mobile phone.  After Simonson lost the balance of her initial allocation of free chips, she purchased chips from the Double Down Casino electronic store.

Dentons US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, CA 94105
(415) 267-4000 main · (415) 267-4198 fax

1    **ANSWER:**  IGT lacks knowledge or information sufficient to form a belief as to the

2    truth of the allegations in paragraph 35.

3

4    36.    Thereafter, Simonson continued playing various slot machines and other games

5    of chance within the Double Down Casino where she would wager chips for the chance of

6    winning additional chips.  Since December 2017, Simonson has wagered and lost (and

7    Defendants therefore won) over $200 at Defendants' games of chance.

8    **ANSWER:**  IGT lacks knowledge or information sufficient to form a belief as to the

9    truth of the allegations in paragraph 36.

10

11                              **CLASS ALLEGATIONS**

12    37.    **Class Definition:**  Plaintiffs Benson and Simonson bring this action pursuant to

13    Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and a Class of similarly situated

14    individuals, defined as follows:

15                    All persons in the United States who purchased and lost chips by
                      wagering at the Double Down Casino.
16

17    The following people are excluded from the Class:  (1) any Judge or Magistrate presiding over

18    this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents,

19    successors, predecessors, and any entity in which the Defendants or their parents have a

20    controlling interest and their current or former employees, officers and directors; (3) persons

21    who properly execute and file a timely request for exclusion from the Class; (4) persons whose

22    claims in this matter have been finally adjudicated on the merits or otherwise released;

23    (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors,

24    and assigns of any such excluded persons.

25    **ANSWER:**  IGT admits that Plaintiffs have filed a putative class action lawsuit.  IGT

26    denies the remaining allegations in paragraph 37, and further denies that Plaintiffs can represent

27    the class of people they attempt to define.

---

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
(2:18-cv-00525-RBL) - 15
109991566\V-4

Dentons US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, CA 94105
(415) 267-4000 main · (415) 267-4198 fax

38.     **Numerosity:**  On information and belief, tens of thousands of consumers fall into the definition of the Class.  Members of the Class can be identified through Defendants' records, discovery, and other third-party sources.

**ANSWER:**  IGT denies the allegations in paragraph 38.

39.     **Commonality and Predominance:**  There are many questions of law and fact common to Plaintiffs' and the Class's claims, and those questions predominate over any questions that may affect individual members of the Class.  Common questions for the Class include, but are not necessarily limited to the following:

a.     Whether DoubleDown Casino games are "gambling" as defined by RCW 9.46.0237;

b.     Whether Defendants are the proprietors for whose benefit the online casino games are played;

c.     Whether Plaintiffs and each member of the Class lost money or anything of value by gambling;

d.     Whether Defendants violated the Washington Consumer Protection Act, RCW 19.86.010, *et seq.*; and

e.     Whether Defendants have been unjustly enriched as a result of their conduct.

**ANSWER:**  To the extent paragraph 39 states legal conclusions, no answer is required. To the extent an answer is required, IGT denies the allegations in paragraph 39 and each of its subparts.

40.     **Typicality:**  Plaintiffs' claims are typical of the claims of other members of the Class in that Plaintiffs' and the members of the Class sustained damages arising out of Defendants' wrongful conduct.

**ANSWER:**  IGT denies the allegations in paragraph 40.

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
(2:18-cv-00525-RBL) - 16
109991566\V-4

Dentons US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, CA 94105
(415) 267-4000 main · (415) 267-4198 fax

1

2       41.     **Adequate Representation:**  Plaintiffs will fairly and adequately represent and

3   protect the interests of the Class and have retained counsel competent and experienced in

4   complex litigation and class actions.  Plaintiffs' claims are representative of the claims of the

5   other members of the Class, as Plaintiffs and each member of the Class lost money playing

6   Defendants' games of chance.  Plaintiffs also have no interests antagonistic to those of the

7   Class, and Defendants have no defenses unique to Plaintiffs.  Plaintiffs and their counsel are

8   committed to vigorously prosecuting this action on behalf of the Class and have the financial

9   resources to do so.  Neither Plaintiffs nor their counsel have any interest adverse to the Class.

10      **ANSWER:**  IGT lacks knowledge or information sufficient to form a belief as to the

11  truth of the allegations in paragraph 41.

12

13      42.     **Policies Generally Applicable to the Class:**  This class action is appropriate for

14  certification because Defendants have acted or refused to act on grounds generally applicable to

15  the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure

16  compatible standards of conduct toward the members of the Class and making final injunctive

17  relief appropriate with respect to the Class as a whole.  Defendants' policies that Plaintiffs

18  challenges apply and affect members of the Class uniformly, and Plaintiffs' challenge of these

19  policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law

20  applicable only to Plaintiffs.  The factual and legal bases of Defendants' liability to Plaintiffs

21  and to the other members of the Class are the same.

22      **ANSWER:**  IGT denies the allegations in paragraph 42.

23

24      43.     **Superiority:**  This case is also appropriate for certification because class

25  proceedings are superior to all other available methods for the fair and efficient adjudication of

26  this controversy.  The harm suffered by the individual members of the Class is likely to have

27  been relatively small compared to the burden and expense of prosecuting individual actions to

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
(2:18-cv-00525-RBL) - 17

Dentons US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, CA 94105
(415) 267-4000 main · (415) 267-4198 fax

redress Defendants' wrongful conduct.  Absent a class action, it would be difficult if not

impossible for the individual members of the Class to obtain effective relief from Defendants.

Even if members of the Class themselves could sustain such individual litigation, it would not

be preferable to a class action because individual litigation would increase the delay and

expense to all parties and the Court and require duplicative consideration of the legal and

factual issues presented.  By contrast, a class action presents far fewer management difficulties

and provides the benefits of single adjudication, economy of scale, and comprehensive

supervision by a single Court.  Economies of time, effort, and expense will be fostered and

uniformity of decisions will be ensured.

**ANSWER:**  IGT denies the allegations in paragraph 43.


44.      Plaintiffs reserve the right to revise the foregoing "Class Allegations" and

"Class Definition" based on facts learned through additional investigation and in discovery.

**ANSWER:**  To the extent paragraph 44 states legal conclusions, no answer is required.

To the extent an answer is required, IGT denies the allegations in paragraph 44.


### FIRST CAUSE OF ACTION

### Violations of Revised Code of Washington 4.24.070

### (On behalf of Plaintiffs and the Class)

45.      Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

**ANSWER:**  IGT incorporates its answers to the foregoing paragraphs 1 through 44 as if

fully set forth herein.


46.      Plaintiffs, members of the Class, and Defendants are all "persons" as defined by

RCW 9.46.0289.

**ANSWER:**  To the extent paragraph 46 states legal conclusions, no answer is required.

To the extent an answer is required, IGT denies the allegations in paragraph 46.

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
(2:18-cv-00525-RBL) - 18
109991566\V-4

1

2   47.   The state of Washington's "Recovery of money lost at gambling" statute, RCW

3   4.24.070, provides that "all persons losing money or anything of value at or on any illegal

4   gambling games shall have a cause of action to recover from the dealer or player winning, or

5   from the proprietor for whose benefit such game was played or dealt, or such money or things

6   of value won, the amount of the money or the value of the thing so lost."

7   **ANSWER:**  To the extent paragraph 47 states legal conclusions, no answer is required.

8   To the extent an answer is required, IGT states that RCW 4.24.070 speaks for itself and IGT

9   denies violating RCW 4.24.070.  IGT denies the remaining allegations in paragraph 47.

10

11   48.   "Gambling," defined by RCW 9.46.0237, "means staking or risking something

12   of value upon the outcome of a contest of chance or a future contingent event not under the

13   person's control or influence."

14   **ANSWER:**  To the extent paragraph 48 states legal conclusions, no answer is required.

15   To the extent an answer is required, IGT denies that paragraph 48 fully and accurately quotes

16   RCW 9.46.0237.  IGT denies the remaining allegations in paragraph 48.

17

18   49.   Defendants' "chips" sold for use at the Double Down Casino are "thing[s] of

19   value" under RCW § 9.46.0285.

20   **ANSWER:**  To the extent paragraph 49 states legal conclusions, no answer is required.

21   To the extent an answer is required, IGT denies the allegations in paragraph 49.

22

23   50.   DoubleDown Casino games are illegal gambling games because they are online

24   games at which players wager things of value (the chips) and by an element of chance (*e.g.*, by

25   spinning an online slot machine) are able to obtain additional entertainment and extend

26   gameplay (by winning additional chips).

27

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
(2:18-cv-00525-RBL) - 19
109991566\V-4

Dentons US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, CA 94105
(415) 267-4000 main · (415) 267-4198 fax

1    **ANSWER:**  To the extent paragraph 50 states legal conclusions, no answer is required.

2   To the extent an answer is required, IGT denies the allegations in paragraph 50.

3

4    51.    Defendants Double Down and IGT are the proprietors for whose benefit the

5   online gambling games are played because they operate the Double Down Casino games and/or

6   derive profit from their operation.

7    **ANSWER:**  To the extent paragraph 51 states legal conclusions, no answer is required.

8   To the extent an answer is required, IGT denies the allegations in paragraph 51.

9

10    52.    As such, Plaintiffs and the Class gambled when they purchased chips to wager at

11   Double Down Casino.  Plaintiffs and each member of the Class staked money, in the form of

12   chips purchased with money, at Defendants' games of chance (*e.g.*, Double Down Casino slot

13   machines and other games of chance) for the chance of winning additional things of value (*e.g.*,

14   chips that extend gameplay without additional charge).

15    **ANSWER:**  To the extent paragraph 52 states legal conclusions, no answer is required.

16   To the extent an answer is required, IGT denies the allegations in paragraph 52.

17

18    53.    In addition, Double Down Casino games are not "pinball machine[s] or similar

19   mechanical amusement device[s]" as contemplated by the statute because:

20      a.    the games are electronic rather than mechanical;

21      b.    the games confer replays but they are recorded and can be redeemed on separate

22         occasions (*i.e.*, they are not "immediate and unrecorded"); and

23      c.    the games contain electronic mechanisms that vary the chance of winning free

24         games or the number of free games which may be won (*e.g.*, the games allow for

25         different wager amounts).

26

27

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
(2:18-cv-00525-RBL) - 20
109991566\V-4

1  **ANSWER:** To the extent paragraph 53 states legal conclusions, no answer is required.

2  To the extent an answer is required, IGT denies the allegations in paragraph 53 and each of its

3  subparts.

4

5  54.   RCW 9.46.0285 states that a "'Thing of value,' as used in this chapter, means

6  any money or property, any token, object or article exchangeable for money or property, or any

7  form of credit or promise, directly or indirectly, contemplating transfer of money or property or

8  of any interest therein, or involving extension of a service, entertainment or a privilege of

9  playing at a game or scheme without charge."

10  **ANSWER:** To the extent paragraph 54 states legal conclusions, no answer is required.

11  To the extent an answer is required, IGT states that RCW 9.46.0285 speaks for itself, and IGT

12  denies violating RCW 9.46.0285. IGT denies the remaining allegation in paragraph 54.

13

14  55.   The "chips" Plaintiffs and the Class had the chance of winning in Double Down

15  Casino games are "thing[s] of value" under Washington law because they are credits that

16  involve the extension of entertainment and a privilege of playing a game without charge.

17  **ANSWER:** IGT denies the allegations in paragraph 55.

18

19  56.   Double Down Casino games are "Contest[s] of chance," as defined by RCW

20  9.46.0225, because they are "contest[s], game[s], gaming scheme[s], or gaming device[s] in

21  which the outcome[s] depend[] in a material degree upon an element of chance,

22  notwithstanding that skill of the contestants may also be a factor therein." Defendants' games

23  are programmed to have outcomes that are determined entirely upon chance and a contestant's

24  skill does not affect the outcomes.

25  **ANSWER:** To the extent paragraph 56 states legal conclusions, no answer is required.

26  To the extent an answer is required, IGT denies the allegations in paragraph 56.

27

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
(2:18-cv-00525-RBL) - 21
109991566\V-4

Dentons US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, CA 94105
(415) 267-4000 main · (415) 267-4198 fax

57.     RCW 9.46.0201 defines "Amusement game[s]" as games where "The outcome depends in a material degree upon the skill of the contestant," amongst other requirements. Double Down Casino games are not "Amusement game[s]" because their outcomes are dependent entirely upon chance and not upon the skill of the player and because the games are "contest[s] of chance," as defined by RCW 9.46.0225.

**ANSWER:**  To the extent paragraph 57 states legal conclusions, no answer is required. To the extent an answer is required, IGT states that RCW 9.46.0201 speaks for itself, but denies that paragraph 57 fully quotes RCW 9.46.0201 and denies that IGT has violated RCW 4.46.0201.  IGT denies the remaining allegations in paragraph 57.

58.     As a direct and proximate result of Defendants' operation of their Double Down Casino games, Plaintiffs and each member of the Class have lost money wagering at Defendants' games of chance.  Plaintiffs, on behalf of themselves and the Class, seek an order (1) requiring Defendants to cease the operation of their games; and/or (2) awarding the recovery of all lost monies, interest, and reasonable attorneys' fees, expenses, and costs to the extent allowable.

**ANSWER:**  IGT denies the allegations in paragraph 58, and further denies that Plaintiffs are entitled to any order or award.

## SECOND CAUSE OF ACTION

Violations of the Washington Consumer Protection Act, RCW 19.86.010, *et seq.* (On behalf of Plaintiffs and the Class)

59.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

**ANSWER:**  IGT incorporates its answers to the foregoing paragraphs 1 through 58 as if fully set forth herein.

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
(2:18-cv-00525-RBL) - 22
109991566\V-4

Dentons US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, CA 94105
(415) 267-4000 main · (415) 267-4198 fax

60.     Washington's Consumer Protection Act, RCW § 19.86.010 *et seq.*  ("CPA"), protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

**ANSWER:**  To the extent paragraph 60 states legal conclusions, no answer is required. To the extent an answer is required, IGT denies the allegations in paragraph 60.

61.     To achieve that goal, the CPA prohibits any person from using "unfair methods of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ."  RCW § 19.86.020.

**ANSWER:**  To the extent paragraph 61 states legal conclusions, no answer is required. To the extent an answer is required, IGT denies that paragraph 61 fully and accurately quotes RCW 19.86.020 and denies that IGT has violated RCW 19.86.020.  IGT denies the remaining allegations in paragraph 61.

62.     The CPA states that "a claimant may establish that the act or practice is injurious to the public interest because it. . . Violates a statute that contains a specific legislative declaration of public interest impact."

**ANSWER:**  To the extent paragraph 62 states legal conclusions, no answer is required. To the extent an answer is required, IGT admits RCW 19.86.093 speaks for itself, but denies that paragraph 62 fully quotes RCW 19.86.093 and denies that IGT has violated RCW 19.86.093.  IGT denies the remaining allegations in paragraph 62.

63.     Defendants violated RCW § 9.46.010, *et seq.* which declares that:

> "The public policy of the state of Washington on gambling is to keep the criminal element out of gambling and to promote the social welfare of the people by limiting the nature and scope of gambling activities and by strict regulation and control.
>
> It is hereby declared to be the policy of the legislature, recognizing the close relationship between professional gambling

Dentons US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, CA 94105
(415) 267-4000 main · (415) 267-4198 fax

1   and organized crime, to restrain all persons from seeking profit
2   from professional gambling activities in this state; to restrain all
    persons from patronizing such professional gambling activities;
3   to safeguard the public against the evils induced by common
    gamblers and common gambling houses engaged in professional
4   gambling; and at the same time, both to preserve the freedom of
    the press and to avoid restricting participation by individuals in
5   activities and social pastimes, which activities and social
    pastimes are more for amusement rather than for profit, do not
    maliciously affect the public, and do not breach the peace."

6   **ANSWER:**  To the extent paragraph 63 states legal conclusions, no answer is required.

7   To the extent an answer is required, IGT states RCW 9.46.010 speaks for itself.  IGT denies the

8   remaining allegations in paragraph 63.

9

10   64.   Defendants have violated RCW § 9.46.010, *et seq.*, because the Double Down

11   Casino games are illegal online gambling games as described in ¶¶ 42-55 *supra*.

12   **ANSWER:**  To the extent paragraph 64 states legal conclusions, no answer is required.

13   To the extent an answer is required, IGT denies the allegations in paragraph 64.

14

15   65.   Defendants' wrongful conduct occurred in the conduct of trade or commerce—

16   *i.e.*, while Defendants were engaged in the operation of making computer games available to

17   the public.

18   **ANSWER:**  IGT denies the allegations in paragraph 65.

19

20   66.   Defendants' acts and practices were and are injurious to the public interest

21   because Defendants, in the course of their business, continuously advertised to and solicited the

22   general public in Washington state [sic] and throughout the United States to play their unlawful

23   online casino games of chance.  This was part of a pattern or generalized course of conduct on

24   the part of Defendants, and many consumers have been adversely affected by Defendants'

25   conduct and the public is at risk.

26   **ANSWER:**  IGT denies the allegations in paragraph 66.

27

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
(2:18-cv-00525-RBL) - 24
109991566\V-4

Dentons US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, CA 94105
(415) 267-4000 main · (415) 267-4198 fax

67.     Defendants have profited immensely from their operation of unlawful games of chance, amassing hundreds of millions of dollars from the losers of their games of chance.

**ANSWER:**  IGT denies the allegations in paragraph 67.

68.     As a result of Defendants' conduct, Plaintiffs and the Class members were injured in their business or property—*i.e.*, economic injury—in that they lost money wagering on Defendants' unlawful games of chance.

**ANSWER:**  IGT denies the allegations in paragraph 68.

69.     Defendants' unfair or deceptive conduct proximately caused Plaintiffs' and the Class members' injuries because, but for the challenged conduct, Plaintiffs and the Class members would not have lost money wagering at or on Defendants' games of chance, and they did so as a direct, foreseeable, and planned consequence of that conduct.

**ANSWER:**  IGT denies the allegations in paragraph 69.

70.     Plaintiffs, on their own behalf and on behalf of the Class, seek to enjoin further violation and recover actual damages and treble damages, together with the costs of suit, including reasonable attorneys' fees.

**ANSWER:**  IGT denies the allegations in paragraph 70, and further denies that Plaintiffs are entitled to an injunction or any recovery.

### THIRD CAUSE OF ACTION

### Unjust Enrichment

### (On behalf of Plaintiffs and the Class)

71.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

Dentons US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, CA 94105
(415) 267-4000 main · (415) 267-4198 fax

1    **ANSWER:**  IGT incorporates its answers to the foregoing paragraphs 1 through 70 as if

2    fully set forth herein.

3

4    72.    Plaintiffs and the Class have conferred a benefit upon Defendants in the form of

5    the money Defendants received from them for the purchase of chips to wager on Double Down

6    Casino games.

7    **ANSWER:**  IGT denies the allegations in paragraph 72.

8

9    73.    Defendants appreciate and/or have knowledge of the benefits conferred upon

10   them by Plaintiffs and the Class.

11   **ANSWER:**  IGT denies the allegations in paragraph 73.

12

13   74.    Under principles of equity and good conscience, Defendants should not be

14   permitted to retain the money obtained from Plaintiffs and the members of the Class, which

15   Defendants have unjustly obtained as a result of their unlawful operation of unlawful online

16   gambling games.  As it stands, Defendants have retained millions of dollars in profits generated

17   from their unlawful games of chance and should not be permitted to retain those ill-gotten

18   profits.

19   **ANSWER:**  IGT denies the allegations in paragraph 74.

20

21   75.    Accordingly, Plaintiffs and the Class seek full disgorgement and restitution of

22   any money Defendants have retained as a result of the unlawful and/or wrongful conduct

23   alleged herein.

24   **ANSWER:**  IGT denies the allegations in paragraph 75, and further denies that

25   Plaintiffs are entitled to any disgorgement or restitution.

26

27

Dentons US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, CA 94105
(415) 267-4000 main · (415) 267-4198 fax

**PRAYER FOR RELIEF**

IGT denies that Plaintiffs are entitled to any relief.

**AFFIRMATIVE DEFENSES**

Below are IGT's affirmative and additional defenses to the Complaint.  By setting forth these defenses, IGT does not assume any burden of proof as to any fact issue or other element of any cause of action that properly belongs to Plaintiffs.  IGT reserves the right to amend or supplement its affirmative and additional defenses.

1.    **Improper forum or venue.**  Plaintiffs' claims do not belong in this forum because Plaintiffs agreed to individual arbitration of their claims under the arbitration agreement and class waiver provisions of the Terms of Use, and therefore this court lacks subject matter jurisdiction pursuant to the Federal Arbitration Act.

2.    **Failure to state a claim.**  The First Amended Complaint fails to state a claim against IGT, in whole or in part, upon which relief can be granted.

3.    **Statute of limitations.**  Plaintiffs' claims are barred by the applicable contractual and statutory statutes of limitations, including without limitation the period set forth in the Terms of Use.

4.    **Laches.**  Plaintiffs' claims are barred by the doctrine of laches.

5.    **Barred by agreement**.  Plaintiffs' claims are barred, in whole or in part, by the terms of the parties' agreements, including without limitation the Terms of Use.

6.    **Disclaimer.**  Plaintiffs' claims are barred, in whole or in part, because IGT disclaimed liability, including without limitation as set forth in the Terms of Use.

7.    **Release or waiver.**  Plaintiffs' claims fail, in whole or in part, under the doctrines of release or waiver, including without limitation because Plaintiffs knowingly continued to voluntarily use the services.

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
(2:18-cv-00525-RBL) - 27
109991566\V-4

Dentons US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, CA 94105
(415) 267-4000 main · (415) 267-4198 fax

8. **Consent, estoppel, or ratification.**  Plaintiffs' claims fail, in whole or in part, under the doctrines of consent, estoppel, or ratification, including without limitation because Plaintiffs were aware of, ratified, and benefited from the conduct of which they now complain, and consented to the alleged damages by their voluntary conduct.

9. **Lack of injury.**  Plaintiffs' claims fail, in whole or in part, because they have not sustained any cognizable injury or damages.

10. **Lack of causation.**  IGT was not the direct or proximate cause of Plaintiffs' alleged damages.

11. **Failure to mitigate.**  Plaintiffs failed to mitigate their alleged damages.

12. **Assumption of risk.**  Plaintiffs assumed the risk of their voluntary conduct and the responsibility to participate only in compliance with applicable law.

13. **Adequate remedy at law.**  Plaintiffs' claims for equitable relief fail because Plaintiffs have an adequate remedy at law.

14. **Set-off.**  Any relief granted to Plaintiff, which IGT disputes, must be set-off by the amounts that DoubleDown or IGT have refunded to any Plaintiff or putative class member or by any amount that a Plaintiff or putative class member owes DoubleDown or IGT.

15. **Unclean hands.**  All of Plaintiffs' claims are barred by the doctrine of unclean hands.

16. **Unjust enrichment.**  Plaintiffs' claims are barred, in whole or in part, because any recovery from IGT would result in Plaintiffs' unjust enrichment.

17. **Compliance; preemption**.  Plaintiffs' claims fail, in whole or in part, because IGT complied with applicable federal and state statutes and regulations.

18. **Choice of law; foreign law**.  Unnamed putative class members residing outside of Washington State lack standing to assert claims under Washington law, and

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
(2:18-cv-00525-RBL) - 28
109991566\V-4

Dentons US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, CA 94105
(415) 267-4000 main · (415) 267-4198 fax

Plaintiffs lack standing to represent such putative class members under the laws of the various states that may apply to putative class member conduct.

19. **Improper class allegations**.  Plaintiffs' claims may not properly be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, including without limitation because Plaintiffs cannot satisfy the requirements of numerosity, commonality, typicality, adequacy, superiority, or predominance, and because the putative class is not definite and ascertainable.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, IGT respectfully requests that this Court:

A.    Enter judgment in IGT's favor and against Ms. Benson and Ms. Simonson;

B.    Award IGT its costs of suit;

C.    Award IGT its attorneys' fees to the extent permitted by law; and

D.    Grant IGT such other and further relief as this Court deems just and proper.

Dentons US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, CA 94105
(415) 267-4000 main · (415) 267-4198 fax

1    DATED this 18th day of January, 2019.

2                                              Respectfully submitted,

3                                              DENTONS US LLP

4                                              By */s Bonnie Lau*                          

5                                              Bonnie Lau (Admitted *Pro Hac Vice*)
                                               One Market Plaza
6                                              Spear Tower, 24th Floor
                                               San Francisco, CA  94105
7                                              Tel. (415) 267-4000
                                               Fax (415) 267-4198
8                                              Email:  bonnie.lau@dentons.com

9                                              William M. Gantz (Admitted *Pro Hac Vice*)
                                               101 Federal Street
10                                             Suite 2750
                                               Boston, MA  02110
11                                             Tel. (312) 876-2567
                                               Email:  bill.gantz@dentons.com
12
                                               By: *s/ Adam T. Pankratz*                  
13                                             Adam T. Pankratz, WSBA #50951
                                               Ogletree, Deakins, Nash, Smoak & Stewart,
14                                             P.C.
                                               800 5th Avenue, Suite 1400
15                                             Seattle, WA 98104
                                               Tel: (206) 693-7057
16                                             Email: Adam.Pankratz@ogletree.com

17                                             Attorneys for International Game Technology

18

19

20

21

22

23

24

25

26

27

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
(2:18-cv-00525-RBL) - 30
109991566\V-4

                                                              Dentons US LLP
                                                    One Market Plaza, Spear Tower, 24th Floor
                                                           San Francisco, CA 94105
                                                   (415) 267-4000 main · (415) 267-4198 fax

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on this day I electronically filed the foregoing with the Clerk of the

3   Court using the CM/ECF system which will send notification of such filing to all counsel of

4   record.

5        DATED this 18th day of January, 2019.

6

7                                         *s/ Bonnie Lau*
                                          Bonnie Lau, Admitted *Pro Hac Vice*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

CERTIFICATE OF SERVICE – 1

Dentons US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, CA 94105
(415) 267-4000 main · (415) 267-4198 fax