UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ADRIENNE BENSON AND MARY SIMONSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DOUBLE DOWN INTERACTIVE, LLC, a Washington limited liability company, and INTERNATIONAL GAME TECHNOLOGY, a Nevada corporation,<br><br>Defendant. | CASE NO. 2:18-cv-00525-RBL<br><br>ORDER GRANTING DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING APPEAL<br><br>DKT. #63 |

**INTRODUCTION**

THIS MATTER is before the Court on Defendants, Double Down Interactive, LLC, and International Game Technology's (collectively "Double Down"), Motion to Stay Proceedings Pending Appeal of this Court's Order Denying Defendants' Motion to Compel Arbitration. Dkt. #63. The underlying dispute is a class action to recover money lost playing electronic gambling games available through Facebook and mobile apps. The Court denied Double Down's previous motion because the location of the hyperlinks to the app's Terms of Use were not sufficiently

1 | conspicuous to provide users with constructive notice that they were bound by those Terms. Dkt.
2 | #57.
3 |       Double Down appealed and filed this Motion, arguing that a stay should be granted
4 | because the appeal raises serious legal questions, such as whether repeatedly playing a game or
5 | using an app can give rise to constructive notice. Dkt. #63. Double Down also argues it would
6 | suffer irreparable harm if it must litigate this potential class action in the lower court while
7 | arguing for arbitration before the Ninth Circuit. *Id*. Plaintiffs respond that a stay should not be
8 | granted because the questions raised by Double Down are not serious legal questions since they
9 | are not novel, do not speak to the merits of the case, and the core legal issue of a browsewrap
10 | agreement "is aged and settled." Dkt. #68. Finally, Plaintiffs claim they would suffer
11 | significantly more harm than Double Down by delaying their day in court. Dkt. #70. For reasons
12 | stated herein, the Court GRANTS the Motion.

**BACKGROUND**

14 |       This proposed class action alleges that Double Down's app-based games constitute illegal
15 | gambling in violation of RCW §4.24.070. Dkt. #1. When first accessing Double Down's apps,
16 | users are given free "virtual" chips but must subsequently purchase additional chips to continue
17 | playing. *Id*. Plaintiffs seek to certify a class action to recover money lost by users from playing
18 | Double Down's games. *Id*. A few months into the case, Double Down moved to compel
19 | arbitration. Dkt. #44.
20 |       Double Down argued that users were put on notice and agreed to their apps' Terms of
21 | Use, which contained an arbitration clause. *Id*. However, all of the hyperlinks to the Terms were
22 | in small print without accompanying notifications and either required scrolling to access or were
23 | located in a separate settings menu. Dkt. #51, Ex. A. For example, on the iPhone platform, a user
24 |

has the option of downloading the app from the menu without the hyperlink appearing at all. Dkt. #57, at 4. Consequently, the Court denied Double Down's Motion to Compel Arbitration because Plaintiffs did not have actual or constructive notice that they were bound by the Terms. *Id*. Double Down appealed to the Ninth Circuit and filed this Motion to stay proceedings.

**DISCUSSION**

**1. Legal Standard for Issuing a Stay**

The Federal Arbitration Act permits interlocutory appeals from the denial of a motion to compel arbitration. 9 U.S.C.A. §16. A litigant who asks for a stay of proceedings where the issue is subject to arbitration is entitled to an immediate appeal from denial of that motion to stay, even if they are not be eligible for a stay. *Arthur Andersen LLP v. Wayne Carlisle*, 556 U.S. 624, (2009). Nevertheless, "an appeal from a district court's order denying a motion to compel arbitration does not trigger an automatic stay pending the appeal." *Britton v. Co-op Banking Group,* 916 F.2d 1405, (9th Cir. 1990). Whether to issue a stay is an exercise of judicial discretion. *Nken v. Holder*, 556 U.S. 418, 129 (2009). In the Ninth Circuit, this is the case even where the underlying issue is whether the district court properly denied a motion to compel arbitration. *Britton,* 916 F.2d 1405.[1]

Courts consider four factors before issuing a stay: "(1) at least a 'substantial case for relief on the merits' on appeal; (2) probable irreparable harm if no stay is granted; (3) the balance of harms tips in favor of the moving party; and (4) a stay is in the public interest." *Leiva-Perez*

---

[1] There is a circuit split regarding whether denials of motions to compel arbitration automatically warrant a stay if the losing party appeals. *McLeod v. General Mills*, 2015 WL 7428548 (2015). Five circuits ruled in favor of *McLeod's* contention that a stay is mandatory, while three circuits have held the opposite. The Eighth Circuit has yet to weigh in. The Seventh Circuit explained that "whether the litigation may go forward in the district court is precisely what the court of appeals must decide." *Bradford-Scott Data Corporation, Inc., v. Physician Computer Network, Inc.,* 128 F.3d 504, 506 (1997). The Supreme Court has also observed that "[a] district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982). However, the Ninth Circuit has held that a stay is not automatic. *Britton*, 916 F.2d 1405.

*v. Eric H. Holder*, 640 F.3d 962 (9th Cir. 2011). Although "[t]he first two factors are the most critical," *Nken*, 557 U.S. 418, the Ninth Circuit balances the relative equities of a substantial case on the merits with the balance of hardships that may affect the parties. *Rajagopalan v. Noteworld, LLC*, 2012 WL 2115482, (W.D. Wash. Jun. 11, 2012) (citing *Leiva-Perez*, 640 F.3d at 971). In addition, "[t]he party requesting a stay bears the burden [to]… justify the stay." *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.,* 2016 WL 9226389 (2016).

**2. Serious Legal Questions**

Double Down raises six potential serious legal questions in its Motion. Dkt. #63. The most critical are (1) whether questioning the formation of a browsewrap agreement presents a serious legal question, (2) whether repeatedly playing a game or using an app while a notice is present on the game screen creates constructive notice, and (3) whether affirmatively downloading a game from the app store where the Terms are posted establishes constructive notice. *Id*. Double Down argues that even if the serious legal question factor only "somewhat favor[s] a stay," the Court should stay proceedings while the appeal is pending. *Id*. Plaintiffs argue that Double Down does not meet the standard required for a serious legal question because the issue of contract formation is not novel and the Ninth Circuit has already established clear and consistent precedent in interpreting browsewrap agreements. Dkt. #68; *see also Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171 (9th Cir. 2014).

"To justify a stay, a petitioner must show, at minimum, that [they have] a substantial case for relief on the merits." *Leiva-Perez,* 640 F.3d at 964. However, the moving party does not need to show they are more likely than not to win on the merits as long as the issue on appeal raises a 'serious' legal question and the remaining factors favor a stay. *Id*.; *see also Smith v. Legal Helpers Debt Resolution, LLC,* 2012 WL 12863172 (W.D. Wash. Apr. 24, 2012). The Ninth

Circuit has not defined exactly what makes a legal question 'serious,' but courts have found that a question is serious when it raises an issue of first impression within the Ninth Circuit or involves a split in legal authority. *Vesta Corporation v. Amdocs Management Limited*, 2016 WL 10843668 (2016); *see also Britton,* 916 F.2d 1405.

Issues relating to the formation of a contract containing an arbitration clause can present serious legal questions. In *Sample v. Brookdale Senior Living Communities, Inc.*, for example, the court found that the defendants raised a serious legal question regarding whether an employee's acceptance of employment waives the signature requirement for an arbitration agreement to be formed. No. C11-58844, 2012 WL 195175 (W.D. Wash. Jan 23, 2012); *see also Smith v. Legal Helpers*, No. 11-5054, 2012 WL 12863172 at *2 (W.D. Wash. Apr. 24, 2012) (granting the motion to stay but observing, without explanation, that the "substantial case for relief" factor only "somewhat favor[ed] a stay"); *Rajagopalan v. Noteworld, LLC*, No. C11-5574, 2012 WL 2115482 at *3 (W.D. Wash. Jun. 11, 2012) (granting motion to stay and finding that the defendant had raised substantial questions regarding unconscionability).

Even where there is substantial case law addressing the issues raised on appeal, courts may find the serious question factor satisfied if the relevant authority does not squarely address the specific issue. For example, in *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, the court observed that although it was well-established that it was the role of the court to assess contract formation and not the arbitrator, most cases addressing the issue involved challenges to contract execution. No. 14-cv-02857, 2015 WL 674962, at *3 (N.D. Cal. Feb. 17, 2015). Because the defendant had challenged contract formation on other grounds and there was no binding authority "squarely address[ing]" the issue, the court found the serious question factor satisfied. *Id.*; *see also Lowden v. T-Mobile USA, Inc.*, No. C05-1482P, 2006 WL 1896678 (W.D. Wash. July 10, 2006) (finding

a serious legal question existed because "Washington Law is not clear on whether class action restrictions in consumer arbitration agreements are enforceable").

Here, Double Down raises a somewhat novel question of contract formation regarding whether repetitive use of an app can give rise to actual or constructive notice. Dkt. #63. Even though this Court stands by its prior decision that the hyperlinks in Double Down's apps fall short of the well-established standard from *Nguyen*, 763 F.3d at 1177, like in *Kum Tat*, there is no clear precedent by the Ninth Circuit or the Supreme Court squarely addressing the issue of repetitive use of an app. Dkt. #57; *See* 2015 WL 674962. Because there is no precedent squarely on point, Double Down meets the serious legal question standard, albeit minimally.

### 3. Irreparable Harm to Applicant

Double Down argues it would suffer irreparable harm because continued litigation will deprive it of the contractual right to arbitrate claims on an individual basis. Dkt. #63. Plaintiffs respond that the financial burdens would also be incurred in private arbitration, and are not the type of irreparable harm the court requires to satisfy this part of the test. Dkt. #68.

For a moving party to be considered "irreparably injured" for the purposes of a motion to stay, that injury must be "categorically irreparable." *Nken,* 557 U.S. 418 at 433. "Simply showing some possibility of irreparable injury is not sufficient." *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, No. 16-cv-00495, 2016 WL 9226389 (D. Or. Oct. 5, 2016) (internal quotation marks omitted.) Nevertheless, "a stay is not a matter of right, even if irreparable injury might otherwise result." *Id.* A moving party must show that irreparable harm is probable without a stay, otherwise "a stay may not issue, regardless of the petitioner's proof regarding the other stay factors." *Leiva-Perez*, 640 F.3d 962.

The impending cost of litigation is not considered an irreparable harm. *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, No. 16-cv-00495, 2016 WL 9226389 (D. Or. Oct. 5, 2016). In *Guifu Li v. A Perfect Franchise, Inc.,* the court found that the moving party would not be irreparably harmed because additional expenses of proceeding through discovery do not constitute irreparable harm. No. 5:10-cv-001189, 2011 WL 2293221 (N.D. Cal. June 8, 2011) (where the contract involved a failure to pay independent contractors and then a concern that records were missing due to a new paperless policy). However, the court in *Lowden* found that litigation expenses constituted significant hardship because the cost-limiting purpose of arbitration would be negated if the court's order was reversed on appeal. 2006 WL 1896678, at *2. The court in *Sample* echoed these sentiments. 2012 WL 195175, at *2.

Here, although the underlying contract is extremely different from *Guifu,* Double Down would likely not incur additional expenses through discovery. This Court does not find *Lowden* and *Sample* persuasive as applied to this case since the parties here have discussed entering into an agreement to stay discovery pending the appeal. Dkt. #35, Ex. 2.

Nevertheless, Double Down would suffer irreparable harm because of the risk of arbitration becoming moot and the possibility of having to litigate a class action. Courts have determined that the defendants face a particular risk of irreparable harm when they have appealed an order refusing to compel arbitration of a potential class action. *See Rajagopalan,* 2012 WL 2115482, at *3; *Smith* 2012 WL 12863172, at *2. If there is a valid arbitration agreement, "one party is deprived of the inexpensive and expeditious means by which the parties had agreed to resolve their disputes." *Alascom, Inc., v. ITT N. Elec., Inc.,* 727 F.2d 1419, 1423 (9th Cir. 1984.) Although the Court did not find that a valid browsewrap agreement exists here, Double Down would still suffer irreparable harm similar to the movants in *Rajagopalan* and

*Smith* if the Ninth Circuit disagrees and Double Down is forced to litigate a class action unnecessarily.

Furthermore, if the court of appeals does not reverse, there is a chance the parties will settle their dispute shortly after, making any litigation that took place at the trial level a waste of resources. Therefore, this factor weighs in favor of Double Down.

**4. Balance of Harms in Favor of Applicant**

Double Down asserts that if it is successful on appeal, but the proceedings in district court are not stayed, arbitration will become moot and rendered meaningless. *See generally Leiva-Perez*, 640 F.3d 962. It further argues that Plaintiffs would not suffer comparable harm if the Court issues a stay because no discovery has taken place, and no class action has been certified. Dkt. #63. Plaintiffs respond that they are suffering irreparable harm by delaying their day in court, and fear this will lead to evidence decaying and "witnesses' memories" fading. Dkt. #68. Plaintiff is also concerned that Double Down, which is largely run internationally, might scale down domestic operations or be purchased by another corporation less willing to participate in these proceedings. *Id*.

In weighing these factors, courts apply a "sliding scale" approach whereby the factors are balanced "so that a stronger showing of one ... may offset a weaker showing of another." *Leiva-Perez*, 640 F.3d at 964. Courts balance the harm to the parties and have deemed that it would be redundant for both actions to proceed simultaneously. *Sample*, 2012 WL 195175. *See also Blinco v. Green Tree Servicing, LLC,* 366 F.3d 1249 (2004) (citing *Bradford- Scott Data Corp.,* 128 F.3d at 505.) ("The issue of continued litigation in the district court is not collateral to the question presented by an appeal under 16(a)(1)(A); it is the mirror image of the question presented on appeal.") In *Rajagopala*, *Sample*, and *Smith*, the courts found that monetary

damages sought by the plaintiffs were not as significant as the harm defendants would suffer by having to proceed with litigation while their appeal was pending.

Here, the equities tilt in favor of Double Down because the risk that arbitration will become moot is significantly greater compared to the monetary damages Plaintiffs may suffer. The Court does not find Plaintiffs argument regarding the decay of evidence or the possibility that another organization would not cooperate persuasive. Furthermore, Plaintiffs don't have much to lose, since they are simply seeking restitution for the money lost, whereas Double Down risks having to defend a class action versus arguing individual claims in arbitration. This factor therefore weighs in favor of Double Down.

**5. Public Interest**

Double Down argues that a stay would serve judicial economy and public interest because to continue litigation in both courts would risk redundancy or inconsistent actions. Dkt. #63. Plaintiffs state this type of illegal online gambling continues to go unregulated thereby increasing gambling addiction and significantly impacting the citizens of Washington State. Dkt. #68. Courts have observed that issuing a stay avoids wasting judicial resources and is in keeping with the federal policy favoring arbitration. *See, e.g*, *AG Edward & Sons, Inc., v. McCollough*, 967 F.2d 1401, 1404 (9th Cir. 1992); *Sample,* 2012 WL 195175, at *2 (2012); *Lowden*, 2006 WL 1896678, at *2. These rationales apply equally here. Although the Court determined that no arbitration agreement was formed in this case, it is at least possible that Double Down's appeal could still result in a reversal that would put arbitration back on the table. The public interest factor thus favors Double Down.

# CONCLUSION

For these reasons, Double Down's Motion to Stay Proceedings Pending Appeal [Dkt. #63] is GRANTED.

IT IS SO ORDERED.

Dated this 28th day of February, 2019.

Ronald B. Leighton
United States District Judge