**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 29 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ADRIENNE BENSON; MARY SIMONSON, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs-Appellees,<br><br>　v.<br><br>DOUBLE DOWN INTERACTIVE, LLC, a Washington limited liability company; INTERNATIONAL GAME TECHNOLOGY, a Nevada corporation,<br><br>　　　　　Defendants-Appellants. | No.　18-36015<br><br>D.C. No. 2:18-cv-00525-RBL<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Submitted January 28, 2020[**]
Seattle, Washington

Before: GOULD and NGUYEN, Circuit Judges, and R. COLLINS,[***] District Judge.

---

　　[*]　This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

　　[**]　The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

　　[***]　The Honorable Raner C. Collins, United States District Judge for the District of Arizona, sitting by designation.

Double Down Interactive, LLC and International Game Technology (collectively, "Double Down") appeal the district court's order denying their motion to compel arbitration in a putative class action filed by Mary Simonson ("Simonson") and Adrienne Benson ("Benson"). We have jurisdiction under 9 U.S.C. § 16(a)(1)(B), and we review the denial of a motion to compel arbitration de novo, *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019). We affirm.

Double Down failed to carry its burden to prove, under Washington law, that either plaintiff assented to the arbitration clause in its terms of use (the "Terms of Use"). The existence of mutual assent in the online context "turns on whether the consumer had reasonable notice" of the governing terms. *Wilson*, 944 F.3d at 1219. In the absence of actual notice, a browsewrap agreement like the Terms of Use at issue here, is enforceable only if a reasonably prudent user would have constructive notice of those terms. *Id.* at 1220. Constructive notice, in turn, depends on "the conspicuousness and placement of the terms and conditions, as well as the content and overall design" of the website or mobile application. *Id.*

Simonson never received constructive notice of the Terms of Use. As in *Wilson*, a user would have to closely scrutinize Double Down's page on the Apple App Store in order to find the Terms of Use during the downloading process. There is no reference to them on the opening screen of Double Down's page; instead, they are buried at the bottom of the page and accessible only after scrolling

past multiple screens and images that a user need not view to download the platform. *Wilson*, 944 F.3d at 1220–21 (noting that courts will not enforce agreements "tucked away in obscure corners of the website" and available only after scrolling that is not required to use the site (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014)).

And during gameplay on Double Down's mobile platform, finding the Terms of Use is just as much of a "hide-the-ball exercise" as it was in *Wilson*: A user must first locate a small settings menu in a corner of the screen that is "obscured amongst the brightly colored casino games," and then find the "Terms of Use" heading in the pop-up settings menu, which is not "bolded, highlighted, or otherwise set apart" from the four other headings in that menu. *Id.* at 1221 (describing a nearly identical process in these terms).

Benson also never received constructive notice of Double Down's Terms of Use.[1]  When a user first connects to the Facebook platform, the Terms of Use are accessible through a gray "App Terms" hyperlink on a pop-up screen that is below and smaller than all other text on the screen. *Cf. Nguyen*, 763 F.3d at 1178 (describing terms of use hyperlinks that were presented on every page of a website

---

[1] Double Down also did not carry its burden to prove actual notice. Double Down presented no evidence that Benson ever viewed Double Down's Terms of Use on the Facebook platform or elsewhere. The mere fact Benson contacted Double Down's customer service department is insufficient to prove actual notice.

"in underlined, color-contrasting text" and near buttons users were required to click on to use the website as conspicuous). The pop-up screen also does not inform users that they are bound by the Terms of Use. *See Wilson*, 944 F.3d at 1221 (relying in part on the lack of an explicit textual notice informing users that they were bound by the defendant's terms of use in holding that constructive notice was lacking); *see also Nguyen*, 763 F.3d at 1179 (holding that a website provides insufficient notice if it contains conspicuous hyperlinks but "otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent").

The "Terms of Use" hyperlink and accompanying notification that are accessible during gameplay on the Facebook platform do not cure the notice problem. Significantly, the hyperlink and notification become visible only after a user scrolls to the bottom of the platform.² *Wilson*, 944 F.3d at 1221 ("[C]ourts decline to enforce agreements where the terms are available only if users scroll to a

---

² This finding is not clearly erroneous. *Nguyen*, 763 F.3d at 1175 (noting that in reviewing the denial of a motion to compel arbitration, underlying factual findings are reviewed for clear error). Plaintiffs submitted a video of a user interacting with the Facebook platform, which shows that even when the platform is loaded in full-screen mode, a user must scroll to see the hyperlink and notification. It was not clear error for the district court to credit this evidence over Double Down's competing evidence. *Lewis v. Ayers*, 681 F.3d 992, 999 (9th Cir. 2012) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (quoting *United States v. Elliott*, 322 F.3d 710, 715 (9th Cir. 2003)).

4

different screen . . . ."). Moreover, like the settings menu on the mobile platform, the hyperlink and notification are "obscured amongst the brightly colored" icons on the Facebook platform, *id.*, and they are set out in typeface that is substantially smaller than all other text on the screen.[3]

Double Down's remaining arguments are not persuasive. Repeated use of a website or mobile application does not contribute to constructive notice because users are no more likely to stumble upon inconspicuous hyperlinks on their hundredth or thousandth visit than they are on their first. *See id.* (rejecting this same argument). Nor do the terms and conditions that govern all transactions on the Apple App Store place a reasonably prudent user of the mobile platform on constructive notice of Double Down's Terms of Use. *Cf. Nguyen*, 763 F.3d at 1179 (rejecting the argument that familiarity with other websites governed by similar browsewrap terms contributed to constructive notice because constructive notice is, by definition, an agreement-specific inquiry).

---

[3] The notification itself also does not clearly inform users that they are bound by the Terms of Use. The notifications that courts have deemed sufficient have stated much more explicitly that continued use of a website binds a user to the terms of use. *Nguyen*, 763 F.3d at 1178 n.1 ("[W]here courts have relied on the proximity of the hyperlink to enforce a browsewrap agreement, the websites at issue have also included something more to capture the user's attention and secure her assent."); *see, e.g.*, *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78–79 (2d Cir. 2017) (holding that Uber's mobile application provided reasonably conspicuous notice of its terms of service in part because the registration screen warned users directly below the registration button that "By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY").

**AFFIRMED.**