# Exhibit 1

The Honorable Ronald B. Leighton

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| ADRIENNE BENSON and MARY SIMONSON, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> DOUBLE DOWN INTERACTIVE, LLC, a Washington limited liability company, and INTERNATIONAL GAME TECHNOLOGY, a Nevada corporation, <br><br> *Defendants*. | Case No. 18-cv-00525-RBL <br><br> **PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION TO DOUBLE DOWN INTERACTIVE, LLC.** |

Plaintiffs Adrienne Benson and Mary Simonson, pursuant to Rule 34 of the Federal Rules of Civil Procedure, request that Double Down Interactive, LLC ("Double Down") produce the following Documents for inspection and copying at the office of Edelson PC, 123 Townsend Street, Suite 100, San Francisco, California 94107, within thirty (30) days of service of this Request.

### *I. Definitions*

1. "Addiction Phrases" means the following words and phrases: addict*, continuous gaming activity, false win*, gambl*, hook*, hook, return to player, red flag*, rtp, time on device, tod, pressur*, retain*, retention*, sticky, stickiness, and whale*.

2. "Chip Package Pricing" means the price of chips, or chip packages, in a Social Casino's in-game store.

3. "Chip Package Offers" means offers for Guests to make Chip Purchases.

4. "Chip Purchase" or "Chip Purchases" means a transaction in which a Guest purchases virtual chips in exchange for money in a Social Casino's in-game store.

5. "Code-Based" means as a result of a Social Casino's computer code (*i.e.*, as opposed to as a result of human intervention by a VIP Host).

6. "Communication" or "Communications" means the transmittal of information, facts or ideas, Including Communications in the form of any discussion, conversation, inquiry, negotiation, agreement, understanding, meeting, telephone conversation, letter, correspondence, note, memorandum, e-mail message, instant message, text message, electronic chat, telegram, audio recordings, advertisement or other form of exchange of words, whether oral or written, or sent or received by You to or from any entity, Including files maintained or exchanged internally within Your business or with Your Employees. "Communication" or "Communications" also means all written and unwritten but recorded correspondence, Including non-duplicate drafts, versions not sent, and copies that differ only in margin notes or annotations, Including memos, letters analog or digital recordings, audio recordings, electronic chat logs, voicemail, email,

computer files, computer discs, or other things sent or received by You to or from any entity, Including files maintained or exchanged internally within Your business or with Your employees.

7. "Compensation Structure" means all manner of employee compensation, Including bonuses and commission.

8. "Complaint" means Plaintiffs' First Amended Complaint filed in the United States District Court for the Western District of Washington on July 23, 2018 (Dkt. 41).

9. "Date" means the exact year, month, and day, if known, or if not known, Your best approximation thereof.

10. "Describe" when used in Relation To any process, policy, act, or event means explain the process, policy, act or event in complete and reasonable detail, stating the time, Date, and location, Identifying all Persons participating or present, and Identifying all Documents Relating thereto.

11. "Disabled" means temporarily *or* permanently suspended, deleted, blocked, removed, canceled, or deactivated.

12. "Document" or "Documents" means any writings, letters, telegrams, memoranda, correspondence, Communications, email messages, memoranda or notes of conferences or telephone conversations, reports, studies, lists, compilations of data, papers, books, records, contracts, deeds, leases, agreements, pictures, photographs, transcripts, tapes, microfilm, Computer data files, printouts, accounting statements, mechanical and electrical recordings, checks, pleadings, and other tangible things upon which any handwriting, typing, printing, drawing, representation, photostatic, or other magnetic or electrical impulses or other form of Communication is recorded, stored or produced, Including audio and video recordings, and ESI (Including e-mails, web pages, websites, computer discs, computer programs and computer files, Including, where applicable, compiled and uncompiled source code), whether or not in printout form. These terms shall also mean copies of Documents even though the originals are not in

Your possession, custody or control; every copy of a Document which contains handwritten or other notations or which otherwise does not duplicate the original of any other copy; all attachments to any Documents; and any other Documents, item and/or information discoverable under federal law and procedure, Including, without limitation, the items referenced in Federal Rule of Civil Procedure 34(a)(1).

13. "Electronically Stored Information" or "ESI" as used herein, means and refers to computer generated information or data of any kind, stored on computers, file servers, discs, tape or other devices or Media, or otherwise evidenced by recording on some storage Media, whether real virtual, or cloud based.

14. "Logic" means software code, software components, algorithms, or other means by which outcomes are decided by computation.

15. "Free Chips" means Social Casino virtual game chips that are provided to a Guest at no charge, at any point after the Initial Chip Allotment.

16. "Gambler" or "Gamblers" means a Guest who has made at least one Chip Purchase.

17. "Gift" means any product (*e.g.*, cookware, iPads, and chocolates) you mailed to a Guest's mailing address.

18. "Guest" or "Guests" means any Person, identifiable through a unique UserId, who downloaded a Social Casino and has any Time on Device.

19. "Guest Profile" means any statistics, data, or information associated with a UserID that You collect or maintain.

20. "Hit Frequency" means the frequency that a Social Casino's slot machine stops at a winning combination.

21. "Identify" or "Identifying," when used with respect to a natural Person, means to state the Person's full name, present or last known business affiliation and position, past and present home address and past position and business affiliation, if any, with any of the parties

herein.

22. "Identify" or "Identifying," when used with respect to a company or other business entity, means to state the company's legal name, the names under which it does business, its form (e.g., partnership, corporation, etc.), the address of its principal place of business, and to Identify its principal proprietors, officers and/or directors.

23. "Identify" or "Identifying," when used with respect to a Document, means to state the Date(s) prepared, drafted or generated, the author(s), intended and actual recipient(s), type of Document (e.g., "letter," "Terms of Service," "email," etc.), and to Identify its last known custodian or location.

24. "Identify" or "Identifying," when used in reference to an event, transaction, or occurrence, means to Describe the act in complete and reasonable detail; state the time, Date, location; Identify all Persons participating or present; and Identify all Documents Relating thereto.

25. "Including" means "including, but not limited to;" "Includes" means "includes, but is not limited to."

26. "Initial Chip Allotment" means the virtual chips provided to a Guest when they play a Social Casino game for the first time.

27. "Its Related Entities" means an entity's present and former divisions, present and former subsidiaries, present and former related companies, predecessors and successors, present and former officers, present and former directors, present and former agents, present and former attorneys, present and former employees, and all Persons acting, purporting to act, or that have purported to act on behalf of any of them.

28. "Life" means the time period over which virtual chips are consumed.

29. "Life Event Phrases" means following words and phrases: pass* away, death, suicide, debt, trauma, life event*, lonely, depress*, machine zone, middle age*, divorc*, elder*, gambl*, and addict*.

30. "Media" means or refers to an object or device, real or virtual, Including a disc, tape, computer or other device, on which data is or was stored.

31. "Metadata" means or refers to data about data, Including information embedded in a native file or other data that is not ordinarily viewable or printable from the application that generated, edited, or modified the native file, which describes the characteristics, origins, usage and validity of the electronic file as well as information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

32. "Person" means any natural person, corporation, partnership, association, organization, joint ventures, or other entity of any type or nature.

33. "Plaintiffs" means Plaintiffs Adrienne Benson and Mary Simonson.

34. "Platform" means the method by which a consumer interacted with a Social Casino, Including: (1) Apple iOS app, (2) Google Android app, (3) Facebook, and (4) other Platforms.

35. "Purchase Information" means the date, dollar amount, Platform, number of chips purchased, and UserId associated with a Chip Purchase.

36. "Relating To," Including its various forms such as "Relates To" or "Related To," means to consist of, concern, discuss, mention, regard, refer to, reflect or be in any way logically, factually or legally connected, directly or indirectly, with the matter described.

37. "Relevant Time Period" means April 9, 2014 to the present day.

38. "Research" means any studies, presentations, tests, memoranda, or reports.

39. "Results" means the loss or win of virtual chips and, in the event of a win, the amount of the win.

40. "Return to Player" means the percentage of all wagered coins a Social Casino slot machine pays back over time.

41. "Slot Machine Speed" means the virtual reel speed of a Social Casino's slot

machine games.

42. "Social Casino" means the social casinos identified at http://www.doubledowninteractive.com/privacy/ and entitled, respectively, (i) DoubleDown Casino, (ii) DoubleDown Fort Knox, (iii) DoubleDown Classic Slots, and (iv) Ellen's Road to Riches.

43. "Support" means to host, disseminate, or distribute for download or use.

44. "Time on Device" means amount of time spent playing a Social Casino's slot machine games.

45. "Trip" means any retreat, vacation, or excursion You provided to a Guest.

46. "UserId" means any unique identifier attached to a Person who has a Social Casino account and/or login.

47. "Versions" means all drafts, editions, iterations, forms, revisions, or variants of the Document or Communication described.

48. "VIP Host" means an employee who provides or has provided customer support to one or more Social Casino players (*e.g.*, Customer Support Ambassadors and Senior Player Ambassadors).

49. "VIP Loyalty Program" means a Social Casino's loyalty program (*e.g.*, Diamond Club).

50. "VIP Tiers" means the tiers or levels that are part of a VIP Loyalty Program.

51. "You" or "Your" means Defendant Double Down Interactive, LLC and its present and former divisions, present and former subsidiaries, present and former related companies, predecessors and successors, present and former officers, present and former directors, present and former agents, present and former attorneys, present and former employees, and all Persons acting, purporting to act, or that have purported to act on behalf of any of them.

## II. General Instructions

1. In the above Definitions, an asterisk (*) indicates a multicharacter wildcard.

2. All Documents must be produced in their native data format, along with all relevant Metadata. In the event You contend that Documents to be produced in response to any of the Requests are more readily available and easier to use, search, manage, and produce in a non-native form, You shall promptly notify Plaintiff's counsel of the specific Documents at issue and the Parties shall engage in a meet-and-confer. If no agreement as to the format of the production for the Documents specified can be reached at the meet-and-confer, the Parties shall submit their dispute to the Court.

3. Each page of the produced Document or Media upon which ESI in native format is produced shall have a legible, unique page identifier, or "Bates Number."

4. Where production of .tiff images rather than native format ESI is agreed upon by the Parties, each Document image file shall be named with the unique Bates Number of the first page of the Document, followed by the extension ".tiff." To the extent separate text files are provided, text files should be named the same as the first .tiff image of the Document.

5. When producing the requested Documents, You are to designate for which specific Request(s) the Document is responsive, identifying them by Bates Number. Under Federal Rule of Civil Procedure 34(b)(2)(E), all Documents are to be produced in the form, order, and manner in which they are maintained in Your files. Documents are to be produced in the folders, cartons, or containers in which they have been maintained, stored, clipped, stapled, or otherwise arranged in the same form and manner in which they were found and in such manner that the office and location from which they were produced is readily identifiable. Whenever a Document or group of Documents is/are taken out of a file folder, file drawer, file box, or notebook, before the same is/are produced, attach thereto a copy of the label on the file folder, file box, or notebook from which the Document or group of Documents was removed.

6. If any Document requested has been lost or destroyed since its creation, Identify

the nature of the Document (e.g., letter, email, etc.), the Date of the Document, the Persons who sent and received the original and any copy of the Document, a summary of the content of the Document and Describe when, where, how, and by whom said Document was lost or destroyed, and state the name of the Person(s) who last had custody thereof.

     7.     Unless otherwise specified, all Requests are limited to the scope of the Relevant Time Period.

### III. Requests for Production

**REQUEST FOR PRODUCTION NO. 1**

    All Documents that You used, referenced, or relied upon in drafting Your responses to Plaintiffs' First Set of Requests for Production of Documents.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 2**

    All of Your Communications with Plaintiffs.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3**

    All Documents Related To Plaintiffs' Guest Profiles, Including Documents sufficient to Identify Plaintiffs' UserIDs.

    **RESPONSE:**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**SPECIFIC INSTRUCTIONS FOR RFP NO. 4**

    Plaintiffs request a meet and confer at a date and time of your convenience, but within fourteen (14) days of your receipt of these RFPs, to discuss the database format in which documents responsive to RFP No. 4 are regularly kept and most reasonably produced.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**REQUEST FOR PRODUCTION NO. 4**

    Documents sufficient to Identify the Purchase Information associated with each Chip

Purchase made in the United States of America during the Relevant Time Period.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 5**

Documents sufficient to Identify Your total annual revenue from Chip Purchases in the United States for each calendar year during the Relevant Time Period, broken down by each Social Casino.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 6**

All Versions of each Social Casino's Terms of Use during the Relevant Time Period.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 7**

All Research Related To how Time on Device affects Your revenue.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 8**

All Research Related To how the number of Gamblers affects Your revenue.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 9**

All contracts Related To Social Casinos between You and third-party platform providers that Support each Social Casino, Including Facebook, Apple, and Google.

**REQUEST FOR PRODUCTION NO. 10**

All Communications Related To Social Casinos between You and third-party platform providers that Support Social Casinos, Including Facebook, Apple, and Google.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 11**

Documents sufficient to Identify all third-parties that helped create, sold to You, or licensed to You Social Casino Logic.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 12**

All written Research that You conducted, or that a third party conducted for You, Related To Social Casinos that includes any Addiction Phrases.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 13**

Documents sufficient to Identify all Logic used to determine Chip Package Pricing, Slot Machine Speed, or Hit Frequency.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 14**

All Communications and all Documents that include any Life Event Phrases and were sent, received, or authored by the following custodians: Joe Sigrist, Meg Murphree, Alex Entrikin, Robert Adams, Jude Cooper, Lauren Detjen, Kyle Labarry, Julie Frederick, Shelby Nakamoto, and Tara Tegtmeyer.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 15**

Documents sufficient to Identify all of Your policies Related To when a Guest requests to have their Social Casino account and/or credit card information Disabled.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 16**

Documents sufficient to Identify all of Your policies Related To when a Guest uses an Addiction Phrase or Life Event Phrase in a Communication with You.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 17**

Documents sufficient to Identify the criteria for all Code-Based instances when Gamblers receive Free Chips, Including the number of Free Chips received and any relationship between

that figure and the Gambler's recent Chip Purchases, VIP Tier, and/or recent in-game performance.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 18**

Documents sufficient to Identify the ratio, in each of calendar years 2015, 2016, 2017, 2018, and 2019 of (a) the number of Free Chips provided by You to (b) the number of virtual chips acquired through Chip Purchases, broken down by each VIP Tier.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 19**

Documents sufficient to Identify the average Life of the amount of chips equal to the average Initial Chip Allotment during each of the following calendar years: 2015; 2016; 2017; 2018; and 2019.

**REQUEST FOR PRODUCTION NO. 20**

All Research conducted by You or third parties Related To Initial Chip Allotment.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 21**

Documents sufficient to Identify the percentage of Your Guests who have ever made a Chip Purchase.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 22**

All handbooks, presentations, training materials, policies, and other employment-related materials You have ever provided to VIP Hosts.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 23**

Documents sufficient to Identify the Compensation Structure for VIP Hosts.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 24**

Documents sufficient to Identify all employees that VIP Hosts directly reported to.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 25**

Documents sufficient to Identify the average amount of money Gamblers have spent on Chip Purchases when they reach each VIP Tier.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 26**

All Communications sent to or from a VIP Host that contain any Addiction Phrases.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 27**

All Logic Related To Chip Package Offers, Including all Logic that explains when Chip Package Offers are made and all Logic that explains the dollar value associated with Chip Package Offers.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 28**

All Logic Related to whether the Results of Your slot machine games depend in any way on the Guest's Chip Purchases, Time on Device, or any other non-random factors.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 29**

All Communications between or among You and the Washington State Gambling Commission and Its Related Entities Relating To Social Casinos.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 30**

Documents sufficient to Identify all Gifts and Trips.

**RESPONSE:**

|    |                                |                                                                                                                   |
|----|--------------------------------|-------------------------------------------------------------------------------------------------------------------|
| 1  |                                |                                                                                                                   |
| 2  |                        *       |                *                         *                                                                        |
|    |                                |                                                                                                                   |
|    |                                | **ADRIENNE BENSON** and **MARY SIMONSON**, individually and on behalf of all others similarly situated,           |
| 7  | Dated: May 14, 2020            | By: /s/ Brandt Silver-Korn                                                                                        |
|    |                                | One of Plaintiffs' Attorneys                                                                                      |
|    |                                | Rafey S. Balabanian (SBN 315962) rbalabanian@edelson.com Todd Logan (SBN 305912) tlogan@edelson.com Brandt Silver-Korn (SBN 323530) bsilverkorn@edelson.com EDELSON PC 123 Townsend Street, Suite 100 San Francisco, California 94107 Tel: 415.212.9300 Fax: 415.373.9495 |