HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ADRIENNE BENSON and MARY
SIMONSON, individually and on behalf
of all others similarly situated,,

                    Plaintiffs,

        v.

DOUBLE DOWN INTERACTIVE,
LLC, et al.,

                    Defendants.

CASE NO. 2:18-cv-00525-RBL

ORDER ON DEFENDANT'S
MOTIONS FOR PROTECTIVE
ORDER RE. THIRD-PARTY
SUBPOENAS

**INTRODUCTION**

THIS MATTER is before the Court on Defendant Double Down Interactive, LLC's

Motions for Protective Order re. Plaintiffs' Subpoenas to Apple, Inc.; Facebook, Inc.; and

Google LLC (collectively "the Third-Party Platforms") [Dkt. ## 92, 109] and Plaintiffs Adrienne

Benson and Mary Simonson's Motion to Compel Discovery [Dkt. # 118]. Both the first set of

subpoenas (which Double Down wants to quash) and the discovery request (which Plaintiffs

want to compel a response to) seek information about virtual chip transactions for customers of

Double Down's casino-gaming apps, which are carried by the Third Parties Platforms. The

second set of subpoenas seek a greater variety of information, such as research and

communications by the Third-Party Platforms. The Court will rule on each set of discovery in turn.

## DISCUSSION

Under Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." However, Fed. R. Civ. P. 26(c)(1) permits the Court to, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." "A party can move for a protective order in regard to a subpoena issued to a non-party if it believes its own interests are jeopardized by discovery sought from a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information." *In re REMEC, Inc. Sec. Litig.*, No. CIV 04CV1948 JLS AJB, 2008 WL 2282647, at *1 (S.D. Cal. May 30, 2008). "The party seeking a protective order has the burden to demonstrate good cause, and must make 'a particular and specific demonstration of fact as distinguished from stereotypical and conclusory statements' supporting the need for a protective order." *Silcox v. AN/PF Acquisitions Corp.*, No. 17-cv-1131-RSM, 2018 WL 1532779, at *3 (W.D. Wash. Mar. 29, 2018) (citation omitted).

When assessing pre-certification discovery disputes, a court may require that the plaintiff make "a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of class allegations." *Kingsberry v. Chicago Title Ins. Co.*, 258 F.R.D. 668, 669 (W.D. Wash. 2009) (quoting *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir.1985)). However, courts ultimately hold "broad discretion" to decide how class discovery should proceed before certification. *Vinole v. Countrywide Home Loans, Inc.*,

1   571 F.3d 935, 942 (9th Cir. 2009). Here and elsewhere, this Court has limited pre-certification

2   discovery to information relevant to certifying the class action.[1]

3   **1.      First Set of Subpoenas and Plaintiffs' Motion to Compel**

4          Plaintiffs' first set of subpoenas to the Third-Party Companies are materially

5   indistinguishable and seek the following:

6          **REQUEST FOR PRODUCTION NO. 1**
           Documents sufficient to identify all Virtual Chip Transactions between April 9,
7          2014 and the present in each of the following casino apps offered in the [nonparty
           app store]: DoubleDown Casino, DoubleDown Fort Knox Casino, DoubleDown
8          Classic Slots, Ellen's Road to Riches Slots.

9          **REQUEST FOR PRODUCTION NO. 2**
           Documents sufficient to identify the Purchase Information for all Virtual Chip
10         Transactions responsive to Request for Production No. 1.

11   Dkt. # 93, Exs. 1-3, at 6. "Purchase Information" is defined to mean "the Date, time, dollar

12   amount, number of Virtual Chips purchased, and User ID associated with a Virtual Chip

13   Transaction." *Id.* at 4. Plaintiffs have also propounded discovery on Double Down that includes a

14   request for: "Documents sufficient to Identify the Purchase Information associated with each

15   Chip Purchase made in the United States of America during the Relevant Time Period."

16   Dkt. # 119, Ex. 1, at 9-10.

17         The Court encountered similar subpoenas in another case regarding casino-gaming apps:

18   *Wilson v. PTT, LLC*, No. 18-CV-05275-RBL, 2020 WL 1674146, at *1 (W.D. Wash. Apr. 6,

19   2020). There, the defendant challenged subpoenas to Google and Facebook on the grounds that

20   they sought transaction information outside the statute of limitations regarding non-Washington

21

22   ───────────────
     [1] The parties dispute whether discovery at this stage must be not only relevant but also
23   "necessary" to obtaining class certification. *See S. Peninsula Hosp., Inc. v. Xerox State
     Healthcare, LLC*, 2019 WL 1873297, at *8 (D. Alaska Feb. 5, 2019). This Court has not
24   previously applied this higher standard and declines to adopt it here.

1   users about an app that the plaintiff never used. The Court agreed with the defendant that the

2   subpoenas had to be temporally and geographically limited. *Id*. at 2. However, the Court allowed

3   discovery into the app the plaintiff had not used because the complaint identified the app and

4   explained how it was similar to the one the plaintiff *did* use. *Id*. at 1-2.

5          Double Down raises some familiar arguments here. First, it argues that transaction data is

6   not relevant or necessary for success under any of the requirements for class certification.

7   Double Down also points out that Plaintiffs' claims are predicated on Washington law and they

8   have not shown why a nationwide class is feasible. In addition, Double Down asserts that the

9   subpoenas seek data on apps that are not even referenced in the Amended Complaint. If the

10  Court refuses to quash the subpoenas, Double Down requests that it limit their scope to

11  transactions by Washington customers during the one-year period before this case was filed.

12         In opposition, Plaintiffs point that here, unlike *PTT*, the proposed class is national. They

13  also argue that the data they seek is relevant to predominance, typicality, and whether a

14  nationwide injunction would be appropriate. And although the DoubleDown Fort Knox Casino,

15  DoubleDown Classic Slots, and Ellen's Road to Riches Slots apps are not mentioned in the

16  Amended Complaint, Plaintiffs represent that their investigations have shown that these games

17  are mere knockoffs of DoubleDown Casino.

18         As in *PTT*, the Court will not limit Benson's inquiry into transaction data on Washington

19  users of DoubleDown Casino during the relevant time period. While it is hard to predict exactly

20  what will prove divisive at certification, the information sought by Plaintiffs is fundamental to

21  their claims and may reveal trends relevant to predominance, typicality, and superiority under

22  Rule 23(b)(3).

23

24

ORDER ON DEFENDANT'S MOTIONS FOR
PROTECTIVE ORDER RE. THIRD-PARTY
SUBPOENAS - 4

1    However, the Court is unpersuaded that nationwide discovery will yield relevant data in

2    proportion to the added burden. Although Plaintiffs do propose a nationwide class, their only

3    explanation for this is that "consumers nationwide possess Washington law claims against

4    Washington-based companies, like Double Down, who hold themselves out as exclusively

5    subject to Washington law." Opposition, Dkt. # 101, at 8. But, as Double Down demonstrates, it

6    is far from clear that Washington law will apply to transactions by out-of-state users. That

7    question requires complex choice of law analysis and will likely determine whether a nationwide

8    class is certifiable. Plaintiffs fail to explain how transaction data will shed any light on this issue.

9    Because Washington users provide a sufficiently large sample to flesh out the other issues for

10    certification purposes, the Court will limit Plaintiffs' discovery to those users.

11    The Court will also not allow discovery into apps other than DoubleDown Casino that are

12    not mentioned in the Amended Complaint. "In putative class actions like this one, . . . plaintiffs

13    can demonstrate standing at the pleading stage if they plead sufficiently detailed facts that the

14    non-purchased products are 'substantially similar' to the purchased products for which they have

15    standing." *PTT*, 2020 WL 1674146, at *1 (quoting *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp.

16    2d 1134, 1140–41 (N.D. Cal. 2013)); *see also Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp.

17    2d 861, 870 (N.D. Cal. 2012). Plaintiffs make no allegations about DoubleDown Fort Knox

18    Casino, DoubleDown Classic Slots, or Ellen's Road to Riches Slots. They therefore lack

19    standing to pursue discovery on those apps without further amendments to their complaint.

20    **2.     Second Set of Subpoenas**

21    Plaintiffs' second set of subpoenas seek a different and broader spectrum of information.

22    The requests include:

23    • **No. 1**: All contracts between You and Double Down Interactive.

24

ORDER ON DEFENDANT'S MOTIONS FOR
PROTECTIVE ORDER RE. THIRD-PARTY
SUBPOENAS - 5

- **No. 2**: All Communications between You and Double Down Interactive Related To DoubleDown Casino, DoubleDown Classic Slots, DoubleDown Fort Knox Casino, or Ellen's Road to Riches Slots.

- **No. 3**: Documents sufficient to Identify Your revenue from DoubleDown Casino, DoubleDown Classic Slots, DoubleDown Fort Knox Casino, and Ellen's Road to Riches Slots during the Relevant Time Period, broken down by calendar year.

- **No. 4**: Documents sufficient to Identify Your total revenue from the Social Casino Genre during the Relevant Time Period.

- **No. 5**: All Communications that contain both (i) an Addiction Phrase and (ii) a Double Down Phrase that were authored, sent, or received by any of the following custodians: Dan Iverson, Matt Fischer, Steve Cho, Mike Schmid, Carson Oliver, Spiro Kouretas, Michael McMillion, Ryan Olson, Sean Cameron, and Seema Vora.

- **No. 6**: All Communications that contain both (i) a Life Event Phrase, and (ii) a Double Down Phrase that were authored, sent, or received by any of the following custodians: Dan Iverson, Matt Fischer, Steve Cho, Mike Schmid, Carson Oliver, Spiro Kouretas, Michael McMillion, Ryan Olson, Sean Cameron, and Seema Vora.

- **No. 7**: All Documents and Communications sent, authored, or received by Matt Fischer that contain any of the following terms or phrases: "DoubleDown", "Double Down", "Sigrist", "whale", "Kater", "gambling".

- **No. 8**: All Communications between You and any of the following individuals: Joe Sigrist, John Clelland, Jim Veevaert, and Haenam Kim.

- **No. 9**: All Contracts with lobbying firms in the United States of America Related To the Social Casino Genre.

- **No. 10**: All Documents and Communications that reference the RMLGA or the Kater Litigation.

- **No. 11**: Documents sufficient to Identify all persons who service or have serviced Your business partnership with Double Down Interactive.

- **No. 12**: All Communications sent to or received from one or more representatives of Facebook, Inc. or Google LLC Related To (i) the Kater Litigation, (2) Double Down Interactive, or (3) the Social Casino Genre.

- **No. 13**: All Documents attached to or otherwise Related To any communications responsive to RFP No. 12.

Dkt. # 110, Ex. 2, at 6-8.

1    Double Down argues that these requests are duplicative with discovery sent to Double

2    Down, irrelevant to class certification, and nothing more than a fishing expedition for new claims

3    against new parties. Plaintiffs respond that, in fact, this is partly correct. According to Plaintiffs,

4    when Double Down's general manager testified that the Third-Party Platforms are "business

5    partners" in the operation of Double Down's app-based games, he essentially admitted that they

6    are joint tortfeasors as well. Plaintiffs base this theory on RCW 9.46.0269(1), which defines

7    "professional gambling," in part, as "knowingly engag[ing] in conduct which materially aids any

8    form of gambling activity" or "knowingly . . . participat[ing] in the proceeds of gambling

9    activity."

10    Aside from investigating the Third-Party Platforms' liability, Plaintiffs argue that their

11    second set of subpoenas will show that Double Down "'distributed, marketed, and promoted' the

12    same illegal internet casino, via the Platforms, in a common manner to each member of the

13    Class; commonly targeted the Class, via the Platforms, with 'paid marketing' and 'dynamic

14    media' based on data analytics tools estimating 'the expected value' of each Class member; and

15    commonly sought to keep members of the Class spending at Double Down's illegal casinos

16    through 'player retention marketing' campaigns executed via the Platforms." Opposition,

17    Dkt. # 113, at 4-5. This, for some reason, will prove relevant to class certification.

18    While Plaintiffs frame these subpoenas as a due-diligence investigation of potential

19    claims against Apple, Facebook, and Google, this is not the purpose of discovery under

20    Rule 26(b)(1). Plaintiffs cannot turn this case into a staging ground for attempts to catch, in their

21    words, ever bigger fish with the net they've discovered in Washington's gambling statutes. *See*

22    *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990) ("The

23    discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable

24

ORDER ON DEFENDANT'S MOTIONS FOR
PROTECTIVE ORDER RE. THIRD-PARTY
SUBPOENAS - 7

1    without discovery, not to find out if it has any basis for a claim."). If Plaintiffs want to sue the

2    Third-Party Platforms, they are free to do so. Until then, discovery in this case shall be used to

3    advance *this case* as pled.

4         As for Plaintiffs' contention that the second set of subpoenaed information is relevant to

5    class certification, the Court is unconvinced. Plaintiffs insist that their discovery "indisputably"

6    seeks information so relevant to certification that it will be "Exhibit 1" to any future motion.

7    Opposition, Dkt. # 113, at 4. But Plaintiffs are less forthcoming when explaining *how* their

8    subpoenas will bridge the gap between their claims and Rule 23's requirements. How will this

9    information show that all the elements of Plaintiffs' claims are amenable to common questions?

10   How will this information prove that Benson and Simonson's casino app experiences were

11   typical of the class? Plaintiffs are silent on these issues.

12        Instead, Plaintiffs propose that the second set of subpoenas will expose how Double

13   Down targeted and retained customers through common methods. But Plaintiffs do not need to

14   prove some elaborate ploy to exploit addicts through data analytics to succeed in their claims. As

15   the recent motion for class certification in *Wilson v. PTT, LLC* demonstrates, success under

16   RCW 4.24.070 and the CPA turns mostly on common questions about the "operation of [the

17   defendant's] virtual casinos." No. 3:18-cv-05275-RBL, Dkt. # 142, at 17. None of the requests in

18   this second set of subpoenas pertain to this subject, and most hardly even relate to Double Down.

19        The requested communications and contracts with Double Down are more likely relevant

20   to certification, but "[w]hen an opposing party and non-party both possess documents, the

21   documents should be sought from the party to the case." *Arista Records LLC v. Lime Grp. LLC*,

22   No. 2:10-CV-02074-MJP, 2011 WL 679490, at *2 (W.D. Wash. Feb. 9, 2011). Under these

23

24

1  circumstances, the Court agrees with Double Down that this principle should limit Plaintiffs'

2  subpoenas to the Third-Party Platforms.

3  <center>**CONCLUSION**</center>

4        Double Down's first Motion for Protective Order and Plaintiffs' Motion to Compel are

5  GRANTED in part and DENIED in part. Plaintiffs can subpoena and/or request transaction data

6  on Washington-based users of the DoubleDown Casino app only. The parties should work out an

7  agreement that avoids duplicative production by both Double Down and the Third-Party

8  Platforms. Double Down's second Motion for Protective Order is GRANTED and Plaintiffs'

9  second set of subpoenas to the Third-Party Platforms is QUASHED.

10        IT IS SO ORDERED.

11

12        Dated this 7th day of August, 2020.

13

14                                         Ronald B. Leighton

15                                         Ronald B. Leighton
                                           United States District Judge

16

17

18

19

20

21

22

23

24