HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ADRIENNE BENSON and MARY SIMONSON, individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiff,<br>　　v.<br><br>DOUBLE DOWN INTERACTIVE, LLC, et al.,<br><br>　　　　　　　Defendant. | CASE NO. 2:18-cv-00525-RBL<br><br>ORDER ON DENFENDANT'S MOTION TO CERTIFY QUESTIONS TO WASHINGTON SUPREME COURT |

　　　　THIS MATTER is before the Court on Defendant Double Down Interactive, LLC's Motion to Certify Questions to the Washington Supreme Court. Dkt. # 103. This is the third such motion that has been filed by a defendant in the many cases before this Court challenging casino-gaming apps; the wild card this time is the fact that Double Down, unlike those other defendants, never filed a motion to dismiss Plaintiffs' claims on the merits. Consequently, the "presumption against certifying a question to a state supreme court after the federal district court has issued a decision" does not apply here. *Thompson v. Paul*, 547 F.3d 1055, 1065 (9th Cir. 2008). Double Down therefore asks that this Court let the Washington Supreme Court decide whether casino-gaming apps are gambling despite the impossibility of cash prizes.

ORDER ON DENFENDANT'S MOTION TO
CERTIFY QUESTIONS TO WASHINGTON
SUPREME COURT - 1

Although federal courts may decide state law issues of first impression, they also have discretion to certify such issues to the state's highest court. *Murray v. BEJ Minerals, LLC*, 924 F.3d 1070, 1071 (9th Cir. 2019). Washington law allows certification of question to the Washington Supreme Court when "the local law has not been clearly determined." RCW § 2.60.020; *accord*, RAP 16.16(a). But the Ninth Circuit has made clear that the certification process is not to be "lightly" invoked. *Murray*, 924 F.3d at 1072 (quoting *Kremen v. Cohen*, 325 F.3d 1035, 1037 (9th Cir. 2003)). It requires "careful consideration" of the following factors: "(1) whether the question presents 'important public policy ramifications' yet unresolved by the state court; (2) whether the issue is new, substantial, and of broad application; (3) the state court's caseload; and (4) 'the spirit of comity and federalism.'" *Id.* at 1072 (quoting *Kremen*, 325 F.3d at 1037-38).

Here, Double Down wishes to certify the following questions to the Washington Supreme Court: "(1) Whether the sale of virtual items for use solely within video games that do not award or allow any real money or prize constitutes unlawful gambling under Washington law? (2) Whether the sale of a virtual item for use solely within video games that do not award or allow any real money or prize constitutes unlawful gambling under Washington law, where the user did not run so low on virtual items that he or she could not have continued to play? (3) Whether the in-app purchase of virtual chips on such websites is a 'bona fide business transaction,' and therefore excepted from Washington's definition of gambling? (4) Whether offering a casino-themed video game is the type of 'illegal' activity RCW 4.24.070 prohibits, when the game offers no real money prize? (5) Whether a person who purchases virtual chips on such websites can bring a civil claim to recover amounts spent under the [RCW 4.24.070] or CPA? (6) Whether, when the Commission has advised that such websites do not engage in

gambling and the Commission has taken no criminal or civil action to enforce the gambling statutes against such websites, civil actions by plaintiffs to recover under [RCW 4.24.070] and the CPA are precluded by the rule of lenity?" Motion, Dkt. # 103, at 4.

Although the presumption against certification does not apply in this case, the Court still declines to certify these questions to the Washington Supreme Court. Double Down has doubled-up on the number of questions it wants to certify, but the core issue is straightforward: whether a casino-gaming app that does not award money prizes constitutes illegal gambling under Washington law. The Ninth Circuit answered that question in *Kater v. Churchill Downs Inc.*, 886 F.3d 784 (9th Cir. 2018). The court reasoned that virtual chips that extend gameplay are a "thing of value" under RCW 9.46.0285, making Big Fish Casino "gambling" under RCW 9.46.0237 and allowing the plaintiff to recover money lost purchasing chips under RCW 4.24.070. *Id*. at 787-89.

While no court applying Washington law had addressed casino-gaming apps before *Kater*, Double Down has not shown that these facts present significantly "new" or "substantial" questions of statutory interpretation. The Ninth Circuit's decision was a straightforward application of RCW 9.46.0285's language, which defines a "thing of value" as a "form of credit . . . involving extension of . . . entertainment or a privilege of playing at a game or scheme without charge." *Id*. at 787. To extend "the privilege of playing," a user must either win more virtual chips or purchase them, making the chips a "thing of value." *Id*. The Ninth Circuit apparently did not see this issue as "substantial" enough to certify to the Washington Supreme Court and Double Down does not suggest a persuasive alternative reading of the statute. *See Murray*, 924 F.3d at 1074 (certifying question *sua sponte*); *J&J Celcom v. AT&T Wireless Servs., Inc.*, 481 F.3d 1138, 1141 n.2 (9th Cir. 2007) (same).

Nor was the Ninth Circuit's interpretation of RCW 9.46.0285 truly "new." The Washington Court of Appeals applied the same reading in *Bullseye Distrib. LLC v. State Gambling Comm'n*, 127 Wash. App. 231, 241 (2005), which addressed whether a simulated slot machine constituted a "gambling device" under RCW 9.46.0241. *Id*. at 240. Inserting a dollar or presenting a promotional voucher would provide a player with a baseball card and an allotment of "play points," which could be used to spin the slot machine and, potentially, win cash if the player hit the "prize target" number of points. *Id*. at 235-36. The court concluded that the play points were a "thing of value," not because they might be redeemed for a prize, but because they "extend the privilege of playing the game without charge." *Id*. at 242. Far from being dicta, this insight was key to *Bullseye*'s holding because the play points had no other value unless a player happened to hit the prize target. Consequently, as the Ninth Circuit observed, *Bullseye* squarely held that a "thing of value" need not be redeemable for money or merchandise. *See Kater*, 886 F.3d at 787.

The Court is also unpersuaded by Double Down's familiar arguments that the Ninth Circuit ignored legislative purpose. Double Down points out that Washington courts interpret individual provisions in light of "all that the Legislature has said in the statute and related statutes." *State, Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wash. 2d 1, 11 (2002). But the legislative purpose in RCW 9.46.010—"to keep the criminal element out of gambling and to promote the social welfare of the people by limiting the nature and scope of gambling activities"—is not at odds with the holding in *Kater*. And while the legislature sought to preserve "social pastimes," this only applies when they are "more for amusement rather than for profit, do not maliciously affect the public, and do not breach the peace." RCW 9.46.010. Double Down

certainly profits off its apps, which Plaintiffs convincingly argue are malicious to the public. In short, nothing in RCW 9.46.010's statement of purpose throws *Kater*'s reasoning into doubt.

Double Down's arguments about conflicts with the Gambling Commission are even less compelling. It is well established at this point that the pamphlet and other Commission materials Double Down relies on have no legal effect. *See Kater*, 886 F.3d at 788; Gantz Dec., Dkt. # 107, Exs. 1-3. But even if they did, "courts have the ultimate authority to interpret statutes and will not defer to an agency's interpretation that conflicts with the statute." *Bullseye*, 127 Wash. App. at 237 (quoting *Waste Mgmt. v. Wash. Util. & Transp.*, 123 Wash.2d 621, 627-28 (1994)). Since *Kater* was decided, the Commission took down its guidance approving of casino-gaming apps and has declined to take a position on the Ninth Circuit's ruling. Gantz Dec., Dkt. # 107, at 1; *Id*. at Ex. 4. The mere fact that the Commission has not prosecuted companies like Double Down does not factor into the judicial task of statutory interpretation.

Double Down's arguments about the public policy impacts at stake are more compelling but ultimately unconvincing. While these issues have significant ramifications for companies that produce casino-gaming apps, it is far less clear that other video gaming companies could be affected. Washington's definition of "gambling" is limited to "staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence, upon an agreement or understanding that the person or someone else will receive something of value in the event of a certain outcome." RCW 9.46.0237. "Contest of chance" is further defined as "any contest, game, gaming scheme, or gaming device in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein." RCW 9.46.0225.

There is a stark and obvious difference between Double Down's games, which are 100% based on chance, and other app-based games that involve "micro-transactions" to continue play. No Washington court has interpreted the term "contest of chance" to encompass non-traditional gambling games without some form of betting. *See Rousso v. State*, 149 Wash. App. 344, 360 (2009) (holding that poker qualifies as a "contest of chance"). Of course, it is possible that future lawsuits will allege that more skill-oriented games also qualify as illegal gambling under Washington law. However, those cases would turn on a novel interpretation of RCW 9.46.0225, not RCW 9.46.0285's definition of a "thing of value."

Finally, Double Down's alternate issues Double Down seeks to certify are no more compelling. Double Down's hypothetical about a player who never depleted their chips before buying more may never become relevant in this case and therefore does not warrant certification. The "bona fide business transaction" exception also does not pose a substantial or complex legal issue requiring input from the Supreme Court. *See Wilson v. PTT, LLC*, 351 F. Supp. 3d 1325, 1339 (W.D. Wash. 2018). And while it is true that the Ninth Circuit did not apply the rule of lenity in *Kater*, Double Down does not convincingly show that RCW 9.46.0285's definition of a "thing of value" is open to multiple reasonable interpretations. Finally, Double Down does not explain how or why gambling activities would cease to be "illegal" under RCW 4.24.070 simply because no money prizes are awarded and the Gambling Commission has not prosecuted violators. To be "illegal," an activity merely needs to violate the provisions of 9.46 *et. seq*. *See* RCW 9.46.210 (stating that "all violations of this chapter" should be investigated and prosecuted).

For these reasons, the Court **DENIES** Double Down's Motion to Certify Questions to the Washington Supreme Court.

IT IS SO ORDERED.

Dated this 11th day of August, 2020.

Ronald B. Leighton
United States District Judge