UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ADRIENNE BENSON, *et al.*,

Plaintiffs,

v.

DOUBLE DOWN INTERACTIVE, LLC,

Defendants.

Cause No. C18-0525RSL

ORDER DENYING MOTION TO
STRIKE NATIONWIDE CLASS
ALLEGATIONS

This matter comes before the Court on "Defendants' Motion to Strike Nationwide Class Allegations." Dkt. # 128. Plaintiffs, Washington residents, allege that defendant Double Down Interactive, LLC, a Washington company, owns and operates several virtual casinos that constitute illegal gambling enterprises under Washington law. They assert claims under Washington's Recovery of Money Lost at Gambling Act ("RMLGA"), Washington's Consumer Protection Act ("CPA"), and theories of unjust enrichment and seek to recover their gambling losses. The named plaintiffs hope to represent a class of "[a]ll persons in the United States who purchased and lost chips by wagering at the Double Down Casino" and to recover those losses on behalf of the class  Dkt. # 40 at ¶ 37.

Defendants filed this motion to reform the proposed class definition and limit the class to only residents of Washington. They argue that Washington law conflicts with the gambling and

ORDER DENYING MOTION TO STRIKE
NATIONWIDE CLASS ALLEGATIONS - 1

consumer protection statutes of other states, that imposing Washington law on conduct occurring

in other states violates the dormant Commerce Clause, the Due Process Clause, and the Full

Faith and Credit Clause, and that Washington's choice of law rules require the application of the

law of each putative class member's home state. Plaintiffs concede that there are material

differences between Washington's gambling and consumer protection statutes and those of other

states, but argue that when the connection between the claims asserted and Washington are

accurately characterized, application of Washington law is proper.

Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] the

Court finds as follows:

## BACKGROUND

Defendant Double Down Interactive, Inc., is a Washington corporation headquartered in

Seattle.[2] It develops, publishes, and maintains digital games for mobile and web-based

platforms. The games are available worldwide. Defendants' "Double Down Casino" allows

consumers to play a variety of on-line casino games using virtual chips. Double Down provides

to new players an initial gift of one million free chips with which to play in Double Down

Casino. When a player has burned through the initial allotment of chips, he or she can purchase

additional virtual chips through the Casino's electronic store. Plaintiffs, two Washington

residents, purchased and lost virtual chips in Double Down Casino. Plaintiffs allege that Double

Down's games constitute illegal gambling under the RMLGA, that the violation is an unfair or

---

[1] This matter can be decided on the papers submitted. Defendants' request for oral argument is DENIED.

[2] Defendant International Game Technology ("IGT") acquired Double Down in 2012. Defendants have not raised a choice-of-law argument based on IGT's state of residence.

ORDER DENYING MOTION TO STRIKE
NATIONWIDE CLASS ALLEGATIONS - 2

deceptive act or practice for purposes of the CPA, and that defendants were unjustly enriched.

### DISCUSSION

"Subject to constitutional limitations and the forum state's choice-of-law rules, a court adjudicating a multistate class action is free to apply the substantive law of a single state to the entire class." *In re Hyundai & Kia Fuel Econ. Litig*., 926 F3d 539, 561 (9th Cir. 2019). Plaintiffs ask the Court to do just that. Double Down argues, however, that both the Constitution and Washington's choice-of-law rules forbid application of Washington law to the claims of non-resident class members in the circumstances presented here.

### A. CONSTITUTIONAL BARRIERS TO APPLICATION OF WASHINGTON LAW

#### 1. Dormant Commerce Clause

The Commerce Clause of the United States Constitution grants to Congress the authority "[t]o regulate Commerce with foreign Nations, and among the several States." U.S. Const. art. I, § 8, cl. 3. Courts have found that, implicit in this "affirmative grant of regulatory power to Congress" is a " 'negative aspect,' referred to as the dormant Commerce Clause," that imposes a "limitation upon the power of the States." *Conservation Force, Inc. v. Manning*, 301 F.3d 985, 991 (9th Cir. 2002); *Great Atl. & Pac. Tea Co. v. Cottrell*, 424 U.S. 366, 371 (1976) (internal quotation marks omitted). Pursuant to the dormant Commerce Clause, states may neither discriminate against interstate commerce nor impose "regulations that unduly burden interstate commerce." *Quill Corp. v. N.D.*, 504 U.S. 298, 312 (1992) (citation omitted).

Defendants argue that application of Washington's gambling and consumer protection statutes to regulate the conduct at issue here would effectively control and unduly burden extra-territorial commerce in violation of the dormant Commerce Clause. This argument presupposes

ORDER DENYING MOTION TO STRIKE
NATIONWIDE CLASS ALLEGATIONS - 3

that the conduct being regulated did not occur within the state of Washington. To the contrary, Double Down's development, publication, and maintenance of its allegedly illegal casino games occurred at its headquarters in Washington, and both the RMGLA and the CPA are aimed, in part, at regulating the conduct of Washington businesses within the state. RCW 9.46.010 ("It is hereby declared to be the policy of the legislature . . .  to restrain all persons from seeking profit from professional gambling activities in this state . . ."); *Thornell v. Seattle Serv. Bureau, Inc.*, 184 Wn.2d 793, 803 (2015) (noting CPA's "twin purposes of protecting the public and fostering fair and honest competition"). In addition, when a consumer purchases chips from Double Down Casino, he or she is engaged in a transaction with a Washington resident operating in Washington:[3] a state may regulate commercial relationships "in which at least one party is located in [the forum]." *Gravquick A/S v. Trimble Navigation Int'l, Ltd.*, 323 F.3d 1219, 1224 (9th Cir. 2003). Even if the RMLGA and the CPA can have significant extraterritorial effects by giving a non-resident a cause of action, "it passes Commerce Clause muster when, as here, those effects result from the regulation of in-state conduct." *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1145 (9th Cir. 2015) (citing *Rocky Mtn. Farmers Union v. Corey*, 730 F.3d 1070, 1101–04 (9th Cir. 2013), and *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 948-51 (9th Cir. 2013)).

"[O]nly a small number of ... cases invalidating laws under the dormant Commerce Clause have involved laws that were genuinely nondiscriminatory..., and they generally address state "regulation of activities that are inherently national or require a uniform system of

---

[3] The cases on which defendants rely, *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320 (9th Cir. 2015), and *Rahmani v. Resorts Int'l Hotel, Inc.*, 20 F. Supp.2d 932 (E.D. Va. 1998), are distinguishable on this ground.

regulation." *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 and 1150 (9th Cir. 2012)(quotation marks omitted). The conduct at issue here, web- or app-based game play and the sale or purchase of virtual chips, is neither inherently national nor has it been subject to a uniform system of regulation. Because the RMLGA and the CPA neither discriminate in favor of in-state commerce nor impose a significant burden on interstate commerce, they are not prohibited by the dormant Commerce Clause. *Chinatown Neighborhood Ass'n*, 794 F.3d at 1146.

### 2. Due Process Clause

Defendants argue that application of Washington law to class members having no connection to Washington other than this lawsuit violates the Due Process Clause of the Fourteenth Amendment. Defendants insist that Washington courts may exercise jurisdiction over non-resident class members only if they each possess the "minimum contacts" with Washington discussed in cases involving personal jurisdiction over out-of-state defendants. The Supreme Court has held, however, that defendants' "premise is in error." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985). After discussing the material differences between being haled into court as a defendant versus as a plaintiff and the procedural protections afforded absent class members under the civil rules of procedure, the Supreme Court held:

> Because States place fewer burdens upon absent class plaintiffs than they do upon
> absent defendants in nonclass suits, the Due Process Clause need not and does not
> afford the former as much protection from state-court jurisdiction as it does the
> latter. The Fourteenth Amendment does protect "persons," not "defendants,"
> however, so absent plaintiffs as well as absent defendants are entitled to some
> protection from the jurisdiction of a forum State which seeks to adjudicate their
> claims. In this case we hold that a forum State may exercise jurisdiction over the
> claim of an absent class-action plaintiff, even though that plaintiff may not possess

ORDER DENYING MOTION TO STRIKE
NATIONWIDE CLASS ALLEGATIONS - 5

the minimum contacts with the forum which would support personal jurisdiction over a defendant.

*Id*. at 811. The Court is confident that adequate notice to absent class members, along with an opportunity to be heard, to participate, and to opt out, can be provided so as to satisfy the dictates of the Due Process Clause.

### 3. Full Faith and Credit Clause

Defendants assert that "[a]pplying Washington substantive law on a nationwide basis is also constitutionally limited by . . . the Full Faith and Credit Clause of Article IV, § 1. A judgment issued in the absence of personal jurisdiction over a party is not entitled to full faith and credit elsewhere. *Id.* at 805. As discussed above, however, the Court can constitutionally exercise jurisdiction over absent class members, mooting defendants' *res judicata* concerns.

### B. WASHINGTON'S CHOICE-OF-LAW ANALYSIS

Plaintiffs assert that Washington law applies to this case, regardless where the consumer who purchased virtual chips in the Double Down Casino resides. Defendants argue that the law of each consumer's home state has the more significant relationship to the dispute. As a preliminary matter, when choice of law is disputed, "there must be an actual conflict between the laws or interests of Washington and the laws or interests of another state before Washington courts will engage in a conflict of laws analysis." *Seizer v. Sessions*, 132 Wn.2d 642, 648 (1997). While acknowledging that actual conflicts exist between Washington's gambling and consumer protection laws and similar laws in many other states, plaintiffs argue that the conflict is "false" and therefore does not require a choice-of-law analysis. Under the "false conflict" analysis, an acknowledged conflict is considered false when "one state has a dominant interest in having its

law chosen to govern the case." Dkt. # 141 at 12 (citing Conflict of Laws, Black's Law Dictionary (11th ed. 2019). Because the interests of the competing states are taken into consideration as part of Washington's choice-of-law analysis, the Court declines to short-circuit that analysis.

To settle choice of law questions, Washington uses the most significant relationship test as articulated by Restatement (Second) of Conflict of Laws § 145 (1971). *Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 580-81 (1976). The most significant relationship inquiry involves a two-step analysis. *Southwell v. Widing Transp., Inc.*, 101 Wn.2d 200, 204 (1984). The Court first evaluates the contacts with each interested jurisdiction, considering which contacts are most significant to the occurrence and the parties and determining where those contacts are found. *Johnson*, 87 Wn.2d at 581. Second, the Court evaluates the interests and public policies of the competing jurisdictions. *Southwell*, 101 Wn.2d at 204. "The extent of the interest of each potentially interested state should be determined on the basis, among other things, of the purpose sought to be achieved by their relevant local law rules and the particular issue involved." *Id.* (citing *Johnson*, 87 Wn.2d at 582).

### 1. Evaluation of Contacts

Section 145 identifies certain contacts to be taken into account in the first step of the analysis:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

ORDER DENYING MOTION TO STRIKE
NATIONWIDE CLASS ALLEGATIONS - 7

The Court finds that the balance of relevant contacts tips toward Washington. The vast majority of the absent class members are presumably residents of other states: any injury they suffered as a result of Double Down's conduct presumably occurred wherever they reside. There are, however, some plaintiffs residing in Washington who were, under the same theory, injured here. Double Down is a Washington corporation, and any liability-generating conduct on its part occurred here, from creating, publishing, and maintaining the allegedly illegal gambling games to collecting payments from players around the country for virtual chips. Double Down's relationship with each class member, being entirely app or web-based, could be characterized as centered in Washington or in the state where each class member resides. Overall, while each state in which a putative class member resides has some relationship with the causes of action asserted in this case, Washington, as the domicile of Double Down and some portion of the plaintiff class, has a greater relationship than does any other single state.[4]

## 2. Policy Interests

The second step of Washington's choice-of-law analysis requires an evaluation of the interests and public policies of the competing jurisdictions.

> In large part, the answer to [the choice-of-law] question will depend upon whether some other state has a greater interest in the determination of the particular issue than the state where the injury occurred. The extent of the interest of each of the potentially interested states should be determined on the basis, among other things,

---

[4] In their moving papers, defendants argued that plaintiffs' claims sound in contract and should be analyzed under Restatement (Second) of Conflict of Laws § 188. As Double Down recognizes, however, the general rules for contractual choice of law do not apply where the parties have agreed on the governing law. Dkt. # 128 at 29. Plaintiffs assert, and Double Down does not dispute, that until April 2020, the terms and conditions under which customers downloaded Double Down's games specified that Washington law would govern any dispute, controversy, or claim related to the services provided. Dkt. # 39 at 18.

ORDER DENYING MOTION TO STRIKE
NATIONWIDE CLASS ALLEGATIONS - 8

of the purpose sought to be achieved by their relevant local law rules and of the particular issue [involved].

*Zenaida-Garcia v. Recovery Sys. Tech., Inc.*, 128 Wn. App. 256, 263-64 (2005) (citing Restatement (Second) of Conflict of Laws § 146 cmt. c (1971)). Section 6(2) of the Restatement provides the list of relevant factors:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of the other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result,

(g) ease in the determination and application of the law to be applied.

Where the legislature's intent regarding the range of a state law includes the out-of-state facts involved in a particular case, the Court is to give effect to that intent unless constitutional considerations forbid it. Restatement (Second) of Conflict of Laws § 6 cmt. b. With regards to the CPA, the Washington Supreme Court has expressly held that non-residents have a cause of action to sue Washington corporate defendants for allegedly deceptive acts. *Thornell*, 184 Wn.2d at 797-803. Because the RMLGA similarly creates a cause of action in favor of "all persons," must be liberally construed, and regulates the conduct of in-state actors for the protection of the public, the Court finds that it, too, can support a cause of action by a non-resident injured by a Washington resident's conduct.

In their motion, defendants fail to address the second step of the choice-of-law analysis.

ORDER DENYING MOTION TO STRIKE
NATIONWIDE CLASS ALLEGATIONS - 9

In reply, they do not dispute that the relevant statutes provide causes of action to foreign plaintiffs, but rather identify four policies or interests other states have in applying their own laws to plaintiffs' claims:

- States in which on-line gambling is allowed have presumably made a policy choice in favor of providing their residents with access to such games;

- States that have not created a statutory right to recover gambling losses have presumably decided to ban any such recovery;

- States have an interest is protecting their residents from unexpected felony charges;[5] and

- States have an interest in the tax revenue generated by sales/purchases of virtual chips within their jurisdiction.

Although untimely raised, the Court has weighed these interests against Washington's public policies and interests in regulating the conduct of its resident businesses and in eradicating illegal gambling operations. While a state's interest in allowing gambling within its borders as a means of generating tax revenue and/or providing entertainment for its citizenry is, of course, legitimate,[6] Washington's interests are more compelling. Plaintiffs' claims are based on the theory that Washington has made illegal defendants' business model, enacting two statutes designed to prevent such businesses from operating within the state by making their conduct

---

[5] The Court finds this point entirely unpersuasive given the actual facts of this case. Washington is not attempting to bring a felony charge against an Indiana resident who played Double Down Casino in Indiana. If it were, the constitutional barriers to the exercise of jurisdiction over that person would preclude such overreach.

[6] The fact that courts in California "will refuse to lend their process to adjudicate actions arising out of gambling transactions," *Kelly v. First Astri Corp.*, 72 Cal. App. 4th 462, 483, 84 Cal. Rptr. 2d 810, 823 (1999), in no way reflects a policy judgment in favor of gambling. To the contrary, the public policy at issue grew out of the judiciary's conviction "that the practice of gaming is vicious and immoral in its nature, and ruinous to the harmony and well-being of society." *Id.* (quoting *Carrier v. Brannan*, 3 Cal. 328 (1853)).

ORDER DENYING MOTION TO STRIKE
NATIONWIDE CLASS ALLEGATIONS - 10

entirely unprofitable. Allowing a Washington resident engaged in an illegal gambling operation to keep monies collected from non-residents would be incompatible with - and a circumvention of - this statutory scheme, forcing Washington to live with a gambling operation deemed noxious and against public policy. Washington's interests in closing down illegal gambling operations within its borders and fully compensating players' losses can be forwarded without infringing on another state's ability to host gambling operations or to enforce its own gambling regulations. To the extent that (i) residents of other states may lose access to Double Down Casino if plaintiffs' claims succeed and (ii) some states may lose tax revenues from sales/purchases of virtual chips, the Court finds that applying Washington law is nevertheless the "result that will achieve the best possible accommodations" of the competing policies. Restatement (Second) of Conflict of Laws § 6 cmt. f.

The last four considerations under § 6(2) also support the application of Washington law in this case. Customers of Double Down probably have no idea where the company is located, but if they thought about choice of law at all, Double Down's terms and conditions would have led them to expect that Washington law would govern the relationship. Double Down, for its part, would have no reason to suspect that Washington law did not govern its conduct. Despite the patchwork of gambling laws in the various states, plaintiffs assert (and defendants do not dispute) that the overarching policy in the field is that the state with the more restrictive law will determine the legality or illegality of the conduct. Dkt. # 141 at 21. In this case, that is Washington. Finally, choosing the law of the state in which an internet or app-based gambling operation is located for purposes of a nationwide class action will make the law easier to determine and apply with more predictable results.

ORDER DENYING MOTION TO STRIKE
NATIONWIDE CLASS ALLEGATIONS - 11

1

2         For all of the foregoing reasons, the Court finds that neither constitutional considerations

3    nor the applicable choice-of-law rules precludes the application of Washington law to the claims

4    asserted in this litigation, regardless where the putative class members reside. Defendants'

5    motion to strike the nationwide class allegations (Dkt. # 128) is DENIED.

6

7         Dated this 19th day of March, 2021.

8                                *Robert S. Lasnik*

9                                Robert S. Lasnik
                            United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   ORDER DENYING MOTION TO STRIKE
NATIONWIDE CLASS ALLEGATIONS - 12