The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ADRIENNE BENSON AND MARY SIMONSON, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>DOUBLE DOWN INTERACTIVE, LLC, et al.,<br><br>　　　　　　　　Defendants. | No. 2:18-cv-00525-RSL<br><br>DEFENDANT DOUBLE DOWN INTERACTIVE, LLC'S RENEWED MOTION TO COMPEL ARBITRATION AND TO STAY<br><br>**NOTED FOR CONSIDERATION: MAY 28, 2021**<br><br>**ORAL ARGUMENT REQUESTED** |

DOUBLE DOWN'S RENEWED MOTION TO
COMPEL ARBITRATION AND TO STAY
(2:18-CV-00525-RSL)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ....................................................................................................1

II.   BACKGROUND ......................................................................................................2

      A.    Plaintiffs Play DoubleDown Casino Hundreds of Times. ...........................2

      B.    The Arbitration Agreement.........................................................................3

      C.    Defendants Move to Compel Arbitration. ...................................................4

      D.    Plaintiffs Deny Notice of the Terms. ..........................................................4

      E.    The Court Denies Defendants' Motion on Notice Grounds and the Ninth
            Circuit Affirms............................................................................................5

      F.    Plaintiffs Acknowledge They Had Actual Notice of the Terms While
            Playing the Game. .......................................................................................5

III.  ARGUMENT ...........................................................................................................6

      A.    Double Down's Renewed Motion is Properly Brought Where, as Here,
            New Evidence Has Emerged. ......................................................................6

      B.    Double Down's Ability to Bring this Renewed Motion Has Only Now
            Become Ripe, Because it is Based on New Evidence. ..................................7

      C.    New Evidence Shows a Valid and Enforceable Arbitration Agreement
            Exists Between Plaintiff and DDI................................................................8

            1.    Plaintiffs Had Actual Notice of the Terms. .....................................9

            2.    Whether Plaintiffs Actually Read The Terms Is Irrelevant. ..........12

      D.    Any Further Challenges To The Arbitration Agreement Must Be Resolved
            In Arbitration. ...........................................................................................13

      E.    The Arbitration Agreement Applies to All of Plaintiffs' Claims. ..............14

      F.    The Terms Are Valid and Enforceable. .....................................................15

      G.    Plaintiffs' Claims Fall Within the Scope of the Arbitration Provision........17

      H.    Double Down Did Not Waive Its Right To Compel Arbitration..................18

      I.    The Court Should Stay the Litigation Pending Arbitration. .......................19

IV.   CONCLUSION.......................................................................................................20

DOUBLE DOWN'S RENEWED MOTION TO
COMPEL ARBITRATION AND TO STAY
(2:18-CV-00525-RSL) - i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Allbaugh v. Perma-Bound*,
2009 WL 10676437 (W.D. Wash. Aug. 14, 2009) ...............................................15

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ..............................................................................6, 16

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) ..................................................................................17

*Bernal v. Sw. & Pac. Specialty Fin., Inc.*,
2014 WL 1868787 (N.D. Cal. May 7, 2014) ...........................................7

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ...............................................................13

*Britton v. Co-op Banking Grp.*,
916 F.2d 1405 (9th Cir. 1990) ...............................................................18

*Cairo, Inc. v. Crossmedia Services, Inc.*,
2005 WL 756610 (N.D. Cal. Apr. 1, 2005) ................................9, 11, 12

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ...............................................................18

*Conover v. Dean Witter Reynolds, Inc.*,
837 F.2d 867 (9th Cir. 1988) ...................................................................8

*Coppock v. Citigroup, Inc.*,
2013 WL 1192632 (W.D. Wash. Mar. 22, 2013) .....................16, 17, 18

*In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litigation*,
835 F.3d 1195 (10th Cir. 2016) ........................................................14, 16

*Creative Telecomms., Inc. v. Breeden*,
120 F. Supp. 2d 1225 (D. Haw. 1999) ...................................................18

*Cuevas v. Verizon Wireless Pers. Commc'ns, LLP*,
2018 WL 6011876 (M.D. Fla. Nov. 16, 2018) .........................................8

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ..............................................................................7, 19

*Dillon v. BMO Harris Bank, N.A.*,
173 F. Supp. 3d 258 (M.D.N.C. 2016) .....................................................8

DOUBLE DOWN'S RENEWED MOTION TO
COMPEL ARBITRATION AND TO STAY
(2:18-CV-00525-RSL) - ii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Dillon v. BMO Harris Bank, N.A.*,
   787 F.3d 707 (4th Cir. 2015) ........................................................................7

*E.E.O.C. v. Luce, Forward, Hamilton & Scripps*,
   345 F.3d 742 (9th Cir. 2003) ......................................................................16

*Fagerstrom v. Amazon.com, Inc.*,
   141 F. Supp. 3d 1051 (S.D. Cal. 2015), *aff'd sub nom. Wiseley v.
   Amazon.com, Inc.*, 709 F. App'x 862 (9th Cir. 2017)............................16

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995).......................................................................................9

*Fisher v. A.G. Becker Paribas Inc.*,
   791 F.2d 691 (9th Cir. 1986) ......................................................................19

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991).........................................................................................6

*Hauenstein v. Softwrap Ltd.*,
   2007 WL 2404624 (W.D. Wash. Aug. 17, 2007) ....................................17

*Hautz Constr., LLC v. H & M Dep't Store*,
   2012 WL 5880370 (D.N.J. Nov. 20, 2012) ................................................8

*Jenkins v. Cty. of Riverside*,
   398 F.3d 1093 (9th Cir. 2005) .................................................7, 13, 15, 17

*Khobragade v. Covidien LP*,
   821 F. App'x 834 (9th Cir. 2020) .............................................................15

*Kilgore v. Keybank, N.A.*,
   718 F.3d 1052 (9th Cir. 2013) ...................................................................16

*Lucas v. Hertz Corp.*,
   875 F. Supp. 2d 991 (N.D. Cal. 2012) ........................................................8

*Maxit Designs, Inc. v. Coville, Inc.*,
   2006 WL 2734366 (E.D. Cal. Sept. 25, 2006)............................................7

*MCA Fin. Grp., Ltd. v. Gardere Wynne Sewell, LLP*,
   2007 WL 951959 (D. Ariz. Mar. 27, 2007) ..............................................14

*Mediterranean Enters., Inc. v. Ssangyong Corp.*,
   708 F.2d 1458 (9th Cir. 1983) ...................................................................18

*Molnar v. 1-800-Flowers.com, Inc.*,
   2008 WL 4772125 (C.D. Cal. Sept. 29, 2008) .........................................12

DOUBLE DOWN'S RENEWED MOTION TO
COMPEL ARBITRATION AND TO STAY
(2:18-CV-00525-RSL) - iii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Momot v. Mastro*,
   652 F.3d 982 (9th Cir. 2011) ......................................................................13

*Montoya v. Comcast Corp.*,
   2016 WL 5340651 (E.D. Cal. Sept. 23, 2016)............................................12

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016)....................................................................9, 12

*Passmore v. Discover Bank*,
   2011 WL 5086431 (N.D. Ohio Oct. 26, 2011) .............................................8

*Pierce Cty. v. M.A. Mortenson Co.*,
   2019 WL 1115859 (W.D. Wash. Mar. 11, 2019), *aff'd*, 798 F. App'x 160 (9th Cir. 2020) ...13

*Raymond v. Mid-Bronx Haulage Corp.*,
   2017 WL 9882601 (S.D.N.Y. June 10, 2017) ...............................................8

*Register.com, Inc. v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004)...................................................................9, 11

*Schmidt v. Samsung Elecs. Am., Inc.*,
   2017 WL 2289035 (W.D. Wash. May 25, 2017)..........................................16

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) ......................................................................18

*Smith v. Rent-A-Ctr., Inc.*,
   2019 WL 3004160 (E.D. Cal. July 10, 2019) ...............................................7

*Sw. Airlines Co. v. BoardFirst, L.L.C.*,
   2007 WL 4823761 (N.D. Tex. Sept. 12, 2007).............................................11

*Ticketmaster Corp. v. Tickets.Com, Inc.*,
   2003 WL 21406289 (C.D. Cal. Mar. 7, 2003) .............................................12

*Van Ness Townhouses v. Mar Indus. Corp.*,
   862 F.2d 754 (9th Cir. 1988) .................................................................18, 19

*In re Verisign, Inc. Derivative Litig.*,
   531 F. Supp. 2d 1173 (N.D. Cal. 2007) .......................................................15

*Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
   13 F.3d 330 (10th Cir. 1993) ......................................................................15

**State Cases**

*M.A. Mortenson Co. v. Timberline Software Corp.*,
   140 Wash. 2d 568 (2000)............................................................................12

DOUBLE DOWN'S RENEWED MOTION TO
COMPEL ARBITRATION AND TO STAY
(2:18-CV-00525-RSL) - iv

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Sanchez v. Valencia Holding Co.*,
    61 Cal. 4th 899 (2015) ................................................................................16

*Zuver v. Airtouch Commc'ns, Inc.*,
    153 Wash. 2d 293 (2004) ...........................................................................16

**Federal Statutes**

9 U.S.C. § 3 ...............................................................................................7, 19

**State Statutes**

RCW
    4.24.070 (Money Lost at Gambling Act) ......................................................2
    9.46.0285 (Washington's Consumer Protection Act) ...................................3

**Rules**

Rule R-7(a) ................................................................................................13

**Other Authorities**

Restatement (Second) of Contracts § 69(1)(a) (1981) ..................................11

DOUBLE DOWN'S RENEWED MOTION TO
COMPEL ARBITRATION AND TO STAY
(2:18-CV-00525-RSL) - v

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# I.     INTRODUCTION

Defendant Double Down Interactive, LLC ("DDI" or "Double Down") renews its request that this Court compel Plaintiffs to arbitrate this dispute on an individual basis.  Double Down brings this motion because, in their recent depositions, Plaintiffs for the first time admitted that they had **actual notice** of DDI's terms of use and, after receiving that notice, continued playing DoubleDown Casino (the "Game"), thereby assenting to the terms.  This newly discovered evidence directly contradicts Plaintiffs' previous representations, and renders moot the sole basis upon which Plaintiffs previously opposed Defendants' original motion to compel arbitration.

For the entire period that Plaintiffs played DoubleDown Casino, it was governed by Terms of Use (the "Terms"), which contain both an arbitration provision and a class action waiver.  In its first substantive filing in this litigation, Double Down, together with Defendant International Game Technology, sought to enforce the arbitration agreement by filing a Motion to Compel Arbitration asking that the Court refer all of Plaintiffs' claims, and any questions of arbitrability, to an arbitrator.  Without the benefit of depositions, Defendants at that time argued that the arbitration clause was valid and enforceable, that Plaintiffs' claims came within its broad reach, and that Plaintiffs had inquiry notice of the Terms in which it appeared, because the Terms were displayed conspicuously when Plaintiffs originally downloaded the Game, and during game play.

Plaintiffs opposed Defendants' Motion to Compel on just one ground: that no contract was ever formed between Plaintiffs and DDI because Plaintiffs had no notice of the Terms, and therefore did not assent to them.  More specifically, Plaintiffs argued that the Terms' "browsewrap" format was insufficiently conspicuous and so, under relevant caselaw, Plaintiffs could not be charged with constructive notice of them.  The Court agreed.  It held that Plaintiffs did not have inquiry notice of the Terms and on that ground denied Defendants' Motion to Compel, a decision which the Ninth Circuit Court of Appeals affirmed.

Deposition testimony elicited in recent weeks, however, shows that in fact, both Plaintiffs had **actual notice** of the Terms, and then continued playing the Game, thereby assenting to the Terms and agreeing to arbitrate all of their claims.  In fact, Ms. Benson testified that she most

DOUBLE DOWN'S RENEWED MOTION TO
COMPEL ARBITRATION AND TO STAY
(2:18-CV-00525-RSL) - 1

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

likely *actually read* the Terms.  And Ms. Simonson admitted that she understood Defendants' original Motion to Compel was an attempt to enforce the Terms, and that she continued playing after so understanding.  Because there is now no question that Plaintiffs had actual notice of the Terms, and Plaintiffs waived their right to oppose arbitration on any other grounds by failing to raise them in response to Defendants' original Motion to Compel, the Court should compel Plaintiffs to arbitrate this dispute on an individual basis and stay this case pending resolution of that arbitration.

## II.  BACKGROUND

### A.  Plaintiffs Play DoubleDown Casino Hundreds of Times.

All of Plaintiffs' claims in this case relate to their use of DDI's social gaming platform, DoubleDown Casino (the "Game"), which offers free-to-play virtual games, including poker, slots and blackjack, either as a mobile app or through Facebook.  Each day, players are given free virtual "chips" with which to play the Game.  Dkt. No. 45 ¶ 5.  These chips cannot be redeemed for real money or goods, and there is no legal or authorized secondary market for the virtual chips.  *Id.* ¶¶ 6-7.  Users can purchase additional virtual chips if they run out and do not wish to wait for their next free allotment, but no user is ever obligated to make such a purchase.  *Id.* ¶ 5.  Use of the Game is governed by DDI's Terms of Use (the "Terms"), which are provided to users via welcome messages, when the Game is downloaded, and through hyperlinks on every page of the Game's interface.  *Id.* ¶¶ 12, 31, 37; Ex. A.

Plaintiff Adrienne Benson played the Game more than 1,700 separate times over nearly five years, between June 1, 2013 and April 9, 2018.  Dkt. No. 45 ¶ 8-9.  Plaintiff Mary Simonson played the Game beginning in 2017, and has continued to play most days since then, up until at least March 2021.  *See* Declaration of Jaime Drozd Allen In Support of Double Down's Renewed Motion to Compel Arbitration ("Allen Decl.") ¶ 3; Ex. 2 (Simonson Dep. at 31:18-23; 33:3-4).

Both Plaintiffs are Washington residents who claim that the Game is illegal gambling under Washington law, because it gives players the chance to win virtual chips which, Plaintiffs allege, extend play time and are therefore "something of value" under Washington's Recovery of Money

DOUBLE DOWN'S RENEWED MOTION TO
COMPEL ARBITRATION AND TO STAY
(2:18-CV-00525-RSL) - 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Lost at Gambling Act, RCW 4.24.070 ("RMLGA").  They also bring claims under Washington's Consumer Protection Act, RCW 9.46.0285, and Washington's unjust enrichment laws.  Plaintiffs also seek to certify a class of "[a]ll persons in the United States who purchased and lost chips by wagering at the Double Down Casino."  Dkt. No. 41 ¶ 37.

> **B.     The Arbitration Agreement.**

The Terms grant users who wish to play the Game a license to use DDI's website or web application.  Dkt. No. 45 ¶ 39.  On April 9, 2018, the last day Ms. Benson played, and in August of 2018, when Ms. Simonson admittedly understood that Defendants were seeking to enforce the Terms, the Terms contained an arbitration agreement, requiring that players agree that, by playing the Game, they assent to resolve "any dispute" with DDI exclusively through individual arbitration.  Specially, the arbitration clause provides:

> Any dispute, controversy or claim arising out of, relating to or in connection with these Terms of Use and/or the Services shall be finally resolved by arbitration.

*Id.* ¶ 39-40; Ex. A.  The Terms further provide that disputes about arbitrability should also be submitted to arbitration: "The tribunal shall have the power to rule on any challenge to its own jurisdiction or to the validity or enforceability of any portion of the Terms of Use to arbitrate."  *Id.* The Terms also include a class-waiver agreement:

> The parties agree to arbitrate solely on an individual basis, and that these Terms of Use do not permit class arbitration or any claims brought as a plaintiff or class member in any class or representative arbitration proceeding.  The arbitral tribunal may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding.

*Id.* Ex. A.

The arbitration provision is featured prominently in the Terms' governing law section, and appears in text the same size as the rest of the Terms.  Both an arbitration provision and class-waiver provision appeared in the Terms the entire period that Plaintiffs played the game.  *Id.* ¶ 40; Ex. B (revised July 2013) & Ex. C (revised August 2012).

DOUBLE DOWN'S RENEWED MOTION TO
COMPEL ARBITRATION AND TO STAY
(2:18-CV-00525-RSL) - 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

### C.  Defendants Move to Compel Arbitration.

Defendants filed their original Motion to Compel Arbitration on July 2, 2018 as to Ms. Benson.  *See* Dkt. No. 38.  It was both Defendants' first substantive response in this case.  *See generally* Dkt. Nos. 1-38.  On July 23, 2018, Plaintiffs filed an amended complaint, adding in an additional named plaintiff, Ms. Simonson.  *See* Dkt. No. 41.  Defendants in turn filed a second Motion to Compel Arbitration as to both named plaintiffs on August 20, 2018.  *See* Dkt. No. 44. In that motion, Defendants argued that a valid and enforceable arbitration agreement exists between DDI and Plaintiffs; the agreement contains a binding arbitration clause and class waiver; the arbitration clause is neither procedurally or substantively unfair; Plaintiffs' claims all fall within the arbitration provision's broad scope; and that Plaintiffs must therefore try their claims in arbitration.  *See generally* Dkt. No. 44.

With respect to formation of the contract between Plaintiffs and DDI, Defendants argued that Plaintiffs had "reasonable inquiry notice of DDI's Terms" because the Game platform provides a clear and conspicuous hyperlink to the Terms, along with a notice advising that use of the Game is subject to the Terms.  Dkt. No. 44 at 2.  More specifically, that notice, which remains on a player's screen directly adjacent to the game platform for the entire duration of Game play, including when players purchase chips, provides:

> DoubleDown Casino is provided by DoubleDown Interactive, LLC in accordance with the DoubleDown Interactive, LLC Privacy Policy and Terms of Service.

*Id.* at 15.  In the notice, the Terms are a hyperlink that, once clicked, opens a new page in a player's browser containing the complete Terms.  *Id.*  Defendants argued that because the Terms were presented in a conspicuous manner and Plaintiffs played the Game hundreds of times, Plaintiffs had "reasonable inquiry notice of the Terms."  *Id.* at 16; *see also id.* at 16-19.

### D.  Plaintiffs Deny Notice of the Terms.

Plaintiffs filed both an opposition and a sur-reply responding to Defendants' Motion to Compel.  *See* Dkt. Nos. 49, 55.  The opposition notably **did not** argue that the arbitration agreement is procedurally or substantively unconscionable, or that it does not apply to Plaintiffs' particular claims.  *See generally* Dkt. Nos. 49, 55.  Instead, it focused narrowly on just one issue: Plaintiffs'

DOUBLE DOWN'S RENEWED MOTION TO
COMPEL ARBITRATION AND TO STAY
(2:18-CV-00525-RSL) - 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

notice of the Terms.  Plaintiffs argued, "[t]he fundamental defect in Defendants' motion…is that Plaintiffs never agreed to those purported contracts….  [J]ust like in the physical world, a person cannot have agreed to a contract that they did not know about." Dkt. No. 49 at 1.  With respect to Ms. Benson, Plaintiffs argued that Defendants failed to "produce any evidence that Ms. Benson was ever presented with, read, or otherwise given actual notice of the Terms.  There's a simple reason for that failure:  Ms. Benson was never presented with, read, or otherwise given actual notice of the Terms."  Dkt No. 49 at 12.  With respect to Ms. Simonson, Plaintiffs argued that "Defendants' links to the Terms were not visible to Ms. Simonson, and Defendants never provided any warning that Ms. Simonson would be bound by any Terms.  Consequently, Ms. Simonson never agreed to Defendants' Terms." *Id.* at 12.

## E.  The Court Denies Defendants' Motion on Notice Grounds and the Ninth Circuit Affirms.

The Court's Order denying Defendants' Motion tracked Plaintiffs' opposition, and rested on the notice argument alone.  *See generally* Dkt. No. 57.  The Court first determined that the Terms were presented in a "browsewrap" format, and that the validity of such a contract turns on "whether a website would put a reasonably prudent user on inquiry notice of its terms," which "depends on the design and content of the website and the agreement's webpage." *Id.* at 6-7. Because the Court found that DDI's presentation of the Terms was not sufficiently conspicuous, it held that Defendants had not "met [the] requirements for inquiry notice." *Id.* at 9, 13. Defendants appealed, and in January 2020, the Ninth Circuit Court of Appeals affirmed on the same ground.  Dkt. No. 84.

## F.  Plaintiffs Acknowledge They Had Actual Notice of the Terms While Playing the Game.

Since the Ninth Circuit's decision, the parties have continued to litigate the case, and Plaintiffs have filed a motion to certify a nationwide class of "[a]ll persons in the United States who purchased and lost chips by wagering at the Double Down Casino." Dkt. No. 41 ¶ 37.  In March 2021, DDI for the first time took the deposition of both Plaintiffs: Ms. Benson on March 23, 2021 and Ms. Simonson on March 24, 2021.  *See* Allen Decl. ¶¶ 2-3; Exs. 1, 2.

DOUBLE DOWN'S RENEWED MOTION TO
COMPEL ARBITRATION AND TO STAY
(2:18-CV-00525-RSL) - 5

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

During those depositions, both Plaintiffs acknowledged for the first time that, in fact, they were aware of the Terms while playing the Game, and chose to continue playing.  Ms. Benson testified that she became aware of the Terms before this lawsuit was filed, but continued playing until suit was filed.  *See* Allen Decl. ¶ 2; Ex 1 (Benson Dep. at 87:8-13 (Q.  Were you aware that Double Down had terms of use before the lawsuit was filed in April of 2018?  A.  2018.  I expect that's true.  Q.  Were you aware that Double Down had terms of use when you were still playing Double Down Casino?  A.  Yes.)).  She also testified that she likely *actually reviewed* the Terms during the period that she was playing the Game, and understood that the Game was offered subject to her acceptance of the Terms.  *Id.* Ex 1 (Benson Dep. at 87:24-88:10; 85:20-24).

Ms. Simonson testified that, while playing the Game, she at some point accessed the Game's menu screen, saw the link labeled Terms of Use, and understood that if she clicked on the link, she would be provided additional information about the Terms.  *See* Allen Decl. ¶ 3; Ex 2 (Simonson Dep. at 120:1-3 (Q.  Okay.  And on that menu, are you – have you seen the terms of use on that menu?  A.  Yes.); *id.* at 122:11-14 (Q.  And do you agree that you've seen those terms of use?  A.  Yes.) *id.* at 123:11-16.  She also testified that she continued playing the Game until as recently as the day before her deposition, including after Defendants moved to compel arbitration in August of 2018, at which time, Ms. Simonson testified, she understood that Defendants sought to enforce the Terms.  *Id.* at Ex 2 (Simonson Dep. at 124: 8-20).

## III.   ARGUMENT

### A.   Double Down's Renewed Motion is Properly Brought Where, as Here, New Evidence Has Emerged.

Congress enacted the Federal Arbitration Act to "reverse the longstanding judicial hostility to arbitration agreements," *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991), "to place arbitration agreements upon the same footing as other contracts," *id.*, and "to ensure the enforcement of arbitration agreements according to their terms."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).  Where a valid agreement to arbitrate exists, and the dispute in question falls within the scope of the agreement, the FAA "leaves no place for the exercise of

DOUBLE DOWN'S RENEWED MOTION TO
COMPEL ARBITRATION AND TO STAY
(2:18-CV-00525-RSL) - 6

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

discretion by a district court, but instead **mandates** that district court *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (first emphasis added). This same rationale applies with equal force when, as here, a party brings a renewed motion to compel arbitration. "[N]o authority—not the [Federal Arbitration Act], the Federal Rules of Civil Procedure, or any other source of law of which we are aware—limits a party to only one motion [to compel arbitration] under §§ 3 or 4 of the FAA." *Dillon v. BMO Harris Bank, N.A.*, 787 F.3d 707, 715–16 (4th Cir. 2015). *See also Bernal v. Sw. & Pac. Specialty Fin., Inc.*, 2014 WL 1868787, at *1 (N.D. Cal. May 7, 2014) (granting renewed motion to compel arbitration); *Maxit Designs, Inc. v. Coville, Inc.*, 2006 WL 2734366 (E.D. Cal. Sept. 25, 2006) (same); *Smith v. Rent-A-Ctr., Inc.*, 2019 WL 3004160, at *3 (E.D. Cal. July 10, 2019) (same).[1]

### B. Double Down's Ability to Bring this Renewed Motion Has Only Now Become Ripe, Because it is Based on New Evidence.

Defendants' original motion to compel was based solely on the theory that Plaintiffs had constructive or inquiry notice of the Terms, *see generally* Dkt. No. 44, which Plaintiffs have acknowledged. *See* Dkt. No. 55 at 2 (asking the Court not to consider whether Plaintiffs had actual notice of the Terms because "Defendants presented no affirmative case for actual notice" in their motion to compel). As discussed in depth in Section III.C, *infra*, this Motion is based on information that came to light mere weeks ago that directly contradicts Plaintiffs' counsel's previous representations that Plaintiffs had no notice of the terms. *Compare* Dkt. No. 49 at 12 ("Ms. Benson was never presented with, read, or otherwise given actual notice of the Terms"), *with* Allen Decl. ¶ 2; Ex 1 (Benson Dep. at 87:11-13 (Q. Were you aware that Double Down had terms of use when you were still playing Double Down Casino? A. Yes.)). Without the benefit of this evidence, Double Down had no way of knowing that Plaintiffs had actual notice of the

---

[1] Double Down believes this Motion is properly brought as a renewed motion because it did not previously argue actual notice, and did not have access to facts giving rise to such an argument until recently. To the extent the Court construes this Motion as one for reconsideration, however, the Motion also is properly brought on those grounds, because it relies on new evidence not previously available to Double Down. *See Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1094 n.2 (9th Cir. 2005) ("[T]he court may reconsider previously decided questions in cases in which there has been an intervening change of controlling authority, **new evidence has surfaced**, or the previous disposition was clearly erroneous and would work a manifest injustice.") (emphasis added) (citation omitted).

DOUBLE DOWN'S RENEWED MOTION TO
COMPEL ARBITRATION AND TO STAY
(2:18-CV-00525-RSL) - 7

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Terms, so this is Double Down's first opportunity to bring a motion on these grounds.   In circumstances like this, courts routinely allow for—and grant—renewed motions to compel.   *See, e.g.*, *Lucas v. Hertz Corp.*, 875 F. Supp. 2d 991 (N.D. Cal. 2012) (granting second motion to compel arbitration based on new evidence after denying first); *Conover v. Dean Witter Reynolds, Inc.*, 837 F.2d 867, 868 (9th Cir. 1988) (per curiam) (no waiver where defendant moved to compel arbitration as soon as it was no longer futile to do).[2]

## C.   New Evidence Shows a Valid and Enforceable Arbitration Agreement Exists Between Plaintiff and DDI.

When Defendants brought the original Motion to Compel Arbitration, *see* Dkt. No. 44, Plaintiffs did not argue that arbitration is improper because the arbitration agreement is substantively or procedurally unconscionable, or because the Terms' broad arbitration clause does not encompass Plaintiffs' particular claims, though Defendants raised all three arguments in their Motion to Compel.  *See* Dkt. Nos. 44, 49, 55.  Instead, Plaintiffs' Opposition addressed just one substantive point:  that Plaintiffs had inadequate notice of the Terms, and were therefore not bound by them.  Thus, they argued, "[j]ust like in the physical world, a person cannot have agreed to a contract that they did not know about."  Dkt. No. 49 at 1.  *See also id.* at 12 ("Defendants never provided any warning that Ms. Simonson would be bound by any Terms.  Consequently, Ms. Simonson never agreed to Defendants' Terms.").

The Court's Order denying Defendants' Motion tracked Plaintiffs' Opposition, finding that Defendants' presentation of the Terms was not sufficiently conspicuous, and that Defendants

---

[2] Courts also routinely grant motions for reconsideration on such grounds.  *See, e.g.*, *Passmore v. Discover Bank*, 2011 WL 5086431, at *5 (N.D. Ohio Oct. 26, 2011) (granting motion to compel arbitration on motion for reconsideration based on new evidence showing valid contract); *Dillon v. BMO Harris Bank, N.A.*, 173 F. Supp. 3d 258, 270 n.10 (M.D.N.C. 2016) (holding that "[i]f at any point in the litigation [plaintiff] relies on the written agreement" and thereby affirms the contract, "the Court will reconsider, upon request, the motion to compel arbitration" originally denied for failure to show formation of valid contract); *Hautz Constr., LLC v. H & M Dep't Store*, 2012 WL 5880370, at *6 (D.N.J. Nov. 20, 2012) (reconsidering order denying motion to compel in part based on the "liberal federal policy favoring arbitration" and ordering arbitration); *Raymond v. Mid-Bronx Haulage Corp.*, 2017 WL 9882601, at *3 (S.D.N.Y. June 10, 2017) (reconsidering original order denying motion to compel arbitration and compelling arbitration); *Cuevas v. Verizon Wireless Pers. Commc'ns, LLP*, 2018 WL 6011876, at *2 (M.D. Fla. Nov. 16, 2018) (granting reconsideration of motion to compel arbitration based on new evidence).  Thus, Double Down's motion is properly brought as either a renewed motion to compel arbitration because Defendants did not previously raise an actual notice argument, or as a motion for reconsideration of the Court's prior Order based on newly discovered evidence.

DOUBLE DOWN'S RENEWED MOTION TO
COMPEL ARBITRATION AND TO STAY
(2:18-CV-00525-RSL) - 8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

therefore had not "met [the] requirements for inquiry notice." Dkt. No. 57 at 9, 13.  In coming to that conclusion, the Court expressly distinguished *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004), and *Cairo, Inc. v. Crossmedia Services, Inc.*, 2005 WL 756610, at *2 (N.D. Cal. Apr. 1, 2005), cited by Defendants, as "inapplicable in a case like this where there is no actual notice." Dkt. No. 57 at 11 (finding both cases distinguishable because they "rested on the user's admission of actual knowledge, but neither Benson nor Simonson made such an admission."). The Ninth Circuit Court of Appeals affirmed on the same ground. *See* Dkt. No. 84.

Newly elicited testimony, however, shows that, in fact, both Plaintiffs had actual notice of the Terms at least as early as 2018, and nonetheless continued to play the Game, thereby manifesting their assent to the Terms.  As discussed further below, *see* Section III.E, *infra*, binding Ninth Circuit authority makes clear that, in such a situation, Plaintiffs must be held to the terms of the agreement for the entirety of their play.  Because Plaintiffs have not otherwise challenged the arbitration agreement — and cannot with any seriousness — the agreement is valid and enforceable, indisputably encompasses all of Plaintiffs' claims, and under the FAA, must enforced.

### 1.  Plaintiffs Had Actual Notice of the Terms.

To determine "whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally … should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "Manifestation of assent to an online contract is not meaningfully different" than manifestation to any other contract, "and can be accomplished by 'words or silence, action or inaction.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 232 (2d Cir. 2016) (applying Washington law) (citation omitted). As the Court has already held, where, as here, terms of use are presented in a browsewrap format, courts "consistently" enforce them when "the user had actual notice" of them. Dkt. No. 57 at 7 (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014)). Deposition testimony shows that the actual notice standard is easily satisfied here, because both Plaintiffs have now acknowledged that they were aware there were terms governing their use of the Game, and continued playing anyway, thereby manifesting their assent to those terms.

DOUBLE DOWN'S RENEWED MOTION TO
COMPEL ARBITRATION AND TO STAY
(2:18-CV-00525-RSL) - 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

<u>First</u>, during her deposition, Ms. Benson testified that she became aware of the Terms before April 9, 2018, but continued to play the Game. *See* Allen Decl. ¶ 2; Ex 1 (Benson Dep. at 87:8-13 (Q. Were you aware that Double Down had terms of use before the lawsuit was filed in April of 2018? A. 2018. I expect that's true. Q. Were you aware that Double Down had terms of use when you were still playing Double Down Casino? A. Yes.)). She also testified that she probably *actually reviewed* the Terms. *Id.* at Ex 1 (Benson Dep. at 87:24-88:10 (Q. And did you review those terms of use at any point in time? A. I believe that I probably scrolled through them very fast and wasn't too interested in what they had to say. Q. Okay. So you scrolled through the Double Down terms of use. Did you read them? A. I believe the better word would be scanned, if I did that. I can't even say that I did that.)). She further acknowledged that she was aware that "a person has to agree to the terms of use before you can use the offer," *i.e.*, play the Game. *Id.* at Ex. 1 (Benson Dep. at 85:20-24).

<u>Second</u>, during her deposition, Ms. Simonson testified that she accessed the Game's menu screen, saw the link labeled Terms of Use, and understood that if clicked on the link, she would be provided additional information about the Terms. *See* Allen Decl. ¶ 3; Ex. 2 (Simonson Dep. at 120:1-3 (Q. Okay. And on that menu, are you – have you seen the terms of use on that menu? A. Yes.); *id.* at 122:11-14 (Q. And do you agree that you've seen those terms of use? A. Yes.); *id.* at 123:11-16 (Q. But you do know that you saw the terms of use on the menu app, that there was a title for terms of use, whether or not you clicked on them, correct? A. Yes.); *id.* at 127:11-13 (Q. And so you knew that you could click on to the items on this menu that would give you additional information about those, items, correct? A. Yes.)). Still, Ms. Simonson also continued playing on a near daily basis, including after Defendants moved to compel arbitration for the first time in August of 2018, at which time, Ms. Simonson testified, she understood that Defendants sought to enforce the Terms. *Id.* at Ex. 2 (Simonson Dep. at 124: 8-20 (Q. And so you were aware when [Defendants] moved to compel arbitration that Double Down and IGT asserted Double Down's terms of use and that Double Down had terms of use, correct? A. Yes. Q. And after

DOUBLE DOWN'S RENEWED MOTION TO
COMPEL ARBITRATION AND TO STAY
(2:18-CV-00525-RSL) - 10

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

being aware of those terms of use, you continued to play on Double Down Casino, right?  A.  Yes.)).

Under controlling precedent, this indisputably qualifies as actual notice of the Terms.  It is axiomatic contract law that, "[s]ilence and inaction operate as an acceptance ... [w]here an offeree takes the benefit of offered services with reasonable opportunity to reject them and reason to know that [the benefits] were offered" subject to corollary obligations on the offeree.  Restatement (Second) of Contracts § 69(1)(a) (1981).  Cases analyzing the question when it arises with online contracts confirm the same rationale applies here.  In *Register.com*, 356 F.3d 393, for example, the defendant claimed it was not bound by plaintiff's website's terms of service, because defendant did not know about them before it used the website for the first time.  The court disagreed, because defendant acknowledged that at some point it *did* become aware of the terms, knew that access to the website was "offered access subject to [the terms'] restrictions," and kept using it anyway.  *Id.* at 402.  Similarly, in *Cairo, Inc.*, 2005 WL 756610, at *4–5, plaintiff claimed no contract had been formed between it and defendant because, though it became aware of defendant's terms of use, and after that continued using the website, it did not expressly consent to the terms.  The court rejected the argument: "[Plaintiff's] visits to [defendant's] web sites with knowledge of [defendant's] Terms of Use constituted acceptance of the terms, which accordingly are binding on [plaintiff]."  *Id.*

That Ms. Simonson had actual notice of the Terms while playing the Game is even less subject to dispute, because she continued playing the Game after Defendants brought the original Motion to Compel Arbitration, which Ms. Simonson understood was Defendants' attempt to enforce the Terms.  *See* Allen Decl. ¶ 3; Ex. 2 (Simonson Dep. at 124: 8-20 (Q.  And so you were aware when [Defendants] moved to compel arbitration that Double Down and IGT asserted Double Down's terms of use and that Double Down had terms of use, correct?  A.  Yes.  Q.  And after being aware of those terms of use, you continued to play on Double Down Casino, right?  A.  Yes.)).  And courts overwhelmingly find that a party has actual notice of the terms of a contract when their counsel has been informed of them.  *See Sw. Airlines Co. v. BoardFirst, L.L.C.*, 2007

DOUBLE DOWN'S RENEWED MOTION TO
COMPEL ARBITRATION AND TO STAY
(2:18-CV-00525-RSL) - 11

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

WL 4823761 (N.D. Tex. Sept. 12, 2007) (finding that defendant company had actual notice of browsewrap agreement because its executives received a cease and desist letter informing them that plaintiffs' terms prohibited defendant's use of plaintiff's website); *Molnar v. 1-800-Flowers.com, Inc.*, 2008 WL 4772125, at *6 (C.D. Cal. Sept. 29, 2008) (finding defendant adequately pled actual notice of online terms of use where defendant alleged that plaintiff was in contact with his counsel prior to placing the order that was the subject of his claims, and that plaintiff was therefore chargeable with his counsel's notice of the terms); *Ticketmaster Corp. v. Tickets.Com, Inc.*, 2003 WL 21406289, at *2 (C.D. Cal. Mar. 7, 2003) (denying defendants' summary judgment motion on browsewrap contract claim where defendants continued breaching contract after receiving letter quoting the browsewrap contract terms).

## 2.   Whether Plaintiffs Actually Read The Terms Is Irrelevant.

The testimony regarding whether Ms. Simonson or Ms. Benson actually read the Terms varies slightly.  Ms. Benson testified alternatively that she "probably scrolled through" the Terms and that she "scanned" them, "if [she] did that."  *See* Allen Decl. ¶ 2; Ex. 1 (Benson Dep. at 87:24-88:10; 90:20-91:25).  Ms. Simonson testified that, though she knew while playing the Game that she could click on the Terms hyperlink to receive more information about them, she does not recall whether she ever actually did.  *Id.* ¶ 3; Ex. 2 (Simonson Dep. at 123:11-16; 122:15-18).  This equivocation is of no import:  "As with paper contracts or shrinkwrap agreements, to be bound, an internet user need not actually read the terms and conditions or click on a hyperlink that makes them available as long as she has notice of their existence."  *Nicosia*, 834 F.3d at 232.  *See also M.A. Mortenson Co. v. Timberline Software Corp.*, 140 Wash. 2d 568, 584 (2000) (en banc) (holding that Washington law does not require that a party "actually read the agreement in order to be bound by it," as long as the party had actual or constructive notice).[3]

---

[3] It is equally irrelevant to the notice analysis whether either Plaintiff was specifically aware that the Terms contained an arbitration clause.  "The validity of shrinkwrap agreements assumes that buyers have notice of the *existence* of standard adhesion terms, even if they are not read or understood." *Nicosia*, 834 F.3d at 232.  *See also Montoya v. Comcast Corp.*, 2016 WL 5340651, at *5 (E.D. Cal. Sept. 23, 2016) (holding that "[w]hether or not the Plaintiffs actually read the services contract or arbitration agreement is irrelevant" and granting motion to compel arbitration); *Cairo, Inc.*, 2005 WL 756610, at *4–5 (finding plaintiff who used a website with knowledge of the website's terms bound to the terms' forum selection clause, even though plaintiff specifically denied knowledge of that provision).

DOUBLE DOWN'S RENEWED MOTION TO
COMPEL ARBITRATION AND TO STAY
(2:18-CV-00525-RSL) - 12

### D. Any Further Challenges To The Arbitration Agreement Must Be Resolved In Arbitration.

In addition to requiring that all claims be tried in arbitration, the Terms also specify that the arbitration "tribunal shall have the power to rule on any challenge to its own jurisdiction or to the validity or enforceability of any portion of the Terms of Use to arbitrate." Dkt. No. 45 ¶ 39; Ex. A. By continuing to play the Game after receiving actual notice of the Terms, including the arbitration provision, Plaintiffs therefore also agreed to delegate the issue of arbitrability to the arbitrator. Because Defendants argued as much in their original Motion to Compel, and Plaintiffs did not dispute it, Plaintiffs have waived the right to now so argue. *See* Dkt. No. 44 at 21-22, 49, 55; *see also Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005).

Even if Plaintiffs had not waived the argument, and they have, Double Down need only establish the "existence" of an arbitration agreement that "clearly and unmistakably" provides that a determination of arbitrability is itself subject to arbitration. *Pierce Cty. v. M.A. Mortenson Co.*, 2019 WL 1115859, at *3 (W.D. Wash. Mar. 11, 2019), *aff'd*, 798 F. App'x 160 (9th Cir. 2020). Here, the arbitration provision meets those requirements because it establishes that the arbitrator, not the court, must decide if the dispute is subject to arbitration. *See also Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (holding that parties clearly and unmistakably agreed to arbitrate the question of arbitrability where they agreed to arbitrate "the validity or application of any of the provisions of" the arbitration clause). The arbitration agreement also requires arbitration in accordance with the AAA Commercial Arbitration Rules, Dkt. No. 45 ¶ 39; Ex. A, which also expressly assign arbitrability questions to the arbitrator. *See* Dkt. No. 46 ¶ 3; Ex. B, Rule R-7(a). Under controlling Ninth Circuit law, incorporation of these kinds of rules also constitutes "clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citation & internal quotation marks omitted). Thus, this Court also should compel Plaintiffs to arbitrate challenges to the scope or enforceability of the arbitration provision.

DOUBLE DOWN'S RENEWED MOTION TO
COMPEL ARBITRATION AND TO STAY
(2:18-CV-00525-RSL) - 13

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**E.     The Arbitration Agreement Applies to All of Plaintiffs' Claims.**

Both Ms. Simonson and Ms. Benson admit that at some point they became aware of the Terms but continued to play the Game anyway.  *See* Allen Decl. Ex. 2 (Simonson Dep. at 124: 8-20); Ex. 1 (Benson Dep. at 87:8-13).  The Terms in effect on the last day Ms. Benson played, on April 9, 2018, and in August of 2018, when Defendants' brought the original Motion to Compel,[4] include a provision requiring that Plaintiffs resolve through arbitration "[a]ny dispute, controversy or claim arising out of, relating to or in connection with" the Terms.  *See* Dkt. No. 45 ¶ 39 & Ex. A; *see also* Declaration of Joe A. Sigrist In Support of Double Down's Renewed Motion To Compel Arbitration ¶ 2; Ex. A.  As discussed above, Plaintiffs manifested their assent to the Terms, and the arbitration agreement, by continuing to play the Game after they became aware that their play was governed by those Terms.  Because the arbitration provision contains no temporal limitation, by continuing to play the Game, Plaintiffs manifested agreement to, as the provisions plainly states, arbitrate "all*"* of their claims against Double Down that relate to the Game, not only those that arose after they became aware of the Terms.  *Id.* Ex. A.

Courts considering near identical provisions routinely come to the same conclusion.  In *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litigation*, 835 F.3d 1195, 1199 (10th Cir. 2016), for example, the relevant provision required arbitration of "any and all claims or disputes between us … that arise out of or in any way relate to" the agreement between the parties and the services defendant provided.  *Id.* at 1199.  Plaintiff argued that the clause did not apply because the relevant conduct occurred before the parties entered into the contract.  *Id.*  The Court disagreed.  The "'only … reasonable interpretation' of the *arising* language [is] that it applied to a dispute predating the arbitration agreement," the court held, observing that "the word *relate* does not have the same temporal connotation as *arise*; we can say that something arises at a particular point in time; but *relate* is broader and includes a relationship in subject matter that is independent of time."  *Id.  See also MCA Fin. Grp., Ltd. v. Gardere Wynne Sewell, LLP*, 2007 WL 951959, at

---

[4] Ms. Simonson could not recall exactly when she became aware of the Terms.  But she testified she was aware of them when Defendants brought the original Motion to Compel Arbitration, in August 2018.  *See* Allen Decl. Ex. 2 (Simonson Dep. at 124: 8-20).

DOUBLE DOWN'S RENEWED MOTION TO
COMPEL ARBITRATION AND TO STAY
(2:18-CV-00525-RSL) - 14

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*5 (D. Ariz. Mar. 27, 2007) (finding arbitration provision governing "any dispute or controversy regarding or arising out of our representation of you" applied retroactively); *In re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007) (granting motion to compel arbitration and finding that the broadly-worded arbitration provision applied to the plaintiff's claims even though "all the events underlying the claims occurred before the parties executed the agreement").

At least one court in this District has been faced with the same question, and it agreed that arbitration clauses like this one require arbitration "regardless of when the underlying events occurred." *Allbaugh v. Perma-Bound*, 2009 WL 10676437, at *9 (W.D. Wash. Aug. 14, 2009) (granting motion to compel arbitration where clause "covers not just any claims **arising** under the [agreement] but also any claims **relating** to it") (emphasis added). Such a reading also comports with the strong federal policy in favor of arbitration. *See Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330, 332 (10th Cir. 1993) (rejecting argument that the agreement to arbitrate "must pre-date the actions giving rise to the dispute" as "contrary to contract principles which govern arbitration agreements").

## F.     The Terms Are Valid and Enforceable.

When Defendants brought the original Motion to Compel Arbitration, Dkt. No. 44, Plaintiffs did not argue that the arbitration agreement was unenforceable as procedurally or substantively unconscionable or that Plaintiffs' claims did not come within its scope, though Defendants made all three arguments in their motion. *See* Dkt. Nos. 44, 49, 53. Instead, Plaintiffs focused narrowly on, and the Court denied the motion on the grounds that, the hybrid browsewrap presentation of the Terms, which contained the arbitration agreement, did not confer inquiry notice of the contract upon Plaintiffs. *See* Dkt. No. 57. In so doing, Plaintiffs waived their right to so challenge it now. *See Jenkins*, 398 F.3d at 1095 n.4 (plaintiff waived challenge to claims that were not raised in opposition to defendant's dispositive motion); *Khobragade v. Covidien LP*, 821 F. App'x 834, 835 (9th Cir. 2020) (same).

DOUBLE DOWN'S RENEWED MOTION TO
COMPEL ARBITRATION AND TO STAY
(2:18-CV-00525-RSL) - 15

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Regardless, the arbitration agreement is enforceable because Plaintiffs cannot prove it is unconscionable. *See Schmidt v. Samsung Elecs. Am., Inc.*, 2017 WL 2289035, at *4 (W.D. Wash. May 25, 2017) (arbitration agreements must be enforced unless they are unconscionable – a "high standard" that the party seeking to avoid arbitration must meet). As an initial matter, it is now settled law that inclusion of a class waiver does not render an arbitration agreement unenforceable. *Concepcion*, 563 U.S. at 352. *See also Kilgore v. Keybank, N.A.*, 718 F.3d 1052, 1058 (9th Cir. 2013) (argument that a "ban on class arbitration is unconscionable … is now expressly foreclosed by *Conception*"); *Coppock v. Citigroup, Inc.*, 2013 WL 1192632, at *8 n.2 (W.D. Wash. Mar. 22, 2013) ("Under *Concepcion*, the Court cannot consider Washington's policy on unconscionability of class action waivers").

The arbitration agreement also is not procedurally unconscionable. Had Plaintiffs chosen to review the Terms they knew existed at any point, they would have found the provision was featured prominently in the Terms' governing law section, in plain language and text the same size as the rest of the Terms. Dkt. No. 45 ¶ 39; Ex. A. *See Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051, 1069-70 (S.D. Cal. 2015) (enforcing terms of use where "[t]he text of the Arbitration Agreement is the same size and font as the rest of the [terms]," plaintiff was not under time pressure to accept, and the agreement was written in plain language), *aff'd sub nom. Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862 (9th Cir. 2017); *see also Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 914 (2015) (any "obligation to highlight the arbitration clause of [the] contract … would be preempted by the FAA"). This also is not a case where Plaintiffs were strong-armed into agreeing to the Terms as a condition of employment, or to receive essential services. *Cf. E.E.O.C. v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 746 (9th Cir. 2003) (requirement that employee assent to arbitration agreement as condition of employment enforceable); *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d at 1211 (granting motion to compel arbitration of claims against internet provider). Double Down offers a Game, and Plaintiffs were free to stop playing at any time. *See also Zuver v. Airtouch Commc'ns, Inc.*, 153 Wash. 2d

DOUBLE DOWN'S RENEWED MOTION TO
COMPEL ARBITRATION AND TO STAY
(2:18-CV-00525-RSL) - 16

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

293, 304-05 (2004) (en banc) (adhesion is insufficient to support a finding of procedural unconscionability under Washington law).

Because the arbitration agreement also does not "shock[] the conscience" with its harshness or one-sidedness, it also is not substantively unconscionable. *Hauenstein v. Softwrap Ltd.*, 2007 WL 2404624, at \*5 (W.D. Wash. Aug. 17, 2007) (quoting *Nelson v. McGoldrick*, 127 Wash. 2d 124, 131 (1995)).   Enforcement of the clause will not be prohibitively expensive, because the Terms specify use of American Arbitration Association Rules, and that each party will bear its own costs.  Dkt. No. 45 ¶ 39; Ex. A.

As discussed above, Section III.C, *supra*, Plaintiffs manifested their agreement to the Terms by playing the Game with full awareness that their play was governed by the Terms, and in Ms. Simonson's case, particularized awareness of the arbitration agreement.  *See* Allen Decl. ¶ 3; Ex. 2 (Simonson Dep. at 124: 8-20).  They should not now be allowed to avoid the agreement simply because they would prefer to try their claims in court.

### G.   Plaintiffs' Claims Fall Within the Scope of the Arbitration Provision.

As above, by failing to oppose the issue in response to the original Motion to Compel, *see* Dkt. Nos. 44, 49, 55, Plaintiffs have waived their right to now argue that their claims do not come within the scope of the arbitration agreement.  *Jenkins*, 398 F.3d at 1095 n.4.  In any event, there can be no legitimate dispute that Plaintiffs' claims fall within the Terms' broad arbitration agreement.  Plaintiffs "bear[] the burden of showing that the agreement does not cover the claims at issue," *Coppock*, 2013 WL 1192632, at \*5, and, given the strong federal presumption in favor of arbitration, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643,  650 (1986) (citation omitted).  Here, the Terms' arbitration agreement covers:

> "Any dispute, controversy or claim arising out of, relating to, or in connection with these Terms of Use and/or the Services..."

Dkt. No. 45 ¶ 39; Ex. A.

DOUBLE DOWN'S RENEWED MOTION TO
COMPEL ARBITRATION AND TO STAY
(2:18-CV-00525-RSL) - 17

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

This is a textbook "broad" arbitration provision. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (provision covering "[a]ny dispute, controversy or claim arising out of or relating to" the parties' agreements is "broad and far reaching"); *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) ("'relating to this agreement' [is] ... broad arbitration clause" language) (citation and internal quotation marks omitted); *Coppock*, 2013 WL 1192632, at *5 (clause requiring arbitration of "[a]ll [c]laims relating to your account, a prior related account, or our relationship are subject to arbitration" covered wide range of claims). Accordingly, Plaintiffs' "factual allegations need only 'touch matters' covered by the" Terms to come within the provision. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). That standard clearly is met because all of Plaintiffs' claims "aris[e]" out of their play of the Game. Put another way, had Plaintiffs not utilized the license granted to them by the Terms by playing the Game, they would have nothing to complain about. *See also id.* at 720 (broad arbitration agreements must be "liberally construed" and "expansively interpreted"). The claims fall squarely within the scope of the arbitration agreement and must be resolved in arbitration.

### H.      Double Down Did Not Waive Its Right To Compel Arbitration.

Against the strong presumption toward enforcing arbitration agreements, "[w]aiver of the right to arbitration is disfavored." *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758 (9th Cir. 1988). To show such a waiver, plaintiffs bear a "heavy burden of proof." *Id.* They must demonstrate "(1) [Double Down's] knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990). Because this Motion is based on new evidence, Plaintiffs cannot carry their "heavy burden of proof" to show that Double Down waived its right to arbitrate. *Id. See also Creative Telecomms., Inc. v. Breeden*, 120 F. Supp. 2d 1225, 1232 (D. Haw. 1999) ("Any doubts as to waiver are resolved in favor of arbitration.").

First, as discussed, *supra*, Double Down's ability to bring this Renewed Motion has only now become ripe, because it is based on new evidence.

DOUBLE DOWN'S RENEWED MOTION TO
COMPEL ARBITRATION AND TO STAY
(2:18-CV-00525-RSL) - 18

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Second, Double Down has consistently maintained that Plaintiffs' claims must be arbitrated.  Double Down invoked its rights to arbitrate at the very first available opportunity, in its first substantive filing in this case.  *See* Dkt. No. 44.  And it has maintained that position ever since, including by bringing this motion mere weeks after Plaintiffs' depositions established for the first time the viability of an actual notice argument.  *Cf. Van Ness Townhouses*, 862 F.2d at 759 (finding waiver based on party's "extended silence and much-delayed demand for arbitration").

Third, any prejudice Plaintiffs will suffer from enforcement of the arbitration agreement now is of their own making.  Plaintiffs have long known they would be subject to deposition, but chose to conceal the fact that they had actual notice of the Terms until now.  That the parties have already begun discovery is of no consequence.  *Id.* at 759 ("even extensive discovery…before moving to compel arbitration is insufficient prejudice for a waiver"); *see also Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 697 (9th Cir. 1986) (rejecting argument that motion to compel arbitration was prejudicial because plaintiffs "expended time, money, and effort on responding to pretrial motions and in preparing for trial").  Indeed, the risk of prejudice is particularly minor here, because all of Plaintiffs' claims are subject to arbitration, so there is no risk of duplicative parallel proceedings in litigation and arbitration.

Regardless, in the arbitration context, the only evidence of prejudice a court may consider is prejudice "resulting from [the moving party's] inconsistent acts."  *Fisher*, 791 F.2d at 698.  Because Double Down has acted consistently with its rights to compel arbitration against Plaintiffs, no waiver arguments can be asserted.

## I.     The Court Should Stay the Litigation Pending Arbitration.

Under the FAA, if a court determines that a dispute falls within the scope of a valid arbitration agreement, further proceedings must be stayed "until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3; *see also Dean Witter*, 470 U.S. at 218 (FAA mandates that the court "*shall* direct the parties to proceed to arbitration").  Accordingly, the Court should stay Plaintiffs' claims pending arbitration.

DOUBLE DOWN'S RENEWED MOTION TO
COMPEL ARBITRATION AND TO STAY
(2:18-CV-00525-RSL) - 19

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## IV.    CONCLUSION

For the foregoing reasons, Double Down respectfully requests the Court grant this motion and (1) compel Plaintiffs to pursue all of their claims in arbitration; and (2) stay this action pending disposition of the arbitration proceeding.

DATED this 6th day of May, 2021

DAVIS WRIGHT TREMAINE LLP

Attorneys for Double Down Interactive, LLC

By *s/ Jaime Drozd Allen*
Jaime Drozd Allen, WSBA #35742
Stuart R. Dunwoody, WSBA #13948
Cyrus E. Ansari, WSBA #52966
Benjamin J. Robbins, WSBA #53376
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: 206-757-8039
Fax: 206-757-7039
E-mail: jaimeallen@dwt.com
E-mail: stuartdunwoody@dwt.com
E-mail: cyrusansari@dwt.com
E-mail: benrobbins@dwt.com

Sean M. Sullivan (admitted *pro hac vice*)
Sarah E. Burns (admitted *pro hac vice*)
865 South Figueroa Street
Los Angeles, CA 90017
Telephone: 213-633-6800
Fax: 213-633-6899
E-mail: seansullivan@dwt.com
E-mail: sarahburns@dwt.com

DOUBLE DOWN'S RENEWED MOTION TO
COMPEL ARBITRATION AND TO STAY
(2:18-CV-00525-RSL) - 20

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax