1
2
3
4
5
6

The Honorable Robert S. Lasnik

7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10
11
12
13
14
15
16

ADRIENNE BENSON and MARY
SIMONSON, individually and on behalf of all
others similarly situated,

Plaintiffs,

v.

DOUBLE DOWN INTERACTIVE, LLC, a
Washington limited liability company, and
INTERNATIONAL GAME TECHNOLOGY, a
Nevada corporation,

Defendant.

Case No. 2:18-cv-00525-RSL

DOUBLE DOWN INTERACTIVE,
LLC'S ANSWER TO SECOND
AMENDED CLASS ACTION
COMPLAINT

**JURY DEMAND**

17
18
19
20
21
22
23
24

Defendant Double Down Interactive, LLC ("Double Down") files this answer to Plaintiffs Adrienne Benson's and Mary Simonson's Second Amended Class Action Complaint (the "Second Amended Complaint"). To the extent that any allegation in the Second Amended Complaint is not specifically admitted, the allegation is denied. Double Down denies all allegations contained in headings and unnumbered paragraphs, and Double Down denies all allegations except for those expressly admitted below. Double Down answers the corresponding numbered paragraphs of the Second Amended Complaint as follows:

25

**NATURE OF THE ACTION**

26
27

1.      Defendants own and operate video game development companies in the so-called "casual games" industry—that is, computer games designed to appeal to a mass audience

of casual gamers.  Defendants (at all relevant times) owned and operated a popular online casino under the name Double Down Casino.

**ANSWER:**  Double Down admits that it operates as a video game development company, and owns and operates the game DoubleDown Casino.  Double Down denies the remaining allegations in paragraph 1.

2.	Double Down Casino is available to play on Android, and Apple iOS devices, and on Facebook.

**ANSWER:**  Double Down admits that DoubleDown Casino can be accessed on Android, and Apple iOS devices, and on Facebook.

3.	Defendants provide a bundle of free "chips" to first-time visitors of Double Down Casino that can be used to wager on games within Double Down Casino.  After consumers inevitably lose their initial allotment of chips, Defendants attempt to sell them additional chips for real money.  Without chips, consumers cannot play the gambling game.

**ANSWER:**  Double Down denies the allegations in paragraph 3.

4.	Freshly topped off with additional chips, consumers wager to win more chips. The chips won by consumers playing Defendants' games of chance are identical to the chips that Defendants sell.  Thus, by wagering chips that have been purchased for real money, consumers have the chance to win additional chips that they would otherwise have to purchase.

**ANSWER:**  Double Down denies the allegations in paragraph 4.

5.	By operating the Double Down Casino, Defendants have violated Washington law and illegally profited from tens of thousands of consumers.  Accordingly, Plaintiffs, on behalf of themselves and a Class of similarly situated individuals, bring this lawsuit to recover their losses, as well as costs and attorneys' fees.

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 2
(2:18-cv-00525-RSL)

1    **ANSWER:**  Double Down denies the allegations in paragraph 5.

2

3

4                                **PARTIES**

5        6.        Plaintiff Adrienne Benson is a natural person and a citizen of the state of

6    Washington.

7        **ANSWER:**  Double Down lacks knowledge or information sufficient to form a belief

8    as to the truth of the allegations in paragraph 6.

9

10       7.        Plaintiff Mary Simonson is a natural person and a citizen of the state of

11   Washington.

12       **ANSWER:**  Double Down lacks knowledge or information sufficient to form a belief

13   as to the truth of the other allegations in paragraph 7.

14

15       8.        Defendant Double Down Interactive, LLC is a limited liability company

16   organized and existing under the laws of the State of Washington with its principal place of

17   business at 605 Fifth Avenue South, Suite 300, Seattle, Washington 98104.  Double Down

18   conducts business throughout this District, Washington State, and the United States.

19       **ANSWER:**  Double Down admits that Double Down Interactive, LLC is a limited

20   liability company organized and existing under the laws of the State of Washington with its

21   principal place of business at 605 Fifth Avenue South, Suite 300, Seattle, Washington 98104

22   and that it conducts business in this district and Washington State.  Double Down denies the

23   remaining allegations in paragraph 8.

24

25       9.        Defendant International Game Technology is a corporation existing and

26   organized under the laws of the State of Nevada with its principal place of business at 6355

27

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 3
(2:18-cv-00525-RSL)

South Buffalo Drive, Las Vegas, Nevada 89113.  IGT conducts business throughout this District, Washington State, and the United States.

**ANSWER:**  Double Down lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9.

10.     Defendant IGT, a subsidiary of International Game Technology, is a corporation existing and organized under the laws fo the State of Nevada with its principal place of business at 6355 South Buffalo Drive, Las Vegas, Nevada 89133.  IGT conducts business throughout this District, Washington State, and the United States.  IGT conducts business throught this District, Washington State, and the United States. (*sic*)

**ANSWER:**  Double Down lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10.

### JURISDICTION AND VENUE

11.     Federal subject-matter jurisdiction exists under 28 U.S.C. § 1332(d)(2) because (a) at least one member of the class is a citizen of a state different from any Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the exceptions under that subsection apply to this action.

**ANSWER:**  To the extent paragraph 11 states a legal conclusion, no answer is required. To the extent an answer is required, Double Down denies the allegations in paragraph 11.

12.     The Court has personal jurisdiction over Defendants because Defendants conduct significant business transactions in this District, and because the wrongful conduct occurred in and emanated from this District.

**ANSWER:**  Double Down admits that this Court has personal jurisdiction over Double Down with respect to the named Plaintiffs' claims under Washington law.  Double Down denies the remaining allegations in paragraph 12.

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 4
(2:18-cv-00525-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

2          13.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial

3    part of the events giving rise to Plaintiffs' claims occurred in and emanated from this District.

4          **ANSWER:**  To the extent paragraph 13 states a legal conclusion, no answer is required.

5    To the extent an answer is required, Double Down denies the allegations in paragraph 13, and

6    further denies that this forum is proper, because Plaintiffs agreed to arbitrate their claims.

7

8                                **FACTUAL ALLEGATIONS**

9    **I.       Free-to-Play and the New Era of Online Gambling**

10         14.      The proliferation of internet-connected mobile devices has led to the growth of

11   what are known in the industry as "free-to-play" videogames.  The term is a misnomer.  It

12   refers to a model by which the initial download of the game is free, but companies reap huge

13   profits by selling thousands of "in-game" items that start at $0.99 (purchases known as "micro-

14   transactions" or "in-app purchases").

15         **ANSWER:**  Double Down lacks knowledge or information sufficient to form a belief

16   as to the truth of the allegations in paragraph 14.

17

18         15.      The in-app purchase model has become particularly attractive to developers of

19   games of chance (*e.g.*, poker, blackjack, and slot machine mobile videogames, amongst others),

20   because it allows them to generate huge profits.  In 2017, free-to-play games of chance

21   generated over $3.8 billion in worldwide revenue, and they are expected to grow by ten percent

22   annually.[1]  Even "large land-based casino operators are looking at this new space" for "a

23   healthy growth potential."[2]

24

25   _____

26   [1] GGRAsia – Social casino games 2017 revenue to rise 7pct plus says report, http://www.ggrasia.com/social-casino-games-2017-revenue-to-rise-7pct-plus-says-report/ (last visited Jul. 23, 18)

27   [2] *Report confirms that social casino games have hit the jackpot with $1.6B in revenue | GamesBeat*, https://venturebeat.com/2012/09/11/report-confirms-that-social-casino-games-have-hit-the-jackpot-with-1-6b-in-revenue/ (last visited Jul. 23, 18)

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 5
(2:18-cv-00525-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    **ANSWER:**  Double Down lacks knowledge or information sufficient to form a belief

2    as to the truth of the allegations in paragraph 15.

3

4    16.    With games of chance that employ the in-game purchase strategy, developers

5    have begun exploiting the same psychological triggers as casino operators.  As one respected

6    videogame publication put it:

> "If you hand someone a closed box full of promised goodies,
> many will happily pay you for the crowbar to crack it open.  The
> tremendous power of small random packs of goodies has long
> been known to the creators of physical collectible card games and
> companies that made football stickers a decade ago.  For some ...
> the allure of a closed box full of goodies is too powerful to resist.
> Whatever the worth of the randomised [sic] prizes inside, the
> offer of a free chest and the option to buy a key will make a small
> fortune out of these personalities.  For those that like to gamble,
> these crates often offer a small chance of an ultra-rare item."[3]

**ANSWER:**  Double Down lacks knowledge or information sufficient to form a belief

as to the truth of the allegations in paragraph 16.

17.    Another stated:

> "Games may influence 'feelings of pleasure and reward,' but this
> is an addiction to the games themselves; micro-transactions play
> to a different kind of addiction that has existed long before video
> games existed, more specifically, an addiction similar to that
> which you could develop in casinos and betting shops."[4]

**ANSWER:**  Double Down lacks knowledge or information sufficient to form a belief

as to the truth of the allegations in paragraph 17.

18.    The comparison to casinos doesn't end there.  Just as with casino operators,

mobile game developers rely on a small portion of their players to provide the majority of their

---

[3] PC Gamer, *Microtransactions:  the good, the bad and the ugly*, http://www.pcgamer.com/microtransactions-the-good-the-bad-and-the-ugly/ (last visited Apr.  5, 2018).
[4] The Badger, *Are micro-transactions ruining video games?  | The Badger*, http://thebadgeronline.com/2014/11/micro-transactions-ruining-video-games/ (last visited Apr.  5, 2018).

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

profits.  These "whales," as they're known in casino parlance, account for just "0.15% of

players" but provide "over 50% of mobile game revenue."[5]

      **ANSWER:**  Double Down lacks knowledge or information sufficient to form a belief

as to the truth of the allegations in paragraph 18.


      19.     Game Informer, another respected videogame magazine, reported on the rise

(and danger) of micro-transactions in mobile games and concluded:

> "[M]any new mobile and social titles target small, susceptible
> populations for large percentages of their revenue.  If ninety-five
> people all play a [free-to-play] game without spending money,
> but five people each pour $100 or more in to obtain virtual
> currency, the designer can break even.  These five individuals are
> what the industry calls whales, and we tend not to be too
> concerned with how they're being used in the equation.  While
> the scale and potential financial ruin is of a different magnitude, a
> similar profitability model governs casino gambling."[6]

      **ANSWER:**  Double Down lacks knowledge or information sufficient to form a belief

as to the truth of the allegations in paragraph 19.

---

[5] *Id*.  (emphasis added).

[6] Game Informer, *How Microtransactions Are Bad For Gaming - Features - www.GameInformer.com*,
http://www.gameinformer.com/b/features/archive/2012/09/12/how-microtransactions-are-bad-for-
gaming.aspx?CommentPosted=true&PageIndex=3 (last visited Apr. 5, 2018)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

20.     Academics have also studied the socioeconomic effect games that rely on in-app purchases have on consumers.  In one study, the authors compiled several sources analyzing so-called free-to-play games of chance (called "casino" games below) and stated that:

> "[Researchers] found that [free-to-play] casino gamers share many similar sociodemographic characteristics (*e.g.*, employment, education, income) with online gamblers.  Given these similarities, it is perhaps not surprising that a strong predictor of online gambling is engagement in [free-to-play] casino games.  Putting a dark line under these findings, over half (58.3%) of disordered gamblers who were seeking treatment stated that social casino games were their first experiences with gambling."
>
> ...
>
> "According to [another study], the purchase of virtual credits or virtual items makes the activity of [free-to-play] casino gaming more similar to gambling.  Thus, micro-transactions may be a crucial predictor in the migration to online gambling, as these players have now crossed a line by paying to engage in these activities.  Although, [sic] only 1–5% of [free-to-play] casino gamers make micro-transactions, those who purchase virtual credits spend an average of $78.  Despite the limited numbers of social casino gamers purchasing virtual credits, revenues from micro-transactions account for 60 % of all [free-to-play] casino gaming revenue.  Thus, a significant amount of revenue is based on players' desire to purchase virtual credits above and beyond what is provided to the player in seed credits."[7]

**ANSWER:**  Double Down lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20.

21.     The same authors looked at the link between playing free-to-play games of chance and gambling in casinos.  They stated that "prior research indicated that winning large sums of virtual credits on social casino gaming sites was a key reason for [consumers'] migration to online gambling," yet the largest predictor that a consumer will transition to online gambling was "micro-transaction engagement."  In fact, "the odds of migration to online

---

[7] Hyoun S. Kim, Michael J. A. Wohl, *et al., Do Social Casino Gamers Migrate to Online Gambling?  An Assessment of Migration Rate and Potential Predictors*, Journal of gambling studies / co-sponsored by the National Council on Problem Gambling and Institute for the Study of Gambling and Commercial Gaming (Nov. 14, 2014), *available at* http://link.springer.com/content/pdf/10.1007%2Fs10899-014-9511-0.pdf (citations omitted).

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 8
(2:18-cv-00525-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

gambling were approximately *eight times greater* among people who made micro-transactions on [free-to-play] casino games compared to [free-to-play] casino gamers who did not make micro-transactions."[8]

**ANSWER:**  Double Down lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21.

22.     The similarity between micro-transaction games of chance and games of chance found in casinos has caused governments across the world to intervene to limit their availability.[9]  Unfortunately, such games have eluded regulation in the United States.  As a result, and as described below, Defendants' online casino games have thrived and thousands of consumers have spent millions of dollars unwittingly playing Defendants' unlawful games of chance.

**ANSWER:**  Double Down denies the allegations in paragraph 22.

## II.     A Brief Introduction to Double Down and IGT

23.     Double Down is a leading game developer with an extensive library of free-to-play online casino games.  Double Down sells in-app chips to consumers in the Double Down Casino so that consumers can play various online casino games in Double Down Casino.

**ANSWER:**  Double Down admits that it is a game developer offering online games and that Double Down offers in-app virtual chips to its players.  Double Down denies the remaining allegations in paragraph 23.

---

[8] *Id.*  (emphasis added).

[9] In late August 2014, South Korea began regulating "social gambling" games, including games similar to Defendants', by "ban[ning] all financial transactions directed" to the games.  PokerNews.com, *Korea Shuts Down All Facebook Games In Attempt To Regulate Social Gambling | PokerNews*, https://www.pokernews.com/news/2014/09/korea-shuts-down-facebook-games-19204 htm (last visited Apr. 5, 2018).  Similarly, "the Maltese Lotteries and Gambling Authority (LGA) invited the national Parliament to regulate all digital games with prizes by the end of 2014."  *Id.*

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 9
(2:18-cv-00525-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    24.    IGT is a global leader in the gaming industry with long ties to the traditional

2    casino market.  It has developed a multitude of casino and lottery games, including traditional

3    slot machines and video lottery terminals.  In 2012, IGT acquired Double Down and its library

4    of online casino games, and has since "grown into one of the largest and most successful

5    brands in the North American social casino market."[10]

6    **ANSWER:**  Double Down admits that IGT acquired Double Down in 2012.  Double

7    Down lacks knowledge or information sufficient to form a belief as to the truth of the

8    remaining allegations in paragraph 24.

9

10   25.    In 2017, IGT sold DoubleDown for $825 million to DoubleU Games.[11]  In

11   addition to the sale, IGT has also entered into a long-term game development and distribution

12   agreement with DoubleU to offer its online casino games in DoubleDown Casino.[12]  IGT notes

13   that it will continue to collect royalties from its online casino game content.[13]

14   **ANSWER:**  Double Down admits that IGT sold Double Down in 2017 and that IGT

15   entered into certain agreements with DoubleU Games. Double Down denies the remaining

16   allegations in paragraph 25.

17

18

19

20

21

22

23

---

[10] *IGT To Sell Online Casino Unit DoubleDown To South Korean Firm For $825 Million - Poker News*,
https://www.cardplayer.com/poker-news/21554-igt-to-sell-online-casino-unit-doubledown-to-south-korean-firm-
for-825-million (last visited Ap. 6, 2018).
[11] *Id.*
[12] *IGT Completes Sale Of DoubleDown Interactive LLC To DoubleU Games,* https://www.prnewswire.com/news-
releases/igt-completes-sale-of-double-down-interactive-llc-to-doubleu-games-300467524.html (last visited Apr.
6, 2018).
[13] *Id.*

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 10
(2:18-cv-00525-RSL)

26.      Defendants have made large profits through their online casino games.  In 2016, alone, Double Down generated $280 million in revenue.  As explained further below, however, the revenue Defendants receives from Double Down Casino is the result of operating unlawful games of chance camouflaged as innocuous videogames.

**ANSWER:**  Double Down admits that its 2016 revenue was $280 million.  Double Down denies the remaining allegations in paragraph 26.

III.    **Defendants' Online Casino Contains Unlawful Games of Chance**

27.      Consumers visiting Double Down Casino for the first time are awarded 1 million free chips.  *See* Figure 1.  These free sample chips offer a taste of gambling and are designed to encourage player to get hooked and buy more chips for real money.



(**Figure 1.**)

**ANSWER:**  Double Down admits that new users of DoubleDown Casino receive free chips, which amounts may vary depending on time period and promotion.  Double Down denies the remaining allegations in paragraph 27.  Double Down cannot verify the authenticity of the cropped screenshot in Figure 1 and therefore denies it.

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 11
(2:18-cv-00525-RSL)

1

2          28.      After they begin playing, consumers quickly lose their initial allotment of chips.

3   Immediately thereafter, Double Down Casino informs them via a "pop up" screen that they

4   have "insufficient funds."  *See* <u>Figure 2</u>.  Once a player runs out of their allotment of free chips,

5   they cannot continue to play the game without buying more chips for real money.

6

7

8                          

9

10

11

12

13

14

15

16

17          (**<u>Figure 2.</u>**)

18          **<u>ANSWER</u>:**  Double Down admits that when users do not have enough chips to play

19   they can, but do not necessarily, receive the message "insufficient funds to spin," and are

20   presented with the choice of purchasing additional chips or playing indefinitely without

21   purchasing chips by playing in "fun mode."  Double Down denies the remaining allegations in

22   paragraph 28.  Double Down cannot verify the authenticity of the cropped screenshot in Figure

23   2 and therefore denies it.

24

25

26

27

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 12
(2:18-cv-00525-RSL)

29.     To continue playing the online casino game, consumers navigate to Double Down Casino's electronic store to purchase chips ranging in price from $2.99 for 300,000 chips to $99.99 for 100,000,000 chips.  *See* Figure 3.



(**Figure 3.**)

**ANSWER:**  Double Down admits that users can purchase chips from the DoubleDown Casino store, or can continue to play DoubleDown Casino indefinitely without purchasing chips by playing in "fun mode."  Double Down denies the remaining allegations in paragraph 29, and further denies that users must purchase chips to continue to play DoubleDown Casino. Double Down cannot verify the authenticity of the cropped screenshot in Figure 3 and therefore denies it.

30.     The decision to sell chips by the thousands isn't an accident.  Rather, Defendants attempt to lower the perceived cost of the chips (costing just a fraction of a penny per chip) while simultaneously maximizing the value of the award (awarding millions of chips in jackpots), further inducing consumers to bet on their games.

**ANSWER:**  Double Down denies the allegations in paragraph 30.

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 13
(2:18-cv-00525-RSL)

1

2    31.    To begin wagering, players select the "LINE BET" that will be used for a spin,

3    as illustrated in Figure 4.  Double Down Casino allows players to increase or decrease the

4    amount he or she can wager and ultimately win (or lose).  Double Down Casino allows players

5    to multiply their bet by changing the number of "lines" (i.e., combinations) on which the

6    consumer can win, shown in Figure 4 as the "LINE" button.

7

8    

9

10   (**Figure 4.**)

11   **ANSWER:**  Double Down admits that players can increase or decrease the "LINE

12   BET" and "LINE" settings for certain games in DoubleDown Casino.  Double Down denies the

13   remaining allegations in paragraph 31.  Double Down cannot verify the authenticity of the

14   cropped screenshot in Figure 4 and therefore denies it.

15

16   32.    Once a consumer spins the slot machine by pressing "SPIN" button, no action

17   on his or her part is required.  Indeed, none of the Double Down Casino games allow (or call

18   for) any additional user action.  Instead, the consumer's computer or mobile device

19   communicates with and sends information (such as the "TOTAL BET" amount) to the Double

20   Down Casino servers.  The servers then execute the game's algorithms that determine the

21   spin's outcome.  Notably, none of Defendants' games depend on any amount of skill to

22   determine their outcomes—all outcomes are based entirely on chance.

23   **ANSWER:**  Double Down admits that, for certain games in DoubleDown Casino, once

24   a user presses the "SPIN" button, no action on his or her part is required to determine the

25   outcome of the turn.  Double Down denies the remaining allegations in paragraph 32.

26

27

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 14
(2:18-cv-00525-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

33.     Consumers can continue playing with the chips that they won, or they can exit the game and return at a later time to play because Double Down Casino maintains win and loss records and account balances for each consumer.  Indeed, once Defendants' algorithms determine the outcome of a spin and Double Down Casino displays the outcome to the consumer, Defendants adjusts the consumer's account balance.  Defendants keep records of each wager, outcome, win, and loss for every player.

**ANSWER:**  Double Down admits that users can play DoubleDown Casino with chips, or they can exit the game and return at a later time to play, and that DoubleDown Casino maintains win and loss records and account balances.  Double Down denies the remaining allegations in paragraph 33.

### FACTS SPECIFIC TO PLAINTIFF BENSON

34.     Since 2013, Plaintiff Benson has been playing Double Down Casino on Facebook.  After Benson lost the balance of her initial allocation of free chips, she purchased chips from the Double Down Casino electronic store.

**ANSWER:**  Double Down admits that, since 2013, Plaintiff Benson has played DoubleDown Casino on Facebook, and admits that Plaintiff Benson purchased chips from the DoubleDown Casino store.  Double Down denies the remaining allegations in paragraph 34.

35.     Thereafter, Benson continued playing various slot machines and other games of chance within the Double Down Casino where she would wager chips for the chance of winning additional chips.  Since 2016, Benson has wagered and lost (and Defendants therefore won) over $1,000 at Defendants' games of chance.

**ANSWER:**  Double Down admits that Plaintiff Benson has played games in DoubleDown Casino using chips.  Double Down denies the remaining allegations in paragraph 35.

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 15
(2:18-cv-00525-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**FACTS SPECIFIC TO PLAINTIFF SIMONSON**

36.      Since 2017, Plaintiff Simonson has been playing Double Down Casino on her mobile phone.  After Simonson lost the balance of her initial allocation of free chips, she purchased chips from the Double Down Casino electronic store.

**ANSWER:**  Double Down admits that, since 2017, Plaintiff Simonson has played DoubleDown Casino on a mobile device, and admits that Plaintiff Simonson purchased chips from the DoubleDown Casino store.  Double Down denies the remaining allegations in paragraph 36.

37.      Thereafter, Simonson continued playing various slot machines and other games of chance within the Double Down Casino where she would wager chips for the chance of winning additional chips.  Since December 2017, Simonson has wagered and lost (and Defendants therefore won) over $200 at Defendants' games of chance.

**ANSWER:**  Double Down admits that Plaintiff Simonson has played games in DoubleDown Casino using chips.  Double Down denies the remaining allegations in paragraph 37.

**CLASS ALLEGATIONS**

38.      **Class Definition:**  Plaintiffs Benson and Simonson bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and a Class of similarly situated individuals, defined as follows:

> All persons in the United States who purchased and lost chips by wagering at the Double Down Casino.

The following people are excluded from the Class:  (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) persons

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 16
(2:18-cv-00525-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

**ANSWER:**  Double Down denies the allegations in paragraph 38, and further denies that Plaintiffs can represent the class of people they attempt to define.

39.    **Numerosity:**  On information and belief, tens of thousands of consumers fall into the definition of the Class.  Members of the Class can be identified through Defendants' records, discovery, and other third-party sources.

**ANSWER:**  Double Down denies the allegations in paragraph 39.

40.    **Commonality and Predominance:**  There are many questions of law and fact common to Plaintiffs' and the Class's claims, and those questions predominate over any questions that may affect individual members of the Class.  Common questions for the Class include, but are not necessarily limited to the following:

a.    Whether Double Down Casino games are "gambling" as defined by RCW 9.46.0237;

b.    Whether Defendants are the proprietors for whose benefit the online casino games are played;

c.    Whether Plaintiffs and each member of the Class lost money or anything of value by gambling;

d.    Whether Defendants violated the Washington Consumer Protection Act, RCW 19.86.010, *et seq.*; and

e.    Whether Defendants have been unjustly enriched as a result of their conduct.

**ANSWER:**  To the extent paragraph 40 states legal conclusions, no answer is required. To the extent an answer is required, Double Down denies the allegations in paragraph 40.

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 17
(2:18-cv-00525-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

2     41.    **Typicality:**  Plaintiffs' claims are typical of the claims of other members of the

3   Class in that Plaintiffs' and the members of the Class sustained damages arising out of

4   Defendants' wrongful conduct.

5     **ANSWER:**  Double Down denies the allegations in paragraph 41.

6

7     42.    **Adequate Representation:**  Plaintiffs will fairly and adequately represent and

8   protect the interests of the Class and have retained counsel competent and experienced in

9   complex litigation and class actions.  Plaintiffs' claims are representative of the claims of the

10   other members of the Class, as Plaintiffs and each member of the Class lost money playing

11   Defendants' games of chance.  Plaintiffs also have no interests antagonistic to those of the

12   Class, and Defendants have no defenses unique to Plaintiffs.  Plaintiffs and their counsel are

13   committed to vigorously prosecuting this action on behalf of the Class and have the financial

14   resources to do so.  Neither Plaintiffs nor their counsel have any interest adverse to the Class.

15     **ANSWER:**  Double Down lacks knowledge or information sufficient to form a belief

16   as to the truth of the allegations in paragraph 42.

17

18     43.    **Policies Generally Applicable to the Class:**  This class action is appropriate for

19   certification because Defendants have acted or refused to act on grounds generally applicable to

20   the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure

21   compatible standards of conduct toward the members of the Class and making final injunctive

22   relief appropriate with respect to the Class as a whole.  Defendants' policies that Plaintiffs

23   challenges apply and affect members of the Class uniformly, and Plaintiffs' challenge of these

24   policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law

25   applicable only to Plaintiffs.  The factual and legal bases of Defendants' liability to Plaintiffs

26   and to the other members of the Class are the same.

27     **ANSWER:**  Double Down denies the allegations in paragraph 43.

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 18
(2:18-cv-00525-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

44.    **Superiority:**  This case is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy.  The harm suffered by the individual members of the Class is likely to have been relatively small compared to the burden and expense of prosecuting individual actions to redress Defendants' wrongful conduct.  Absent a class action, it would be difficult if not impossible for the individual members of the Class to obtain effective relief from Defendants.  Even if members of the Class themselves could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties and the Court and require duplicative consideration of the legal and factual issues presented.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court.  Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**ANSWER:**  Double Down denies the allegations in paragraph 44.

45.    Plaintiffs reserve the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

**ANSWER:**  Double Down denies the allegations in paragraph 45.

## FIRST CAUSE OF ACTION

### Violations of Revised Code of Washington 4.24.070

### (On behalf of Plaintiffs and the Class)

46.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

**ANSWER:**  Double Down incorporates its answers to the foregoing allegations as if fully set forth herein.

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 19
(2:18-cv-00525-RSL)

47.     Plaintiffs, members of the Class, and Defendants are all "persons" as defined by RCW 9.46.0289.

**ANSWER:**  To the extent paragraph 47 states legal conclusions, no answer is required. To the extent an answer is required, Double Down denies the allegations in paragraph 47.

48.     The state of Washington's "Recovery of money lost at gambling" statute, RCW 4.24.070, provides that "all persons losing money or anything of value at or on any illegal gambling games shall have a cause of action to recover from the dealer or player winning, or from the proprietor for whose benefit such game was played or dealt, or such money or things of value won, the amount of the money or the value of the thing so lost."

**ANSWER:**  To the extent paragraph 48 states legal conclusions, no answer is required. To the extent an answer is required, Double Down admits that RCW 4.24.070 states that, "[a]ll persons losing money or anything of value at or on any illegal gambling games shall have a cause of action to recover from the dealer or player winning, or from the proprietor for whose benefit such game was played or dealt, or such money or things of value won, the amount of the money or the value of the thing so lost[,]" but denies that Double Down has violated the statute.  Double Down denies the remaining allegations in paragraph 48.

49.     "Gambling," defined by RCW 9.46.0237, "means staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence."

**ANSWER:**  To the extent paragraph 48 states legal conclusions, no answer is required. To the extent an answer is required, Double Down denies that paragraph 49 fully and accurately quotes RCW 9.46.0237.  Double Down denies the remaining allegations in paragraph 49.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

50.     Defendants' "chips" sold for use at the Double Down Casino are "thing[s] of value" under RCW § 9.46.0285.

**ANSWER:**  To the extent paragraph 50 states legal conclusions, no answer is required. To the extent an answer is required, Double Down denies the allegations in paragraph 50.

51.     DoubleDown Casino games are illegal gambling games because they are online games at which players wager things of value (the chips) and by an element of chance (*e.g.*, by spinning an online slot machine) are able to obtain additional entertainment and extend gameplay (by winning additional chips).

**ANSWER:**  To the extent paragraph 51 states legal conclusions, no answer is required. To the extent an answer is required, Double Down denies the allegations in paragraph 51.

52.     Defendants Double Down and IGT are the proprietors for whose benefit the online gambling games are played because they operate the Double Down Casino games and/or derive profit from their operation.

**ANSWER:**  To the extent paragraph 52 states legal conclusions, no answer is required. To the extent an answer is required, Double Down denies the allegations in paragraph 52.

53.     As such, Plaintiffs and the Class gambled when they purchased chips to wager at Double Down Casino.  Plaintiffs and each member of the Class staked money, in the form of chips purchased with money, at Defendants' games of chance (*e.g.*, Double Down Casino slot machines and other games of chance) for the chance of winning additional things of value (*e.g.*, chips that extend gameplay without additional charge).

**ANSWER:**  To the extent paragraph 53 states legal conclusions, no answer is required. To the extent an answer is required, Double Down denies the allegations in paragraph 53.

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 21
(2:18-cv-00525-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

54.     In addition, Double Down Casino games are not "pinball machine[s] or similar mechanical amusement device[s]" as contemplated by the statute because:

a.     the games are electronic rather than mechanical;

b.     the games confer replays but they are recorded and can be redeemed on separate occasions (*i.e.*, they are not "immediate and unrecorded"); and

c.     the games contain electronic mechanisms that vary the chance of winning free games or the number of free games which may be won (*e.g.*, the games allow for different wager amounts).

**ANSWER:**  To the extent paragraph 54 states legal conclusions, no answer is required. To the extent an answer is required, Double Down denies the allegations in paragraph 54.


55.     RCW 9.46.0285 states that a "'Thing of value,' as used in this chapter, means any money or property, any token, object or article exchangeable for money or property, or any form of credit or promise, directly or indirectly, contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge."

**ANSWER:**  To the extent paragraph 55 states legal conclusions, no answer is required. To the extent an answer is required, Double Down admits that RCW 9.46.0285 states that a "'Thing of value,' as used in this chapter, means any money or property, any token, object or article exchangeable for money or property, or any form of credit or promise, directly or indirectly, contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge[,]" but denies that Double Down has violated this statute.  Double Down denies the remaining allegation in paragraph 55.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

56.     The "chips" Plaintiffs and the Class had the chance of winning in Double Down Casino games are "thing[s] of value" under Washington law because they are credits that involve the extension of entertainment and a privilege of playing a game without charge.

**ANSWER:**  Double Down denies the allegations in paragraph 56.

57.     Double Down Casino games are "Contest[s] of chance," as defined by RCW 9.46.0225, because they are "contest[s], game[s], gaming scheme[s], or gaming device[s] in which the outcome[s] depend[] in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein."  Defendants' games are programmed to have outcomes that are determined entirely upon chance and a contestant's skill does not affect the outcomes.

**ANSWER:**  To the extent paragraph 57 states legal conclusions, no answer is required. To the extent an answer is required, Double Down denies the allegations in paragraph 57.

58.     RCW 9.46.0201 defines "Amusement game[s]" as games where "The outcome depends in a material degree upon the skill of the contestant," amongst other requirements. Double Down Casino games are not "Amusement game[s]" because their outcomes are dependent entirely upon chance and not upon the skill of the player and because the games are "contest[s] of chance," as defined by RCW 9.46.0225.

**ANSWER:**  To the extent paragraph 58 states legal conclusions, no answer is required. To the extent an answer is required, Double Down admits that paragraph 58 quotes a portion of RCW 9.46.0201, but denies that paragraph 58 fully quotes RCW 9.46.0201 and denies that Double Down has violated RCW 4.46.0201.  Double Down denies the remaining allegations in paragraph 58.

59.     As a direct and proximate result of Defendants' operation of their Double Down Casino games, Plaintiffs and each member of the Class have lost money wagering at

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 23
(2:18-cv-00525-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1   Defendants' games of chance.  Plaintiffs, on behalf of themselves and the Class, seek an order

2   (1) requiring Defendants to cease the operation of their games; and/or (2) awarding the

3   recovery of all lost monies, interest, and reasonable attorneys' fees, expenses, and costs to the

4   extent allowable.

5       **ANSWER:**  Double Down denies the allegations in paragraph 59, and further denies

6   that Plaintiffs are entitled to any order or award.

7

8                             **SECOND CAUSE OF ACTION**

9       Violations of the Washington Consumer Protection Act, RCW 19.86.010, *et seq.*

10  (On behalf of Plaintiffs and the Class)

11      60.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

12      **ANSWER:**  Double Down incorporates its answers to the foregoing allegations as if

13  fully set forth herein.

14

15      61.     Washington's Consumer Protection Act, RCW § 19.86.010 *et seq.*  ("CPA"),

16  protects both consumers and competitors by promoting fair competition in commercial markets

17  for goods and services.

18      **ANSWER:**  To the extent paragraph 61 states legal conclusions, no answer is required.

19  To the extent an answer is required, Double Down denies the allegations in paragraph 61.

20

21      62.     To achieve that goal, the CPA prohibits any person from using "unfair methods

22  of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce.

23  . . ."  RCW § 19.86.020.

24      **ANSWER:**  To the extent paragraph 62 states legal conclusions, no answer is required.

25  To the extent an answer is required, Double Down denies that paragraph 62 fully and

26  accurately quotes RCW 19.86.020 and denies that Double Down has violated RCW 19.86.020.

27  Double Down denies the remaining allegations in paragraph 62.

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 24
(2:18-cv-00525-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

63.     The CPA states that "a claimant may establish that the act or practice is injurious to the public interest because it. . . Violates a statute that contains a specific legislative declaration of public interest impact."

**ANSWER:**  To the extent paragraph 63 states legal conclusions, no answer is required. To the extent an answer is required, Double Down admits that paragraph 63 quotes a portion of RCW 19.86.093, but denies that paragraph 63 fully quotes RCW 19.86.093 and denies that Double Down has violated RCW 19.86.093.  Double Down denies the remaining allegations in paragraph 63.

64.     Defendants violated RCW § 9.46.010, *et seq.* which declares that:

> "The public policy of the state of Washington on gambling is to keep the criminal element out of gambling and to promote the social welfare of the people by limiting the nature and scope of gambling activities and by strict regulation and control.
>
> It is hereby declared to be the policy of the legislature, recognizing the close relationship between professional gambling and organized crime, to restrain all persons from seeking profit from professional gambling activities in this state; to restrain all persons from patronizing such professional gambling activities; to safeguard the public against the evils induced by common gamblers and common gambling houses engaged in professional gambling; and at the same time, both to preserve the freedom of the press and to avoid restricting participation by individuals in activities and social pastimes, which activities and social pastimes are more for amusement rather than for profit, do not maliciously affect the public, and do not breach the peace."

**ANSWER:**  To the extent paragraph 64 states legal conclusions, no answer is required. To the extent an answer is required, Double Down admits that paragraph 64 quotes RCW 9.46.010, in part.  Double Down denies the remaining allegations in paragraph 64.

65.     Defendants have violated RCW § 9.46.010, *et seq.*, because the Double Down Casino games are illegal online gambling games as described in ¶¶ 42-55 *supra*.

**ANSWER:**  To the extent paragraph 64 states legal conclusions, no answer is required. To the extent an answer is required, Double Down denies the allegations in paragraph 65.

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 25
(2:18-cv-00525-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

2      66.      Defendants' wrongful conduct occurred in the conduct of trade or commerce—

3   *i.e.*, while Defendants were engaged in the operation of making computer games available to

4   the public.

5      **ANSWER:**  Double Down denies the allegations in paragraph 66.

6

7      67.      Defendants' acts and practices were and are injurious to the public interest

8   because Defendants, in the course of their business, continuously advertised to and solicited the

9   general public in Washington state [sic] and throughout the United States to play their unlawful

10  online casino games of chance.  This was part of a pattern or generalized course of conduct on

11  the part of Defendants, and many consumers have been adversely affected by Defendants'

12  conduct and the public is at risk.

13     **ANSWER:**  Double Down denies the allegations in paragraph 67.

14

15     68.      Defendants have profited immensely from their operation of unlawful games of

16  chance, amassing hundreds of millions of dollars from the losers of their games of chance.

17     **ANSWER:**  Double Down denies the allegations in paragraph 68.

18

19     69.      As a result of Defendants' conduct, Plaintiffs and the Class members were

20  injured in their business or property—*i.e.*, economic injury—in that they lost money wagering

21  on Defendants' unlawful games of chance.

22     **ANSWER:**  Double Down denies the allegations in paragraph 69.

23

24     70.      Defendants' unfair or deceptive conduct proximately caused Plaintiffs' and the

25  Class members' injuries because, but for the challenged conduct, Plaintiffs and the Class

26  members would not have lost money wagering at or on Defendants' games of chance, and they

27  did so as a direct, foreseeable, and planned consequence of that conduct.

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 26
(2:18-cv-00525-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    **ANSWER:**  Double Down denies the allegations in paragraph 70.

2

3    71.    Plaintiffs, on their own behalf and on behalf of the Class, seek to enjoin further

4    violation and recover actual damages and treble damages, together with the costs of suit,

5    including reasonable attorneys' fees.

6    **ANSWER:**  Double Down denies the allegations in paragraph 71, and further denies

7    that Plaintiffs are entitled to an injunction or recovery.

8

9    **THIRD CAUSE OF ACTION**

10   **Unjust Enrichment**

11   **(On behalf of Plaintiffs and the Class)**

12   72.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth

13   herein.

14   **ANSWER:**  Double Down incorporates its answers to the foregoing allegations as if

15   fully set forth herein.

16

17   73.    Plaintiffs and the Class have conferred a benefit upon Defendants in the form of

18   the money Defendants received from them for the purchase of chips to wager on Double Down

19   Casino games.

20   **ANSWER:**  Double Down denies the allegations in paragraph 73.

21

22   74.    Defendants appreciate and/or have knowledge of the benefits conferred upon

23   them by Plaintiffs and the Class.

24   **ANSWER:**  Double Down denies the allegations in paragraph 74.

25

26   75.    Under principles of equity and good conscience, Defendants should not be

27   permitted to retain the money obtained from Plaintiffs and the members of the Class, which

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 27
(2:18-cv-00525-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Defendants have unjustly obtained as a result of their unlawful operation of unlawful online gambling games. As it stands, Defendants have retained millions of dollars in profits generated from their unlawful games of chance and should not be permitted to retain those ill-gotten profits.

**ANSWER:** Double Down denies the allegations in paragraph 75.

76. Accordingly, Plaintiffs and the Class seek full disgorgement and restitution of any money Defendants have retained as a result of the unlawful and/or wrongful conduct alleged herein.

**ANSWER:** Double Down denies the allegations in paragraph 76, and further denies that Plaintiffs are entitled to disgorgement or restitution.

## PRAYER FOR RELIEF

Double Down denies that Plaintiffs are entitled to any relief.

## AFFIRMATIVE DEFENSES

Below are Double Down's affirmative defenses. By setting forth these affirmative defenses, Double Down does not assume any burden of proof as to any fact issue or other element of any cause of action that properly belongs to Plaintiffs. Double Down reserves the right to amend or supplement its affirmative defenses.

1. **Improper forum or venue.** Plaintiffs' claims do not belong in this forum because Plaintiffs agreed to individual arbitration of their claims under the arbitration agreement and class waiver provisions of the Terms of Use, and therefore this court lacks subject matter jurisdiction pursuant to the Federal Arbitration Act, including, but not limited to, all players of DoubleDown Casino who have expressly, actually, or constructively agreed to the Terms of Use via clickwrap.

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 28
(2:18-cv-00525-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

2.      **Failure to state a claim.**  The First Amended Complaint fails to state a claim against Double Down, in whole or in part, upon which relief can be granted.

3.      **Statutory defenses in the Washington Gambling Act, Recovery of Money Lost at Gambling Act, and the Washington Consumer Protection Act.** Double Down is entitled to each and every defense or limitation of liability set forth in the Washington Gambling Act, the Recovery of Money Lost at Gambling Act, and the Washington Consumer Protection Act.

4.      **Statute of limitations.**  Plaintiffs' claims are barred by the applicable statutes of limitations, including without limitation the period set forth in the Terms of Use.

5.      **Laches.**  Plaintiffs' claims are barred by the doctrine of laches.

6.      **Barred by agreement (contractual limitations).**  Plaintiffs' claims are barred, in whole or in part, by the terms of the parties' agreements, including without limitation the Terms of Use, including, but not limited to, all players of DoubleDown Casino who have expressly, actually, or constructively agreed to the Terms of Use via clickwrap.

7.      **Disclaimer.**  Plaintiffs' claims are barred, in whole or in part, because Double Down disclaimed liability, including without limitation in the Terms of Use.

8.      **Release, novation, accord and satisfaction, or waiver.**  Plaintiffs' claims fail, in whole or in part, under the doctrines of release, waiver, accord and satisfaction, or waiver, including without limitation because Plaintiffs knowingly continued to voluntarily use the services and to the extent Plaintiffs recover or have recovered monies or other relief concerning the subject matter of this action from any source.

9.      **Consent, estoppel, ratification, account stated, acquiescence, and voluntary action.**  Plaintiffs' claims fail, in whole or in part, under the doctrines of consent, estoppel, ratification, account stated, or acquiescence, and due to their voluntary action, including without limitation because Plaintiffs were aware of,

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 29
(2:18-cv-00525-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

ratified, and benefited from the conduct of which they now complain, and consented to the alleged damages by their voluntary conduct.

10. **Lack of injury.**  Plaintiffs' claims fail, in whole or in part, because they have not sustained any cognizable injury or damages.

11. **Lack of causation.**  Double Down was not the direct or proximate cause of Plaintiffs' alleged damages.

12. **Failure to mitigate.**  Plaintiffs failed to mitigate their alleged damages.

13. **Comparative fault and assumption of risk.**  Plaintiffs assumed the risk of their voluntary conduct and the responsibility to participate only in compliance with applicable law.

14. **Acts of third parties.**  All or part of the damages alleged in the Complaint, if any, were caused by the acts or omissions of other persons or entities for whose conduct Double Down is not legally responsible.

15. **Adequate remedy at law.**  Plaintiffs' claims for equitable relief fail because Plaintiffs have an adequate remedy at law.

16. **Set-off.**  Any relief granted to Plaintiff, which Double Down disputes, must be set-off by the amounts that Double Down has refunded to any Plaintiff or putative class member or by any amount that a Plaintiff or putative class member owes Double Down.

17. **Unclean hands.**  All of Plaintiffs' claims are barred by the doctrine of unclean hands.

18. **Unjust enrichment.**  Plaintiffs' claims are barred, in whole or in part, because any recovery from Double Down would result in Plaintiffs' unjust enrichment.

19. **Compliance; preemption.**  Plaintiffs' claims fail, in whole or in part, because Double Down complied with applicable federal and state statutes and regulations.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

20. **Voluntary payment doctrine.** Plaintiffs' claims are barred, in whole or in part, by the voluntary payment doctrine.

21. **Independent duty doctrine.** Plaintiffs' claims are barred, in whole or in part, by the independent duty doctrine.

22. **Bona fide business transaction.** Plaintiffs' claims fail, in whole or in part, on the grounds that the alleged transactions constitute "bona fide business transactions" under RCW 9.46.0237, and because Plaintiffs received the benefit of the bargain while playing the alleged games.

23. **Unconstitutional punitive damages.** Plaintiffs seek improper punitive damages in violation of the United States Constitution and other applicable law.

24. **No attorneys' fees.** Plaintiffs cannot establish facts sufficient to support their claim for attorneys' fees, and Plaintiffs are not entitled to recover attorneys' fees in this action.

25. **Reliance on government agencies and application of the rule of lenity.** Plaintiffs' claims fail, in whole or in part, on the grounds that Double Down relied on guidance from relevant government agencies, including without limitation the Washington Gambling Commission which published materials on its website from 2013-2018 acknowledging that the use and sale of virtual chips to be used in games of chance without any cash or property prize is not gambling under Washington law, specifically noting that DoubleDown Casino, and the lack of enforcement action of any kind taken by the Washington State Gambling Commission or any other law enforcement body.

26. **Freedom of speech.** Double Down, as the publisher of DoubleDown Casino, which is an expressive work, is entitled to freedom-of-speech protections under the First Amendment of the U.S. Constitution, under the Washington State Constitution, and under other applicable statutory or common-law protections of

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 31
(2:18-cv-00525-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

speech or expressive works.  Plaintiffs' claims are barred to the extent such

claims infringe on Double Down's right to free speech.

27.   **Choice of law; foreign law**.  Unnamed putative class members residing outside

of Washington State lack standing to assert claims under Washington law, and

Plaintiffs lack standing to represent such putative class members under the laws

of the various states that may apply to putative class member conduct.

28.   **Standing.**  Plaintiffs' claims, and those claims Plaintiffs purport to bring on

behalf of members of the putative class, are barred in whole or in part because

Plaintiffs and the putative class members lack standing to assert the alleged

claims.

29.   **No personal jurisdiction over absent class members.**  The court lacks

personal jurisdiction over any claims on behalf of absent members of the

putative class.

30.   **Improper forum for absent class members.**  Absent members of the putative

classes have a contractual obligation to arbitrate any claims they have arising out

of or relating to their use of DoubleDown Casino

31.   **Improper class allegations**.  The First Amended Complaint has failed to set

forth plausible allegations that satisfy the prerequisites for class certification,

including without limitation because the claims by Plaintiffs are neither common

to nor typical of the claims, if any, by members of the putative class, because the

putative class is not definite and ascertainable, and because interests of certain

members of the putative class are in conflict with the interests of other members

of the putative class.

32.   **Consumer Protection Act.**  Plaintiffs have not alleged and cannot establish the

conditions precedent to asserting any claims arising out of or relating to Double

DownDown Casino under the Washington Consumer Protection Act, whether on

behalf of themselves or on behalf of members of the putative class.  In addition,

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 32
(2:18-cv-00525-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

to the extent Plaintiffs' allege and seek to prove that they engaged in unlawful gambling, such conduct is not protected under the Consumer Protection Act and they are not permitted to recover under the Consumer Protection Act.  Nor may civil liability attach under the CPA for alleged conduct which is not treated as a crime by the Washington State Gambling Commission or other law enforcement bodies in Washington.  Double Down is entitled to each and every defense or limitation of liability with respect to the Washington Consumer Protection Act.

33.    **Dormant Commerce Clause.**  Plaintiffs and the putative class members' claims are barred, in whole or in part, by the dormant Commerce Clause of the United States Constitution.  The conduct alleged in the First Amended Complaint that purportedly violated these laws took place entirely or predominantly outside of Washington, including, but not limited to, Plaintiffs and the putative class members' claims related to conduct prior to June 1, 2017 when Double Down was owned by Defendant IGT, a corporation organized under the laws of the state of Nevada with its principal place of business in Nevada.

34.    **Extraterritoriality.**  Plaintiffs and the putative class members' claims are barred, in whole or in part, because the Washington Gambling Act, the Recovery of Money Lost at Gambling Act, and the Washington Consumer Protection Act do not extend extraterritorially.  The conduct alleged in the First Amended Complaint that purportedly violated these laws took place entirely or predominantly outside of Washington, including, but not limited to, Plaintiffs and the putative class members' claims related to conduct prior to June 1, 2017 when Double Down was owned by Defendant IGT, a corporation organized under the laws of the state of Nevada with its principal place of business in Nevada.

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 33
(2:18-cv-00525-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

### **PRAYER FOR RELIEF**

2      WHEREFORE, Double Down respectfully requests this Court:

3      A.      Enter judgment in Double Down's favor and against Ms. Benson and Ms.

4  Simonson;

5      B.      Deny certification of a class;

6      C.      Dismiss all claims by Plaintiffs with prejudice;

7      D.      Award Double Down its costs of suit;

8      E.      Award Double Down its attorneys' fees to the extent permitted by law; and

9      F.      Grant Double Down such other and further relief as this Court deems just and

10  proper.

11      DATED this 10th day of May, 2021.

12
                                        Davis Wright Tremaine LLP
13                                      Attorneys for Double Down Interactive, LLC

14                                      By s/ Jaime Drozd Allen
                                           Jaime Drozd Allen, WSBA #35742
15                                         Stuart R. Dunwoody, WSBA #13948
                                           Cyrus E. Ansari, WSBA #52966
16                                         Benjamin J. Robbins, WSBA #53376
                                           Jordan Harris, WSBA #55499
17                                         920 Fifth Avenue, Suite 3300
18                                         Seattle, WA 98104
                                           Telephone: 206-757-8039
19                                         Fax: 206-757-7039
                                           E-mail: jaimeallen@dwt.com
20                                         E-mail: stuartdunwoody@dwt.com
                                           E-mail: cyrusansari@dwt.com
21                                         E-mail: benrobbins@dwt.com
22                                         E-mail: jordanharris@dwt.com

23                                         Sean M. Sullivan (admitted pro hac vice)
                                           Sarah Burns (admitted pro hac vice)
24                                         865 South Figueroa Street
                                           Los Angeles, CA 90017
25                                         Telephone: 213-633-6800
                                           Fax: 213-633-6899
26                                         E-mail: seansullivan@dwt.com
                                           E-mail: sarahburns@dwt.com
27

DOUBLE DOWN'S ANSWER TO
SECOND AMENDED COMPLAINT – 34
(2:18-cv-00525-RSL)

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax