1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

The Honorable Robert S. Lasnik

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

ADRIENNE BENSON and MARY
SIMONSON, individually and on behalf of all
others similarly situated,

*Plaintiffs*,

*v.*

DOUBLEDOWN INTERACTIVE, LLC, a
Washington limited liability company, and
INTERNATIONAL GAME TECHNOLOGY,
a Nevada corporation,

*Defendants*.

Case No. 18-cv-00525-RSL


**PLAINTIFFS' OPPOSITION TO
DOUBLEDOWN INTERACTIVE,
LLC'S MOTION FOR
CERTIFICATION PURSUANT TO
28 U.S.C. § 1292(B) AND FOR STAY**


**NOTING DATE:**  May 14, 2021

**EDELSON PC**
350 N LaSalle Street, 14th Floor, Chicago, IL 60654
Tel: 312 589 6370 • Fax: 312 589 6378

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................... 1

II.     BACKGROUND ........................................................................................ 2

III.    ARGUMENT ............................................................................................. 3

        A.    Choice of Law Issues Are Not Controlling Questions of Law at
              This Stage. ....................................................................................... 5

        B.    DoubleDown Has Not Shown Substantial Ground for Difference of
              Opinion. ........................................................................................... 7

        C.    Granting Interlocutory Review Now, Before the Court Has Decided
              Class Certification, Will Not Materially Advance the Termination of
              Litigation. ....................................................................................... 11

        D.    DoubleDown's Motion is Not Timely and Is Just Another Delay
              Tactic. ............................................................................................ 12

        E.    A Stay Is Unwarranted. ................................................................. 12

IV.     CONCLUSION ........................................................................................ 12

1

## TABLE OF AUTHORITIES

2

**United States Supreme Court Cases**

3

*Camreta v. Greene,*

4
    563 U.S. 692 (2011) ...........................................................................................7

5

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) .........................................................................................10

6

7
**United States Court of Appeals Cases**

8
*Couch v. Telescope Inc.,*
    611 F.3d 629 (9th Cir. 2010) .........................................................................5, 7

9

10
*Gravquick A/S v. Trimble Navigation Int'l, Ltd.,*
    323 F.3d 1219 (9th Cir. 2003) ..........................................................................9

11
*In re Bridgestone/Firestone, Inc.,*
    288 F.3d 1012 (7th Cir. 2002) ..........................................................................9

12

13
*In re Cement Antitrust Litig.,*
    673 F.2d 1020 (9th Cir. 1981) ....................................................................3, 5, 6

14

15
*James v. Price Stern Sloan, Inc.,*
    283 F.3d 1064 (9th Cir. 2002) ..........................................................................3

16
*Pilgrim v. Universal Health Card, LLC,*

17
    660 F.3d 943 (6th Cir. 2011) ............................................................................9

18
*Thornell v. Seattle Serv. Bureau, Inc.,*
    742 F. App'x 189 (9th Cir. 2018) ..................................................................7, 8

19

20
**United States District Court Cases**

21
*Gagan v. Sharer,*
    No. 99-cv-1427-PHX-RCB, 2006 WL 3736057 (D. Ariz. Nov. 6, 2006) .......12

22

23
*Gragg v. Orange CAB Co., Inc.,*
    No. 12-cv-00576-RSL, 2016 WL 4430023 (W.D. Wash. Apr. 22, 2016) ....3, 4

24
*In re Premera Blue Cross Customer Data Sec. Breach Litig.,*

25
    15-md-2633-SI, 2019 WL 3410382 (D. Or. July 29, 2019)..............................8

26
*Kelley v. Microsoft Corp.,*
    251 F.R.D. 544 (W.D. Wash. 2008) .................................................................8

27

**EDELSON PC**
350 N LaSalle Street, 14th Floor, Chicago, IL 60654
Tel: 312 589 6370 • Fax: 312 589 6378

*Thornell v. Seattle Serv. Bureau, Inc.*,
   No. 14-cv-1601-MJP, 2016 WL 3227954 (W.D. Wash. June 13, 2016) .......................7, 8

*Veridian Credit Union v. Eddie Bauer, LLC*,
   295 F. Supp. 3d 1140 (W.D. Wash. 2017) ..........................................................................8

**Miscellaneous Authority**

28 U.S.C. § 1292(b)...........................................................................................................*passim*

Fed. R. Civ. P 23 ....................................................................................................... 1, 4, 5

Ninth Cir. R. 36-3(a) ...................................................................................................... 7

Restatement (Second) of Law on Conflict of Laws § 145 .........................................8, 9

Restatement (Second) of Law on Conflict of Laws § 148 ...........................................8

EDELSON PC
350 N LaSalle Street, 14th Floor, Chicago, IL 60654
Tel: 312 589 6370 • Fax: 312 589 6378

1

**I.     INTRODUCTION**

2

Forty-one days after the Court denied Defendants' motion to strike nationwide class

3

allegations, the week after withdrawing a prior § 1292(b) motion, and less than two weeks before

4

its deadline to finally oppose plaintiffs' class certification and preliminary injunction motion,

5

DoubleDown filed yet another Motion for Certification pursuant to 28 U.S.C. § 1292(b). Dkt.

6

#257 ("Motion"). This time around, DoubleDown seeks interlocutory review of choice of law

7

determinations underlying the Court's nearly-two-month-old order denying Defendants' motion

8

to strike Plaintiffs' nationwide class allegations. Despite acknowledging the "federal policy

9

against piecemeal appeals," *id.* at 1, DoubleDown argues—just weeks before class certification

10

will be fully briefed—that the Court should certify these choice of law issues for interlocutory

11

review, stay all other proceedings, and reserve its determination on class certification (and an

12

inevitable Fed. R. Civ. P. 23(f) petition on the certification decision) for another day.

13

Common sense suggests that this eleventh-hour motion offers a silly procedural path

14

forward: it would be wildly inefficient to ask the Ninth Circuit to first review the Court's choice

15

of law determinations as they relate to Plaintiffs' class allegations, and shortly thereafter to

16

review all other contested issues underlying the Court's imminent order on class certification.

17

Unsurprisingly, then, an analysis of the relevant statutory factors militates against granting

18

DoubleDown relief under § 1292(b) here. In fact, the Motion fails to establish *any* of the three

19

necessary conditions for an interlocutory review under § 1292(b). The questions DoubleDown

20

seeks to have certified are not "controlling" questions here, among other reasons because

21

Plaintiffs are determined to pursue through summary judgment and/or trial their claims for

22

preliminary and final injunctive relief. Nor has DoubleDown demonstrated that there is

23

"substantial ground for difference of opinion" as to the Court's resolution of DoubleDown's

24

proposed questions for certification, given that the Court conducted a straightforward application

25

of the appropriate "most significant relationship" test and that the Court unremarkably dispensed

26

with Defendants' Hail Mary constitutional arguments. Finally, interlocutory review of the

27

Court's choice of law determinations will not materially advance the ultimate termination of this

1   litigation, among other reasons because more than a thousand class members nationwide—all of

2   them represented by Plaintiffs' counsel—are waiting in the wings to file new single-state class

3   actions, in this District, if they are jettisoned from the currently-pleaded class. Consequently, an

4   (unlikely) reversal on appeal would serve only to fracture this action into dozens of smaller

5   actions in this district.

6          Because DoubleDown fails to meet its burden under § 1292(b) and also fails to explain

7   its delay in filing this Motion following the relevant Court order, the Court should decline to

8   certify any questions for interlocutory appeal. Finally, because interlocutory review is not

9   warranted, there is no reason for a stay. The Court has set a date for trial in November 2021 and

10  should not reward DoubleDown for yet again attempting in bad faith to stall out this litigation.

11  **II.    BACKGROUND**

12         In the time since Plaintiffs moved for class certification and a preliminary injunction on

13  February 25, 2021, Defendants have tried one stall gambit after another. First, they filed a

14  motion for relief from their deadline to oppose, claiming that they needed time to depose "the

15  eighteen individuals who submitted declarations in support of Plaintiffs' Motion" and then to

16  conduct "written discovery regarding those individuals." Dkt. #188 at 1. On March 10, 2021, the

17  Court adopted the compromise schedule proposed by Plaintiffs, which gave Defendants "almost

18  a month . . . to conduct eight remote depositions" and ordered Defendants to file their opposition

19  by April 5, 2021. Dkt. #206 at 3. The Court also ordered that discovery should be completed by

20  July 6, 2021, and set a trial date for November 2021. Dkt. #208.

21         After scheduling the eight remote depositions, Plaintiffs agreed to a second extension of

22  Defendants' deadline to respond to the class certification and preliminary injunction motion, this

23  time until April 14, 2021. Dkt. #214. Then, after the spouse of one of the Davis Wright Tremaine

24  associates staffed on this case went into premature labor, Plaintiffs agreed to a third extension,

25  this time to April 28, 2021. Dkt. #226. Then, after Defendant International Game Technology

26  began arguing—three years into the case—that Plaintiffs had sued the wrong IGT entity,

27  Defendants negotiated for and Plaintiffs agreed to a fourth extension, this time continuing

1    Defendants' response deadline to May 11, 2021, *see* Dkt. #247 at 2.

2          All along, DoubleDown has complained that its legal resources were stretched too thin to

3    multitask between opposing the certification and injunction motion and engaging in other routine

4    litigation activities. For example, DoubleDown argued that it could not search for documents or

5    "address . . . nearly year-old discovery issues . . . while it is working to respond to Plaintiffs'

6    motion for class certification and preliminary injunction." Declaration of Todd Logan ("Logan

7    Decl.") ¶ 5, Ex. C (March 28, 2021 email also claiming "Double Down's internal and external

8    resources are focused on the opposition to class certification and preliminary injunction"); *see*

9    *also* Logan Decl. ¶ 3, Ex. A (March 17, 2021 email offering to propose custodians and search

10   terms "after class certification and preliminary injunction briefing is completed"); Logan Decl. ¶

11   4, Ex. B (March 22, 2021 email protesting that Plaintiffs "are requesting Double Down proceed

12   with the ESI protocol . . . during the few weeks it has to respond to Plaintiffs' class cert/PI" and

13   offering to provide further information "*after* it is done with this briefing").

14         Despite these complaints, DoubleDown has used these repeated extensions to file *three*

15   new contested motions, all of which seek to stay the case: a "renewed" motion to compel

16   arbitration and to stay, Dkt. #264; a subsequently-withdrawn § 1292(b) motion on abstention

17   issues, Dkt. #230; and now this § 1292(b) motion on choice of law issues, Dkt. #257.

18   DoubleDown filed this Motion forty-one days after the Court issued the order DoubleDown

19   seeks to appeal, Dkt. #209.

20   **III.    ARGUMENT**

21         28 U.S.C. § 1292(b) empowers district courts to approve immediate appeals of

22   interlocutory orders by certifying that the order "involves a controlling question of law as to

23   which there is substantial ground for difference of opinion and that an immediate appeal from the

24   order may materially advance the ultimate termination of the litigation." *James v. Price Stern*

25   *Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002) (quoting 28 U.S.C. § 1292(b)). Because

26   § 1292(b) "is a departure from the normal rule that only final judgments are appealable," it "must

27   be construed narrowly," *id.*, and should be applied "only in exceptional situations," *In re Cement*

1   *Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981); *Gragg v. Orange CAB Co., Inc.*, No. 12-cv-

2   0576-RSL, 2016 WL 4430023, at *1 (W.D. Wash. Apr. 22, 2016).

3       Here, DoubleDown seeks to certify four questions for interlocutory review:

4       (1) whether the "application of . . . Washington law to transactions between DDI and
            non-Washington residents . . . improperly grant[s] Washington law extraterritorial
5           effect under the dormant Commerce Clause[;]"

6       (2) whether the "application of . . . Washington law to transactions between DDI and
            non-Washington residents . . . improperly appl[ies] Washington substantive law to
7           Defendants' conduct in violation of the Due Process Clause[;]"

8       (3) whether Washington law should "be applied to claims of nonresident putative class
            members" under Washington's choice of law rules; and
9
10      (4) whether "class treatment violate[s] FRCP 23's predominance and superiority
            requirements, such that nationwide class claims should be struck" if Washington law
            does not apply to nonresident putative class members' claims.
11

12   Mot. at 4-5. The fourth question is premature because there is no opinion for DoubleDown to

13   appeal: the Court has not yet ruled on Plaintiffs' motion for class certification or made any

14   determination as to whether "class treatment violate[s] FRCP 23's predominance and superiority

15   requirements," as DoubleDown admits. *See id.* 5. The Court's order denying the motion to strike

16   did not "implicitly reject[]" DoubleDown's arguments on this issue, *id.* at 3, because choice of

17   law and class certification are distinct inquiries.

18       As for the first three questions, the Court correctly answered them in its Order Denying

19   Defendants' Motion to Strike Nationwide Class Allegations, Dkt. #209, and DoubleDown fails

20   to show that any of the necessary conditions for certification under § 1292(b) are met. *First*, the

21   Court's findings regarding the application of Washington law to Plaintiffs' nationwide class

22   claims do not contain any controlling question of law. *Second*, DoubleDown has not shown that

23   there is substantial ground for difference of opinion regarding the Court's choice-of-law analysis

24   or the constitutional implications of that analysis. *Third*, certifying these questions for

25   interlocutory review at this stage will not materially advance the ultimate termination of the

26   litigation. After the Court rules on class certification, both parties will have the right to seek to

27   appeal under Fed. R. Civ. P. 23(f), and there is no reason DoubleDown cannot wait until then to

1    seek appellate review of these questions.

2         Failing to meet any one of these conditions is grounds to deny a motion brought under

3    § 1292(b). *See Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) ("Certification under

4    § 1292(b) requires the district court to expressly find in writing that *all three* § 1292(b)

5    requirements are met." (emphasis added)). Here, DoubleDown fails to meet *any* of the

6    conditions, and fails to offer any explanation for the delay in filing this Motion. For these

7    reasons, the Court should deny the Motion for certification and the request for a stay.

8         **A. Choice of Law Issues Are Not Controlling Questions of Law at This Stage.**

9         DoubleDown argues that the choice-of-law questions are controlling questions of law

10   because a Ninth Circuit ruling that "Washington law does *not* apply to nonresident putative class

11   members" would "greatly limit[] the number of putative class members." Mot. at 5-6.

12   DoubleDown makes no other arguments as to why choice-of-law questions are controlling here,

13   adding only that such questions "are frequently cited by courts as one of the axiomatic

14   controlling questions of law" and are "purely legal issue[s] . . . . well suited to appeal." *Id.* at 6.

15   Though choice-of-law questions are often "fundamental," *id.*, resolution of the issue on appeal at

16   this moment in this particular case would not "materially affect the outcome of the litigation in

17   the district court." *In re Cement Antitrust Litig.*, 673 F.2d at 1026.

18        Plaintiffs' motion for class certification and a preliminary injunction will be fully briefed

19   by May 25, 2021. After that decision, any party will have the opportunity to seek appellate

20   review under Fed. R. Civ. P. 23(f)—an outcome DoubleDown anticipates. *See* Mot. at 12

21   ("Otherwise, the parties will continue with class discovery, and on to class certification, only to

22   have the issue appealed under Fed. R. Civ. P. 23(f), when the Court decides the parties' class

23   certification motion."). Engaging in successive interlocutory—the first under § 1292(b) and the

24   second under Fed. R. Civ. P. 23(f)—would be a waste of the judiciary's resources and inject

25   needlessly additional delay to the progress of this litigation. Should the Ninth Circuit accept an

26   appeal of the class certification decision, it would have the authority to address these choice of

27   law issues, so an interlocutory appeal to decide these issues now is unnecessary.

**EDELSON PC**
350 N LaSalle Street, 14th Floor, Chicago, IL 60654
Tel: 312 589 6370 • Fax: 312 589 6378

1    And even if the Ninth Circuit were to reverse this Court's order and strike Plaintiffs'

2    nationwide class allegations, Plaintiffs—who are both citizens of the state of Washington—

3    would nevertheless aggressively pursue their claims, including their claims for preliminary and

4    final injunctive relief, on behalf of a class of Washingtonians. Given the impact of the injunctive

5    relief Plaintiffs seek, it is difficult to see how a decision about the geographic contours of any

6    certified class would "materially affect the outcome of the litigation in the district court." *In re*

7    *Cement Antitrust Litig.*, 673 F.2d at 1026.

8    Further, Plaintiffs' counsel from Edelson PC individually represents more than 1,000

9    DoubleDown players nationwide. *See* Logan Decl. ¶ 6. If the Ninth Circuit were to reverse this

10   Court's order and cast those players out of the pleaded class in this case, Plaintiffs' counsel

11   anticipate that many of those players would immediately file new proposed class action lawsuits,

12   in this district, on behalf of single-state classes. Plaintiffs' counsel further anticipates seeking to

13   relate and/or consolidate those actions—likely dozens of them—with this one. Consequently,

14   while a reversal on appeal might "greatly limit[] the number of putative class members" on this

15   particular docket number, the net effect would be largely limited to determining the procedural

16   vehicle(s) of the claims for relief pursued by members of the currently-proposed class. In other

17   words, an appellate decision reversing this Court's opinion on choice-of-law questions would

18   neither have any bearing on the merits of Plaintiffs' claims nor would it narrow any of the issues

19   to be litigated and tried. Rather, it would simply fracture this case into many related actions

20   and/or consolidated actions, in this Court, against the same Defendants.[1]

21   Because neither decision by the Ninth Circuit would "materially affect the outcome of the

22   litigation in the district court," DoubleDown has not shown that the proposed issues for appeal

23   are controlling questions of law in this case.

24

25   ────────────────────

26   [1]    Of course, a denial of class certification could lead to a similar fracturing, but Plaintiffs and other DoubleDown users would be able to plead new claims with the benefit of this Court's decision on the various elements of class certification (*e.g.*, whether Plaintiffs are adequate class representatives). In other words, this

27   Court's decision on class certification will help all parties proceed with litigation more efficiently.

EDELSON PC
350 N LaSalle Street, 14th Floor, Chicago, IL 60654
Tel: 312 589 6370  •  Fax: 312 589 6378

1    **B. DoubleDown Has Not Shown Substantial Ground for Difference of Opinion.**

2    DoubleDown also argues that "reasonable jurists could disagree" as to "[w]hether

3    Washington law can constitutionally apply to claimed 'gambling' transactions initiated by non-

4    Washington residents and consummated outside Washington." Mot. at 7. But the "controlling

5    law" on these questions is not unclear, and it is not a novel or difficult issue to determine

6    whether Washington law can constitutionally be applied to a business headquartered in Seattle

7    and adopting Washington law in its Terms of Use. DoubleDown has failed to show "substantial

8    ground for difference of opinion" on any of the questions it seeks to certify.

9    To determine whether "substantial ground for difference of opinion" exists, "courts must

10   examine to what extent the controlling law is unclear," often looking to whether "the circuits are

11   in dispute on the question and the court of appeals of the circuit has not spoken on the point . . .

12   or if novel and difficult questions of first impression are presented." *Couch*, 611 F.3d at 633.

13   However, "just because a court is the first to rule on a particular question . . . does not mean there

14   is such a substantial difference of opinion as will support an interlocutory appeal." *Id.*

15   DoubleDown seeks to certify as an issue for interlocutory review whether Washington

16   law should be applied to claims of nonresident putative class members under Washington's

17   choice of law rules. Mot. at 4-5. Yet DoubleDown does not explain where or how the Court

18   purportedly erred in its choice-of-law analysis. *See generally id.* at 7-10. The one case

19   DoubleDown cites from this circuit is *Thornell v. Seattle Serv. Bureau, Inc.*, No. 14-cv-1601-

20   MJP, 2016 WL 3227954, at *2-3 (W.D. Wash. June 13, 2016), *aff'd*, 742 F. App'x 189 (9th Cir.

21   2018). DoubleDown asserts that the *Thornell* court "found that Washington's CPA does not

22   apply in favor of nonresident plaintiffs allegedly harmed where they live," but ignores the

23   important distinctions between that case and this one.[2] Mot. at 3-4. In *Thornell*, a case about

24   deceptive debt collection letters, the Court simply found that "the CPA does not contain a

25   statutory choice-of-law directive" and so applied the most significant relationship test prescribed

26   _____

27   [2]    In any event, the Ninth Circuit's unpublished affirmance in *Thornell* is not binding on this Court. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011); Ninth Cir. R. 36-3(a).

by Section 148 of the Restatement (Second) of Law on Conflict of Laws—the section on fraud

and misrepresentation claims. *Id.* at *3-4; *see also Thornell v. Seattle Serv. Bureau, Inc.*, 742 F.

App'x 189, 191 (9th Cir. 2018) (affirming the district court's reliance on Section 148 for

misrepresentation claims). Based on the factors listed in Section 148, the *Thornell* court found

that Texas had the most significant relationship to the plaintiff's claims. 2016 WL 3227954,

at *4

Here, by contrast, the Court properly relied on Section 145 of the Restatement, which

instructs courts to consider "(a) the place where the injury occurred, (b) the place where the

conduct causing the injury occurred, (c) the domicile, residence, nationality, place of

incorporation and place of business of the parties, and (d) the place where the relationship, if

any, between the parties is centered." Dkt. #209 at 7. Weighing these factors, this Court found

that Washington has the most significant relationship to Plaintiffs' claims since it is "the

domicile of Double Down and some portion of the plaintiff class," and since "any liability-

generating conduct . . . occurred [in Washington]." *Id.* at 8. The Court also noted that, until April

2020, DoubleDown's terms and conditions "specified that Washington law would govern any

dispute, controversy, or claim related to the services provided." *Id.* at 8 n.4. DoubleDown does

not argue that the Court erred in relying on Section 145 of the Restatement, nor does it make any

arguments about the Court's balancing of those factors. Because this Court conducted its choice

of law analysis by applying a different Section of the Restatement to a different set of claims and

facts, *Thornell* does not suggest that there is "substantial ground for difference of opinion" on the

choice of law in this case. Indeed, other cases in this District have found that the application of

Washington law to a nationwide class's CPA claims would be appropriate under the

Restatement. *See, e.g.*, *Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 553 (W.D. Wash. 2008)

(applying Washington law to all putative class members' deceptive practices claims); *Veridian*

*Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1155 (W.D. Wash. 2017) (finding that

Washington law applied to putative class members' claims for CPA and statutory violations); *In*

*re Premera Blue Cross Customer Data Sec. Breach Litig.*, 15-md-2633-SI, 2019 WL 3410382, at

1   *15 (D. Or. July 29, 2019) (applying Section 145 to CPA and Negligence claims, holding that

2   Washington law applied to a nationwide settlement class).

3       DoubleDown points to two other cases from other circuits declining to certify a

4   nationwide class of consumers, Mot. at 9, but those cases are neither controlling nor even

5   persuasive to the choice-of-law analysis in this case. In *Pilgrim v. Universal Health Card, LLC*,

6   for instance, the Sixth Circuit applied Ohio's choice-of-law rules to conclude that "the consumer-

7   protection laws of the potential class members' home States will govern their claims." 660 F.3d

8   943, 946 (6th Cir. 2011). But the plaintiffs in *Pilgrim*—like those in *Thornell*—raised claims of

9   misrepresentation, so the court focused especially on the place of injury as an important indicator

10  of the state with the "strongest interest in regulating such conduct." *Id.* Similarly, in *In re*

11  *Bridgestone/Firestone, Inc.*, the Seventh Circuit applied Indiana choice-of-law rules—which "in

12  all but exceptional cases . . . appl[y] the law of the place where harm occurred"—to determine

13  that the law of the states "where the buyers live" would govern plaintiffs' "warranty and

14  consumer fraud claims." 288 F.3d 1012, 1018 (7th Cir. 2002). Neither of these cases suggests

15  that this Court improperly applied Washington's choice of law rules to the Plaintiffs' RMLGA or

16  CPA claims, so neither case suggests "substantial ground for difference of opinion" regarding the

17  Court's choice of law analysis.

18      DoubleDown also seeks to appeal whether the application of substantive Washington law

19  to transactions between DDI and non-Washington residents . . . improperly grant[s] Washington

20  law extraterritorial effect under the dormant Commerce Clause." Mot. at 4. DoubleDown states

21  that this Court's order denying the motion to strike "does not address th[e] critical constitutional

22  background" of the choice-of-law analysis, and claims that "statutes attempting to regulate

23  conduct extraterritorially violate the dormant Commerce Clause." *Id.* at 7. Neither one of these

24  statements is true. The Court specifically addressed Defendants' dormant Commerce Clause

25  arguments in its order denying the motion to strike, Dkt. #209 at 3-5, and explained that "a state

26  may regulate commercial relationships 'in which at least one party is located in [the forum],'" *id.*

27  at 4 (citing *Gravquick A/S v. Trimble Navigation Int'l, Ltd.*, 323 F.3d 1219, 1224 (9th Cir.

1   2003)). As the Court previously explained, the cases DoubleDown cites—*Sam Francis*

2   *Foundation v. Christies, Inc.* and *Rahmani v. Resorts International Hotel, Inc.*—are

3   distinguishable because neither party to the transactions at issue in those cases was a Washington

4   resident. *Id.* at 4 n.3. Here, on the other hand, "Double Down's development, publication, and

5   maintenance of its allegedly illegal casino games occurred at its headquarters in Washington, and

6   both the RM[LG]A and the CPA are aimed, in part, at regulating the conduct of Washington

7   businesses within the state." *Id.* at 4. Applying Washington law in this case, therefore, does not

8   burden extraterritorial commerce in violation of the dormant Commerce Clause, and

9   DoubleDown has not pointed to any apposite cases suggesting "substantial ground for difference

10  of opinion" on this point.

11       Finally, DoubleDown wants to determine through an interlocutory appeal whether the

12  "application of substantive Washington law to transactions between DDI and non-Washington

13  residents" violates the Due Process Clause. Mot. at 4. DoubleDown claims that the Court did not

14  address its contention that "the proposed nationwide class violates 'constitutional limits to the

15  choice of law' applicable to those class members with an insufficient connection [to]

16  Washington state." *Id.* (citing Dkt. #128 at 16-24). But DoubleDown has not come close to

17  establishing—either in its original motion to strike or in this § 1292(b) Motion—that the

18  application of Washington law to nationwide class claims violates Due Process. In both motions,

19  DoubleDown cites the standard developed in *Phillips Petroleum Company v. Shutts* but fails to

20  show that applying Washington law in this case would fall short of that constitutional minimum.

21  In *Shutts*, the Court found that the forum state "must have a significant contact or significant

22  aggregation of contacts to the claims asserted by each member of the plaintiff class . . . in order

23  to ensure that the choice of [the forum state's] law is not arbitrary or unfair." 472 U.S. 797, 821-

24  22 (1985) (internal quotation marks omitted). The *Shutts* Court declined to apply Kansas law to a

25  nationwide class action because "over 99% of the gas leases [at issue] and some 97% of the

26  plaintiffs in the case had no apparent connection to the State of Kansas except for this lawsuit,"

27  *id.* at 815, and because "[t]here is no indication that when the leases . . . outside of Kansas were

1    executed, the parties had any idea that Kansas law would control," *id.* at 822. Here, by contrast,

2    "any liability-generating conduct on [DoubleDown's] part occurred [in Washington], from

3    creating, publishing, and maintaining the allegedly illegal gambling games to collecting

4    payments from players around the country for virtual chips." Dkt. #209 at 8. Moreover, "Double

5    Down does not dispute[] that until April 2020, the terms and conditions under which customers

6    downloaded Double Down's games specified that Washington law would govern any dispute,

7    controversy, or claim related to the services provided." *Id.* at 8 n.4; Dkt. #39 at ECF 18

8    (DoubleDown Casino Terms and Conditions). Washington thus has significant contacts to the

9    claims asserted by each member of Plaintiffs' proposed nationwide classes—contacts that were

10   not present in *Shutts*—so the application of Washington law to those claims is constitutional.

11          Because DoubleDown has failed to show substantial ground for difference of opinion as

12   to any questions proposed for certification, the Court should deny the Motion.

13
14   **C.  Granting Interlocutory Review Now, Before the Court Has Decided Class
         Certification, Will Not Materially Advance the Termination of Litigation.**

15          For the third condition under § 1292(b), DoubleDown argues that "an appeal could

16   materially advance the resolution of litigation in at least three ways": (1) by "greatly limit[ing]

17   the number of putative class members," thereby reducing costs and the scope of the case; (2) by

18   "materially advanc[ing] settlement negotiations"; and (3) by resolving legal questions "sooner

19   rather than later." Mot. at 11-12. None of these present a compelling reason to allow an

20   interlocutory appeal under § 1292(b).

21          As explained above, an appeal of choice-of-law questions at this stage of the litigation

22   will not materially advance the resolution of the litigation because it will lead either to wasteful,

23   back-to-back interlocutory appeals or to the fracturing of the action into multiple related and/or

24   consolidated cases against Defendants. The parties will soon have the opportunity under Rule

25   23(f) to seek appellate review of the Court's upcoming decision on the motion for class

26   certification, and the Ninth Circuit—were it to accept a 23(f) petition—would surely address the

27   choice-of-law determinations underlying the Court's class certification order. The Court's

1    decision on class certification will also advance settlement negotiations far more materially and

2    directly than DoubleDown's proposed interlocutory appeal would. In short, there is no efficiency

3    to be gained by permitting DoubleDown to seek appellate review of the choice-of-law issues

4    now, rather than waiting a month or two for its opportunity to seek appeal under Rule 23(f).

5           **D. DoubleDown's Motion is Not Timely and Is Just Another Delay Tactic.**

6           DoubleDown's delay in bringing this motion provides another reason to deny it. *See*

7    *Gagan v. Sharer*, No. 99-cv-1427-PHX-RCB, 2006 WL 3736057, at *1 (D. Ariz. Nov. 6, 2006)

8    ("An unreasonable and unexplained delay in seeking certification is sufficient cause for denying

9    the request."). Here, DoubleDown filed its § 1292(b) Motion, Dkt. #257, forty-one days after the

10   Court entered the relevant order, Dkt. #209. DoubleDown offers no explanation for this delay,

11   nor for why—after requesting extension after extension to respond to Plaintiffs' motion for class

12   certification and a preliminary injunction—it has now chosen to file two successive § 1292(b)

13   motions *and* a motion to compel arbitration, and in each motion has requested a stay of all

14   proceedings. DoubleDown's newfound interest in interlocutory review, when class certification

15   briefing will be complete in a matter of weeks, is just the latest wrench DoubleDown has tried to

16   throw in the gears of this case. The Court should not reward that kind of litigation conduct.

17          **E. A Stay Is Unwarranted.**

18          Finally, DoubleDown asks for a "stay pending appellate review" in order to "avoid

19   additional class discovery and dispositive motions practice and limit the scope of trial

20   preparation and trial." Mot. at 12. Because certification under § 1292(b) is improper, there is no

21   need for a stay pending the outcome of any interlocutory appeal. Even if the Court certifies any

22   of DoubleDown's proposed questions for interlocutory review, the Court should deny a stay

23   pending appeal, as such a stay would serve only to further delay Plaintiffs' attempts to obtain a

24   final decision on the merits of their claims.

25   **IV.    CONCLUSION**

26          The Court should deny Defendants' motion to certify questions for interlocutory appeal,

27   and in any event should not grant a stay pending appeal.

**EDELSON PC**
350 N LaSalle Street, 14th Floor, Chicago, IL 60654
Tel: 312 589 6370  •  Fax: 312 589 6378

1    Dated: May 10, 2021                    Respectfully submitted,

2

3                                           **ADRIENNE BENSON** and **MARY SIMONSON**
                                            individually and on behalf of all others similarly
4                                           situated,

5                                           By:  /s/ Todd Logan

6                                           Rafey S. Balabanian*
7                                           rbalabanian@edelson.com
                                            Todd Logan*
8                                           tlogan@edelson.com
                                            Brandt Silver-Korn*
9                                           bsilverkorn@edelson.com
                                            EDELSON PC
10                                          150 California Street, 18th Floor
                                            San Francisco, CA 94111
11                                          Tel: 415.212.9300/Fax: 415.373.9435

12
                                            By:  /s/ Alexander G. Tievsky
13

14                                          Jay Edelson*
                                            jedelson@edelson.com
15                                          Alexander G. Tievsky, WSBA #57125
                                            atievsky@edelson.com
16                                          Amy B. Hausmann*
                                            abhausmann@edelson.com
17                                          EDELSON PC
                                            350 N LaSalle Street, 14th Floor
18                                          Chicago, IL 60654
                                            Tel: 312.589.6370 / Fax: 312.589.6378
19

20                                          By:  /s/ Cecily C. Shiel

21                                          Cecily C. Shiel, WSBA #50061
                                            cshiel@tousley.com
22                                          TOUSLEY BRAIN STEPHENS PLLC
                                            1700 Seventh Avenue, Suite 2200
23                                          Seattle, Washington 98101-4416
                                            Tel: 206.682.5600
24

25                                          *Admitted *pro hac vice*

26                                          *Attorneys for Plaintiffs*

27