The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ADRIENNE BENSON AND MARY SIMONSON, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

DOUBLE DOWN INTERACTIVE, LLC, et al.,

Defendants.

No. 2:18-cv-00525-RSL

REPLY IN SUPPORT OF DOUBLE DOWN INTERACTIVE'S RENEWED MOTION TO COMPEL ARBITRATION AND TO STAY

**NOTED FOR CONSIDERATION: MAY 28, 2021**

**ORAL ARGUMENT REQUESTED**

REPLY IN SUPPORT OF DOUBLE DOWN INTERACTIVE'S RENEWED MOTION TO COMPEL ARBITRATION AND TO STAY (2:18-CV-00525-RSL)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

**PAGE**

A. Double Down's Motion Is Timely. 1

B. Double Down Is Not, By Correcting Plaintiffs' Affirmative Misrepresentation, Unfairly Seeking Another Bite At the Arbitration Apple. 5

C. Plaintiffs Agreed To Arbitrate Their Claims By Continuing To Play The Game With Knowledge Of Its Terms. 6

1. Plaintiffs Had Actual Notice Of The Terms. 6
2. Plaintiffs Objectively Manifested Their Assent To The Terms. 7

REPLY IN SUPPORT OF DOUBLE DOWN INTERACTIVE'S RENEWED MOTION TO COMPEL ARBITRATION AND TO STAY (2:18-CV-00525-RSL) - i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Berman v. Freedom Fin. Network, LLC*, 2020 WL 6684838 (N.D. Cal. Nov. 12, 2020) ....4, 6

*Cairo, Inc. v. Crossmedia Servs., Inc.*, 2005 WL 756610 (N.D. Cal. Apr. 1, 2005) ....7

*Circuit City Stores, Inc. v. Mantor*, 417 F.3d 1060 (9th Cir. 2005) ....2, 3

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882 (9th Cir. 2001) ....4

*Dillon v. BMO Harris Bank, N.A.*, 787 F.3d 707 (4th Cir. 2015) ....1, 2

*Fed. Election Comm'n v. Williams*, 104 F.3d 237 (9th Cir. 1996) ....5

*Frederick S. Wyle Pro. Corp. v. Texaco, Inc.*, 764 F.2d 604 (9th Cir. 1985) ....5

*G.G. v. Valve Corp.*, 799 F. App'x 557 (9th Cir. 2020) ....4

*Hautz Const., LLC v. H & M Dep't Store*, 2012 WL 5880370 (D.N.J. Nov. 20, 2012) ....2, 3

*Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997) ....8

*Holmberg v. Armbrecht*, 327 U.S. 392 (1946) ....5

*In re Samsung Smartphone Marketing*, 298 F. Supp. 3d 1285 (N.D. Cal. 2018) ....8

*Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014) ....9

*Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877 (9th Cir. 2000) ....5

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Lucas v. Hertz Corp.*,
875 F. Supp. 2d 991 (N.D. Cal. 2012) ....................3

*Maxit Designs, Inc. v. Coville, Inc.*,
2006 WL 2734366 (E.D. Cal. Sept. 25, 2006) ....................3

*Molnar v. 1-800-Flowers.com, Inc.*,
2008 WL 4772125 (C.D. Cal. Sept. 29, 2008) ....................8

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) ....................8

*Pyramid Lake Paiute Tribe of Indians v. Hodel*,
882 F.2d 364 (9th Cir. 1989) ....................4

*Raymond v. Mid-Bronx Haulage Corp.*,
2017 WL 9882601 (S.D.N.Y. June 10, 2017) ....................3, 4

*Register.com, Inc. v. Verio, Inc.*,
356 F.3d 393 (2d Cir. 2004) ....................7

*Schnabel v. Trilegiant Corporation*,
697 F.3d 110 (2d Cir. 2012) ....................9

*Smith v. Rent-A-Ctr., Inc.*,
2019 WL 3004160 (E.D. Cal. July 10, 2019) ....................3

*Ticketmaster Corp. v. Tickets.com, Inc.*,
2003 WL 21406289 (C.D. Cal. Mar. 7, 2003) ....................7, 8

**State Cases**

*City of Everett v. Estate of Sumstad*,
631 P. 2d 366 (Wash. 1981) ....................7

**Federal Statutes**

9 U.S.C. § 3 ....................1

**Rules**

Fed. R. Civ. P. 54 ....................4

Fed. R. Civ. P. 59 ....................1, 2, 3, 4

Fed. R. Civ. P. 60 ....................1, 3, 5

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Plaintiffs in their Opposition do not dispute that the arbitration agreement at issue here is neither procedurally nor substantively unconscionable; that all of Plaintiffs' claims against Defendant Double Down Interactive, LLC ("Double Down") come within its broad scope; or that the entirety of Plaintiffs' play of DoubleDown Casino (the "Game") is governed by the provision. *See generally* Dkt. No. 293. They also only half-heartedly attempt to refute Double Down's argument that, contrary to Plaintiffs' previous affirmative representations, both Plaintiffs in fact had *actual* notice of Double Down's Terms of Use (the "Terms"), but continued playing the Game anyway, thereby assenting to its Terms. Instead, Plaintiffs devote the bulk of their Opposition to arguing that the Motion is procedurally improper, either because it is time barred, or because it is an improper "third bite at the arbitration apple." Opp. at 3. But those arguments fail, because (i) the Federal Arbitration Act allows for multiple motions to compel, (ii) the Court did not previously consider whether Plaintiffs had *actual* notice of the Terms, and (iii) the Federal Rules of Civil Procedure permit courts to reconsider previous orders where new evidence has arisen. The Court should decline to reward Plaintiffs for their purposeful omissions and misrepresentations, and compel Plaintiffs to arbitrate this dispute on an individual basis and stay this case pending resolution of that arbitration, as they agreed.

**A. Double Down's Motion Is Timely.**

First, Double Down's Motion was timely brought as a renewed motion to compel arbitration. Plaintiffs attempt to argue that the Motion is untimely because it was not brought within the time limits set by Federal Rules of Civil Procedure 59 and 60. *See* Opp. at 1–2. But that is beside the point because, as Plaintiffs do not dispute, "no authority—not the [Federal Arbitration Act], the Federal Rules of Civil Procedure, or any other source of law of which we are aware—limits a party to only one motion [to compel arbitration] under §§ 3 or 4 of the FAA." *Dillon v. BMO Harris Bank, N.A.*, 787 F.3d 707, 715–16 (4th Cir. 2015). Instead, the FAA "lists only one circumstance under which a party may lose its right to compel arbitration," namely "when that party is in default in proceeding with such arbitration." *Id.* (internal citation and quotations omitted). Here Plaintiffs do not (and can not) argue that Double Down is in

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

default in proceeding with such arbitration because it brought this motion mere weeks after Plaintiffs' misrepresentations became clear. Double Down is thus entitled to bring this motion.

The law of the case doctrine also does not bar this second motion because "the Renewed Motion[] present[s] different issues than did the Initial Motion[]." *Dillon*, 787 F. 3d at 715. As Plaintiffs acknowledged in response to Defendants' original Motion, and again in their Opposition to the instant motion, the original motion was based "on the theory that Plaintiffs had constructive notice of the Terms" such that Double Down did not even "present any evidence of actual notice." Opp. at 3. *See also* Dkt. No. 55 at 2 (Plaintiffs in their sur-reply to the first motion even asked that the Court not consider whether Plaintiffs had actual notice of the Terms because "Defendants presented no affirmative case for actual notice" in their motion to compel). Accordingly, neither the district court's order (the "Order"), nor the Ninth Circuit's decision affirming it, rested on actual notice, which the district court expressly found was an "inapplicable" question here. *See* Dkt. No. 57 at 11 (finding actual notice cases "inapplicable in a case like this" because those cases "rested on the user's admission of actual knowledge, but neither Benson nor Simonson made such an admission"). *See also Hautz Const., LLC v. H & M Dep't Store*, 2012 WL 5880370, at *5 (D.N.J. Nov. 20, 2012) (finding that, "in light of the oft-repeated admonition to courts to ensure that contractual arbitration provisions are enforced, and that an erroneous denial of a motion to compel arbitration would deny a contracting party the benefit of its right," consideration of second motion to compel arbitration was proper "in a manner consistent with the law of the case doctrine, under which doctrine there is no time limitation").

Plaintiffs' citation to *Circuit City Stores, Inc. v. Mantor*, 417 F.3d 1060, 1063 (9th Cir. 2005), is not to the contrary. In fact, the court in that case **acknowledged** that "renewed" motions to compel arbitration "do[] not clearly fit within the procedural mechanisms identified in the Rules," and specifically declined to decide whether the vehicle of a renewed motion was proper, because the renewed motion failed on the merits. It therefore concluded that it "need not examine whether Circuit City's renewed petition should have been brought under Rule 59(e) or

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Rule 60(b)." *Id.* at 1063. And in cases since then, many courts in the Ninth Circuit have considered second motions to compel arbitration without citation to Rules 59 or 60. *See, e.g.*, *Maxit Designs, Inc. v. Coville, Inc.*, 2006 WL 2734366, at *5 (E.D. Cal. Sept. 25, 2006) (weighing second motion to compel arbitration without consideration of Rules 59 or 60 and granting it over plaintiff's objection that the court's previous denial of a motion to compel arbitration "precludes it from revisiting the issue" because the issues "currently before the court were not at issue under the previous motion, and thus they are not affected by the court's previous ruling"); *Lucas v. Hertz Corp.*, 875 F. Supp. 2d 991, 1007 (N.D. Cal. 2012) (considering second motion to compel arbitration without reference to Rules 59 or 60).

Plaintiffs also are wrong that these kinds of motions are only allowed where the original motion was denied without prejudice "to correct some procedural or evidentiary deficiency identified by the court." Opp. at 1. In fact, the majority of the cases Double Down cited in the Motion do not involve situations where the original motion to compel arbitration was denied without prejudice. *See, e.g.*, *Maxit Designs, Inc.*, 2006 WL 2734366; *Smith v. Rent-A-Ctr., Inc.*, 2019 WL 3004160, at *3 (E.D. Cal. July 10, 2019); *Hautz Constr., LLC*, 2012 WL 5880370, at *6; *Raymond v. Mid-Bronx Haulage Corp.*, 2017 WL 9882601, at *3 (S.D.N.Y. June 10, 2017). And even if Plaintiffs are correct that many of these cases involved evidentiary issues, that is precisely what Double Down by this Motion seeks to do – correct Plaintiffs' affirmative misrepresentation with evidence that only now has come to light.

*Smith v. Rent-A-Center, Inc.* is instructive on this point. 2019 WL 3004160, at *3. There, as here, the defendant brought a second motion to compel arbitration, and the plaintiff argued that it was a procedurally improper because it should be brought as one for reconsideration under Rules 59 or 60. The court disagreed. It found that "[t]he instant motion is not one for reconsideration" because the second motion is "seeking to reach the ultimate question the Court did not reach in the last motion" and accordingly "the Court's ruling on its previous motion did not preclude it from bringing the instant motion." *Id.* Likewise here, Double Down

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

asks that the Court reach an ultimate question *Plaintiffs' misrepresentations* kept it from reaching in the last motion: namely, whether Plaintiffs must resolve their issues in arbitration.

Second, the Motion was timely brought pursuant to Federal Rule of Civil Procedure 54(b), which empowers a court to reconsider "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" at "any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Plaintiffs attempt to string together a series of disparate cases to argue that, because the Order was subject to special appeal pursuant to the FAA, it was a "judgment" under the Rules, and therefore only subject to reconsideration under Rules 59 or 60. *See* Opp. at 2. But the operative question under Rule 54(b) is not merely whether an order was a judgment, but rather whether it was a *final* judgment, which the Court's Order denying Defendants' original motion to compel clearly was not, because it did not "end the action as to any of the claims or parties." Fed. R. Civ. P. 54(b); *see also G.G. v. Valve Corp.*, 799 F. App'x 557, 558 n.1 (9th Cir. 2020) (stating that, pursuant to Rule 54(b), a court may revise an earlier arbitration holding before the entry of final judgment); *Raymond*, 2017 WL 9882601, at *2 (finding that because original order denying motion to compel arbitration "was not a final order . . . . Rule 54(b) and its equitable standard applies" and court could reconsider it at any time so long as the court retained jurisdiction).

Accordingly, the Court has inherent jurisdiction to reconsider its interlocutory order denying Double Down's motion to compel arbitration. *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885–86 (9th Cir. 2001); *Berman v. Freedom Fin. Network, LLC*, 2020 WL 6684838, at *1 (N.D. Cal. Nov. 12, 2020) ("Under Rule 54(b), a court may revise any interlocutory order in its discretion"). And one of "the major grounds that justify reconsideration," namely "the availability of new evidence," *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 (9th Cir. 1989), is clearly present here because, as discussed at length in the Motion, *see* Mot. at 7–11, and *infra* Section B, Plaintiffs for the first time mere weeks ago acknowledged they had actual notice of the Terms.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**B. Double Down Is Not, By Correcting Plaintiffs' Affirmative Misrepresentation, Unfairly Seeking Another Bite At the Arbitration Apple.**

Nowhere in their Opposition do Plaintiffs deny that their original opposition to Defendants' first motion to compel arbitration *affirmatively misrepresented* that neither Plaintiff had actual notice of the Terms. *See generally* Opp.; *see also* Dkt. No. 49 at 12 ("Ms. Benson was never presented with, read, or otherwise given actual notice of the Terms"); Dkt. No. 265, Ex 1 (Benson Dep. at 87:11–13 (Q. Were you aware that Double Down had terms of use when you were still playing Double Down Casino? A. Yes.)); Dkt. No. 49 at 12 ("Defendants' links to the Terms were not visible to Ms. Simonson, and Defendants never provided any warning that Ms. Simonson would be bound by any Terms. Consequently, Ms. Simonson never agreed to Defendants' Terms."); Dkt. No. 265, Ex 2 (Simonson Dep. at 120:1–3 (Q. Okay. And on that menu, are you – have you seen the terms of use on that menu? A. Yes.)); *id.* at 122:11–14 (Q. And do you agree that you've seen those terms of use? A. Yes.); *id.* at 123:11–16.

Still, Plaintiffs argue that the Motion is improper because Double Down could "with reasonable diligence have discovered" that both Plaintiffs had actual notice of the Terms, or because this evidence "could reasonably have been raised earlier in the litigation." Opp. at 3–4. The cases they cite for this proposition, however, are easily distinguishable, because in those cases there was no indication that a party affirmatively misrepresented the evidence, or that the Court relied on that misrepresentation in coming to its conclusion. *Cf.* Order at 11; *Frederick S. Wyle Pro. Corp. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985); *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). *See also Holmberg v. Armbrecht*, 327 U.S. 392, 396, (1946) ("Equity will not lend itself to . . . fraud [that prevents the plaintiff from being diligent] and historically has relieved from it."). Indeed, where affirmative misrepresentation is at play, the law consistently declines to reward a party's bad behavior by *removing* procedural barriers to relief. *See, e.g.*, Fed. R. Civ. 60(b)(3) (listing misrepresentation and fraud as grounds for relief from final judgment); *Fed. Election Comm'n v. Williams*, 104 F.3d 237, 240 (9th Cir. 1996) (equitable tolling halts statute of limitations where party concealed claims from potential plaintiff).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

The case Plaintiffs excerpt at length, *Berman*, 2020 WL 6684838, is even further distinguishable. There, while the original motion to compel arbitration was pending, the defendants took plaintiffs' depositions, wherein, defendants alleged, plaintiffs acknowledged they had actual notice of the relevant terms. *Id.* at *2. Rather than supplementing their *still-pending* motion to compel, however, defendants instead opted to "rest[] on the evidence they previously submitted." *Id.* at *4. In fact, it was "[o]nly after the Court issued its decision denying the motion to compel," that defendants finally decided to present the new evidence. *Id.* Here, by contrast, Double Down reasonably relied on Plaintiffs' *affirmative representation* that Plaintiffs did not have actual notice and then, mere weeks after depositions for the first time showed that was not true, brought this renewed motion.

**C. Plaintiffs Agreed To Arbitrate Their Claims By Continuing To Play The Game With Knowledge Of Its Terms.**

**1. Plaintiffs Had Actual Notice Of The Terms.**

Plaintiffs concede that Ms. Simonson had actual notice of the Terms after Defendants brought the original motion to compel arbitration. Opp. at 7. Because she continued to play the Game nearly every day in the three years since, she thereby assented to the Terms and must be compelled to arbitrate her claims. *See* Dkt. No. 265, Ex. 2 (Simonson Dep. at 32:3–4).

Plaintiffs argue that Double Down has not shown that Ms. Benson had actual notice of the Terms because the Motion relies on "cherry-picked statements from twelve hours of deposition testimony," and that instead, the testimony must be "read in context." Opp. at 7. The Opposition however identifies no "context" that actually disputes Ms. Benson's statements identified in the Motion. *See* Opp. at 6–7. Instead, the two pieces of testimony Plaintiffs do identify at best show Ms. Benson attempting to backtrack previous testimony in which she clearly acknowledged she did know about the Terms. *Compare* Dkt. No. 294, Ex. 1 (Benson Dep. at 90:17–18 ("Let's just say I'm not sure of anything at this moment as far as terms of use."); *id.* at 91:20–25 ("I don't want to overthink this. Yes, I'm aware that Double Down probably had terms of use because often—no, I can't say that because I assume that if I'm not

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

aware of the terms of use and check the box or whatever that system requires, I can't continue. So those assumptions may be totally wrong.")) *with* Dkt. No. 265, Ex. 1 (Benson Dep. at 87:8–13 (Q. Were you aware that Double Down had terms of use when you were still playing Double Down Casino? A. Yes.)). Anyway, this post-hoc hedging is beside the point, because Ms. Benson also testified that, not only was she *aware* of the Terms, she also likely *actually read them*. Dkt. No. 265 at Ex 1 (Benson Dep. at 87:24–88:10 (Q. And did you review those terms of use at any point in time? A. I believe that I probably scrolled through them very fast and wasn't too interested in what they had to say. Q. Okay. So you scrolled through the Double Down terms of use. Did you read them? A. I believe the better word would be scanned, if I did that. I can't even say that I did that.)). Ms. Benson also had actual notice of the Terms.

### 2. Plaintiffs Objectively Manifested Their Assent To The Terms.

Plaintiffs next argue that Double Down must establish not only that Plaintiffs had actual notice of the Terms, and continued playing, but also that Plaintiffs "knew that their continued use of the app would manifest their assent to be bound by those Terms." Opp. at 8. This argument finds no support in the case law. As Plaintiffs acknowledge, to determine whether a contract has been formed, Washington's "objective manifestation" test considers a party's "outward manifestations of intent," and based on those outward manifestations, "imputes an intention corresponding to the reasonable meaning of a person's words and acts." *City of Everett v. Estate of Sumstad*, 631 P.2d 366, 367 (Wash. 1981). Where a party is aware there are terms of use governing their use of a platform, and after acquiring that notice continues to accept the benefit of those terms, courts consistently find that they objectively manifested assent to the terms. *See, e.g., Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004); *Cairo, Inc. v. Crossmedia Servs., Inc.*, 2005 WL 756610 (N.D. Cal. Apr. 1, 2005); *Ticketmaster Corp. v. Tickets.com, Inc.*, 2003 WL 21406289, at *2 (C.D. Cal. Mar. 7, 2003) ("The principle has long been established that no particular form of words is necessary to indicate assent"—rather, "a contract can be formed by [continuing to access a service] after knowledge (or, in some cases, presumptive knowledge) of the conditions accepted when doing so.").

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Plaintiffs nonetheless argue that Ms. Benson did not assent to the Terms, because she expected she would need to read the Terms to be bound by them, or would only be bound if she checked a box. Opp. at 8. This argument fails for three reasons. First, as Plaintiffs acknowledge, Opp. at 8, the test is an objective one, so Ms. Benson's subjective *hope* that continuing to Play the game after becoming aware of the Terms would not bind her by its Terms is irrelevant. Second, this argument is foreclosed by *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 232 (2d Cir. 2016), where, applying Washington law, the Court held that "[a]s with paper contracts or shrinkwrap agreements, to be bound, an internet user need not actually read the terms and conditions or click on a hyperlink that makes them available **as long as she has notice of their existence**." (emphasis added). Put another way, by continuing to play the Game after becoming aware of the Terms, both Plaintiffs assented to those Terms because they "intend[ed] to engage in the conduct"—playing the Game—that they "kn[ew] or ha[d] reason to know that the other party may infer from his conduct that he assents." *Id.* at 232 (internal citation omitted). *See also Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148 (7th Cir. 1997) (relying on fact that plaintiffs "concede[d] noticing the statement of terms [on the box], but den[ied] reading it" to find Plaintiffs had notice of the terms). Third, Plaintiffs do not dispute, and therefore concede, that Ms. Simonson continued playing the Game long after her counsel had notice of the Terms, at which point notice was also imputed to her. *See* Mot. at 11–12; *see also Molnar v. 1-800-Flowers.com, Inc.*, 2008 WL 4772125, at *6 (C.D. Cal. Sept. 29, 2008) (finding defendant adequately pled actual notice of online terms of use where defendant alleged that plaintiff was in contact with his counsel prior to placing the order that was the subject of his claims, and that plaintiff was therefore chargeable with his counsel's notice of the terms); *Ticketmaster Corp.*, 2003 WL 21406289, at *2 (denying defendants' summary judgment motion on browsewrap contract claim where defendants continued breaching contract after receiving letter quoting the browsewrap contract terms).

The cases Plaintiffs cite are not to the contrary. First, in *In re Samsung Smartphone Marketing*, 298 F. Supp. 3d 1285, 1293 (N.D. Cal. 2018), the court *granted* a motion to compel

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

arbitration because it found that "Plaintiff's use of his or her phone can signify an outward manifestation of consent" to the terms. So too here would a reasonable person who knew a Game was offered subject to Terms understand that their play of that Game constituted acceptance of the terms. Second, in *Schnabel v. Trilegiant Corporation*, 697 F.3d 110 (2d Cir. 2012), there was no evidence plaintiffs had notice of the existence of the terms at all, and the court found that the conduct defendant alleged constituted manifestation of assent, auto-debited charges to their credit cards, "were too passive" to so prove. *Id.* at 128–129. Third, in *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 562 (9th Cir. 2014), the court found that the failure to cancel a satellite radio subscription that came as an initial free trial with a car from a company plaintiff never interacted with was not sufficient evidence of an intent to assent to the agreement. That situation obviously is very different than this one, where Plaintiffs, with knowledge that their play was governed by Terms, continued playing the Game on hundreds of occasions.

In any event, Double Down *has* shown that both Ms. Benson and Ms. Simonson were aware that continuing to play the Game constituted assent to the Terms. Ms. Benson testified that she was aware that "a person has to agree to the terms of use before you can use the offer," *i.e.*, play the Game, and kept playing the Game. Dkt. No. 265, Ex. 1 (Benson Dep. at 85:20–24). And Ms. Simonson testified that she understood that Defendants' original motion to compel was an attempt to enforce the Terms, which a reasonable person would understand that Defendants would have no reason to do if they did not believe Plaintiffs had agreed to them. Dkt. No. 265, Ex. 2 (Simonson Dep. at 124:8–20 (Q. And so you were aware when [Defendants] moved to compel arbitration that Double Down and IGT asserted Double Down's terms of use and that Double Down had terms of use, correct? A. Yes.)).

For the foregoing reasons, Double Down respectfully requests the Court grant its Motion and (1) compel Plaintiffs to pursue all of their claims in arbitration; and (2) stay this action pending disposition of the arbitration proceeding.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

DATED this 28th day of May, 2021

DAVIS WRIGHT TREMAINE LLP

Attorneys for Double Down Interactive, LLC

By *s/ Jaime Drozd Allen*

Jaime Drozd Allen, WSBA #35742
Stuart R. Dunwoody, WSBA #13948
Cyrus E. Ansari, WSBA #52966
Benjamin J. Robbins, WSBA #53376
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: 206-757-8039
Fax: 206-757-7039
E-mail: jaimeallen@dwt.com
E-mail: stuartdunwoody@dwt.com
E-mail: cyrusansari@dwt.com
E-mail: benrobbins@dwt.com

Sean M. Sullivan (admitted *pro hac vice*)
Sarah E. Burns (admitted *pro hac vice*)
865 South Figueroa Street
Los Angeles, CA 90017
Telephone: 213-633-6800
Fax: 213-633-6899
E-mail: seansullivan@dwt.com
E-mail: sarahburns@dwt.com

REPLY IN SUPPORT OF DOUBLE DOWN INTERACTIVE'S RENEWED MOTION TO COMPEL ARBITRATION AND TO STAY (2:18-CV-00525-RSL) - 10

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax