**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

---

|  |  |  |
|---|---|---|
| ADRIENNE BENSON and MARY SIMONSON, individually and on behalf of all others similarly situated, | : : : | |
| | : | Case No. 18-cv-525-RSL |
| *Plaintiffs,* | : : | |
| v. | : : | |
| DOUBLEDOWN INTERACTIVE, LLC, a Washington limited liability company, INTERNATIONAL GAME TECHNOLOGY, a Nevada corporation, and IGT, a Nevada corporation, | : : : : : | |
| *Defendants.* | : : | |

---

**EXPERT DECLARATION OF PROFESSOR WILLIAM B. RUBENSTEIN**

1.     I am the Bruce Bromley Professor of Law at Harvard Law School and have been recognized as a leading national expert on class action law and practice. Class Counsel[1] seek a fee of $124.5 million, which constitutes 30% of the $415 million settlement. Class Counsel have retained me to provide my expert opinion as to whether this request is reasonable in the context of this litigation. After setting forth my qualifications to serve as an expert (Part I, *infra*), I state the following three opinions:

---

[1] The Settlement Agreement states that "'Class Counsel' means Jay Edelson, Rafey S. Balabanian, Todd Logan, Alexander G. Tievsky, Brandt Silver-Korn, and Amy Hausmann of Edelson PC." Class Action Settlement Agreement at ¶ 1.7, *Benson, et al. v. DoubleDown Interactive, LLC, et al.*, No. 2:18-cv-00525-RSL (W.D. Wash. Nov. 11, 2022), ECF No. 508-1 [hereinafter, "Settlement Agreement"].

- ***While the requested percentage is higher than both the Ninth Circuit benchmark and rates in large fund settlements generally, courts across the circuits have often approved fees of 30% or more in large fund cases – and comparing percentages across cases provides relatively little insight on whether any specific award is excessive in a situation like this, where the settlement does not stand alone but is part of a larger litigation campaign.*** (Part II, *infra*).  The benchmark fee in this Circuit is 25%, while empirical studies show the average fee in cases of this fund size to be closer to 20%; yet the total number of cases in those studies was low and the standard deviation high.  By contrast to these limited data points, my research assistants compiled and verified a list of nearly 50 cases with recoveries over $100 million – most from the past decade – in which courts approved fees of 30% or more.  That sample is not representative of the full range of fee awards in large fund cases, but it does show that there is nothing terribly unusual about a 30% fee in such cases.  What is unusual here is that this case is a part of a litigation campaign encompassing a dozen cases filed in courts across the country:  as Class Counsel have garnered 25% fees in five prior settlements, if the 30% fee were approved here, their average rate across the six cases would be under 26% and the weighted average about 28%; if the winning *and* losing cases are each seen as single data points, the average rate across the 11 cases is 14%.  All these numbers support the conclusion that comparing percentages across cases can be complicated and that the whole endeavor is not terribly enlightening absent a more qualitative assessment of a case's risks and outcomes.

- ***Assessing Class Counsel's request according to the Ninth Circuit's multifactor test supports the conclusion that 30% is reasonable because of the truly extraordinary risks they undertook and the remarkable results they achieved for the class.*** (Part III, *infra*).  This was an exceedingly risky set of cases: the cases did not piggy-back on a prior government investigation, nor were they the next cases applying a law regularly deployed by class counsel.  Instead, these cases required the development of a new legal theory to combat a new – and pernicious – type of technological invention, the social casino.  The facts involved complex issues requiring technological expertise, and the law involved a novel application of existing gambling statutes to this new type of game.  Worse, not only did Class Counsel fight these cases in courts across the country, but as they did, proponents of these games attempted to compel arbitration, cram down new non-litigation dispute resolution rules on game users mid-case, and change existing gambling laws and regulations; these actions forced Class Counsel to defend their efforts in multiple arenas simultaneously, lest the entire endeavor be lost.  This particular case was especially protracted, and hence risky, as the Defendants pursued multiple efforts to change the venue of the case to multiple other forums and engaged in discovery tactics raising questions of malfeasance and spoliation.  Class Counsel shouldered all this risk while litigating against large and rich corporations, with seemingly bottomless coffers, employing multiple enormous law firms, yet they did so in a lean fashion without enlisting dozens of law firms to share the risk.  Despite these risks, Class Counsel have secured an absolute landmark set of settlements securing more than a half a billion dollars for class members.  In this specific case, the settlement

constitutes a remarkable portion of the Defendants' total value; the cash awards to class members reflect a significant return of their funds, especially for those most preyed upon; the cash relief is available to any class member who suffered monetary harm; it is easily claimed; and it is complemented by significant non-monetary changes in the Defendants' practices.

- ***In the unique circumstances presented by this litigation effort, a lodestar cross-check is not a helpful tool by which to assess the reasonableness of the proposed percentage award.*** (Part IV, *infra*). The Ninth Circuit requires courts to assess the reasonableness of a proposed percentage award according to a set of factors and encourages them to cross-check the percentage against class counsel's lodestar. Four sets of interrelated factors make Class Counsel's lodestar not particularly pertinent in the unique circumstances of this litigation campaign: (1) some of the cases in this campaign (though not this one) were settled without significant litigation and courts have found that rigid application of a lodestar cross-check in such circumstances threatens to create the wrong incentives for class counsel; (2) this settlement is one of a set of a dozen interrelated cases and attributing lawyering time across the set of cases to one in particular is administratively difficult; (3) the set of cases encompassed here includes a series of unsuccessful efforts, and although Class Counsel cannot be directly compensated for those, the time they put into them is not completely irrelevant to this successful outcome; and (4) Class Counsel's efforts in this set of cases encompass, *inter alia*, compensable work undertaken before administrative agencies, executive branch officials, legislatures, and the media and accounting for that time with conventional hourly litigation rates is imprecise. The lodestar cross-check is only a means to an end, and other means – *e.g.*, the multifactor Ninth Circuit test – are better used in this unique setting.

2.    Rule 23 requires the Court to assess the reasonableness of the proposed fee in the context of this particular settlement, but Class Counsel's achievement in these social casino cases is better viewed in the aggregate. Prior to entering academia, I was a lawyer at the national office of the American Civil Liberties Union (ACLU) for nearly a decade, during which time I pursued civil rights campaigns on behalf of minority groups.[2] Based on that experience, it strikes me that what Class Counsel have pursued here is closer in form to a civil rights litigation campaign than it

---

[2] I have written about such litigation campaigns in my academic scholarship. *See, e.g.*, William B. Rubenstein, *Divided We Litigate: Addressing Disputes Among Clients and Lawyers in Civil Rights Campaigns*, 106 Yale L. J. 1623 (1997).

is to a series of discrete class action settlements. Class Counsel saw an injustice – a thinly disguised form of gambling preying on those most vulnerable to addictive gambling – and they sought to fix it. Their goal was not to win a case but to reform an entire industry, much like a civil rights campaign might aim to reform a particular type of discriminatory practice across an entire employment sector. To accomplish this end, Class Counsel went far beyond what lawyers pursuing a simple class action case would normally do. As discussed more fully below,[3] Class Counsel have pursued a dozen different cases, against at least 10 different defendants, in four different federal judicial districts located in four different federal circuits, testing whether these social casino games constituted gambling under the laws of more than a half dozen states. Class Counsel built websites to help app users avoid forced arbitration clauses, lobbied legislators and regulators, and took their efforts to the media. When Class Counsel lost, they did not give up, but changed tactics or forums and kept going. And they did all of this with their own funds, risking millions of dollars of their own money to end this practice. What they have achieved so far, with a series of six settlements, is an astounding accomplishment that begins to chip away at the pernicious underlying social casinos. As I explain more fully below, it is in some ways difficult to apply conventional fee-setting principles to a litigation campaign like this, but one conclusion seems irrefutable: Class Counsel have more than earned the fee requested in this particularly hard-fought battle of their larger war.

---

[3] *See* ¶ 19, *infra.*

# I.
## BACKGROUND AND QUALIFICATIONS[4]

3.      I am the Bruce Bromley Professor of Law at Harvard Law School.  I graduated

from Yale College, *magna cum laude*, in 1982 and from Harvard Law School, *magna cum laude*,

in 1986.  I clerked for the Hon. Stanley Sporkin in the U.S. District Court for the District of

Columbia following my graduation from law school.  Before joining the Harvard faculty as a

tenured professor in 2007, I was a law professor at the UCLA School of Law for a decade, and an

adjunct faculty member at Harvard, Stanford, and Yale Law Schools while a litigator in private

practice during the preceding decade.  I am admitted to practice law in the Commonwealth of

Massachusetts, the State of California, the Commonwealth of Pennsylvania (inactive), the District

of Columbia (inactive), the U.S. Supreme Court, six U.S. Courts of Appeals, and four U.S. District

Courts.

4.      My principal area of scholarship is complex civil litigation, with a special emphasis

on class action law.  I am the author, co-author, or editor of five books and more than a dozen

scholarly articles, as well as many shorter publications (a fuller bibliography appears in my

appended c.v.).  Much of this work concerns various aspects of class action law.  Since 2008, I

have been the sole author of the leading national treatise on class action law, *Newberg on Class

Actions*.  Between 2008 and 2017, I re-wrote the entire multi-volume treatise from scratch as its

Fifth Edition and, subsequently, produced the treatise's Sixth Edition – *Newberg and Rubenstein

on Class Actions* – which was published in 2022.  As part of this effort, I wrote and published a

692-page volume (volume 5 of the Sixth Edition) on attorney's fees, costs, and incentive awards;

---

[4] My full c.v. is attached as Exhibit A.

this is the most sustained scholarly treatment of class action attorney's fees and has been cited in numerous federal court fee decisions. For five years (2007–2011), I published a regular column entitled "Expert's Corner" in the publication *Class Action Attorney Fee Digest*. My work has been excerpted in casebooks on complex litigation, as noted on my c.v.

5.       My expertise in complex litigation has been recognized by judges, scholars, and lawyers in private practice throughout the country for whom I regularly provide consulting advice and educational training programs. Since 2010, the Judicial Panel on Multidistrict Litigation (JPML) has annually invited me to give a presentation on the current state of class action law at its MDL Transferee Judges Conference, and I have often spoken on the topic of attorney's fees to the MDL judges. The Federal Judicial Center invited me to participate as a panelist (on the topic of class action settlement approval) at its March 2018 judicial workshop celebrating the 50th anniversary of the JPML, *Managing Multidistrict and Other Complex Litigation Workshop*. The Ninth Circuit invited me to moderate a panel on class action law at the 2015 Ninth Circuit/Federal Judicial Center Mid-Winter Workshop. The American Law Institute selected me to serve as an Adviser on a Restatement-like project developing the *Principles of the Law of Aggregate Litigation*. In 2007, I was the co-chair of the Class Action Subcommittee of the Mass Torts Committee of the ABA's Litigation Section. I am on the Advisory Board of the publication *Class Action Law Monitor*. I have often presented continuing legal education programs on class action law at law firms and conferences.

6.       My teaching focuses on procedure and complex litigation. I regularly teach the basic civil procedure course to first-year law students, and I have taught a variety of advanced courses on complex litigation, remedies, and federal litigation. I have received honors for my

teaching, including: the Albert M. Sacks-Paul A. Freund Award for Teaching Excellence, as the best teacher at Harvard Law School during the 2011–2012 school year; the Rutter Award for Excellence in Teaching, as the best teacher at UCLA School of Law during the 2001–2002 school year; and the John Bingham Hurlbut Award for Excellence in Teaching, as the best teacher at Stanford Law School during the 1996–1997 school year.

7.      My academic work on class action law follows a significant career as a litigator. For nearly eight years, I worked as a staff attorney and project director at the national office of the American Civil Liberties Union (ACLU) in New York City.  In those capacities, I litigated dozens of cases on behalf of plaintiffs pursuing civil rights matters in state and federal courts throughout the United States.  I also oversaw and coordinated hundreds of additional cases being litigated by ACLU affiliates and cooperating attorneys in courts around the country.  I therefore have personally initiated and pursued complex litigation, including class actions.

8.      I have been retained as an expert witness in roughly 100 cases and as an expert consultant in about another 30 cases.  These cases have been in state and federal courts throughout the United States, most have been complex class action cases, and many have been MDL proceedings.  I have been retained to testify as an expert witness on issues ranging from the propriety of class certification, to the reasonableness of settlements and fees, to the preclusive effect of class action judgments.  I have been retained by counsel for plaintiffs, for defendants, and for objectors.

9.      Courts have appointed me to serve as an expert in complex fee matters:

- In 2015, the United States Court of Appeals for the Second Circuit appointed me to argue for affirmance of a district court order that significantly reduced class counsel's

fee request in a large, complex securities class action, a task I completed successfully when the Circuit summarily affirmed the decision on appeal.[5]

- In 2017, the United States District Court for the Eastern District of Pennsylvania appointed me to serve as an expert witness on certain attorney's fees issues in the National Football League (NFL) Players' Concussion Injury Litigation (MDL 2323). In my final report to the Court, I recommended, *inter alia*, that the Court should cap individual retainer agreements at 22%, a recommendation that the Court adopted.[6]

- In 2018, the United States District Court for the Northern District of Ohio appointed me to serve as an expert consultant to the Court on complex class action and common benefit fees issues in the National Prescription Opiate Litigation (MDL 2804).

- The United States District Courts for the Southern District of New York and the Eastern District of Pennsylvania have both appointed me to serve as a mediator to resolve complex matters in class action cases, including fee issues.

10.    One of the functions I can provide as an expert witness is to present empirical evidence of class action practices from other cases. As part of my scholarly work on class action law, I have created and maintain a database containing data on more than 1,000 class action lawsuits. Specifically, my research assistants coded the data from case reports appearing in the journal, *Class Action Attorney Fee Digest* (CAAFD). CAAFD was published monthly from January 2007 to September 2011 for a total of 57 issues, and reported on 1,187 unique court-approved state and federal class actions. For each case, a CAAFD case abstract describes the awarding court and judge, the subject matter of the dispute, the settlement/judgment benefits, the attorney fee and expense awards (both as requested by plaintiff's counsel and as approved by the court), the case filing and attorney fee award dates, any named plaintiff awards, and miscellaneous

---

[5] *See In re IndyMac Mortg.-Backed Sec. Litig.*, 94 F. Supp. 3d 517 (S.D.N.Y. 2015), *aff'd sub nom. DeValerio v. Olinski*, 673 F. App'x 87 (2d Cir. 2016).

[6] *In re Nat'l Football League Players' Concussion Injury Litig.*, No. 2:12-md-02323-AB, 2018 WL 1658808, at *1 (E.D. Pa. Apr. 5, 2018) ("I adopt the conclusions of Professor Rubenstein and order that IRPAs' fees be capped at 22% plus reasonable costs.").

data on case and settlement/judgment administration.  In creating the database from the CAAFD

reports, my research team cross-checked the accuracy of a subset of federal reports against source

documents from PACER; we found only one error – an understatement of the settlement benefit

value by 2% – in 726 data fields, or fewer than 0.15% of fields.  I am therefore confident about

the accuracy of the data in my database and use it regularly as a source for my scholarship and

expert witness work.

11.    Courts have often relied on my expert witness testimony in fee matters.[7]

12.    I have been retained in this case to provide an opinion concerning the issues set

forth in the first paragraph, above.  I am being compensated for providing this expert opinion.  I

---

[7] *See, e.g.*, *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 872 (8th Cir. 2014); *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-MD-2836, 2022 WL 18108387, at *7 (E.D. Va. Nov. 8, 2022); *Reed v. Light & Wonder, Inc.*, No. 18-CV-565-RSL, 2022 WL 3348217, at *1-2 (W.D. Wash. Aug. 12, 2022); *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, No. 12-CV-0256 (LAK), 2021 WL 2453972 (S.D.N.Y. June 15, 2021); *In re Facebook Biometric Info. Priv. Litig.*, No. 15-CV-03747-JD, 2021 WL 757025, at *10-*12 (N.D. Cal. Feb. 26, 2021); *Kater v. Churchill Downs Inc.*, No. 15-CV-00612-RSL, 2021 WL 511203, at *1-*2 (W.D. Wash. Feb. 11, 2021); *Wilson v. Playtika Ltd.*, No. 18-CV-5277-RSL, 2021 WL 512230, at *1-*2 (W.D. Wash. Feb. 11, 2021); *Wilson v. Huuuge, Inc.*, No. 18-CV-5276-RSL, 2021 WL 512229, at *1-*2 (W.D. Wash. Feb. 11, 2021); *Amador v. Baca*, No. 210CV01649SVWJEM, 2020 WL 5628938, at *13 (C.D. Cal. Aug. 11, 2020); *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *10 (S.D. Ill. Dec. 16, 2018); *Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333, 2018 WL 6305785, at *5 (M.D.N.C. Dec. 3, 2018); *In re Nat'l Football League Players' Concussion Injury Litig.*, No. 2:12-md-02323-AB, 2018 WL 1658808, at *4 (E.D. Pa. Apr. 5, 2018); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 3175924, at *3 (N.D. Cal. July 21, 2017); *Aranda v. Caribbean Cruise Line, Inc.*, No. 1:12-cv-04069, 2017 WL 1369741, at *5 (N.D. Ill. Apr. 10, 2017), *aff'd sub nom. Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792 (7th Cir. 2018); *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015); *Asghari v. Volkswagen Grp. of Am., Inc.*, No. 13-CV-02529 MMM, 2015 WL 12732462, at *44 (C.D. Cal. May 29, 2015); *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591-JWL, 2015 WL 2165341, at *5 (D. Kan. May 8, 2015); *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010); *Commonwealth Care All v. Astrazeneca Pharm. L.P.*, No. CIV.A. 05-0269 BLS 2, 2013 WL 6268236, at *2 (Mass. Super. Aug. 5, 2013).

was paid a flat fee in advance of rendering my opinion, so my compensation is in no way contingent upon the content of my opinion.

13.    In analyzing these issues, I have discussed the case with the counsel who retained me. I have also reviewed documents from this litigation and the related cases, a list of which is attached as Exhibit B. I have also reviewed the case law and scholarship relevant to the issues herein.

## II.
## WHY 30% IS QUANTITATIVELY REASONABLE

14.    Class Counsel seek a fee of $124.5 million, which constitutes 30% of the $415 million common fund.

15.    In this Circuit, 25% is the benchmark[8] and empirical evidence shows that it is the average percentage courts have actually approved as well.[9] My own database contains 12 common fund cases from the Western District of Washington and the average award across these 12 cases is 27.0%.

16.    Empirical evidence demonstrates that percentage awards decrease as fund sizes increase; this is known as the "sliding scale"[10] or "mega-fund"[11] effect. The effect itself is easily

---

[8] *See, e.g.*, *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016) ("The Ninth Circuit has set 25% of the fund as a 'benchmark' award under the percentage-of-fund method.") (citations omitted); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047–48 (9th Cir. 2002) (same).

[9] Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. Empirical Legal Stud. 248, 260 tbl.4 (2010).

[10] For a discussion, see 5 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 15:80 (6th ed. & Supp. 2022) [hereinafter "*Newberg and Rubenstein on Class Actions*"].

[11] For a discussion, see *id.* at § 15:81.

demonstrated in the aggregate,[12] but empirical data on percentage awards for this level of settlement ($415 million) is thin.  Only one published study zeroes in on a relevant tranche ($250–$500 million), with the average award in that group being 17.8% and the median 19.5%; but the tranche encompassed only eight cases and the standard deviation (7.9%) was high.[13]  Similarly, in my own dataset, there are only a dozen similarly sized settlements ($315 million–$515 million), with an average award of 19.7% and the median award of 21.6%;[14] the range of percentages in my data is wide (from 3.2% to 33.3%), and the standard deviation (8.1%) again high.  Moreover, while the published study encompasses eight cases and my database 12, there is likely a fair amount of overlap across the two datasets in that they studied similar time periods.

17.     By contrast to the limited sets of data captured in these empirical studies sits a larger set of cases in which courts have approved awards of 30% or greater even though the settlement fund was more than $100 million.  My research assistants culled available public information to generate and verify a list of 47 such cases, appended here as Exhibit C.  The point is not that these cases are a more representative sample than the sets in the empirical studies.  The point is simply that the average number emerging from the limited empirical studies with small quantities of cases, standing alone, can give a misleading picture of the percentages that courts have actually approved in settlements at this fund level.[15]

---

[12] *Id.*  Graphs 1 & 2.

[13] Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 839 tbl.11 (2010).

[14] We excluded the thirteenth case in this range because the case was not an actual common fund matter:  the percentage was calculated only against *potential* benefits to a class and hence the court's fee analysis was largely lodestar-driven.

[15] *See, e.g.*, *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, No. 2:10-md-02179-CJB, 2016 WL 6215974, at *16 (E.D. La. Oct. 25, 2016) (noting

18.     That conclusion is consistent with my statement in the *Newberg and Rubenstein* treatise[16] that comparing percentages across cases can provide less insight as to the reasonableness of any proposed fee than other intra-case comparisons, such as multi-factor qualitative tests or lodestar cross-checks.  It is true in the abstract that a 25% award in one case and a 25% award in another case are both 25%, such that a percentage comparison ensures some level of consistency. But since that 25% figure, standing alone, provides little information about the fee's relationship to risk, performance, or profit, it can be a somewhat meaningless form of consistency.

19.     What's even more confounding in this case is that the 30% figure, standing alone, exaggerates Class Counsel's actual yield here.  As noted at the outset,[17] Class Counsel have conducted a litigation campaign in pursuing these social casino cases.  As part of that effort, Class Counsel filed and pursued cases in various jurisdictions around the country, testing state gambling statutes for their applicability to these types of games.[18]  Before prevailing in the landmark Ninth Circuit *Kater* ruling that held Washington law applicable,[19] Class Counsel lost five cases seeking to apply the gambling statutes of California, Illinois, Maryland, Michigan, Nevada, and Ohio to these social casino apps; since *Kater*, Class Counsel have settled six actions (including this one), with one case still pending.  Exhibit D charts out all of these cases and – assuming the Court were to approve a 30% award here – it shows that:

---

that for mega-funds, "there are fewer percentage awards to serve as a benchmark; consequently, there is some variability in the percentages awarded in these cases").

[16] *See* 5 *Newberg and Rubenstein on Class Actions*, *supra* note 10, at § 15:86.

[17] *See* ¶ 2, *supra*.

[18] A chart reflecting the cases comprising the litigation campaign is attached as Exhibit D.

[19] *Kater v. Churchill Downs Inc.*, 886 F.3d 784 (9th Cir. 2018).

- If each of the six settled cases is considered a single data point, ***the average fee award across the six settling cases is 25.8%***.

- If the six settled cases are viewed in terms of their total recovery and total fees, Class Counsel's overall fee – or ***weighted average – for the six settling cases is 28.2%***.

- Finally, if each of the 11 cases is considered one individual data point (including the five unsuccessful, and hence 0%, cases), the ***average fee across the whole campaign*** is ***14.1%***.

Of course, lawyers are not rewarded when they lose a contingent fee case but, as discussed more fully below,[20] courts do permit time spent on non-prevailing matters to be included in counsel's lodestar when that work contributed to the ultimate victory. So too, here, it is fair to acknowledge that Class Counsel's work testing various state laws throughout the country redounded to the benefit of this class when the *Kater* victory was finally secured, particularly as the classes they sought to represent in all of the other efforts substantially overlap with this class. Thus, it does not seem unfair to tax this class for some of the groundwork effort that went into this victory by awarding 30% here, in part to acknowledge the many 0% cases that led up to this settlement – such an approach approximates awarding Class Counsel something closer to 14% than 30%.

20. In short, (a) the level of Class Counsel's request can be viewed through various lenses, making it range from 14%-30%, but even at its maximum 30% level, while (b) it is above the Ninth Circuit's normal benchmark and (c) even further above average percentages in large fund cases (d) it is consistent with fee percentages courts across the circuits have approved in dozens of other mega-fund cases and (e) its reasonableness is more appropriately assessed

---

[20] *See* ¶ 29, *infra*.

according to the qualitative multi-factor test the Ninth Circuit requires than through qualitatively-blind comparisons to other percentages standing alone.

## III.
## WHY 30% IS QUALITATIVELY REASONABLE

21.    The Ninth Circuit requires courts to consider the following factors in assessing the reasonableness of a proposed fee:

> (1) the results achieved for the class; (2) the risk of the litigation (including complexity of litigation); (3) benefits generated by class counsel beyond the settlement fund; (4) the comparison between the proposed fee and market rate; and (5) the burdens of the litigation for class counsel (including contingency basis, length of litigation, expenses to counsel, and opportunity cost of foregone work).[21]

I distill these five factors into three considerations:[22] (i) Part II, *supra*, addressed prong 4's comparison of the percentage sought to percentages normally awarded (the "market rate"); (ii) Part III(A), *infra*, addresses the risks and burdens of the litigation, as per prongs 2 and 5; and (iii) Part III(B), *infra*, contemplates the litigation's results and benefits, as per prongs 1 and 3.    In undertaking this analysis, I utilize the phrase "this litigation" or "these cases" or "this set of cases" when my points apply across Class Counsel's litigation campaign and affect all of its social casino settlements in similar ways; where appropriate, I pin specific points to this case itself.

---

[21] *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002).

[22] *See also Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x. 628, 630 (9th Cir. 2020) (characterizing "the most pertinent factors influencing reasonableness" as "(1) the extent to which counsel achieved exceptional results for the class; (2) whether the case was risky for class counsel; (3) whether counsel's performance generated benefits beyond the cash settlement fund; and (4) the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work)") (cleaned up).

**A.**
***Class Counsel Took Extraordinary Risks***

22.    Eleven independent factors demonstrate the riskiness of all of the social casino cases, including this one:[23]

- ***These cases were risky because they did not piggy-back on a government enforcement action.***    Many class actions follow on the heels of government enforcement actions, such as securities class actions that follow SEC enforcement actions or antitrust cases that follow Department of Justice actions.    Class counsel have a lower risk in such cases as their investigative costs may be lower; as they may be able to employ non-mutual offensive issue preclusion to establish liability without litigation;[24] and/or as the defendant has a natural incentive to settle with the government, easing the road to settlement with the class.    Not this set of cases: no government agency has pursued the social casino industry.    Class Counsel detected, investigated, theorized, and executed the entire litigation campaign from scratch.

- ***These cases were especially risky because of their novelty.***    Many class actions are pursued by lawyers who specialize in particular areas (securities, antitrust, consumer, etc.) and can economize their practices and lower their risks by repeating efforts from one case to the next.    Not this set of cases: here Class Counsel have taken existing gambling laws and attempted – for the first time in American history – to apply them to the technologically novel social casino industry.    This application had no precedent and Class Counsel have accordingly spent significant time litigating the applicability of state gambling laws throughout the country to these social casinos.    Although this particular case was filed after Class Counsel secured the landmark *Kater* decision in the Ninth Circuit (establishing that virtual casino games fell within Washington's definition of an illegal gambling),[25] it nonetheless retained pre-*Kater*-like risk in that post-*Kater* social casino defendants – including Defendants here – have continued to attempt to distinguish *Kater*.[26]    Indeed, these Defendants even filed a countersuit

---

[23]  The point is not to look at counsel's risks *ex post*, but rather to demonstrate the strength of the achievement compared to the risks *ex ante*.    *See In re Synthroid Marketing Litigation*, 264 F.3d 712, 718-19 (7th Cir. 2001) (noting that because "hindsight alters the perception of the suit's riskiness" after its conclusion, it is "only *ex ante* [that] the costs and benefits of particular systems and risk multipliers [can] be assessed intelligently").

[24] *See, e.g.*, *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979).

[25] *Kater v. Churchill Downs Inc.*, 886 F.3d 784 (9th Cir. 2018).

[26] *See, e.g.*, Defendants Double Down Interactive LLC's and International Game Technology's Motion to Compel Arbitration and Stay Action, *Benson, et al. v. DoubleDown Interactive, LLC, et al.*, No. 2:18-cv-00525-RSL (W.D. Wash. Nov. 11, 2022), ECF No. 44 at 2 n.4 ("*Kater* involved different factual allegations and is not binding on IGT or DDI."); *Fife v. Sci. Games Corp.*,

against these named plaintiffs in Washington state court, asking the state court for, *inter alia*, a declaratory judgment effectively vitiating *Kater's* holding.[27]

- ***These cases were especially risky because of their factual and legal complexity.*** All class action cases are typically more complex than the average contingent fee case – that is why the field is known as "complex litigation." But many class actions involve straightforward enforcement of a well-worn statute. Not this set of cases: the novel legal issues outlined in the prior bullet point involve complex questions, as do the factual issues presented by these social casino platforms and practices.

- ***The fact that Class Counsel were unsuccessful in challenging these social casinos under other state laws is evidence of the riskiness that inhered in these successful cases.*** Courts have found cases particularly risky when class counsel invested time and resources in parallel endeavors that were unsuccessful and for which they were not compensated.[28] For class counsel in those circumstances, the commitment to another case after losing one case is generally a much riskier commitment. Here, Class Counsel doubled down after unsuccessful efforts in several other states, demonstrating a comfort with risk – and/or a deep commitment to this social effort – far beyond the level of risk than what most investors will tolerate.

- ***These cases were especially risky because Class Counsel litigated against large, well-funded defendants***. Defendants in this particular case are very well capitalized.

---

No. 2:18-CV-00565-RBL, 2018 WL 6620485, at *4-5 (W.D. Wash. Dec. 18, 2018) (rejecting defendant's argument that *Kater* did not govern).

[27] *See* Complaint for Declaratory Relief at 16, *DoubleDown Interactive, LLC, et al. v. Benson, et al.*, No. 20-2-02023-34 (Wa. Super. Ct.) (filed Sept. 11, 2020) (asking, in prayer for relief, "[f]or a declaration that DoubleDown Casino games played by Benson and Simonson are not illegal gambling games under Washington law").

[28] *See, e.g.*, *Marshall v. Northrop Grumman Corp.*, No. 16-CV-6794 AB (JCX), 2020 WL 5668935, at *5–6 (C.D. Cal. Sept. 18, 2020) (reasoning that Class Counsel's "financial risks were compounded by the fact that recovery was uncertain" because "[s]everal of ERISA excessive fee cases filed by the firm were dismissed and the dismissals were upheld by Courts of Appeal. In other cases, district courts granted summary judgment against the plaintiffs in whole or part. . . . Accordingly, the Court concludes that the great risk assumed by [Class Counsel] justifies an award of one third of the settlement fund in attorney fees." (internal citations omitted)); *Krakauer v. Dish Network, L.L.C.* No. 1:14-CV-333, 2018 WL 6305785 (M.D.N.C. Dec. 3, 2018) ("Class Counsel's prior work in [a parallel unsuccessful action] illustrates the risk they assumed by litigating the present matter. In [the parallel case], Class Counsel spent over 5,000 hours on a TCPA case that the named plaintiff voluntarily dismissed after the court denied class certification. While Class Counsel was able to leverage some of [that] work into the litigation of this case, it will not recover fees for the 5,000-plus hours it spent on that case.").

DoubleDown Interactive, LLC[29] has an annual revenue exceeding $300 million and an enterprise value of roughly $230 million.[30]  International Game Technology generates $4.2 billion in annual revenues and boasts an enterprise valuation of $10.9 billion.[31]

- ***These cases were especially risky because Class Counsel litigated against some of the largest and most powerful law firms in the world***.  Defendants in this particular case exerted their financial strength by retaining high-priced counsel,[32] including Baker & Hostetler LLP, a firm of over 1,000 attorneys,[33] Duane Morris, a firm of close to 1,000 attorneys,[34] and Davis Wright and Tremaine, a firm of over 500 lawyers that is one of the largest firms in Washington State.[35]  With roughly 2,500 lawyers employed by these three firms alone, Defendants had at their disposal more than 62 times as many lawyers as did the class, represented solely by Class Counsel's approximately 40-lawyer firm (and local counsel).  Armed with only its own resources and small staff, Class Counsel faced tremendous risk litigating against such deep-pocketed, high-powered opponents.

- ***These cases were especially risky because these Defendants and the defendants in related cases – and their trade groups – sought to have the Washington gambling commission <u>and</u> the Washington State legislature intervene in ways that would have terminated the case.***  During the pendency of these actions, the present Defendants and

---

[29] Settlement Agreement, *supra* note 1, at ¶ 1.10.

[30] *See* Yahoo! Finance, *DoubleDown Interactive Co., Ltd. (DDI)*, https://finance.yahoo.com/quote/DDI/key-statistics/ (indicating trailing twelve months revenue of $321 million and enterprise value of $231 million for defendant DoubleDown Interactive as of March 4, 2023).

[31] *See* Yahoo! Finance, *International Game Technology PLC (IGT)*, https://finance.yahoo.com/quote/IGT/key-statistics?p=IGT (indicating trailing twelve months revenue of $4.22 billion and enterprise value of $10.89 billion for defendant International Game Technology as of March 4, 2023).

[32] Settlement Agreement, *supra* note 1, at ¶ 1.11 ("'Defendant's Counsel' means Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg, & Rhow, P.C., and Davis Wright Tremaine LLP for Defendant DoubleDown Interactive LLC, and Baker & Hostetler LLP, and Duane Morris LLP for Defendants International Game Technology and IGT.").

[33] Baker & Hostetler LLP ranks among the most prestigious in the United States and employs over 1,000 attorneys.  *See* Vault, *2023 Vault Law 100*, https://legacy.vault.com/best-companies-to-work-for/law/top-100-law-firms-rankings (ranking Baker & Hostetler LLP as the 67th most prestigious law firm in the United States).

[34] *About Duane Morris*, https://www.duanemorris.com/site/about.html (stating that the firm has "more than 900 lawyers in offices in the U.S., UK and Asia").

[35] *Davis Wright Tremaine*, https://en.wikipedia.org/wiki/Davis_Wright_Tremaine (reporting that the firm "employs over 500 lawyers").

the defendants in the related social casino cases, through their lobbying organization, (1) asked the Washington State Gambling Commission to issue a ruling that their social casinos did not constitute gambling as it is defined in Washington law; and (2) introduced a series of bills in the Washington State legislature that would have altered Washington law so as to terminate these actions.[36]  Thus, Class Counsel accepted not only the normal contingency risk inherent in the *judicial* system (not knowing for a certainty how  a judge or jury would rule) but also the heightened risk of having their litigation terminated by the *executive* or *legislative* branches of Washington State.

- ***This particular case was risky because these Defendants sought to compel arbitration and – had they prevailed – Class Counsel could not have proceeded with a class proceeding of any kind.***  Defendant DoubleDown moved to compel arbitration – not once, but twice – arguing that their terms of use subject the plaintiffs' claims to mandatory arbitration on an individual, not class, basis.  Had either of these motions been granted, the case would have ended, as aggregate proceedings would have been prohibited.  However, this Court rejected the first motion to compel arbitration, a decision affirmed by the Ninth Circuit, and as result of the settlement, the second motion to compel arbitration has been stayed.

- ***This particular case was especially risky as the Defendants engaged in something akin to a scorched-earth defense***.  I have been studying litigation for nearly four decades but find few analogues to the Defendants' efforts in this matter.  They filed numerous motions to change the venue of this case, seeking to compel arbitration (as noted above), seeking to have this Court certify questions to the Washington State Supreme Court, seeking to accelerate appeals to the Ninth Circuit mid-case under 28 U.S.C. § 1292, and – by asserting their defenses as an affirmative declaratory judgment matter – seeking to have a Washington trial court decide the key issue in this case while it was pending before this federal court:  in other words, they sought *four* different forums for this lawsuit (arbitration, Washington Supreme Court, the Ninth Circuit, and the Washington state trial court), some multiple times.  Moreover, the Defendants moved to strike the class allegations before the class certification motion was ever filed and they engaged in discovery practices so contested that the plaintiffs moved for sanctions and other relief on the grounds that significant evidence had been spoliated.  The size of the settlement reflects the large amount of money at issue in the case – and the Defendants litigated it accordingly.  This significantly raised the risks for Class Counsel as it strained the time, resources, and commitment of the relatively small law firm shouldering all of this burden.

---

[36] *See* Washington State Gambling Commission, *Washington State Gambling Commission Public Meeting – October 2018*, 81–416 (Oct. 18, 2018), https://www.wsgc.wa.gov/sites/default/files/public/agenda/2017/Commission%20Packet_5.pdf; S.B. 6568 & H.B. 2720, 66th Leg., Reg. Sess. (Wash. 2020).

- ***These cases were especially risky because Class Counsel bore the risk of the case themselves.***  In many class actions, the class is represented by a collection of large plaintiffs' firms.[37]  This means that the lawyers are able to spread the risk among the various firms.  Here, but for local counsel, a single class action firm (Edelson, P.C.) alone bore the significant risks outlined above.

- ***Given their commitment to these highly risky cases, Class Counsel were precluded from taking other, simpler, work.***  It is fair to conclude that Class Counsel's extraordinary devotion of time and resources to this novel and complex set of cases prevented them from pursuing simpler, bread-and-butter actions, any of which would have had a higher expectation of settlement and hence ease of recovery of a contingent fee, possibly a well-multiplied one.

23.     These eleven points demonstrate that Class Counsel took large risks in litigating this case – and the other social casino cases – from inception to judgment.  Like any investor that takes large risks, these attorneys are entitled to a return on their investment, so long as the risks they took paid off.  I will now turn to that analysis.

## B.
### Class Counsel Achieved Remarkable Results

24.     At least ten components of these cases' outcomes speak to the results Class Counsel obtained.

- ***Counsel secured a significant legal victory for these classes***.  Class Counsel engaged in a litigation campaign against these social casinos, filing cases in courts throughout the United States.  Class Counsel's success in the Ninth Circuit in the related *Kater* case was a landmark victory.  In a recent case similarly involving multiple efforts, the Ninth Circuit noted that "excepting the district court in this particular matter, no court has ever ruled for bank accountholders on the controlling legal issue," and affirmed the District Court's characterization of class counsel's efforts as demonstrating "'tenacity and great skill,' achieving a 'remarkable' result in a 'hard fought battle' despite an 'adverse legal landscape' and the 'substantial risk of non-payment.'"[38]  Surely these Class Counsel's efforts have merited similar conclusions.

---

[37] *See, e.g.*, *Manual for Complex Litigation (Fourth)* § 10.22 (2004) (discussing presence of multiple counsel in complex litigation and advising judges on how to manage).

[38] *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020).

- ***Counsel obtained significant monetary relief for this class.***  Put simply, $415 million is an extraordinary sum. In my own database, I have fund information on 1,017 settlements and only 20 are larger funds than this. These data support the conclusion that this settlement amount is in the top 2% of all common fund class action settlements.[39]

- ***Counsel disgorged significant monetary relief from the Defendants.***  Not only does the settlement promise significant compensation to the plaintiff class, it represents a remarkable level of disgorgement of the Defendants' assets and hence reflects a meaningful deterrent to such behavior in the future.  The $415 million settlement consists of two chunks of money – $145.25 million from Defendant DoubleDown and $269.75 million from Defendant International Game Technology; these amounts represent 34.5% and 8.6% of the Defendants' equity values respectively.[40]  In the aggregate, the $415 million settlement constitutes 11.6% of the two Defendants' equity values combined.  To put those numbers in perspective:  in my database, utilizing a relatively broad range of comparable settlement values ($200 million-$600 million) enabled me to identify 14 settlements in which there is public information on the defendant's equity value; defendants in that dataset on average settled for only 3.0% of their equity value, with the median settlement as a percent of equity value being 1.8%.[41]  This settlement is therefore about four times greater than what the data would have predicted.

- ***100% of this class is eligible for relief***.  The settlement agreement explains that the class, for settlement purposes, is defined as "all individuals who, in the United States . . . played the Applications on or before Preliminary Approval of the Settlement."[42]  All class members benefit from the significant changes the Defendants will make to its applications going forward.[43]  And significant cash relief is available to any class member who suffered monetary harm:  the claim form enables each class

---

[39] My database adjusts all data to 2023 dollars.  Without adjusting for inflation, only 12 settlements in my dataset are larger than $415 million, indicating this settlement is in the top 1% of all common fund class action settlements.

[40] My analysis uses the market capitalization of the Defendants on Sept. 30, 2022, the fiscal quarter before the motion for preliminary approval of the class settlement, to avoid any effects on the stock price directly resulting from the announcement of the settlement agreement.

[41] The equity value is calculated as the market capitalization of the defendant the fiscal quarter before the motion for preliminary approval of the settlement.

[42] Settlement Agreement, *supra* note 1, at ¶ 1.35.

[43] *See* text accompanying note 51, *infra*.

member to fill out a form inserting the class member's gaming app User ID(s),[44] and "[e]ach Settlement Class Member with an Approved Claim shall be entitled to a Settlement Payment from the Net Settlement Fund."[45]

- ***Class members will receive cash not script***.  Class actions sometimes end in settlements that return class members little direct compensation, occasionally nothing more concrete than coupons or recoveries going exclusively to third party *cy pres* recipients.[46]  The *Manual for Complex Litigation* therefore warns federal judges overseeing class action settlements to be on the lookout for settlements "granting class members illusory nonmonetary benefits, such as discount coupons for more of defendants' product . . . ."[47]  The settlements secured in these cases will deliver cash compensation directly to class members, a form of recovery that speaks highly of the cases' outcomes.

- ***Class members will receive significant cash payments***.  Not only does this specific settlement provide cash payments to class members, the payments are significant.  The motion for preliminary approval states that, "Class Members in the highest category of Lifetime Spending Amounts will likely recover gross payments in excess of 60% of their alleged losses . . . and those in the lowest category will still likely recover gross payments exceeding 20% of the same."[48]

- ***The claims process is straightforward***.  Class actions often end with settlements requiring class members to file claims.  The claim-filing process may often dissuade class members from making the effort, particularly in small-claim situations.  The *Manual for Complex Litigation* therefore warns federal judges overseeing class action settlements to be on the lookout for settlements "imposing such strict eligibility conditions or cumbersome claims procedures that many members will be unlikely to claim benefits . . . ."[49]  In this specific case, the claim form could not be more straightforward:  most class members need only fill in identifying information, the

---

[44] DoubleDown Settlement Claim Form, *Benson, et al. v. DoubleDown Interactive, LLC, et al.*, No. 2:18-cv-00525-RSL (W.D. Wash. Nov. 11, 2022), ECF No. 508-1, Exhibit A [hereinafter "Settlement Claim Form"].

[45] Settlement Agreement, *supra* note 1, at ¶ 2.1(b).

[46] *See* 4 *Newberg and Rubenstein on Class Actions*, *supra* note 10, at §§ 12:7–12:13 (on nonpecuniary damages).

[47] *Manual for Complex Litigation (Fourth)* § 21.61 (2004).

[48] Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement Agreement, *Benson, et al. v. DoubleDown Interactive, LLC, et al.*, Case No. 2:18-cv-00525-RSL (W.D. Wash. Nov. 11, 2022), ECF No. 507 at 1 [hereinafter "Preliminary Approval Brief"].

[49] *Manual for Complex Litigation (Fourth)* § 21.61 (2004).

manner in which they would like to receive their funds, and an attestation to the veracity of the information.[50]

- ***These cases contributed to significant changes in Defendants' practices***.  The prior points focus on the common fund Class Counsel secured for this class.  These lawsuits generally, and this case specifically, have also produced meaningful changes to the Defendants' policies.  Here, through Class Counsel's efforts, the Defendants agreed to "prospective measures" including (a) placing resources related to video game behavior disorders within its applications; (b) publishing on its website a "voluntary self-exclusion policy"; and (c) enabling continued play without the requirement of continued payment.[51]

- ***The settlement, although achieved efficiently, raises no concerns that it might be collusive.***  A critical concern in class suits is that the class's agents might be tempted to sell out the class by agreeing to a low recovery in return for a high fee.  The *Manual for Complex Litigation* therefore warns federal judges overseeing class action settlements that "[a]ctive judicial oversight of the settlement process [is necessary to] prevent collusion between counsel for the class and defendant and [to] minimize the potential for unfair settlements."[52]  Here, there is not a hint of collusion – this set of cases has been nothing but adversarial since its inception, encompassing over seven years of litigation in district and appellate courts across the country.  This particular case settled after over four years of hard-fought litigation (described above), captured by more than 500 docket entries on PACER for the district court portion alone, and it did so under the mediation auspices of a former federal judge and a specialist in complex global settlements.[53]  The protracted and rancorous nature of the litigation, coupled with the remarkable scope of the class's relief, belie any collusion concerns.

- ***This litigation served an important public interest***.  While all class action settlements assist in the government's enforcement of the law,[54] these settlements provide an important and unique public service.  Through their persistent and protected efforts, Class Counsel have helped establish legal limits to a socially destructive practice: gambling addiction.  Class Counsel's achievement transcends these particular settlements by contributing to the general public health of the United States.  As noted

---

[50] Settlement Claim Form, *supra* note 44.

[51] Settlement Agreement, *supra* note 1, at ¶ 2.2.

[52] *Manual for Complex Litigation (Fourth)* § 22.923 (2004) (internal quotation marks omitted).

[53] Preliminary Approval Brief, *supra* note 48, at 1.

[54] *See Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper,* 445 U.S. 326, 339 (1980) ("The aggregation of individual claims in the context of a classwide suit is an evolutionary response to the existence of injuries unremedied by the regulatory action of government.").

at the outset of this Declaration,[55] this litigation is as much a social mission as it is a class action settlement.

25.    These eleven risks and ten results demonstrate what seems incontestable: Class Counsel took extraordinary risks in investing substantial capital and labor in highly adversarial litigation without the promise of any easy return on that investment, and Class Counsel shouldered that risk superbly, generating important monetary and non-monetary returns for this client class specifically and for social casino users generally.

## IV.
## WHY A LODESTAR CROSS-CHECK IS UNHELPFUL IN THE UNIQUE CIRCUMSTANCES OF THIS CASE

26.    Courts in the Ninth Circuit may check the reasonableness of the percentage sought against class counsel's hours and rates – that is, undertake a "lodestar cross-check" – but such an approach is discretionary.  While long holding that a lodestar cross-check "may provide a useful perspective on the reasonableness of a given percentage award,"[56] and "encourag[ing]"[57] District Courts to undertake one, the Circuit has "consistently refused to adopt a crosscheck requirement,"[58] and in 2020, the Circuit again refused to "do so once more."[59]

---

[55] *See* ¶ 2, *supra.*

[56] *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050.

[57] *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011) ("[W]e have also encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method.").

[58] *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020).

[59] *Id.*

27.    In my scholarship, I have consistently urged courts to engage in a lodestar cross-check, believing it is the single most important backstop against excessive fees in most cases.[60] Other scholars and some courts disagree,[61] expressing the general concerns that a lodestar cross-check recreates all of the problems that prompted courts to move away from a lodestar method to a percentage method.[62]  For example, basing a fee on counsel's hours can be time consuming for the lawyers and judiciary, may incentivize counsel to run up their hours unnecessarily, and may accordingly misalign the lawyers' incentives from those of their clients, artificially prolonging litigation and deferring the class's compensation.[63]

28.    Beyond these general concerns about the lodestar cross-check, courts in the Ninth Circuit have found the tool inapplicable or unhelpful in certain specific situations.  *First*, Ninth Circuit law suggests that state fees law should apply in diversity cases such as this[64] and some

---

[60] *See* 5 *Newberg and Rubenstein on Class Actions*, *supra* note 10, at § 15:86.

[61] *See id.* (examining costs and benefits of lodestar cross-check).

[62] For a discussion of this history, see *id.* at § 15:64.

[63] *See id.* at § 15:65 (examining costs and benefits of percentage and lodestar fee methods).

[64] *See, e.g.*, *Rodriguez v. Disner*, 688 F.3d 645, 653 n.6 (9th Cir. 2012) ("If . . . we were exercising our diversity jurisdiction, state law would control whether an attorney is entitled to fees and the method of calculating such fees."); *Northon v. Rule*, 637 F.3d 937, 938 (9th Cir. 2011) ("State laws awarding attorneys' fees are generally considered to be substantive laws under the *Erie* doctrine and apply to actions pending in federal district court when the fee award is connected to the substance of the case." (internal quotation marks omitted)); *Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Existing Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees.").

Some older precedent notes that the application of state fees law has been disputed.  *See Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1302 (W.D. Wash. 2001) ("There is some dispute in this case as to whether state law or federal law applies to the determination of the reasonableness of attorneys fees. . . ."), *aff'd*, 290 F.3d 1043 (9th Cir. 2002).  *See generally* 5 *Newberg and Rubenstein on Class Actions*, *supra* note 10, at § 15:2 ("[T]here is a fair argument that the federal court's equity powers authorize use of federal law.  Specifically, a common fund fee award is a creature of equity, emanating from the court's control of the fund and its ability to

states – such as Washington[65] – do not employ the cross-check in their jurisprudence.  Thus, were the Court to employ state fees law here, the lodestar cross-check would arguably not come into play.  *Second*, where class counsel quickly achieve a strong settlement, courts have sometimes eschewed a lodestar cross-check, likely on the premise that to apply one in those circumstances would incentivize counsel to continue the case (so as to run up their lodestar and lower their multiplier) despite their efficient success.[66]  *Third*, where analysis of the Ninth Circuit's qualitative

---

therefore extract a fee from the fund to ensure against unjust enrichment.  To the extent that a federal court's equitable powers are arguably the source of the common fund fee, application of federal fees law (including calculation methods) seems appropriate and not inconsistent with the general principles underlying the so-called *Erie* doctrine." (footnotes omitted)).

[65] *See Vizcaino*, 142 F. Supp. 2d at 1302 ("Under Washington law, the percentage method, without a lodestar cross-check, should be used in common fund cases."); *Bowles v. Washington Dep't of Ret. Sys.*, 847 P.2d 440, 451 (Wash. 1993) (explaining that Washington courts "apply the percentage of recovery approach" in common fund cases without mentioning a lodestar cross-check).

A Westlaw search in Washington state case law for the term "cross-check" within the same paragraph as the word "lodestar" yielded only one result when conducted on March 4, 2023.  That case was inapposite in that it affirmed a trial court decision to use a lodestar approach in a fee shifting case and to not cross-check that calculation according to the percentage of recovery.  *See Luna v. Household Fin. Corp., III*, 130 Wash. App. 1012 (2005) ("[T]he court did not err in failing to cross-check its lodestar calculation with the percentage of Borrowers' overall recovery under the settlement.").  Thus, it appears fair to conclude that no reported Washington state case has ever used class counsel's lodestar to cross-check a percentage award.

[66] *See Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009) ("Under the circumstances presented here, where the early settlement resulted in a significant benefit to the class, the Court finds no need to conduct a lodestar cross-check."); *Rankin v. Am. Greetings, Inc.*, No. 2:10-CV-01831-GGH, 2011 WL 13239039, at *2 (E.D. Cal. July 6, 2011) ("Furthermore, in accordance with Ninth Circuit precedents, district courts within the Ninth Circuit have recognized that a lodestar cross check need not be performed where plaintiff's counsel achieves a significant result through an early settlement."); *see also Lopez v. Youngblood,* No. CV-F-07-0474 DLB, 2011 WL 10483569, at *14 (E.D. Cal. Sept. 2, 2011) ("A lodestar cross-check is not required in this circuit, and in a case such as this, is not a useful reference point.") (citing *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007)).

factors[67] provides strong support for the percentage award, some courts have held that a cross-check is unnecessary,[68] as has this Court in prior social casino cases.[69]  *Finally*, the Ninth Circuit recently reversed a district court decision for relying (in large part) on the cross-check to limit a fee award below the benchmark in one case,[70] and in another, the Circuit noted that a district court

---

[67] These are set forth in Part III, *supra*.

[68] *See, e.g.*, *Lopez v. First Student, Inc.*, No. EDCV191669JGBSHKX, 2022 WL 618973, at *6 (C.D. Cal. Feb. 8, 2022) (approving award of 30% after reviewing qualitative factors and stating, "The Court is satisfied that a lodestar 'cross-check' is not required."); *Odom v. ECA Mktg., Inc.*, No. EDCV20851JGBSHKX, 2021 WL 7185059, at *6 (C.D. Cal. Dec. 22, 2021) (similar); *Hirsh v. WW N. Am. Holdings, Inc.*, No. 219CV9782DSFAFMX, 2021 WL 4622394, at *1 (C.D. Cal. Feb. 12, 2021) (similar); *Ahmed v. HSBC BANK USA*, No. EDCV152057FMOSPX, 2019 WL 13027266, at *6 (C.D. Cal. Dec. 30, 2019) ("In short, consideration of the foregoing factors supports class counsel's request for attorney's fees in the amount of 25% of the settlement fund, or $600,000. The court, therefore, is satisfied that a lodestar 'cross-check' is not required."); *Galarza v. Kloeckner Metals Corp.*, No. CV174910FMOPJWX, 2019 WL 12872965, at *6 (C.D. Cal. Nov. 12, 2019) (same); *Moodie v. Maxim Healthcare Servs., Inc.*, No. CV 14-3471 FMO (ASX), 2019 WL 13108327, at *6 (C.D. Cal. Nov. 12, 2019) (same); *Bendon v. DTG Operations, Inc.*, No. EDCV160861FMOAGRX, 2018 WL 4976511, at *8 (C.D. Cal. Aug. 22, 2018), *judgment entered*, No. EDCV160861FMOAGRX, 2018 WL 4959047 (C.D. Cal. Aug. 22, 2018) (same); *Wannemacher v. Carrington Mortg. Servs., LLC*, No. SACV122016FMOANX, 2014 WL 12586117, at *10 (C.D. Cal. Dec. 22, 2014) (similar); *Bautista v. Harvest Mgmt. Sub LLC*, No. CV1210004FMOCWX, 2014 WL 12579822, at *13 (C.D. Cal. July 14, 2014) (similar); *Ladore v. Ecolab, Inc.*, No. CV 11-9386 FMO (JCX), 2013 WL 12246339, at *11 (C.D. Cal. Nov. 12, 2013) (similar).

[69] *Ferrando v. Zynga Inc.*, No. 22-CV-214-RSL, 2022 WL 17741841, at *2 (W.D. Wash. Dec. 1, 2022) ("The Court is not required to conduct a lodestar cross-check, and declines to do so here.") (internal citation omitted); *Reed v. Light & Wonder, Inc.*, No. 18-CV-565-RSL, 2022 WL 3348217, at *2 (W.D. Wash. Aug. 12, 2022) (same); *Wilson v. Huuuge, Inc.*, No. 18-CV-5276-RSL, 2021 WL 512229, at *22 (W.D. Wash. Feb. 11, 2021) (same); *Kater v. Churchill Downs Inc.*, No. 15-CV-00612-RSL, 2021 WL 511203, at *2 (W.D. Wash. Feb. 11, 2021)(same); *Wilson v. Playtika Ltd.*, No. 18-CV-5277-RSL, 2021 WL 512230, at *2 (W.D. Wash. Feb. 11, 2021) (same).

[70] *Reyes v. Experian Info. Sols., Inc.*, 856 F. App'x 108 (9th Cir. 2021).

had (harmlessly) erred in applying the cross-check; [71] these decisions demonstrate that misapplication of the cross-check can lead to reversal and/or prolong fee litigation unnecessarily.[72]

29.    While I am generally skeptical about arguments against a lodestar cross-check,[73] there are a variety of interrelated circumstances specific to this litigation that make utilization of the device particularly difficult:

- *First,* as discussed above,[74] this settlement does not stand alone but is one of a group of current (and possibly future) settlements and/or judgments Class Counsel will achieve against social casinos. In this multiple case situation, it is often difficult to attribute lodestar to any one specific case, rendering application of a lodestar cross-check problematic.[75] One solution would be to wait until all of the cases are concluded and then determine a final fee – against a total lodestar – at that time.[76] Such an

---

[71] *In re Wells Fargo & Co. S'holder Derivative Litig.*, 845 F. App'x 563, 565 n.3 (9th Cir. 2021) (stating that "the district court erred when performing a cross-check for reasonableness using the lodestar method because it summarily dismissed objections to the rates of staff attorneys without analysis or reasoning" but finding that even if the objection had been accepted, and the multiplier adjusted, the amount awarded would not have been unreasonable).

[72] *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation.").

[73] I have argued that these concerns are somewhat exaggerated and can be minimized, see 5 *Newberg and Rubenstein on Class Actions*, *supra* note 10, at § 15:86, a position the California Supreme Court has endorsed. *See Laffitte v. Robert Half Internat. Inc.*, 1 Cal. 5th 480, 504, 376 P.3d 672, 687 (2016) ("We tend to agree with the amicus curiae brief of Professor William B. Rubenstein that these concerns [about the lodestar cross-check] are likely overstated and the benefits of having the lodestar cross-check available as a tool outweigh the problems its use could cause in individual cases."). Regardless, this core debate about the efficacy of a cross-check recedes in relevance in this case for the reasons outlined in this textual paragraph.

[74] *See* ¶ 19, *supra.*

[75] *See, e.g.*, *Bendixen v. Sprint Commc'ns Co. L.P.*, No. 3:11-CV-05274-RBL, 2013 WL 2949569, at *3 (W.D. Wash. June 14, 2013) (noting, in a multiple-case situation, although undertaking a cross-check on a global basis, that: "In terms of a lodestar crosscheck, the overlapping nature of fiber-optic-cable right-of-way discovery, motions practice, research, litigation, and settlement efforts across the country for more than a decade . . . have prevented Settlement Class Counsel from segregating their fees and expenses into a 'Washington-only' category or similar categories for other states.").

[76] *Id.*

approach may solve the lodestar allocation problem, but it raises others: it does not work until the final lodestar can be calculated for all the cases, but neither the earlier-settling classes (nor counsel) should be made to await their recoveries until that time and it can be further complicated when the multiple cases are filed across multiple forums with different approaches to fees. Thus, here, that final rationalization approach is not possible, as these social casino settlements involved multiple cases (at least one still ongoing here and a related multidistrict litigation (MDL) in California), across multiple jurisdictions, against multiple different defendants, with the potential that settlements may ultimately be run through different courts.

- *Second*, as noted in the prior paragraph, the Ninth Circuit has excused application of the cross-check in situations in which counsel achieve a meaningful settlement quickly; some of the cases in this litigation campaign – though not this one – fit this description, complicating application of the cross-check across the entire campaign.

- *Third*, Class Counsel's work in the social casino space not only encompasses a number of settlements, it also encompasses a number of unsuccessful matters. Contingent fee lawyers do not get paid for losing cases. But courts will acknowledge the time they invested in non-prevailing matters in several important ways. Generally, courts have acknowledged counsel's entitlement to a risk multiplier because their prevailing cases must fund their non-prevailing cases;[77] that argument has special bite when, as here, the non-prevailing cases were part of the litigation campaign culminating in the prevailing cases. More specifically, the question presented by the lodestar cross-check is not whether to *pay* class counsel for its losing cases, but what hours of work to recognize in checking the level of counsel's proposed fees in the cases that reach a settlement or judgment for the class. Thus, in the fee-shifting context, the Ninth Circuit has acknowledged that some hours prevailing counsel expend are spent on unsuccessful matters, but that such time may nonetheless be compensable if it contributed to the ultimate victory.[78] Similarly, here there is a non-trivial argument that (1) in a litigation

---

[77] *See, e.g., Freeman v. Motor Convoy, Inc.,* 700 F.2d 1339, 1357 (11th Cir. 1983) ("Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result. . . . The standard of compensation must enable counsel to accept apparently just causes without awaiting sure winners.") (cleaned up); *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981) (same); *Ressler v. Jacobson*, 149 F.R.D. 651, 656–57 (M.D. Fla. 1992) ("The Court is well aware that there are numerous contingent cases such as this where plaintiff's counsel, after investing thousands of hours of time and effort, have received no compensation whatsoever. Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award. In evaluating this factor the Court will not ignore the pecuniary loss suffered by plaintiff's counsel in other actions where counsel receive little or no fee.") (internal citations omitted).

[78] *Church of the Holy Light of the Queen v. Holder*, 584 F. App'x 457, 459 (9th Cir. 2014) ("'Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war … [L]osing is part of winning.' … [Plaintiff's] work on appeal was 'a necessary step to ultimate victory,' and

campaign like this one (2) the hours class counsel expended on behalf of social casino users that proved unsuccessful (3) nonetheless contributed to the settlements that they did achieve such that (4) these hours are appropriately considered as part of a cross-check[79] (5) particularly because courts view the cross-check as merely an estimate by which to assess the reasonableness of a percentage award rather than as an exact tally of compensable hours.[80]  At the least, it is fair to acknowledge that the fact that a conventional cross-check might *not* account for these hours renders such a cross-check less than optimal on facts such as these.  That seems particularly true here, as, in Exhibit D, I chart out the litigation campaign and show that it encompasses at least a dozen cases filed in four different district courts, in four separate circuits, testing the laws of a half dozen states – with the total time that the dozen cases pended on live dockets summing to about 12,000 days, or 33 years.

- *Fourth*, this case does not involve solely litigation activities.  Class Counsel were forced to work on behalf of the class in multiple forums, including legislative arenas and executive branch administrative proceedings.  Courts have not hesitated to award

---

[plaintiff] is 'entitle[d] to attorney's fees even for the unsuccessful stage' of litigation.") (first and second alteration in original) (quoting *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991)); *see also Loretz v. Regal Stone, Ltd.*, 756 F. Supp. 2d 1203, 1214 (N.D. Cal. 2010) (holding that hours from separate but related litigation may count toward lodestar in present case where "the work performed advanced [the pending] class action").

[79] *See, e.g.*, *Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333, 2018 WL 6305785 (M.D.N.C. Dec. 3, 2018) (noting that hours spent on parallel unsuccessful case were not compensable, but because that effort "yielded significant evidence that Counsel were able to use in this case . . . [i]t is appropriate to consider, to some extent, the time Class Counsel spent litigating that case" in undertaking a lodestar cross-check); *Thomas v. Dun & Bradstreet Credibility Corp.*, No. CV1503194BROGJSX, 2017 WL 11633508, at *22 (C.D. Cal. Mar. 22, 2017) (allowing plaintiff's counsel "to include hours billed in a similar, but dismissed" class action in lodestar cross-check because "counsel indicate[d] that the work it performed [in previous case] benefitted the Class Members in this case").

[80] *Dun & Bradstreet*, No. CV1503194BROGJSX, 2017 WL 11633508, at *22 & n.13 (C.D. Cal. Mar. 22, 2017) (holding that plaintiff's counsel can include hours from an unsuccessful case in cross-check because work in earlier case benefited present class action, and reasoning that "lodestar cross-check calculations need not be exact, as they merely serve 'as a point of comparison by which to assess the reasonableness of a percentage award'") (quoting *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 WL 8150856, at *14 (C.D. Cal. July 21, 2008)).  *See generally In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 654 (9th Cir. 2019) ("[When conducting a lodestar cross-check,] the district court may rely on attorney fee summaries rather than actual billing records."); 5 *Newberg and Rubenstein on Class Actions*, *supra* note 10, at § 15:86 n.13 (listing cases).

fees for such activities in appropriate circumstances,[81] but including hours and rates for non-litigation work in a litigation-related lodestar cross-check risks an uncomfortable level of imprecision even within that back-of-the-envelope endeavor.

30.    Given the complications that these factors present to application of the lodestar cross-check, it is helpful to remember that a lodestar cross-check is a means to an end – ensuring against an excessive fee – but it is not the only means to that end, nor always the best means to that end.  In the particular circumstances present here, it is my expert opinion that application of the lodestar cross-check raises as many questions as it solves and that the reasonableness of Class Counsel's proposed fee is better assessed not by this discretionary check, but according to the factors that the Ninth Circuit deems mandatory.

\* \* \*

---

[81] *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1121 (9th Cir. 2002) (holding that it is within a court's "equitable power to award fees for work that helped create the fund . . . outside the strict confines of the litigation immediately before the court"); *id.* at 1121 n.3 (noting that in determining whether attorneys' time is compensable, "[t]he level of relatedness to the ongoing litigation is of less importance than the extent to which the non-litigation work was calculated to—and in fact did—bring about the common fund presently under the district court's control"); *Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994) ("It is well established that an award of attorneys' fees from a common fund depends on whether the attorneys' 'specific services benefited the fund—whether they tended to create, increase, protect or preserve the fund.'" (quoting *Lindy Bros. Builders of Philadelphia v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 112 (3d Cir. 1976)).

31.    I have testified that:

- A 30% fee is above the Ninth Circuit's 25% benchmark and average fees in mega-fund cases at this level, but consistent with percentages that dozens of courts across the country have approved in cases of this magnitude in appropriate circumstances – and the actual percentage Class Counsel are reaping in the context of this whole litigation campaign is well below 30%, arguably as low as 14%.

- The requested fee is well-justified by (a) the remarkable risks that Class Counsel shouldered and (b) the extraordinary results that they achieved for the class.

- A lodestar cross-check is not a helpful tool by which to assess the reasonableness of Class Counsel's proposed percentage award in the unique circumstances presented by these interrelated cases.

March 8, 2023

_____
William B. Rubenstein

# EXHIBIT A

`

# PROFESSOR WILLIAM B. RUBENSTEIN

Harvard Law School - AR323                                          (617) 496-7320
1545 Massachusetts Avenue                              rubenstein@law.harvard.edu
Cambridge, MA 02138

### ACADEMIC EMPLOYMENT

HARVARD LAW SCHOOL, CAMBRIDGE MA
>Bruce Bromley Professor of Law                                    2018-present
>Sidley Austin Professor of Law                                       2011-2018
>Professor of Law                                                     2007-2011
>Bruce Bromley Visiting Professor of Law                              2006-2007
>Visiting Professor of Law                                  2003-2004, 2005-2006
>Lecturer in Law                                                      1990-1996
>>*Courses:*       Civil Procedure; Class Action Law; Remedies
>>*Awards*:        2012 Albert M. Sacks-Paul A. Freund Award for Teaching Excellence
>>*Membership:*    American Law Institute; American Bar Foundation Fellow

UCLA SCHOOL OF LAW, LOS ANGELES CA
>Professor of Law                                                     2002-2007
>Acting Professor of Law                                              1997-2002
>>*Courses*:       Civil Procedure; Complex Litigation; Remedies
>>*Awards*:        2002 Rutter Award for Excellence in Teaching
>>                 Top 20 California Lawyers Under 40, *Calif. Law Business* (2000)

STANFORD LAW SCHOOL, STANFORD CA
>Acting Associate Professor of Law                                    1995-1997
>>*Courses*:       Civil Procedure; Federal Litigation
>>*Awards*:        1997 John Bingham Hurlbut Award for Excellence in Teaching

YALE LAW SCHOOL, NEW HAVEN CT
>Lecturer in Law                                                      1994, 1995

BENJAMIN N. CARDOZO SCHOOL OF LAW, NEW YORK NY
>Visiting Professor                                                  Summer 2005

### LITIGATION-RELATED EMPLOYMENT

AMERICAN CIVIL LIBERTIES UNION, NATIONAL OFFICE, NEW YORK NY
>Project Director and Staff Counsel                                   1987-1995
>-Litigated impact cases in federal and state courts throughout the United States.
>-Supervised a staff of attorneys at the national office, oversaw work of ACLU attorneys
>around the country and coordinated work with private cooperating counsel nationwide.
>-Significant experience in complex litigation practice and procedural issues; appellate
>litigation; litigation coordination, planning and oversight.

HON. STANLEY SPORKIN, U.S. DISTRICT COURT, WASHINGTON DC
>Law Clerk                                                            1986-87

PUBLIC CITIZEN LITIGATION GROUP, WASHINGTON DC
>Intern                                                          Summer 1985

**A-1**

EDUCATION

HARVARD LAW SCHOOL, CAMBRIDGE MA
      J.D., 1986, *magna cum laude*

YALE COLLEGE, NEW HAVEN CT
      B.A., 1982, *magna cum laude*
          Editor-in-Chief, YALE DAILY NEWS

SELECTED COMPLEX LITIGATION EXPERIENCE

*Professional Service and Highlighted Activities*

◊   *Author,* NEWBERG AND RUBENSTEIN ON CLASS ACTIONS (6th ed. 2022); NEWBERG ON CLASS ACTIONS (sole author since 2008, sole author of entirely re-written Fifth Edition (2011-2019))

◊   *Speaker,* Judicial Panel on Multidistrict Litigation, Multidistrict Litigation (MDL) Transferee Judges Conference, Palm Beach, Florida (invited to present to MDL judges on recent developments in class action law and related topics (2010-2022))

◊   *Panelist,* Federal Judicial Center, *Managing Multidistrict Litigation and Other Complex Litigation Workshop* (for federal judges) (March 15, 2018)

◊   *Amicus curiae,* authored *amicus* brief on proper approach to incentive awards in class action lawsuits in conjunction with motion for rehearing *en banc* in the United States Court of Appeals for the Eleventh Circuit (*Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020))

◊   *Amicus curiae,* authored *amicus* brief in United States Supreme Court on proper approach to *cy pres* award in class action lawsuits (*Frank v. Gaos*, 139 S. Ct. 1041 (2019))

◊   *Amicus curiae,* authored *amicus* brief in California Supreme Court on proper approach to attorney's fees in common fund cases (*Laffitte v. Robert Half Int'l Inc*., 376 P.3d 672, 687 (Cal. 2016) (noting reliance on *amicus* brief))

◊   *Amicus curiae,* authored *amicus* brief in the United States Supreme Court filed on behalf of civil procedure and complex litigation law professors concerning the importance of the class action lawsuit (*AT&T Mobility v. Concepcion,* No. 09-893, 131 S. Ct. 1740 (2011))

◊   *Adviser,* American Law Institute, *Project on the Principles of the Law of Aggregate Litigation*, Philadelphia, Pennsylvania

◊   *Advisory Board, Class Action Law Monitor* (Strafford Publications), 2008-

◊   *Co-Chair,* ABA Litigation Section, Mass Torts Committee, Class Action Sub-Committee, 2007

◊   *Planning Committee,* American Bar Association, Annual National Institute on Class Actions Conference, 2006, 2007

◊   *"Expert's Corner"* (Monthly Column)*, Class Action Attorney Fee Digest,* 2007-2011

### Judicial Appointments

◊   *Co-Mediator.*   Appointed by the United States District Court for the Eastern District of Pennsylvania to help mediate a complex attorney's fees issue (*In re National Football League Players' Concussion Injury Litigation*, Civil Action No. 2:12-md-02323 (E.D. Pa. June-September 2022))

◊   *Meditator.*   Appointed by the United States District Court for the Southern District of New York to mediate a set of complex issues in civil rights class action (*Grottano v. City of New York*, Civil Action No. 15-cv-9242 (RMB) (May 2020-January 2021))

◊   *Expert consultant.*   Appointed by the United States District Court for the Northern District of Ohio, and Special Master, as an expert consultant on class certification and attorney's fees issues in complex multidistrict litigation (*National Prescription Opiate Litigation,* MDL 2804, Civil Action No. 1:17-md-2804 (N.D. Ohio Aug. 13, 2018; June 29, 2019; March 10, 2020))

◊   *Expert witness.*   Appointed by the United States District Court for the Eastern District of Pennsylvania as an expert witness on attorney's fees in complex litigation, with result that the Court adopted recommendations (*In re National Football League Players' Concussion Injury Litigation*, 2018 WL 1658808 (E.D. Pa. April 5, 2018))

◊   *Appellate counsel.*   Appointed by the United States Court of Appeals for the Second Circuit to argue for affirmance of district court fee decision in complex securities class action, with result that the Court summarily affirmed the decision below (*In re Indymac Mortgage-Backed Securities Litigation*, 94 F.Supp.3d 517 (S.D.N.Y. 2015), *aff'd sub. nom.*, *DeValerio v. Olinski*, 673 F. App'x 87, 90 (2d Cir. 2016))

### Expert Witness

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fees request (*In re Twitter Inc. Securities Litigation,* Case No. 4:16-cv-05314 (N.D. Cal. October 13, 2022))

◊   Submitted expert witness declaration concerning reasonableness of attorney's fee request (*Ferrando v. Zynga Inc.,* Civil Action No. 2:22-cv-00214 (W.D. Wash. 2022))

◊   Submitted an expert witness declaration concerning reasonableness of proposed settlement in nationwide securities class action, in light of competing litigation (*In re Lyft, Inc. Securities Litigation,* Case No. 4:19-cv-02690 (N.D. Cal. August 19, 2022))

◊   Submitted an expert witness declaration concerning reasonableness of common benefit attorney's fee request (*In re:  Zetia (Ezetimibe) Antitrust Litigation*, MDL No. 2836, 2:18-md-2836 (E.D. Va. July 12, 2022))

◊   Submitted expert witness declaration concerning reasonableness of attorney's fee request (*Reed v. Scientific Games Corp.,* Civil Action No. 2:18-cv-00565 (W.D. Wash. 2022))

◊   Submitted an expert witness declaration concerning reasonableness of proposed settlement in nationwide securities class action, in light of competing litigation (*In re Micro Focus International PLC Securities Litigation,* Master File No. 1:18-cv-06763 (S.D.N.Y., May 4, 2022))

◊   Submitted expert witness declaration concerning reasonableness of attorney's fee request (*Americredit Financial Services, Inc., d/b/a/ GM Financial v. Bell,* No. 15SL-AC24506-01 (Twenty-First Judicial Circuit Court, St. Louis County, Missouri, March 13, 2022))

◊   Submitted an expert witness declaration concerning reasonableness of common benefit attorney's fee request (*In re: Marjory Stoneman Douglas High School Shooting FTCA Litigation*, Case No. 0:18-cv-62758 (S.D. Fla. February 7, 2022))

◊   Submitted expert witness declaration concerning reasonableness of attorney's fee request (*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, No. 12-CV-0256 (LAK), 2021 WL 2453972(S.D.N.Y. June 15, 2021))

◊   Submitted expert witness declaration concerning reasonableness of attorney's fee request (*Kater v. Churchill Downs,* Civil Action No. 2:15-cv-00612 (W.D. Wash. 2020))

◊   Submitted expert witness declaration concerning reasonableness of attorney's fee request (*Wilson v. Playtika, LTD,* Civil Action No. 3:18-cv-05277 (W.D. Wash. 2020))

◊   Submitted expert witness declaration concerning reasonableness of attorney's fee request (*Wilson v. Huuuge,* Civil Action No. 3:18-cv-005276 (W.D. Wash. 2020))

◊   Submitted expert witness declarations and testified at fairness hearing concerning (1) reasonableness of attorney's fee request and (2) empirical data confirming robustness of class claims rate (*In re Facebook Biometric Information Privacy Litigation,* Civil Action No. 3:15-cv-03747-JD (N.D. Cal. (2020))

◊   Retained as an expert witness on issues regarding the Lead Plaintiff/Lead Counsel provisions of the Private Securities Litigation Reform Act of 1995 (PSLRA) (*In re Apple Inc. Securities Litigation.,* Civil Action No. 4:19-cv-02033-YGR (N.D. Cal. (2020))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Amador v. Baca*, Civil Action No. 2:10-cv-01649 (C.D. Cal. February 9, 2020))

◊   Submitted an expert witness declaration concerning reasonableness of class action settlement (*In re: Columbia Gas Cases*, Civil Action No. 1877CV01343G (Mass. Super. Ct., Essex County, February 6, 2020))

◊   Submitted an expert witness declaration, and reply declaration, concerning reasonableness of attorney's fee request (*Hartman v. Pompeo*, Civil Action No. 1:77-cv-02019 (D.D.C. October 10, 2019; February 28, 2020))

◊   Submitted an expert witness declaration concerning reasonableness of common benefit attorney's fee request (*In re: Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724, 16-MD-2724 (E.D. Pa. May 15, 2019))

◊    Submitted an expert witness declaration concerning reasonableness of attorney's fee request, relied upon by court in awarding fees (*Hale v. State Farm Mut. Auto. Ins. Co*., 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018))

◊    Submitted expert witness affidavit and testified at fairness hearing concerning second phase fee issues in common fund class action (*Tuttle v. New Hampshire Med. Malpractice Joint Underwriting Assoc.,* Case No. 217-2010-CV-00294 (New Hampshire Superior Court, Merrimack County (2018))

◊    Submitted expert witness report – and rebutted opposing expert – concerning class certification issues for proposed class action within a bankruptcy proceeding (*In re Think Finance,* Case No. 17-33964 (N.D. Tex. Bankrpt. 2018))

◊    Submitted expert witness declaration concerning specific fee issues raised by Court at fairness hearing and second declaration in response to report of Special Master (*In re Anthem, Inc. Data Breach Litigation,* Case No. 15-MD-02617-LHK (N.D. Cal. 2018))

◊    Submitted an expert witness declaration concerning reasonableness of attorney's fee request following plaintiffs' verdict at trial in consumer class action (*Krakauer v. Dish Network, L.L.C.,* Civil Action No. 1:14-cv-00333 (M.D.N.C. 2018))

◊    Submitted three expert witness declarations and deposed by/testified in front of Special Master in investigation concerning attorney's fee issues (*Arkansas Teacher Ret. Sys. v. State St. Bank & Trust Co.*, Civ. Action No. 1:11-cv-10230 (D. Mass. 2017-18))

◊    Retained as an expert witness on issues regarding the preclusive effect of a class action judgment on later cases (*Sanchez v. Allianz Life Insurance Co. of N. Amer.,* Case No. BC594715 (California Superior Court, Los Angeles County (2018))

◊    Retained as an expert witness and submitted report explaining meaning of the denial of a motion to dismiss in American procedure to foreign tribunals (*In re Qualcomm Antitrust Matter,* declaration submitted to tribunals in Korea and Taiwan (2017))

◊    Submitted an expert witness declaration concerning reasonableness of attorney's fee request in 3.0-liter settlement, referenced by court in awarding fees (*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,* 2017 WL 3175924 (N.D. Cal. July 21, 2017))

◊    Retained as an expert witness concerning impracticability of joinder in antitrust class action (*In re Celebrex (Celecoxib) Antitrust Litigation,* Civ. Action No. 2-14-cv-00361 (E.D. Va. (2017))

◊    Submitted an expert witness declaration and deposed concerning impracticability of joinder in antitrust class action (*In re Modafinil Antitrust Litigation,* Civ. Action No. 2-06-cv-01797 (E.D. Pa. (2017))

◊    Submitted an expert witness declaration concerning reasonableness of attorney's fee request in 2.0-liter settlement (*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,* 2017 WL 1047834 (N.D. Cal., March 17, 2017))

◊    Submitted an expert witness declaration concerning reasonableness of attorney's fee request, referenced

by court in awarding fees (*Aranda v. Caribbean Cruise Line, Inc.,* 2017 WL 1368741 (N.D. Ill., April 10, 2017))

◊     Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*McKinney v. United States Postal Service*, Civil Action No. 1:11-cv-00631 (D.D.C. (2016))

◊     Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Johnson v. Caremark RX, LLC,* Case No. 01-CV-2003-6630, Alabama Circuit Court, Jefferson County (2016))

◊     Submitted an expert witness declaration concerning reasonableness of attorney's fee request in sealed fee mediation (2016)

◊     Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Geancopoulos v. Philip Morris USA Inc.,* Civil Action No. 98-6002-BLS1 (Mass. Superior Court, Suffolk County))

◊     Submitted an expert witness declaration concerning reasonableness of attorney's fee request in sealed fee mediation (2016)

◊     Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Gates v. United Healthcare Insurance Company,* Case No. 11 Civ. 3487 (S.D.N.Y. 2015))

◊     Retained as an expert trial witness on class action procedures and deposed prior to trial in matter that settled before trial (*Johnson v. Caremark RX, LLC,* Case No. 01-CV-2003-6630, Alabama Circuit Court, Jefferson County (2016))

◊     Submitted an expert witness declaration concerning reasonableness of attorney's fee request, referenced by court in awarding fees (*In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015))

◊     Retained as an expert witness concerning adequacy of putative class representatives in securities class action (*Medoff v. CVS Caremark Corp.,* Case No. 1:09-cv-00554 (D.R.I. (2015))

◊     Submitted an expert witness declaration concerning reasonableness of proposed class action settlement, settlement class certification, attorney's fees, and incentive awards (*Fitzgerald Farms, LLC v. Chespeake Operating, L.L.C.,* Case No. CJ-2010-38, Dist. Ct., Beaver County, Oklahoma (2015))

◊     Submitted an expert witness declaration concerning reasonableness of attorney's fee request, referenced by court in awarding fees (*Asghari v. Volkswagen Grp. of Am., Inc*., 2015 WL 12732462 (C.D. Cal. May 29, 2015))

◊     Submitted an expert witness declaration concerning propriety of severing individual cases from class action and resulting statute of repose ramifications (*In re: American   International Group, Inc. 2008 Securities Litigation,* 08-CV-4772-LTS-DCF (S.D.N.Y. (2015))

◊     Retained by Fortune Global 100 Corporation as an expert witness on fee matter that settled before testimony (2015)

◊   Submitted an expert witness declaration and testified at Special Master proceeding concerning reasonableness of attorney's fee allocation in sealed fee mediation (2014-2015)

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*In re: Hyundai and Kia Fuel Economy Litigation,* MDL 13-02424 (C.D. Cal. (2014))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Ammari Electronics v. Pacific Bell Directory*, Case No. RG0522096, California Superior Court, Alameda County (2014))

◊   Submitted an expert witness declaration and deposed concerning plaintiff class action practices under the Private Securities Litigation Reform Act of 1995 (PSLRA), as related to statute of limitations question (*Federal Home Loan Bank of San Francisco v. Deutsche Bank Securities, Inc.,* Case No. CGC-10-497839, California Superior Court, San Francisco County (2014))

◊   Submitted an expert witness declaration and deposed concerning plaintiff class action practices under the Private Securities Litigation Reform Act of 1995 (PSLRA), as related to statute of limitations question (*Federal Home Loan Bank of San Francisco v. Credit Suisse Securities (USA) LLC,* Case No. CGC-10-497840, California Superior Court, San Francisco County (2014))

◊   Retained as expert witness on proper level of common benefit fee in MDL (*In re Neurontin Marketing and Sales Practice Litigation,* Civil Action No. 04-10981, MDL 1629 (D. Mass. (2014))

◊   Submitted an expert witness declaration concerning Rule 23(g) selection of competing counsel, referenced by court in deciding issue (*White v. Experian Information Solutions, Inc.,* 993 F. Supp. 2d 1154 (C.D. Cal. (2014))

◊   Submitted an expert witness declaration concerning proper approach to attorney's fees under California law in a statutory fee-shifting case (*Perrin v. Nabors Well Services Co.,* Case No. 1220037974, Judicial Arbitration and Mediation Services (JAMS) (2013))

◊   Submitted an expert witness declaration concerning fairness and adequacy of proposed nationwide class action settlement (*Verdejo v. Vanguard Piping Systems,* Case No. BC448383, California Superior Court, Los Angeles County (2013))

◊   Retained as an expert witness regarding fairness, adequacy, and reasonableness of proposed nationwide consumer class action settlement   (*Herke v. Merck,* No. 2:09-cv-07218, MDL Docket No. 1657 (*In re Vioxx Products Liability Litigation*) (E. D. La. (2013))

◊   Retained as an expert witness concerning ascertainability requirement for class certification and related issues (*Henderson v. Acxiom Risk Mitigation, Inc.,* Case No. 3:12-cv-00589-REP (E.D. Va. (2013))

◊   Submitted an expert witness declaration concerning reasonableness of class action settlement and performing analysis of Anet expected value@ of settlement benefits, relied on by court in approving settlement (*In re Navistar Diesel Engine Products Liab. Litig.*, 2013 WL 10545508 (N.D. Ill. July 3, 2013))

◊   Submitted an expert witness declaration concerning reasonableness of class action settlement and

attorney's fee request (*Commonwealth Care All. v. Astrazeneca Pharm. L.P.*, 2013 WL 6268236 (Mass. Super. Aug. 5, 2013))

◊    Submitted an expert witness declaration concerning propriety of preliminary settlement approval in nationwide consumer class action settlement (*Anaya v. Quicktrim, LLC,* Case No. CIVVS 120177, California Superior Court, San Bernardino County (2012))

◊    Submitted expert witness affidavit concerning fee issues in common fund class action (*Tuttle v. New Hampshire Med. Malpractice Joint Underwriting Assoc.,* Case No. 217-2010-CV-00294, New Hampshire Superior Court, Merrimack County (2012))

◊    Submitted expert witness declaration and deposed concerning class certification issues in nationwide fraud class action, relied upon by the court in affirming class certification order (*CVS Caremark Corp. v. Lauriello,* 175 So. 3d 596, 609-10 (Ala. 2014))

◊    Submitted expert witness declaration in securities class action concerning value of proxy disclosures achieved through settlement and appropriate level for fee award (*Rational Strategies Fund v. Jhung,* Case No. BC 460783, California Superior Court, Los Angeles County (2012))

◊    Submitted an expert witness report and deposed concerning legal malpractice in the defense of a class action lawsuit (*KB Home v. K&L Gates, LLP,* Case No. BC484090, California Superior Court, Los Angeles County (2011))

◊    Retained as expert witness on choice of law issues implicated by proposed nationwide class certification (*Simon v. Metropolitan Property and Cas. Co.,* Case No. CIV-2008-1008-W (W.D. Ok. (2011))

◊    Retained, deposed, and testified in court as expert witness in fee-related dispute (*Blue, et al. v. Hill,*Case No. 3:10-CV-02269-O-BK (N.D. Tex. (2011))

◊    Retained as an expert witness in fee-related dispute (*Furth v. Furth*, Case No. C11-00071-DMR (N.D. Cal. (2011))

◊    Submitted expert witness declaration concerning interim fee application in complex environmental class action (*DeLeo v. Bouchard Transportation,* Civil Action No. PLCV2004-01166-B, Massachusetts Superior Court (2010))

◊    Retained as an expert witness on common benefit fee issues in MDL proceeding in federal court (*In re Vioxx Products Liability Litigation*, MDL Docket No. 1657 (E.D. La. (2010))

◊    Submitted expert witness declaration concerning fee application in securities case, referenced by court in awarding fee (*In re AMICAS, Inc. Shareholder Litigation,* 27 Mass. L. Rptr. 568 (Mass. Sup. Ct. (2010))

◊    Submitted an expert witness declaration concerning fee entitlement and enhancement in non-common fund class action settlement, relied upon by the court in awarding fees (*Parkinson v. Hyundai Motor America*, 796 F.Supp.2d 1160, 1172-74 (C.D. Cal. 2010))

◊    Submitted an expert witness declaration concerning class action fee allocation among attorneys (*Salvas*

    *v. Wal-Mart*, Civil Action No. 01-03645, Massachusetts Superior Court (2010))

◊   Submitted an expert witness declaration concerning settlement approval and fee application in wage and hour class action settlement (*Salvas v. Wal-Mart*, Civil Action No. 01-03645, Massachusetts Superior Court (2010))

◊   Submitted an expert witness declaration concerning objectors' entitlement to attorney's fees (*Rodriguez v. West Publishing Corp.,* Case No. CV-05-3222 (C.D. Cal. (2010))

◊   Submitted an expert witness declaration concerning fairness of settlement provisions and processes, relied upon by the Ninth Circuit in reversing district court's approval of class action settlement (*Radcliffe v. Experian Inform. Solutions Inc.*, 715 F.3d 1157, 1166 (9th Cir. 2013))

◊   Submitted an expert witness declaration concerning attorney's fees in class action fee dispute, relied upon by the court in deciding fee issue (*Ellis v. Toshiba America Information Systems, Inc.*, 218 Cal. App. 4th 853, 871, 160 Cal. Rptr. 3d 557, 573 (2d Dist. 2013))

◊   Submitted an expert witness declaration concerning common benefit fee in MDL proceeding in federal court (*In re Genetically Modified Rice Litigation*, MDL Docket No. 1811 (E.D. Mo. (2009))

◊   Submitted an expert witness declaration concerning settlement approval and fee application in national MDL class action proceeding (*In re Wal-Mart Wage and Hour Employment Practices Litigation*, MDL Docket No.1735 (D. Nev. (2009))

◊   Submitted an expert witness declaration concerning fee application in national MDL class action proceeding, referenced by court in awarding fees (*In re Dept. of Veterans Affairs (VA) Data Theft Litigation*, 653 F. Supp.2d 58 (D.D.C. (2009))

◊   Submitted an expert witness declaration concerning common benefit fee in mass tort MDL proceeding in federal court (*In re Kugel Mesh Products Liability Litigation*, MDL Docket No. 1842 (D. R.I. (2009))

◊   Submitted an expert witness declaration and supplemental declaration concerning common benefit fee in consolidated mass tort proceedings in state court (*In re All Kugel Mesh Individual Cases*, Master Docket No. PC-2008-9999, Superior Court, State of Rhode Island (2009))

◊   Submitted an expert witness declaration concerning fee application in wage and hour class action (*Warner v. Experian Information Solutions, Inc.*, Case No.   BC362599, California Superior Court, Los Angeles County (2009))

◊   Submitted an expert witness declaration concerning process for selecting lead counsel in complex MDL antitrust class action (*In re Rail Freight Fuel Surcharge Antitrust Litigation*, MDL Docket No. 1869 (D. D.C. (2008))

◊   Retained, deposed, and testified in court as expert witness on procedural issues in complex class action (*Hoffman v. American Express*, Case No. 2001-022881, California Superior Court, Alameda County (2008))

◊   Submitted an expert witness declaration concerning fee application in wage and hour class action

(*Salsgiver v. Yahoo! Inc.*, Case No. BC367430, California Superior Court, Los Angeles County (2008))

◊    Submitted an expert witness declaration concerning fee application in wage and hour class action (*Voight v. Cisco Systems, Inc.*, Case No. 106CV075705, California Superior Court, Santa Clara County (2008))

◊    Retained and deposed as expert witness on fee issues in attorney fee dispute (*Stock v. Hafif,* Case No. KC034700, California Superior Court, Los Angeles County (2008))

◊    Submitted an expert witness declaration concerning fee application in consumer class action (*Nicholas v. Progressive Direct*, Civil Action No. 06-141-DLB (E. D. Ky. (2008))

◊    Submitted expert witness declaration concerning procedural aspects of national class action arbitration (*Johnson v. Gruma Corp.,* JAMS Arbitration No. 1220026252 (2007))

◊    Submitted expert witness declaration concerning fee application in securities case (*Drulias v. ADE Corp.,* Civil Action No. 06-11033 PBS (D. Mass. (2007))

◊    Submitted expert witness declaration concerning use of expert witness on complex litigation matters in criminal trial (*U.S. v. Gallion, et al*., No. 07-39 (E. D. Ky. (2007))

◊    Retained as expert witness on fees matters (*Heger v. Attorneys' Title Guaranty Fund, Inc.,* No. 03-L-398, Illinois Circuit Court, Lake County, IL (2007))

◊    Retained as expert witness on certification in statewide insurance class action (*Wagner v. Travelers Property Casualty of America*, No. 06CV338, Colorado District Court, Boulder County, CO (2007))

◊    Testified as expert witness concerning fee application in common fund shareholder derivative case (*In Re Tenet Health Care Corporate Derivative Litigation*, Case No. 01098905, California Superior Court, Santa Barbara Cty, CA (2006))

◊    Submitted expert witness declaration concerning fee application in common fund shareholder derivative case (*In Re Tenet Health Care Corp. Corporate Derivative Litigation*, Case No. CV-03-11 RSWL (C.D. Cal. (2006))

◊    Retained as expert witness as to certification of class action (*Canova v. Imperial Irrigation District*, Case No. L-01273, California Superior Court, Imperial Cty, CA (2005))

◊    Retained as expert witness as to certification of nationwide class action (*Enriquez v. Edward D. Jones & Co.,* Missouri Circuit Court, St. Louis, MO (2005))

◊    Submitted expert witness declaration on procedural aspects of international contract litigation filed in court in Korea (*Estate of Wakefield v. Bishop Han & Jooan Methodist Church* (2002))

◊    Submitted expert witness declaration as to contested factual matters in case involving access to a public forum (*Cimarron Alliance Foundation v. The City of Oklahoma City,* Case No. Civ. 2001-1827-C (W.D. Ok. (2002))

◊   Submitted expert witness declaration concerning reasonableness of class certification, settlement, and fees (*Baird v. Thomson Elec. Co.*, Case No. 00-L-000761, Cir. Ct., Mad. Cty, IL (2001))

*Expert Consultant*

◊   Retained as an expert in confidential matter pending in international arbitration forum concerning litigation financing issues in complex litigation (2022-2023)

◊   Retained as an expert in matter pending in several federal courts concerning attorney's fees in class action setting (2022-2023)

◊   Retained as an expert witness on class action issues in complex mass tort MDL (*In re Roundup Products Liability Litigation,* Civil Action No. 3:16-md-02741-VC (N.D. Cal. (2020))

◊   Provided expert consulting services to Harvard Law School Predatory Lending and Consumer Protection Clinic concerning complex class action issues in bankruptcy (*In re: ITT Educational Services Inc.,* Case No. 16-07207-JMC-7A (Bank. S.D. Ind. 2020))

◊   Provided expert consulting services to law firm concerning complex federal procedural and bankruptcy issues (*Homaidan v. Navient Solutions, LLC*, Adv. Proc. No. 17-1085 (Bank. E.D.N.Y 2020))

◊   Provided expert consulting services to the ACLU on multi-district litigation issues arising out of various challenges to President Trump's travel ban and related policies (*In re American Civil Liberties Union Freedom of Information Act Requests Regarding Executive Order 13769*, Case Pending No. 28, Judicial Panel on Multidistrict Litigation (2017); *Darweesh v. Trump*, Case No. 1:17-cv-00480-CBA-LB (E.D.N.Y. (2017))

◊   Provided expert consulting services to law firm regarding billing practices and fee allocation issues in nationwide class action (2016)

◊   Provided expert consulting services to law firm regarding fee allocation issues in nationwide class action (2016)

◊   Provided expert consulting services to the ACLU of Southern California on class action and procedural issues arising out of challenges to municipality's treatment of homeless persons with disabilities (*Glover v. City of Laguna Beach*, Case No. 8:15-cv-01332-AG-DFM (C.D. Cal. (2016))

◊   Retained as an expert consultant on class certification issues (*In re: Facebook, Inc., IPO Securities and Derivative Litigation*, No. 1:12-md-2389 (S.D.N.Y. 2015))

◊   Provided expert consulting services to lead class counsel on class certification issues in nationwide class action (2015)

◊   Retained by a Fortune 100 Company as an expert consultant on class certification issues

◊   Retained as an expert consultant on class action and procedure related issues (*Lange et al v. WPX Energy Rocky Mountain LLC*, Case No. 2:13-cv-00074-ABJ (D. Wy. (2013))

◊   Retained as an expert consultant on class action and procedure related issues (*Flo & Eddie, Inc., v. Sirius XM Radio, Inc.*, Case No. CV 13-5693 (C.D. Cal. (2013))

◊   Served as an expert consultant on substantive and procedural issues in challenge to legality of credit card late and over-time fees (*In Re Late Fee and Over-Limit Fee Litigation*, 528 F.Supp.2d 953 (N.D. Cal. 2007), *aff'd*, 741 F.3d 1022 (9th Cir. 2014))

◊   Retained as an expert on Class Action Fairness Act (CAFA) removal issues and successfully briefed and argued remand motion based on local controversy exception (*Trevino, et al. v. Cummins, et al.*, No. 2:13-cv-00192-JAK-MRW (C. D. Cal. (2013))

◊   Retained as an expert consultant on class action related issues by consortium of business groups (*In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico on April 20, 2010*, MDL No. 2179 (E.D. La. (2012))

◊   Provided presentation on class certification issues in nationwide medical monitoring classes (*In re: National Football League Players' Concussion Injury Litigation,* MDL No. 2323, Case No. 2:12-md-02323-AB (E.D. Pa. (2012))

◊   Retained as an expert consultant on class action related issues in mutli-state MDL consumer class action (*In re Sony Corp. SXRD Rear Projection Television Marketing, Sales Practices & Prod. Liability Litig.*, MDL No. 2102 (S.D. N.Y. (2009))

◊   Retained as an expert consultant on class action certification, manageability, and related issues in mutli-state MDL consumer class action (*In re Teflon Prod. Liability Litig.*, MDL No. 1733 (S.D. Iowa (2008))

◊   Retained as an expert consultant/co-counsel on certification, manageability, and related issues in nationwide anti-trust class action (*Brantley v. NBC Universal*, No.- CV07-06101 (C.D. Cal. (2008))

◊   Retained as an expert consultant on class action issues in complex multi-jurisdictional construction dispute (*Antenucci, et al., v. Washington Assoc. Residential Partner, LLP, et al.,* Civil No. 8-04194 (E.D. Pa. (2008))

◊   Retained as an expert consultant on complex litigation issues in multi-jurisdictional class action litigation (*McGreevey v. Montana Power Company*, No. 08-35137, U.S. Court of Appeals for the Ninth Circuit (2008))

◊   Retained as an expert consultant on class action and attorney fee issues in nationwide consumer class action (*Figueroa v. Sharper Image*, 517 F.Supp.2d 1292 (S.D. Fla. 2007))

◊   Retained as an expert consultant on attorney's fees issue in complex class action case (*Natural Gas Anti-Trust Cases Coordinated Proceedings*, D049206, California Court of Appeals, Fourth District (2007))

◊   Retained as an expert consultant on remedies and procedural matters in complex class action (*Sunscreen Cases*, JCCP No. 4352, California Superior Court, Los Angeles County (2006))

◊   Retained as an expert consultant on complex preclusion questions in petition for review to California

Supreme Court (*Mooney v. Caspari,* Supreme Court of California (2006))

◊   Retained as an expert consultant on attorney fee issues in complex common fund case (*In Re DietDrugs (Phen/Fen) Products Liability Litigation* (E. D. Pa. (2006))

◊   Retained as an expert consultant on procedural matters in series of complex construction lien cases (*In re Venetian Lien Litigation*, Supreme Court of the State of Nevada (2005-2006))

◊   Served as an expert consultant on class certification issues in countywide class action (*Beauchamp v. Los Angeles Cty. Metropolitan Transp. Authority*, (C.D. Cal. 2004))

◊   Served as an expert consultant on class certification issues in state-wide class action (*Williams v. State of California*, Case No. 312-236, Cal. Superior Court, San Francisco)

◊   Served as an exert consultant on procedural aspects of complex welfare litigation (*Allen v. Anderson*, 199 F.3d 1331 (9th Cir. 1999))

### *Ethics Opinions*

◊   Retained to provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2017))

◊   Provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2013))

◊   Provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2011))

◊   Provided expert opinion on issues of professional ethics in implicated by nationwide class action practice (*In re Professional Responsibility Inquiries* (2010))

◊   Provided expert opinion on issues of professional ethics implicated by complex litigation matter (*In re Professional Responsibility Inquiries* (2010))

◊   Provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2007))

### *Publications on Class Actions & Procedure*

◊   NEWBERG AND RUBENSTEIN ON CLASS ACTIONS (6th ed. 2022); NEWBERG ON CLASS ACTIONS (sole author since 2008, sole author of entirely re-written Fifth Edition (2011-2019)

◊   *Deconstitutionalizing Personal Jurisdiction:   A Separation of Powers Approach,* Harvard Public Law Working Paper No. 20-34, available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3715068.

◊   *The Negotiation Class:   A Cooperative Approach to Class Actions Involving Large Stakeholders,* 99 TEXAS L. REV.73 (2020) (with Francis E. McGovern)

**A-13**

◊   *Profit for Costs*, 63 DEPAUL L. REV. 587 (2014) (with Morris A. Ratner)

◊   *Procedure and Society: An Essay for Steve Yeazell,* 61 U.C.L.A. REV. DISC. 136 (2013)

◊   *Supreme Court Round-Up – Part II*, 5 CLASS ACTION ATTORNEY FEE DIGEST 331 (September 2011)

◊   *Supreme Court Round-Up – Part I*, 5 CLASS ACTION ATTORNEY FEE DIGEST 263 (July-August 2011)

◊   *Class Action Fee Award* Procedures, 5 CLASS ACTION ATTORNEY FEE DIGEST 3 (January 2011)

◊   *Benefits of Class Action Lawsuits*, 4 CLASS ACTION ATTORNEY FEE DIGEST 423 (November 2010)

◊   *Contingent Fees for Representing the Government: Developments in California Law*, 4 CLASS ACTION ATTORNEY FEE DIGEST 335 (September 2010)

◊   *Supreme Court Roundup*, 4 CLASS ACTION ATTORNEY FEE DIGEST 251 (July 2010)

◊   *SCOTUS Okays Performance Enhancements in Federal Fee Shifting Cases – At Least In Principle,* 4 CLASS ACTION ATTORNEY FEE DIGEST 135 (April 2010)

◊   *The Puzzling Persistence of the AMega-Fund@ Concept*, 4 CLASS ACTION ATTORNEY FEE DIGEST 39 (February 2010)

◊   *2009: Class Action Fee Awards Go Out With A Bang, Not A Whimper*, 3 CLASS ACTION ATTORNEY FEE DIGEST 483 (December 2009)

◊   *Privatizing Government Litigation: Do Campaign Contributors Have An Inside Track?*, 3 CLASS ACTION ATTORNEY FEE DIGEST 407   (October 2009)

◊   *Supreme Court Preview*, 3 CLASS ACTION ATTORNEY FEE DIGEST 307 (August 2009)

◊   *Supreme Court Roundup*, 3 CLASS ACTION ATTORNEY FEE DIGEST 259 (July 2009)

◊   *What We Now Know About How Lead Plaintiffs Select Lead Counsel (And Hence Who Gets Attorney's Fees!) in Securities Cases*, 3 CLASS ACTION ATTORNEY FEE DIGEST 219 (June 2009)

◊   *Beware Of Ex Ante Incentive Award Agreements*, 3 CLASS ACTION ATTORNEY FEE DIGEST 175 (May 2009)

◊   *On What a "Common Benefit Fee" Is, Is Not, and Should Be*, 3 CLASS ACTION ATTORNEY FEE DIGEST 87 (March 2009)

◊   *2009: Emerging Issues in Class Action Fee Awards*, 3 CLASS ACTION ATTORNEY FEE DIGEST 3 (January 2009)

◊   *2008: The Year in Class Action Fee Awards*, 2 CLASS ACTION ATTORNEY FEE DIGEST 465 (December 2008)

◊   *The Largest Fee Award – Ever!*, 2 CLASS ACTION ATTORNEY FEE DIGEST 337 (September 2008)

◊   *Why Are Fee Reductions Always 50%?: On The Imprecision of Sanctions for Imprecise Fee Submissions*, 2 CLASS ACTION ATTORNEY FEE DIGEST 295 (August 2008)

◊   *Supreme Court Round-Up*, 2 CLASS ACTION ATTORNEY FEE DIGEST 257 (July 2008)

◊   *Fee-Shifting For Wrongful Removals: A Developing Trend?*, 2 CLASS ACTION ATTORNEY FEE DIGEST 177 (May 2008)

◊   *You Cut, I Choose:  (Two Recent Decisions About) Allocating Fees Among Class Counsel*, 2 CLASS ACTION ATTORNEY FEE DIGEST 137 (April 2008)

◊   *Why The Percentage Method?*, 2 CLASS ACTION ATTORNEY FEE DIGEST 93 (March 2008)

◊   *Reasonable Rates: Time To Reload The (*Laffey*) Matrix*, 2 CLASS ACTION ATTORNEY FEE DIGEST 47 (February 2008)

◊   *The "Lodestar Percentage" A New Concept For Fee Decisions?*, 2 CLASS ACTION ATTORNEY FEE DIGEST 3 (January 2008)

◊   *Class Action Practice Today: An Overview, in* ABA SECTION OF LITIGATION, CLASS ACTIONS TODAY 4 (2008)

◊   *Shedding Light on Outcomes in Class Actions*, *in* CONFIDENTIALITY, TRANSPARENCY, AND THE U.S. CIVIL JUSTICE SYSTEM 20-59 (Joseph W. Doherty, Robert T. Reville, and Laura Zakaras eds. 2008) (with Nicholas M. Pace)

◊   *Finality in Class Action Litigation: Lessons From Habeas*, 82 N.Y.U. L. REV. 791 (2007)

◊   *The American Law Institute's New Approach to Class Action Objectors' Attorney's Fees*, 1 CLASS ACTION ATTORNEY FEE DIGEST 347 (November 2007)

◊   *The American Law Institute's New Approach to Class Action Attorney's Fees*, 1 CLASS ACTION ATTORNEY FEE DIGEST 307 (October 2007)

◊   *"The Lawyers Got More Than The Class Did!":  Is It Necessarily Problematic When Attorneys Fees Exceed Class Compensation?*, 1 CLASS ACTION ATTORNEY FEE DIGEST 233 (August 2007)

◊   *Supreme Court Round-Up*, 1 CLASS ACTION ATTORNEY FEE DIGEST 201 (July 2007)

◊   *On The Difference Between Winning and Getting Fees*, 1 CLASS ACTION ATTORNEY FEE DIGEST 163 (June 2007)

◊   *Divvying Up The Pot: Who Divides Aggregate Fee Awards, How, and How Publicly?*, 1 CLASS ACTION ATTORNEY FEE DIGEST 127 (May 2007)

◊   *On Plaintiff Incentive Payments*, 1 CLASS ACTION ATTORNEY FEE DIGEST 95 (April 2007)

◊   *Percentage of What?,* 1 CLASS ACTION ATTORNEY FEE DIGEST 63 (March 2007)

◊   *Lodestar v. Percentage: The Partial Success Wrinkle,* 1 CLASS ACTION ATTORNEY FEE DIGEST 31 (February 2007) (with Alan Hirsch)

◊   *The Fairness Hearing:  Adversarial and Regulatory Approaches*, 53 U.C.L.A. L. REV. 1435 (2006) (excerpted in THE LAW OF CLASS ACTIONS AND OTHER AGGREGATE LITIGATION 447-449 (Richard A. Nagareda ed., 2009))

◊   *Why Enable Litigation?  A Positive Externalities Theory of the Small Claims Class Action*, 74 U.M.K.C. L. REV. 709 (2006)

◊   *What a "Private Attorney General" Is – And Why It Matters*, 57 VAND. L. REV.  2129 (2004) (excerpted in COMPLEX LITIGATION 63-72 (Kevin R. Johnson, Catherine A. Rogers & John Valery White eds., 2009)).

◊   *The Concept of Equality in Civil Procedure*, 23 CARDOZO L. REV. 1865 (2002) (selected for the Stanford/Yale Junior Faculty Forum, June 2001)

◊   *A Transactional Model of Adjudication*, 89 GEORGETOWN  L.J. 371 (2000)

◊   *The Myth of Superiority*, 16 CONSTITUTIONAL COMMENTARY 599 (1999)

◊   *Divided We Litigate:  Addressing Disputes Among Clients and Lawyers in Civil Rights Campaigns*, 106 YALE L. J. 1623 (1997) *(*excerpted in COMPLEX LITIGATION 120-123 (1998))


## Selected Presentations

◊   *Opioid Litigation:  What's New and What Does it Mean for Future Litigation?,* RAND Institute for Civil Justice and RAND Kenneth R. Feinberg Center for Catastrophic Risk Management and Compensation, RAND Corporation, October 22, 2020

◊   *The Opioid Crisis:  Where Do We Go From Here?"* Clifford Symposium 2020, DePaul University College of Law, Chicago, Illinois, May 28-29, 2020)

◊   *Class Action Law Update,* MDL Transferee Judges Conference, Palm Beach, Florida, October 30, 2019

◊   *Class Action Law Update,* MDL Transferee Judges Conference, Palm Beach, Florida, October 31, 2018

◊   *Attorneys' Fees Issues,* MDL Transferee Judges Conference, Palm Beach, Florida, October 30, 2018

◊   *Panelist,* Federal Judicial Center, Managing Multidistrict Litigation and Other Complex Litigation Workshop (for federal judges) (March 15, 2018)

◊   *Class Action Update,* MDL Transferee Judges Conference, Palm Beach, Florida, November 1, 2017

◊   *Class Action Update,* MDL Transferee Judges Conference, Palm Beach, Florida, November 2, 2016

◊   *Judicial Power and its Limits in Multidistrict Litigation,* American Law Institute, Young Scholars Medal Conference, *The Future of Aggregate Litigation*, New York University School of Law, New York, New York, April 12, 2016

◊   *Class Action Update & Attorneys' Fees Issues Checklist,* MDL Transferee Judges Conference, Palm Beach, Florida, October 28, 2015

◊   *Class Action Law,* 2015 Ninth Circuit/Federal Judicial Center Mid-Winter Workshop, Tucson, Arizona, January 26, 2015

◊   *Recent Developments in Class Action Law,* MDL Transferee Judges Conference, Palm Beach, Florida, October 29, 2014

◊   *Recent Developments in Class Action Law,* MDL Transferee Judges Conference, Palm Beach, Florida, October 29, 2013

◊   *Class Action Remedies,* ABA 2013 National Institute on Class Actions, Boston, Massachusetts, October 23, 2013

◊   *The Public Life of the Private Law: The Logic and Experience of Mass Litigation – Conference in Honor of Richard Nagareda,* Vanderbilt Law School, Nashville, Tennessee, September 27-28, 2013

◊   *Brave New World: The Changing Face of Litigation and Law Firm Finance*, Clifford Symposium 2013, DePaul University College of Law, Chicago, Illinois, April 18-19, 2013

◊   *Twenty-First Century Litigation: Pathologies and Possibilities: A Symposium in Honor of Stephen Yeazell,* UCLA Law Review, UCLA School of Law, Los Angeles, California, January 24-25, 2013

◊   *Litigation's Mirror: The Procedural Consequences of Social Relationships,* Sidley Austin Professor of Law Chair Talk, Harvard Law School, Cambridge, Massachusetts, October 17, 2012

◊   *Alternative Litigation Funding (ALF) in the Class Action Context – Some Initial Thoughts*, Alternative Litigation Funding: A Roundtable Discussion Among Experts, George Washington University Law School, Washington, D.C., May 2, 2012

◊   *The Operation of Preclusion in Multidistrict Litigation (MDL) Cases*, Brooklyn Law School Faculty Workshop, Brooklyn, New York, April 2, 2012

◊   *The Operation of Preclusion in Multidistrict Litigation (MDL) Cases*, Loyola Law School Faculty Workshop, Los Angeles, California, February 2, 2012

◊   *Recent Developments in Class Action Law and Impact on MDL Cases,* MDL Transferee Judges Conference, Palm Beach, Florida, November 2, 2011

◊   *Recent Developments in Class Action Law,* MDL Transferee Judges Conference, Palm Beach, Florida, October 26, 2010

◊   *A General Theory of the Class Suit*, University of Houston Law Center Colloquium, Houston, Texas, February 3, 2010

◊   *Unpacking The "Rigorous Analysis" Standard,* ALI-ABA 12th Annual National Institute on Class Actions, New York, New York, November 7, 2008

◊   *The Public Role in Private Law Enforcement: Visions from CAFA*, University of California (Boalt Hall) School of Law Civil Justice Workshop, Berkeley, California, February 28, 2008

◊   *The Public Role in Private Law Enforcement: Visions from CAFA*, University of Pennsylvania Law Review Symposium, Philadelphia, Pennsylvania, Dec. 1, 2007

◊   *Current CAFA Consequences: Has Class Action Practice Changed?,* ALI-ABA 11th Annual National Institute on Class Actions, Chicago, Illinois, October 17, 2007

◊   *Using Law Professors as Expert Witnesses in Class Action Lawsuits,* ALI-ABA 10th Annual National Institute on Class Actions, San Diego, California, October 6, 2006

◊   *Three Models for Transnational Class Actions*, Globalization of Class Action Panel, International Law Association 2006 Conference, Toronto, Canada, June 6, 2006

◊   *Why Create Litigation?:  A Positive Externalities Theory of the Small Claims Class Action*, UMKC Law Review Symposium, Kansas City, Missouri, April 7, 2006

◊   *Marks, Bonds, and Labels:  Three New Proposals for Private Oversight of Class Action Settlements*, UCLA Law Review Symposium, Los Angeles, California, January 26, 2006

◊   Class Action Fairness Act, Arnold & Porter, Los Angeles, California, December 6, 2005

◊   ALI-ABA 9th Annual National Institute on Class Actions, Chicago, Illinois, September 23, 2005

◊   Class Action Fairness Act, UCLA Alumni Assoc., Los Angeles, California, September 9, 2005

◊   Class Action Fairness Act, Thelen Reid & Priest, Los Angeles, California, May 12, 2005

◊   Class Action Fairness Act, Sidley Austin, Los Angeles, California, May 10, 2005

◊   Class Action Fairness Act, Munger, Tolles & Olson, Los Angeles, California, April 28, 2005

◊   Class Action Fairness Act, Akin Gump Strauss Hauer Feld, Century City, CA, April 20, 2005

SELECTED OTHER LITIGATION EXPERIENCE

*United States Supreme Court*

◊   Served as *amicus curiae* and authored *amicus* brief on proper approach to *cy pres* award in class action

lawsuits (*Frank v. Gaos*, No. 17-961, October Term 2018)

◊   Co-counsel on petition for writ of *certiorari* concerning application of the voluntary cessation doctrine to government defendants (*Rosebrock v. Hoffman*, 135 S. Ct.1893 (2015))

◊   Authored *amicus* brief filed on behalf of civil procedure and complex litigation law professors concerning the importance of the class action lawsuit (*AT&T Mobility v. Concepcion,* No. 09-893, 131 S. Ct. 1740 (2011)

◊   Co-counsel in constitutional challenge to display of Christian cross on federal land in California's Mojave preserve (*Salazar v. Buono*, 130 S. Ct. 1803 (2010))

◊   Co-authored *amicus* brief filed on behalf of constitutional law professors arguing against constitutionality of Texas criminal law (*Lawrence v. Texas*, 539 U.S. 558 (2003))

◊   Co-authored *amicus* brief on scope of *Miranda* (*Illinois v. Perkins*, 496 U.S. 292 (1990))

### Attorney's Fees

◊   Appointed by the United States District Court for the Eastern District of Pennsylvania as an expert witness on attorney's fees in complex litigation, with result that the Court adopted recommendations (*In re National Football League Players' Concussion Injury Litigation*, 2018 WL 1658808 (E.D.Pa. April 5, 2018))

◊   Appointed by the United States District Court for the Northern District of Ohio as an expert consultant on common benefit attorney's fees issues in complex multidistrict litigation, with result that the Court adopted recommendations (*In re: Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2020 WL 8675733 (N.D. Ohio June 3, 2020))

◊   Appointed by the United States Court of Appeals for the Second Circuit to argue for affirmance of district court fee decision in complex securities class action, with result that the Court summarily affirmed the decision below (*In re Indymac Mortgage-Backed Securities Litigation*, 94 F.Supp.3d 517 (S.D.N.Y. 2015), *aff'd sub. nom.*, *DeValerio v. Olinski*, 673 F. App'x 87, 90 (2d Cir. 2016)).

◊   Co-counsel in appeal of common benefit fees decision arising out of mass tort MDL (*In re Roundup Products Liability Litigation,* Civil Action No. 21-16228 (Ninth Circuit 2021) (pending)

◊   Served as *amicus curiae* and co-authored *amicus* brief on proper approach to attorney's fees in common fund cases (*Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 504, 376 P.3d 672, 687 (2016)).

### Consumer Class Action

◊   Co-counsel in challenge to antenna-related design defect in Apple's iPhone4 (*Dydyk v. Apple Inc.,* 5:10-cv-02897-HRL, U.S. Dist. Court, N.D. Cal.) (complaint filed June 30, 2010)

◊   Co-class counsel in $8.5 million nationwide class action settlement challenging privacy concerns raised by Google's Buzz social networking program (*In re Google Buzz Privacy Litigation,* 5:10-cv-00672-JW, U.S. Dist. Court, N.D. Cal.) (amended final judgment June 2, 2011)

### Disability

◊   Co-counsel in successful ADA challenge ($500,000 jury verdict) to the denial of health care in emergency room (*Howe v. Hull*, 874 F. Supp. 779, 873 F. Supp 72 (N.D. Ohio 1994))

### Employment

◊   Co-counsel in challenges to scope of family benefit programs (*Ross v. Denver Dept. of Health*, 883 P.2d 516 (Colo. App. 1994)); (*Phillips v. Wisc. Personnel Com'n*, 482 N.W.2d 121 (Wisc. 1992))

### Equal Protection

◊   Co-counsel in (state court phases of) successful challenge to constitutionality of a Colorado ballot initiative, Amendment 2 (*Evans v. Romer*, 882 P.2d 1335 (Colo. 1994))

◊   Co-counsel (and *amici*) in challenges to rules barring military service by gay people (*Able v. United States*, 44 F.3d 128 (2d Cir. 1995); *Steffan v. Perry*, 41 F.3d 677 (D.C. Cir. 1994) (*en banc*))

◊   Co-counsel in challenge to the constitutionality of the Attorney General of Georgia' firing of staff attorney (*Shahar v. Bowers*, 120 F.3d 211 (11th Cir. 1997))

### Fair Housing

◊   Co-counsel in successful Fair Housing Act case on behalf of group home (*Hogar Agua y Vida En el Desierto v. Suarez-Medina*, 36 F.3d 177 (1st Cir. 1994))

### Family Law

◊   Co-counsel in challenge to constitutionality of Florida law limiting adoption (*Cox v. Florida Dept. of Health and Rehab. Srvcs.*, 656 So.2d 902 (Fla. 1995))

◊   Co-authored *amicus* brief in successful challenge to Hawaii ban on same-sex marriages (*Baehr v. Lewin*, 852 P.2d 44 (Haw. 1993))

### First Amendment

◊   Co-counsel in successful challenge to constitutionality of Alabama law barring state funding foruniversity student groups (*GLBA v. Sessions*, 930 F.Supp. 1492 (M.D. Ala. 1996))

◊   Co-counsel in successful challenge to content restrictions on grants for AIDS education materials (*Gay Men's Health Crisis v. Sullivan*, 792 F.Supp. 278 (S.D.N.Y. 1992))

### Landlord / Tenant

◊   Lead counsel in successful challenge to rent control regulation (*Braschi v. Stahl Associates Co.*, 544 N.E.2d 49 (N.Y. 1989))

### *Police*

◊    Co-counsel in case challenging DEA brutality (*Anderson v. Branen*, 27 F.3d 29 (2d Cir. 1994))

### *Racial Equality*

◊    Co-authored *amicus* brief for constitutional law professors challenging constitutionality of Proposition 209 (*Coalition for Economic Equity v. Wilson*, 110 F.3d 1431 (9th Cir. 1997))

## SELECTED OTHER PUBLICATIONS

### *Editorials*

◊    *Follow the Leaders*, NEW YORK TIMES, March 15, 2005

◊    *Play It Straight*, NEW YORK TIMES, October 16, 2004

◊    *Hiding Behind the Constitution*, NEW YORK TIMES, March 20, 2004

◊    *Toward More Perfect Unions,* NEW YORK TIMES, November 20, 2003 (with Brad Sears)

◊    *Don't Ask, Don't Tell, Don't Believe It*, NEW YORK TIMES, July 20, 1993

◊    *AIDS: Illness and Injustice*, WASH. POST, July 26, 1992 (with Nan D. Hunter)

## BAR ADMISSIONS

◊    Massachusetts (2008)
◊    California (2004)
◊    District of Columbia (1987) (inactive)
◊    Pennsylvania (1986) (inactive)
◊    U.S. Supreme Court (1993)
◊    U.S. Court of Appeals for the First Circuit (2010)
◊    U.S. Court of Appeals for the Second Circuit (2015)
◊    U.S. Court of Appeals for the Fifth Circuit (1989)
◊    U.S. Court of Appeals for the Ninth Circuit (2004)
◊    U.S. Court of Appeals for the Eleventh Circuit (1993)
◊    U.S. Court of Appeals for the D.C. Circuit (1993)
◊    U.S. District Courts for the Central District of California (2004)
◊    U.S. District Court for the District of the District of Columbia (1989)
◊    U.S. District Court for the District of Massachusetts (2010)
◊    U.S. District Court for the Northern District of California (2010)

# EXHIBIT B

*Benson, et al. v. DoubleDown Interactive, LLC, et al.*
Case No. 2:18-cv-00525-RSL
U.S. District Court for the Western District of Washington

### EXPERT REPORT OF PROFESSOR WILLIAM B. RUBENSTEIN

EXHIBIT B
Partial List of Documents Reviewed by Professor Rubenstein
(other than case law and scholarship on the relevant issues)

**A.  *Benson, et al. v. DoubleDown Interactive, LLC, et al.*, No. 18-36015 (9th Cir.)**

1.  Defendants-Appellants' Opening Brief, ECF No. 19
2.  Defendants-Appellants' Excerpts of Record on Appeal, ECF No. 20
3.  Plaintiffs-Appellees' Answering Brief, ECF No. 26
4.  Defendants-Appellants' Reply Brief, ECF No. 33
5.  Order for Supplemental Briefs, ECF No. 47
6.  Plaintiffs-Appellees' Supplemental Brief Addressing *Wilson v. Huuuge, Inc.*, ECF No. 48
7.  Defendants-Appellants' Supplemental Brief, ECF No. 49
8.  Memorandum Affirming District Court's Denial of Motion to Compel Arbitration, ECF No. 61
9.  Mandate, ECF No. 62

**B.  *Benson, et al. v. DoubleDown Interactive, LLC, et al.*, No. 2:18-cv-00525-RSL (W.D. Wash.)**

1.  Plaintiffs' Complaint—Class Action, ECF No. 1
2.  Motion to Compel Arbitration, ECF No. 38
3.  Plaintiffs' First Amended Class Action Complaint, ECF No. 41
4.  Defendants Double Down Interactive LLC's and International Game Technology's Motion to Compel Arbitration and Stay Action, ECF No. 44
5.  Plaintiffs' Opposition to Defendants' Motion to Compel Arbitration, ECF No. 49
6.  Reply in Support of Defendants Double Down Interactive LLC's and International Game Technology's Motion to Compel Arbitration and Stay Action, ECF No. 53
7.  Plaintiffs' Consolidated Notice of Supplemental Authority Pursuant to LCR 7(n), ECF No. 56
8.  Order Denying Defendats' [sic] Motion to Compel Arbitration, ECF No. 57
9.  Defendant International Game Technology's Answer to First Amended Class Action Complaint, ECF No. 74
10. Defendant Double Down Interactive, LLC's Answer to First Amended Class Action Complaint, ECF No. 76
11. Order Granting Defendants' Motion to Stay Proceedings Pending Appeal, ECF No. 77
12. Double Down Interactive, LLC's Motion for Protective Order Re: Plaintiffs' Subpoenas to Apple, Inc., Facebook, Inc., and Google LLC, ECF No. 92

13.  Plaintiffs' Opposition to Double Down Interactive LLC's [Corrected] Motion for Protective Order, ECF No. 101
14.  Defendants' Motion to Certify Questions to the Washington Supreme Court, ECF No. 103
15.  Double Down Interactive, LLC's Reply in Support of Motion for Protective Order Re: Plaintiffs' Subpoenas to Apple, Inc., Facebook, Inc., and Google LLC, ECF No. 108
16.  Plaintiffs' Opposition to Defendants' Motion to Certify Issues to the Washington Supreme Court, ECF No. 111
17.  Defendants' Reply in Support of Motion to Certify Questions to the Washington Supreme Court, ECF No. 115
18.  Order on Defendant's Motions for Protective Order Re. Third-Party Subpoenas, ECF No. 126
19.  Order on Denfendant's [sic] Motion to Certify Questions to Washington Supreme Court, ECF No. 127
20.  Defendants' Motion to Strike Nationwide Class Allegations, ECF No. 128
21.  Double Down Interactive, LLC and International Game Technology's Motion for Reconsideration of Order Denying Motion to Certify Questions to the Washington Supreme Court, ECF No. 133
22.  Defendants' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) and Motion to Abstain, ECF No. 138
23.  Plaintiffs' Opposition to Defendants' Motion to Strike Nationwide Class Allegations, ECF No. 142
24.  Defendants' Reply in Support of Motion to Strike Nationwide Class Allegations, ECF No. 149
25.  Plaintiffs' Opposition to Defendants' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) and Motion to Abstain, ECF No. 150
26.  Reply in Support of Defendants' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) and Motion to Abstain, ECF No. 152
27.  Plaintiffs' Opposition to Defendants' Motion for Reconsideration of Order Denying Motion to Certify Questions to the Washington Supreme Court, ECF No. 154
28.  Double Down Interactive, LLC and International Game Technology's Reply in Support of Motion for Reconsideration of Order Denying Motion to Certify Questions to the Washington Supreme Court, ECF No. 155
29.  Order Denying Defendants' Motion for Reconsideration, ECF No. 156
30.  Defendants Double Down Interactive, LLC and International Game Technology's Motion for Protective Order and to Compel Document Production and Answers to Interrogatories, ECF No. 159
31.  Plaintiffs' Motion for Class Certification and for Preliminary Injunction, ECF No. 165
32.  Declaration of Todd Logan in Support of Plaintiffs' Motion for Class Certification and for Preliminary Injunction, ECF No. 166
33.  Plaintiffs' Opposition to Defendants' Motion for Protective Order and to Compel, ECF No. 190
34.  Defendants Double Down Interactive, LLC and International Game Technology's Reply in Support of Motion for Protective Order and to Compel Document Production and Answers to Interrogatories, ECF No. 200
35.  Unopposed Motion to Strike and Replace, ECF No. 201

**B-2**

36. Order Regarding Defendants' Motions to Compel Discovery and to Extend Response Deadline, ECF No. 206

37. Order Denying Motion to Strike Nationwide Class Allegations, ECF No. 209

38. Order Denying Defendants' Motion to Abstain and Stay, ECF No. 210

39. Motion to Compel Production of Documents Responsive to Plaintiffs' RFP No. 14, ECF No. 211

40. Double Down Interactive, LLC's Brief in Opposition to Plaintiffs' Motion to Compel Production of Documents Responsive to Plaintiffs' RFP No. 14, ECF No. 221

41. Reply in Support of Motion to Compel Production of Documents Responsive to Plaintiffs' RFP No. 14, ECF No. 227

42. Defendants' Motion for Certification Regarding Abstention Pursuant to 28 U.S.C. § 1292(b) and Motion to Stay, ECF No. 230

43. Defendant International Game Technology's Amended Answer to First Amended Class Action Complaint, ECF NO. 238

44. Motion to Compel Production of Documents Responsive to Plaintiffs' RFP No. 26, ECF No. 244

45. Defendants' Notice to Withdraw Motion for Certification Regarding Abstention Pursuant to 28 U.S.C. § 1292(b) and Motion to Stay, ECF No. 248

46. Plaintiffs' Second Amended Class Action Complaint, ECF No. 249

47. Defendant Double Down Interactive, LLC's Motion for Certification Pursuant to 28 U.S.C. § 1292(b) and to Stay, ECF No. 257

48. Double Down Interactive, LLC's Brief in Opposition to Plaintiffs' Motion to Compel Production of Documents Responsive to Plaintiffs' RFP No. 26, ECF No. 261

49. Reply in Support of Motion to Compel Production of Documents Responsive to Plaintiffs' RFP No. 26, ECF No. 263

50. Defendant Double Down Interactive, LLC's Renewed Motion to Compel Arbitration and to Stay, ECF No. 264

51. Double Down Interactive, LLC's Answer to Second Amended Class Action Complaint, ECF No. 267

52. Defendant International Game Technology's Answer to Plaintiffs' Second Amended Class Action Complaint, ECF NO. 268

53. Plaintiffs' Opposition to DoubleDown Interactive, LLC's Motion for Certification Pursuant to 28 U.S.C. § 1292(b) and for Stay, ECF No. 269

54. International Game Technology's & IGT's Response to Plaintiffs' Motion for Class Certification and Preliminary Injunction, ECF No. 271

55. Double Down Interactive, LLC's Opposition to Plaintiffs' Motion for Class Certification and for Preliminary Injunction, ECF No. 287

56. Reply in Support of Double Down's Motion for Certification Pursuant to 28 U.S.C. 1292(b) and to Stay, ECF No. 288

57. IGT's Motion to Dismiss Plaintiffs' Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 289

58. Plaintiffs' Opposition to DoubleDown Interactive, LLC's Renewed Motion to Compel Arbitration and to Stay, ECF No. 293

59. Plaintiffs' Reply in Support of Motion for Class Certification and for Preliminary Injunction, ECF NO. 300

60. Declaration of Todd Logan in Support of Plaintiffs' Reply in Support of Motion for Class Certification and for Preliminary Injunction, ECF No. 301
61. Exhibit 1, USB Drive #1 Lodged with Court [Filed Under Seal], ECF No. 301-1
62. Exhibit 2, DoubleDown Interactive Co., Ltd. Form 20-F, ECF No. 301-2
63. Exhibit 3, Deposition Transcript for Joe Sigrist [Filed Under Seal], ECF No. 301-3
64. Exhibit 4, Deposition Transcript for Leslie Keddie [Filed Under Seal], ECF No. 301-4
65. Exhibit 5, [Filed Under Seal], ECF No. 301-5
66. Exhibit 6, [Filed Under Seal], ECF No. 301-6
67. Exhibit 7, [Filed Under Seal], ECF No. 301-7
68. Exhibit 8, Deposition Transcript for Julie Frederick [Filed Under Seal], ECF No. 301-8
69. Exhibit 9, [Filed Under Seal], ECF No. 301-9
70. Exhibit 10, Deposition Transcript for Suzy Langham [Filed Under Seal], ECF No. 301-10
71. Exhibit 11, [Filed Under Seal], ECF No. 301-11
72. Exhibit 12, [Filed Under Seal], ECF No. 301-12
73. Exhibit 13, [Filed Under Seal], ECF No. 301-13
74. Exhibit 14, Deposition Transcript for Jennifer Peters [Filed Under Seal], ECF No. 301-14
75. Exhibit 15, Karen Schulman LinkedIn, ECF No. 301-15
76. Exhibit 16, [Filed Under Seal], ECF No. 301-16
77. Exhibit 17, USB Drive #2 Lodged with Court [Filed Under Seal], ECF No. 301-17
78. Exhibit 18, Deposition of Adrienne Benson, ECF No. 301-18
79. Exhibit 19, Deposition of Mary Simonson, ECF No. 301-19
80. Exhibit 20, Deposition of Catherine Witt, ECF No. 301-20
81. Exhibit 21, Deposition of Olivia Werner, ECF No. 301-21
82. Exhibit 22, Deposition of Sandra Logan, ECF No. 301-22
83. Exhibit 23, Deposition of Patrick Bailey, ECF No. 301-23
84. Exhibit 24, Deposition of Deborah Raymond, ECF No. 301-24
85. Exhibit 25, Deposition of Jan Saari, ECF No. 301-25
86. Exhibit 26, [Filed Under Seal], ECF No. 301-26
87. Exhibit 27, [Filed Under Seal], ECF No. 301-27
88. Exhibit 28, Deposition Transcript for Alexander Joel Entrikin [Filed Under Seal], ECF No. 301-28
89. Exhibit 29, [Filed Under Seal], ECF No. 301-29
90. Exhibit 30, Emails Between Counsel, ECF No. 301-30
91. Exhibit 31, Emails Between Counsel, ECF No. 301-31
92. Exhibit 32, [Filed Under Seal], ECF No. 301-32
93. Exhibit 33, [Filed Under Seal], ECF No. 301-33
94. Exhibit 34, [Filed Under Seal], ECF No. 301-34
95. Exhibit 35, [Filed Under Seal], ECF No. 301-35
96. Exhibit 36, [Filed Under Seal], ECF No. 301-36
97. Exhibit 37, Deposition Transcript for Jude Cooper [Filed Under Seal], ECF No. 301-37
98. Reply in Support of Double Down Interactive's Renewed Motion to Compel Arbitration and to Stay, ECF No. 307
99. International Game Technology's & IGT's Surreply to Plaintiffs' Motion for Class Certification and Preliminary Injunction, ECF No. 310

100. Plaintiffs' Opposition to IGT's Motion to Dismiss Plaintiffs' Second Amended Complaint, ECF No. 326
101. Double Down Interactive, LLC's Motion to Continue the Trial Date and Pretrial Deadlines or in the Alternative Motion for Fed. R. Civ. P. Rule 16 Conference, ECF NO. 327
102. IGT's Reply in Support of its Motion to Dismiss Plaintiffs' Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 330
103. Plaintiffs' Opposition to DoubleDown's Motion for a Trial Continuance, ECF No. 336
104. Order Denying Motion to Certify an Interlocutory Appeal, ECF No. 338
105. Plaintiffs' Motion to Compel Production of Documents Responsive to Nine Requests, ECF No. 341
106. Double Down Interactive, LLC's Reply in Support of Motion to Continue the Trial Date and Pretrial Deadlines or in the Alternative Motion for Fed. R. Civ. P. Rule 16 Conference, ECF No. 344
107. Plaintiffs' Motion for Leave to Take Seven (7) Additional Depositions, ECF No. 374
108. Plaintiffs' Motion to Compel Production of Documents Responsive to Thirteen Requests, ECF No. 382
109. Plaintiffs' Motion for Spoliation Sanctions and Evidentiary Hearing, ECF No. 405
110. [Proposed] Order, ECF No. 405-1
111. Defendant Double Down Interactive, LLC's Opposition to Plaintiffs' Motion for Spoliation Sanctions and Evidentiary Hearing, ECF No. 418
112. Plaintiffs' Reply to IGT Defendants' Response to Motion for Spoliation Sanctions and Evidentiary Hearing, ECF No. 431
113. Reply to DoubleDown's Opposition to Plaintiffs' Motion for Spoliation Sanctions and Evidentiary Hearing, ECF No. 433
114. IGT Defendants' Motion to Strike Plaintiffs' Reply in Support of Their Motion for Spoliation Sanctions and Evidentiary Hearing, ECF No. 440
115. Plaintiffs' Status Report Regarding Mandatory Settlement Conference, ECF No. 451
116. Plaintiffs' Motion for Temporary Restraining Order, ECF No. 482
117. Defendant Double Down Interactive LLC's Opposition to Plaintiffs' Motion for a Temporary Restraining Order, ECF No. 489
118. Plaintiffs' Reply in Support of Motion for Temporary Retraining Order, ECF No. 493
119. IGT Defendants' Opposition to Plaintiffs' Motion for a Temporary Restraining Order, ECF No. 494
120. Stipulated Motion and [Proposed] Order Staying Case Pending Filing of Motion for Preliminary Approval of Class Action Settlement Agreement, ECF No. 499
121. Stipulated Motion Re: Execution of Class Action Settlement Agreement; [Proposed] Order Extending Stay of Case, ECF No. 504
122. Unopposed Motion for Preliminary Approval of Class Action Settlement Agreement, ECF No. 507
123. [Proposed] Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, ECF No. 507-1
124. Declaration of Todd Logan in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement Agreement, ECF No. 508
125. Class Action Settlement Agreement, ECF No. 508-1
126. Stipulated Motion Re: Settlement Fund; [Proposed] Order, ECF No. 509

127. Unopposed Motion to Continue Settlement Deadlines by 42 Days, ECF No. 513
128. [Proposed] Order Granting Plaintiffs' Unopposed Motion to Continue Settlement Deadlines by 42 Days, ECF No. 513-1
129. Unopposed Motion to Continue Settlement Deadlines by an Additional 14 Days, ECF No. 528
130. [Proposed] Order Granting Plaintiffs' Unopposed Motion to Continue Settlement Deadlines by an Additional 14 Days, ECF No. 528-1
131. Order Granting Plaintiffs' Unopposed Motion to Continue Settlement Deadlines by an Additional 14 Days, ECF No. 529

**C.** ***DoubleDown Interactive, LLC, et al. v. Benson, et al.*, No. 20-2-02023-34 (Wa. Super. Ct.)**

1. Complaint for Declaratory Relief, filed 09/11/20
2. Defendants' Motion to Dismiss or Stay, filed 02/05/21
3. Double Down Interactive, LLC and International Game Technology's Response in Opposition to Adrienne Benson and Mary Simonson's Motion to Dismiss or Stay, filed 02/19/21
4. Defendants' Reply Brief in Support of Motion to Dismiss or Stay, filed 02/26/21
5. Order Granting Defendants' Motion to Dismiss or Stay, filed 07/23/21
6. International Game Technology's Opening Motion and [Proposed] Order for Voluntary Dismissal of Claims, filed 07/29/21

**D.** ***Ferrando et al. v. Zynga, Inc.*, No. 2:22-cv-00214-RSL (W.D. Wash.)**

1. Plaintiffs' Class Action Complaint, ECF No. 1
2. Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, ECF No. 23
3. Declaration of Todd Logan in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement Agreement, ECF No. 24
4. Exhibit 1, Class Action Settlement Agreement, ECF No. 24-1
5. Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, ECF No. 26

**E.** ***Donna Reed et al. v. Scientific Games Corp., a Nevada corporation***, **No. 2:18-cv-00565-RSL (W.D. Wash.)**

1. Plaintiff's Complaint—Class Action, ECF No. 1
2. Plaintiff's Rule 26(a)(1) Initial Disclosures, ECF No. 21
3. Joint Status Report & Discovery Plan, ECF No. 25
4. Defendant's Motion to Dismiss, ECF No. 28
5. Plaintiffs' Consolidated Opposition to Defendants' Motions to Dismiss, ECF No. 35
6. Defendant's Reply in Support of Motion to Dismiss, ECF No. 36
7. Plaintiffs' Consolidated Notice of Supplemental Authority Pursuant to LCR 7(n), ECF No. 37

8.   Order Granting in Part Defendant's Request for Judicial Notice and Denying Defendant's Motion to Dismiss, ECF No. 38

9.   Defendant's Answer and Affirmative Defenses to Plaintiff's Class Action Complaint, ECF No. 41

10.  Plaintiff's Motion for Leave to Amend and Substitute Donna Reed as Class Representative, ECF No. 52

11.  Stipulation and [Proposed] Order, ECF No. 57

12.  Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, ECF No. 59

13.  Plaintiff's Renewed Motion for Leave to Amend and Substitute Donna Reed as Class Representative, ECF No. 61

14.  Donna Reed's Motion to Intervene Pursuant to Fed. R. Civ. P. 24(a) or, in the Alternative, Pursuant to Fed. R. Civ. P. 24(b), ECF No. 65

15.  Defendant's Response to Plaintiff Sheryl Fife's Motion for Leave to Amend, ECF No. 67

16.  Defendant's Response to Donna Reed's Motion to Intervene, ECF No. 68

17.  Plaintiff's Reply in Support of Renewed Motion for Leave to Amend and Substitute Donna Reed as Class Representative, ECF No. 70

18.  Donna Reed's Reply in Support of Motion to Intervene Pursuant to Fed. R. Civ. P. 24(a), or, in the Alternative, Pursuant to Fed. R. Civ. P. 24(b), ECF No. 71

19.  Defendant's Reply in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction, ECF No. 74

20.  Order on Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Plaintiff's Motion for Leave to Amend, ECF No. 77

21.  Plaintiff's First Amended Complaint—Class Action, ECF No. 78

22.  Defendant's Motion to Compel Arbitration or, in the Alternative, Transfer Venue, ECF No. 82

23.  Declaration of Cameron Lee, ECF No. 83

24.  Plaintiff's Opposition to Motion to Compel Arbitration or, in the Alternative, Transfer Venue, ECF No. 88

25.  Declaration of Roger Perlstadt, ECF No. 89

26.  Declaration of Donna Reed, ECF No. 90

27.  Defendant's Reply in Support of Motion to Compel Arbitration or, in the Alternative, Transfer Venue, ECF No. 91

28.  Defendant's Motion to Stay Discovery and Class Certification Briefing Pending Decision on Motion to Compel Arbitration, ECF No. 100

29.  Plaintiff's Opposition to Motion to Stay Discovery and Class Certification Briefing, ECF No. 102

30.  Declaration of Todd Logan in Support of Opposition to Motion to Stay Discovery and Class Certification Briefing, ECF No. 103

31.  Exhibit 1 to Declaration of Todd Logan in Support of Opposition to Motion to Stay Discovery and Class Certification Briefing, ECF No. 103-1

32.  Defendant's Reply in Support of Motion to Stay Discovery and Class Certification Briefing Pending Decision on Motion to Compel Arbitration, ECF No. 106

33.  Plaintiff's Motion for Class Certification and for Preliminary Injunction, ECF No. 112

34.  [Proposed] Order Certifying Classes and Granting Preliminary Injunction, ECF No. 112-1

35.   Declaration of Donna Reed, ECF No. 114
36.   Declaration of Donna Reed, ECF No. 115
37.   Declaration of Laura Perkinson, ECF No. 116
38.   Declaration of Frank Wesner, ECF No. 117
39.   Declaration of John Gritsuk, ECF No. 118
40.   Declaration of Robert Hicks, ECF No. 119
41.   Declaration of Ryan Westergreen, ECF No. 120
42.   Order Staying Discovery and Class Certification Briefing, ECF No. 126
43.   Order Denying Defendant's Motion to Compel Arbitration or Transfer Venue, ECF No. 134
44.   Defendant's Motion to Stay Proceedings Pending Appeal, ECF No. 137
45.   Plaintiff's Response in Opposition to Motion to Stay Proceedings Pending Appeal, ECF No. 146
46.   Defendant's Reply in Support of its Motion to Stay Proceedings Pending Appeal, ECF No. 147
47.   Plaintiff's Motion to Compel Re: RFP No. 32, ECF No. 151
48.   Declaration of Brandt Silver-Korn, ECF No. 152
49.   Exhibit 1, Plaintiff's Second Set of Requests for Production to Defendant, ECF No. 152-1
50.   Defendant's Responses and Objections to Plaintiff's Second Set of Requests for Production, ECF No. 152-2
51.   Defendant's Response in Opposition to Plaintiff's Motion to Compel Re: RFP No. 32, ECF No. 154
52.   Declaration of Daniel C. Taylor in Support of Defendant's Response in Opposition to Plaintiff's Motion to Compel Re: RFP No. 32, ECF No. 155
53.   Plaintiff's Reply in Support of Motion to Compel Re: RFP No. 32, ECF No. 156
54.   Declaration of Brandt Silver-Korn, ECF No. 157
55.   Exhibit 1 to Declaration of Brandt Silver-Korn, ECF No. 157-1
56.   Exhibit 2 to Declaration of Brandt Silver-Korn, ECF No. 157-2
57.   Stipulated Motion and [Proposed] Order Staying Case Pending Filing of Motion for Preliminary Approval of Class Action Settlement Agreement, ECF No. 158
58.   Unopposed Motion for Preliminary Approval of Class Action Settlement Agreement, ECF No. 163
59.   [Proposed] Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement, ECF No. 163-1
60.   Declaration of Todd Logan in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement Agreement, ECF No. 164
61.   Exhibit 1, Class Action Settlement Agreement, ECF No. 164-1
62.   Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement, ECF No. 166
63.   Order Granting Plaintiff's Unopposed Motion to Continue Certain Settlement Deadlines by an Additional 16 Days, ECF No. 176

F.   ***Wilson v. Huuuge, Inc.***, **No. 3:18-cf-05276-RSL (W.D. Wash.)**

1.   Class Action Complaint, ECF No. 1

2.  Defendant Huuuge, Inc.'s Motion to Stay Deadlines and Discovery Pending a Decision on Motion to Compel Arbitration, ECF No. 26
3.  Plaintiff's Opposition to Defendant Huuuge, Inc.'s Motion to Stay Deadlines and Discovery Pending a Decision on Motion to Compel Arbitration, ECF No. 28
4.  Defendant Huuuge, Inc.'s Reply in Support of Motion to Stay Deadlines and Discovery Pending a Decision on Motion to Compel Arbitration, ECF No. 29
5.  Order Granting Defendant Huuuge, Inc.'s Motion to Stay Deadlines and Discovery Pending a Decision on Motion to Compel Arbitration, ECF No. 30
6.  Defendant Huuuge, Inc.'s Motion to Compel Arbitration and Stay Action, ECF No. 31
7.  Plaintiff's Opposition to Defendant Huuuge, Inc.'s Motion to Compel Arbitration and Stay Action, ECF No. 35
8.  Defendant Huuuge, Inc.'s Reply in Support of Motion to Compel Arbitration and Stay Action, ECF No. 39
9.  Plaintiffs' Consolidated Surreply Pursuant to Local Rule 7(g), ECF No. 41
10.  Order Denying Defendant's Motion to Compel Arbitration, ECF No. 43
11.  Huuuge, Inc.'s Answer to Class Action Complaint, ECF No. 61
12.  Opinion Affirming Order Denying Defendant's Motion to Compel Arbitration, ECF No. 64 [944 F.3d 1212]
13.  Plaintiff's Motion for Temporary Restraining Order, ECF No. 69
14.  Huuuge, Inc.'s Opposition to Plaintiff's Motion for Temporary Restraining Order, ECF No. 77
15.  Plaintiff's Reply in Support of Temporary Restraining Order, ECF No. 80
16.  Order on Plaintiff's Motion for Temporary Restraining Order, ECF No. 82
17.  Unopposed Motion for Preliminary Approval of Class Action Settlement Agreement, ECF No. 98
18.  Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, No. 98-1
19.  Declaration of Todd Logan, No. 99
20.  Class Action Settlement Agreement, No. 99-1
21.  Edelson PC Firm Resume, No. 99-2
22.  Declaration of Steven Weisbrot, Esq. re: Angeion Group, LLC Qualifications and Implementation of the Notice Program, ECF No. 100
23.  Order on Preliminary Approval of Class Action Settlement, ECF No. 101
24.  Order Scheduling Motions and Final Approval Hearing, No. 105
25.  Stipulated Motion and Order to Amend Preliminary Approval Order, ECF No. 106
26.  Unopposed Motion and Order Continuing Settlement Deadlines by 35 Days, ECF No. 109
27.  Notice re: Class Notice Plan, ECF No. 116

**G.  *Wilson v. Playtika LTD.*, No. 3:18-cv-05277-RSL (W.D. Wash.)**

1.  Class Action Complaint, ECF No. 1
2.  Motion to Dismiss Defendants Playtika LTD and Playtika Holding Corp. or, in the Alternative, to Strike Certain Allegations from the Complaint, ECF No. 40
3.  Plaintiff's Opposition to Defendants' Motion to Dismiss for Forum Non Conveniens, ECF No. 48

4.   Plaintiffs' Consolidated Opposition to Defendants' Motions to Dismiss, ECF No. 52
5.   Plaintiff's Opposition to Defendant Playtika LTD's Rule 12(B)(2) Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 57
6.   Defendant Playtika LTD's Reply in Support of its Motion to Dismiss, ECF No. 64
7.   Plaintiffs' Consolidated Surreply Pursuant to Local Rule 7(g), ECF No. 66
8.   Plaintiffs' Consolidated Notice of Supplemental Authority Pursuant to LCR 7(n), ECF No. 67
9.   Order Denying Defendants' Motion to Dismiss and Strike and Granting Defendants' Request for Judicial Notice, ECF No. 68
10.  Defendant's Answer to Plaintiff's Class Action Complaint, ECF No. 74
11.  Defendant Caesars Interactive Entertainment, LLC's Motion to Dismiss, ECF No. 75
12.  Defendant Playtika LTD's Motion for Certification Pursuant to 28 U.S.C. § 1292(b) and for a Stay Pending Appeal, ECF No. 79
13.  Plaintiff's Opposition to Defendant Playtika LTD's Motion for Certification to 28 U.S.C. § 1292(b) and for a Stay Pending Appeal, ECF No. 84
14.  Order Granting Defendant Playtika LTD's Motion for Certification Pursuant to 28 U.S.C. § 1292(b) and for a Stay Pending Appeal, ECF No. 85
15.  Joint Status Report, ECF No. 98
16.  Defendant Playtika LTD's Motion to Certify Issues to the Washington Supreme Court, ECF No. 99
17.  Plainitff's Response in Opposition to Defendant Playtika LTD's Motion to Certify Issues to the Washington Supreme Court, ECF No. 102
18.  Defendant Playtika LTD's Reply in Support of Motion to Certify Issues to the Washington Supreme Court, ECF No. 104
19.  Order on Defendant Playtika LTD's Motion to Certify Issues to the Washington Supreme Court, ECF No. 113
20.  Unopposed Motion for Preliminary Approval of Class Action Settlement Agreement, ECF No. 120
21.  Proposed Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement Agreement, ECF No. 120-1
22.  Declaration of Todd Logan, No. 121
23.  Exhibit 1 to Declaration of Todd Logan, Class Action Settlement Agreement, No. 121-1
24.  Exhibit 2 to Declaration of Todd Logan, Edelson PC Firm Resume, No. 121-2
25.  Order on Preliminary Approval of Class Action Settlement, ECF No. 124
26.  Order Scheduling Motions and Final Approval Hearing, ECF No. 126
27.  Unopposed Motion and Order Continuing Settlement Deadlines by 35 Days, ECF No. 129
28.  Notice re: Class Notice Plan, ECF No. 136

**H.  *Kater v. Churchill Downs Incorporated*, No. 2:15-cv-612-RSL (W.D. Wash.)**

1.   Class Action Complaint, ECF No. 2
2.   Defendant Churchill Downs Incorporated's Motion to Dismiss, ECF No. 24
3.   Plaintiffs' Opposition to Churchill Downs Incorporated's Motion to Dismiss, ECF No. 32

4.   Defendant Churchill Downs Incorporated's Reply in Support of Motion to Dismiss, ECF No. 35
5.   Order Granting Defendant Churchill Downs Incorporated's Motion to Dismiss, No. 39
6.   Judgment Granting Defendant Churchill Downs Incorporated's Motion to Dismiss, No. 40
7.   Plaintiff's Motion to Reconsider Order Granting Defendant Churchill Downs Incorporated's Motion to Dismiss, No. 41
8.   Order Denying Plaintiff's Motion to Reconsider Order Granting Defendant Churchill Downs Incorporated's Motion to Dismiss, No. 42
9.   Opinion Reversing and Remanding Order Granting Motion to Dismiss, ECF No. 46 [886 F.3d 784]
10.  Defendant Churchill Downs Incorporated's Motion to Compel Arbitration, No. 60
11.  Plaintiff's Opposition to Defendant Churchill Downs Incorporated's Motion to Compel Arbitration, No. 68
12.  Defendant Churchill Downs Incorporated's Reply in Support of Motion to Compel Arbitration, No. 70
13.  Plaintiff's Surreply to Defendant Churchill Downs Incorporated's Reply in Support of Motion to Compel Arbitration, No. 72
14.  Before the Washington State Gambling Commission, Order Denying Request to Issue Declaratory Order, ECF No. 74-1
15.  Order Denying Motion to Compel Arbitration, No. 75
16.  Defendant Churchill Downs Incorporated's Answer to Plaintiff's Complaint, No. 76
17.  Defendant Churchill Downs Incorporated's Motion for Joinder of Big Fish Games, Inc. as a Necessary Party, No. 79
18.  Exhibit D to Defendant Churchill Downs Incorporated's Motion for Joinder of Big Fish Games, Inc. as a Necessary Party, Petition Before the Washington State Gambling Commission, No. 79-5
19.  First Amended Class Action Complaint, No. 85
20.  Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement Agreement, No. 217
21.  Proposed Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, No. 217-1
22.  Declaration of Todd Logan, No. 218
23.  Exhibit 1 to Declaration of Todd Logan, Class Action Settlement Agreement, No. 218-1
24.  Exhibit 2 to Declaration of Todd Logan, Edelson PC Firm Resume, No. 218-2
25.  Order on Preliminary Approval of Class Action Settlement, No. 221
26.  Order Scheduling Motions and Final Approval Hearing, No. 223
27.  Class Member Motion to Cease and Desist, No. 228
28.  Class Member Handwritten Opt Out, No. 237
29.  Unopposed Motion and Order Continuing Settlement Deadlines by 35 Days, No. 243
30.  Notice re: Class Notice Plan, No. 249

# EXHIBIT C

*Benson, et al. v. DoubleDown Interactive, LLC, et al.*
Case No. 2:18-cv-00525-RSL
U.S. District Court for the Western District of Washington

**EXPERT REPORT OF PROFESSOR WILLIAM B. RUBENSTEIN**

EXHIBIT C
List of Megafund (Settlement Funds Exceeding $100 Million) Class Actions
with Percentage Awards of 30% or More

| | Case | Settlement Amount | Percentage Award |
|---|---|---|---|
| 1 | *Cook v. Rockwell Int'l Corp.*, No. 90-cv-00181, 2017 WL 5076498 (D. Colo. Apr. 28, 2017) | $375m | 40% |
| 2 | *In re Capacitors Antitrust Litig.*, No. 3:14-cv-03264 (N.D. Cal. Mar. 6, 2023) (ECF No. 2982) | $165m | 40% |
| 3 | *In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997) | $127m | 36% |
| 4 | *Haddock v. Nationwide Life Ins. Co.*, No. 01-cv-01552 (D. Conn. Apr. 9, 2015) (ECF No. 601) | $140m | 35% |
| 5 | *In re Vitamins Antitrust Litig.*, No. 99-197, 2001 WL 34312839 (D.D.C. July 16, 2001) (Vitamin Products Settlement Fund) | $359m | 34.06% |
| 6 | *City of Greenville v. Syngenta Crop Prot.*, 904 F. Supp. 2d 902 (S.D. Ill. Oct. 23, 2012) | $105m | 33.33% |
| 7 | *Hale v. State Farm*, No. 12-cv-00660, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) | $250m | 33.33% |
| 8 | *In re Apollo Grp. Inc. Sec. Litig.*, No. 04-cv-02147, 2012 WL 1378677 (D. Ariz. Apr. 20, 2012) | $145m | 33.33% |
| 9 | *In re Domestic Drywall Antitrust Litig.*, No. 13-md-2437, 2018 WL 3439454 (E.D. Pa. July 17, 2018) | $190m | 33.33% |
| 10 | *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739 (E.D. Pa. 2013) | $150m | 33.33% |
| 11 | *In re Loestrin 24 Fe Antitrust Litig.*, MDL No. 2472 (D.R.I. July 17, 2020) | $120m | 33.33% |

| | Case | Settlement Amount | Percentage Award |
|---|---|---|---|
| 12 | *In re Mun. Derivatives Antitrust Litig.*, No. 08-cv-02516, 2016 WL 11543257 (S.D.N.Y. July 8, 2016) (ECF Nos. 2013, 2029) | $101m | 33.33% |
| 13 | *In re Neurontin Antitrust Litig.*, No. 02-cv-01830, 2014 WL 12962880 (D.N.J. Aug. 6, 2014) | $190m | 33.33% |
| 14 | *In re OSB Antitrust Litig.*, No. 06-cv-00826 (D. Pa. Dec. 9, 2008) (ECF No. 947) | $121m | 33.33% |
| 15 | *In re Relafen Antitrust Litig.*, No. 01-cv-12239 (D. Mass. Apr. 9, 2004) (ECF No. 297) | $175m | 33.33% |
| 16 | *In re Southeastern Milk Antitrust Litig.*, No. 08-md-1000, 2013 WL 2155387 (E.D. Tenn. May 17, 2013) | $159m | 33.33% |
| 17 | *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094 (D. Kan. 2018) | $1.51b | 33.33% |
| 18 | *In re Titanium Dioxide Antitrust Litig.*, No. 10-cv-00318, 2013 WL 6577029 (D. Md. Dec. 13, 2013) | $164m | 33.33% |
| 19 | *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-cv-00340 (D. Del. Apr. 23, 2009) (ECF No. 543) | $250m | 33.33% |
| 20 | *In re Urethane Antitrust Litig.*, No. 04-md-01616 (D. Kan. July 29, 2016) (ECF No. 3276) | $835m | 33.33% |
| 21 | *In re U.S. Foodservice, Inc. Pricing Litig.*, No. 07-md-01894, 2014 WL 12862264 (D. Conn. Dec. 9, 2014) | $297m | 33.33% |
| 22 | *Marchbanks Truck Serv., Inc. v. Comdata Network, Inc.*, No. 07-cv-1078, 2014 WL 12738907 (E.D. Pa. July 14, 2014) | $130m | 33.33% |
| 23 | *In re Buspirone Antitrust Litig.*, No. 01-md-1413, 2003 U.S. Dist. LEXIS 26538 (S.D.N.Y. Apr. 11, 2003) (no Westlaw citation available) | $220m | 33.30% |
| 24 | *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009) | $586m | 33.30% |
| 25 | *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-08637, 2022 WL 6124787 (N.D. Ill. Oct. 7, 2022) | $181m | 33% |

**C-2**

|    | Case | Settlement Amount | Percentage Award |
|----|------|-------------------|------------------|
| 26 | *Standard Iron Works v. ArcelorMittal*, No. 08-cv-05214, 2014 WL 7781572 (N.D. Ill. Oct. 22, 2014) | $164m | 33% |
| 27 | *In re Auto. Refinishing Paint Antitrust Litig.*, No. MDL-1426, 2008 WL 63269 (E.D. Pa. Jan. 3, 2008) | $106m | 32.7% |
| 28 | *Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) | $1.06b | 31.33% |
| 29 | *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995) | $220m | 30.9% |
| 30 | *Anwar et al v. Fairfield Greenwich Limited et al*, No. 09-cv-0118 (S.D.N.Y. Nov. 20, 2015) (ECF No. 1457) | $125m | 30% |
| 31 | *City of Pontiac General Employees' Retirement System v. Wal-Mart Stores, Inc. et al.*, No. 12-cv-05162 (W.D. Ark. 2019) (ECF No. 458) | $160m | 30% |
| 32 | *In re (Bank of America) Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011) | $410m | 30% |
| 33 | *In re Cathode Ray Tube (Crt) Antitrust Litig.*, No. 07-cv-05944, 2016 WL 183285 (N.D. Cal. Jan. 14, 2016) | $127m | 30% |
| 34 | *In re (Chase Bank) Checking Account Overdraft Litig.*, No. 09-md-02036 (S.D. Fla. Dec. 19, 2012) (ECF No. 3134) | $162m | 30% |
| 35 | *In re (Citizens Bank) Checking Account Overdraft Litig.*, No. 09-md-02036 (S.D. Fla. Mar. 12, 2013) (ECF No. 3331) | $138m | 30% |
| 36 | *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) | $111m | 30% |
| 37 | *In re Linerboard Antitrust Litig.*, No. 98-cv-05055, 2004 WL 1221350 (E.D. Pa. June 2, 2004) | $203m | 30% |
| 38 | *In re Morgan Keegan Open-End Mutual Fund Litigation*, No. 07-cv-02784 (W.D. Tenn. Aug 2, 2016) (ECF No. 435) | $110m | 30% |
| 39 | *In re Polyurethane Foam Antitrust Litig.*, No. 10-md-2196, 2015 WL 1639269 (N.D. Ohio Feb. 26, 2015), *appeal dismissed* (Dec. 4, 2015) | $148m | 30% |

|    | Case | Settlement Amount | Percentage Award |
|----|------|-------------------|------------------|
| 40 | *In re Takata Airbag Prod. Liab. Litig.*, No. 14-cv-24009, 2017 WL 5290875 (S.D. Fla. Nov. 1, 2017) | $131m | 30% |
| 41 | *In re TFT-LCD (Flat Panel)* Antitrust Litigation, No. 07-md-01827 (N.D. Cal. 2011) (ECF No. 4436) | $405m | 30% |
| 42 | *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632 (N.D. Tex. Apr. 9, 2010), *as modified* (June 14, 2010) | $110m | 30% |
| 43 | *Kurzweil v. Philip Morris Co., Inc.*, Nos. 94-cv-2373, 94-cv-2546, 1999 WL 1076105 (S.D.N.Y. Nov. 30, 1999) | $124m | 30% |
| 44 | *Peace Officers' Annuity & Benefit Fund v. DaVita Inc.*, No. 17-cv-0304, 2021 WL 2981970 (D. Colo. July 15, 2021) | $135m | 30% |
| 45 | *Schuh v. HCA Holdings, Inc.*, No. 11-cv-01033, 2016 WL 10570957 (M.D. Tenn. Apr. 14, 2016) (ECF Nos. 540, 563) | $215m | 30% |
| 46 | *Tennille v. Western Union Co.*, No. 09-cv-00938, 2014 WL 5394624 (D. Colo. Oct. 15, 2014) | $180m | 30% |
| 47 | *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420Y, 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020), *aff'd*, No. 21-15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) | $113m | ~30% |

# EXHIBIT D

*Benson, et al. v. DoubleDown Interactive, LLC, et al.*
Case No. 2:18-cv-00525-RSL
U.S. District Court for the Western District of Washington

### EXPERT REPORT OF PROFESSOR WILLIAM B. RUBENSTEIN

EXHIBIT D
Overview of Entire Casino App Litigation Campaign

| | SETTLED CASES | | | |
|---|---|---|---|---|
| | **CASE** | **SETTLEMENT** | **FEE %** | **FEE TOTAL** |
| 1 | *Kater v. Churchill Downs* | $ 155,000,000 | 25% | $ 38,750,000 |
| 2 | *Wilson v. Playtika* | $ 38,000,000 | 25% | $ 9,500,000 |
| 3 | *Wilson v. Huuuge* | $ 6,500,000 | 25% | $ 1,625,000 |
| 4 | *Reed v. Scientific Games* | $ 24,500,000 | 25% | $ 6,125,000 |
| 5 | *Ferrando v. Zynga* | $ 12,000,000 | 25% | $ 3,000,000 |
| 6 | *Benson v. DoubleDown Interactive* | $ 415,000,000 | 30% (proposed) | $ 124,500,000 |
| | **TOTAL** | **$ 651,000,000** | | **$ 183,500,000** |

| **ACROSS THE 6 SETTLED CASES** | **ACROSS ALL 11 FINISHED CASES** |
|---|---|
| **UNWEIGHTED AVERAGE RATE** | **UNWEIGHTED AVERAGE RATE** |
| (5 x 25%) + (1 seeks x 30%) = 155%/6 | (5 x 25%) + (1 seeks x 30%) + (5 x 0%) =155%/11 |
| **= 25.8%/case** | **= 14.1%/case** |
| | |
| **WEIGHTED AVERAGE RATE** | |
| $183,500,000/$651,000,000 | |
| **= 28.2%** | |

**D-1**

| | | | ALL CASES | | |
|---|---|---|---|---|---|
| | **CASE NAME** | **TRIAL COURT** | **APPEAL** | | **DURATION** |
| 1 | *Kater v. Churchill Downs* | No. 2:15-cv-00612 (W.D. Wash.) 4/17/2015–3/9/2021; 296 entries | *Affirmed*, 886 F.3d 784 (9th Cir.) 1/6/2016–3/28/2018; 72 entries | | 2,153 days |
| 2 | *Wilson v. Playtika* | No. 3:18-cv-05277 (W.D. Wash.) 4/6/2018–2/11/2021; 171 entries | NO APPEAL | | 1,042 days |
| 3 | *Wilson v. Huuuge* | No. 3:18-cv-05276 (W.D. Wash.) 4/6/2018–2/11/2021; 145 entries | *Affirmed*, 944 F.3d 1212 (9th Cir.) 12/6/2018–12/20/2019; 46 entries | | 1,042 days |
| 4 | *Reed v. Scientific Games* | No. 2:18-cv-00565 (W.D. Wash.) 4/17/2018–8/18/2022; 202 entries | *Dismissed*, 2022 WL 17825035 (9th Cir.) 6/23/2021–11/9/2022; 37 entries | | 1,667 days |
| 5 | *Ferrando v. Zynga* | No. 2:22-cv-00214 (W.D. Wash.) 2/24/2022–12/1/2022; 67 entries | NO APPEAL | | 280 days |
| 6a | *Benson v. DoubleDown Interactive* | No. 2:18-cv-00525 (W.D. Wash.) 4/9/2018–present; 531 entries | *Affirmed*, 798 F. Appx 117 (9th Cir.) 12/6/2018–1/29/2020; 62 entries | | 1,799 days (as of 03/13/2023) |
| 6b | *DoubleDown Interactive v. Benson* | No. 20-2-02023-34 (Wash. St.) 9/11/2020–8/26/2021; 75 entries *Stayed then voluntarily dismissed* | NO APPEAL | | 349 days |
| 7 | *Wilson v. PTT* | No. 3:18-cv-05275 (W.D. Wash.) 4/6/2018–present; 215 entries | | | 1,802 days (as of 03/13/2023) |
| 8 | *Mason v. Mach. Zone* **Tested CA and MD law** | No. 1:15-cv-01107 (D. Md.) 4/17/2015–10/21/2015; 40 entries *Dismissed*, 140 F. Supp. 3d 457 | *Affirmed*, 851 F.3d 315 (4th Cir.) 11/23/2015–3/17/2017; 40 entries | | 700 days |
| 9 | *Dupee v. Playtika* **Tested NV and OH law** | No. 1:15-cv-01021 (N.D. Ohio) 5/21/2015–3/01/2016; 22 entries *Dismissed*, 2016 WL 795857 | NO APPEAL | | 285 days |
| 10 | *Phillips v. Double Down Interactive* **Tested IL law** | No. 1:15-cv-04301 (N.D. Ill.) 5/14/2015–3/25/2016; 60 entries *Dismissed*, 173 F. Supp. 3d 731 | NO APPEAL | | 316 days |
| 11 | *Soto v. Sky Union* **Tested CA, IL, MI law** | No. 1:15-cv-04768 (N.D. Ill.) State Court 4/10/2015 (removed) 5/29/2015–1/29/2016; 36 entries *Dismissed*, 159 F. Supp. 3d 871 | NO APPEAL | | 294 days |
| 12 | *Ristic v. Mach. Zone* **Tested IL law** | No. 1:15-cv-08996 (N.D. Ill.) 10/09/2015–09/19/2016; 38 entries *Dismissed*, 2016 WL 4987943 | NO APPEAL | | 346 days |
| | | | | **TOTAL DAYS** | **11,992** |

**D-2**